# EXHIBIT 3

10-Q 1 hiiq_93017x10q.htm 10-Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM 10-Q

**(Mark One)**

**[X] QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 30, 2017**

**or**

**[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File Number: 1-35811**

# Health Insurance Innovations, Inc.
**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **46-1282634** |
| **(State or other jurisdiction of** | **(I.R.S. Employer** |
| **incorporation or organization)** | **Identification No.)** |

**15438 N. Florida Avenue, Suite 201**

**Tampa, FL 33613**

**(Address of Principal Executive Offices)**

**(813) 397-1187**

**(Registrant's telephone number, including area code)**

**N/A**

**(Former name, former address and former fiscal year, if changed since last report)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [X] No [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act:

| | | | | |
|---|---|---|---|---|
| Large accelerated filer | [ ] | Emerging growth company | [X] Accelerated filer | [ ] |
| Non-accelerated filer | [ ] (Do not check if a smaller reporting company) | | Smaller reporting company | [X] |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Exchange Act Rule 12b-2). Yes [ ] No [X]

As of October 30, 2017, the registrant had 12,700,986 shares of Class A common stock, $0.001 par value, outstanding and 3,841,667 shares of Class B common stock, $0.001 par value, outstanding.

## PART II—OTHER INFORMATION

### ITEM 1—LEGAL PROCEEDINGS

We are currently a party to multiple litigation proceedings. From time to time, we may be a party to litigation and subject to claims incident to the ordinary course of business, including claims from consumers alleging misrepresentation and material omissions in connection with their purchase of our products. Except as described below, we do not believe that any pending legal proceedings are material. Regardless of the outcome, litigation can have an adverse impact on us because of defense and settlement costs, diversion of management resources and other factors.

#### *State Regulatory Examinations*

From time to time the Company receives information and document requests from state insurance regulators concerning the business practices of the Company and/or third-party distributors of the Company's products. Except as otherwise described below, it is too early to determine whether any of these regulatory examinations will have a material impact on the Company. The Company's policy is to proactively communicate and cooperate with all such requests.

#### *Indiana Multistate Market Conduct Examination*

The Company received notification in April 2016 from the Indiana Department of Insurance that a multistate examination had been commenced providing for the review of HCC Life Insurance Company's ("HCC") short-term medical plans, Affordable Care Act compliance, marketing, and rate and form filing for all products. In May 2016, the Company received notice that the Market Actions Working Group of the National Association of Insurance Commissioners determined that the examination would become a multistate examination. As the Company was a program manager of HCC products at that time, the notification indicated that the multistate examination will include a review of the activities of the Company and a review of whether the Company's practices are in compliance with Indiana insurance law and the similar laws of other states participating in the examination. The Indiana Department of Insurance is serving as the managing participant of the multistate examination, and the examination includes, among other things, a review of whether HCC (and the Company) has engaged in any unfair or deceptive acts or non-compliant insurance business practices. At present, forty-two states have joined the multistate examination. On June 1, 2016, the Company responded to an initial document production request in this matter. The Company received notice on March 16, 2017 that Indiana may expand the scope and time period of the examination to include a review of the Company's marketing, sales, and administration of insurance products for all parties with whom HIIQ conducted business. This notice was provided through an additional "warrant" which is similar to an investigatory subpoena. Additional discussions with the lead investigators took place on March 29, 2017, in which the Company sought modifications to the scope of any potential expansion, and offered to provide additional information on a voluntary basis, but in the meantime, the Company has nevertheless focused on providing the information requested by the expanded warrant. In addition to the multistate examination led by Indiana, we are aware that several other states, including Florida and South Dakota are reviewing the sales practices and potential unlicensed sale of insurance by independently owned and operated licensed-agent call centers utilized by the Company.

The Company is aware of and managing additional claims and inquiries in other states that, except for the inquiries described below, the Company does not believe are material at this time. Except as otherwise described below, it is too early to determine whether any of these regulatory examinations will have a material impact on the Company. The Company is proactively communicating and cooperating with all applicable regulatory agencies, and has provided a detailed action plan to regulators that summarizes the Company's enhanced compliance and control mechanisms.

#### *Montana Regulatory Action*

In May 2016, the Company received notification from the Office of the Montana State Auditor, Commissioner of Securities and Insurance ("CSI") that an administrative action had been initiated against it. The Company was among more than two dozen separate parties named by the CSI in a Notice of Proposed Agency Action on May 12, 2016, that alleges potential violations of the Montana Insurance Code. The Notice, directed to the Company as well as a large pool of third-party respondents ranging from very large companies to individual insurance agents, indicated that the CSI was concerned with the possibility of unfair trade practices, potentially unlicensed insurance practices, or agents that were not properly appointed to the insurance carriers for whom products were being offered, and the CSI temporarily suspended the Company's license to conduct business in Montana pending resolution of the matter and agreed to a hearing in the matter. Following a series of communications with the CSI and the provision of information to the CSI, on September 15, 2017, the CSI formally declared to the hearing examiner that it was joining the multistate and requested dismissal of all HIIQ entities from the Notice of Proposed Agency Action. This request was granted on October 31, 2017, and the Company is now dismissed from the action. As a result, the Company's exposure related to this matter, if any, will now be tied to Montana's involvement in the multistate examination.

### *Massachusetts Regulatory Action*

The Company received notification of a civil investigative demand from the Massachusetts Attorney General's Office ("MAG") on June 16, 2016. As part of the MAG's regulatory oversight of the Massachusetts health care system and its corresponding authority to request documents from market participants, the MAG has requested certain information and documents from the Company. The information requested will be used to review the Company's sales and marketing practices, and ensure the Company is in compliance with Massachusetts laws and regulations. Additionally, the Company's materials and sales and marketing practices will be evaluated in order to ensure that they are neither deceptive nor do they constitute unfair trade practices.

The Company continues to provide all requested documents and materials requested by the MAG, and is in the process of assembling some additionally-requested information. The Company continues to cooperate with the MAG in the interest of bringing the matter to an agreeable conclusion. While the MAG has indicated it is amenable to exploring all available options, and it is still too early to assess whether the MAG's investigation will result in a material impact on the Company, the Company believes that based on the nature of the allegations raised by the MAG during the fourth quarter of 2016, a loss arising from the future assessment of a civil penalty against the Company is probable. Notwithstanding, due to the relatively procedural stage of the investigative process, the recent settlement of another party (a carrier) for the same set of allegations, and the fact that the Company has neither requested nor received evidentiary material from the MAG, the Company is currently unable to estimate the amount of any potential civil penalty or determine a range of potential loss under the MAG's investigation of the Company. It is possible there may be no financial loss, a nominal or minimal loss, or some other mutually satisfactory resolution reached with the MAG in connection with the MAG's investigation of the Company.

### *Texas Regulatory Action*

In September 2016, the Texas Department of Insurance ("TDI") notified the Company that it has instituted an enforcement action to investigate alleged violations of advertising rules and third-party administrator license requirements in connection with the sale of the Company's products. In connection with the investigation, the TDI requested certain information, records, and explanations and the Company delivered a response and the requested information and records in November 2016. Following such date, the TDI took no action, and communicated only that it was continuing to review the matter. In May 2017, the TDI communicated a series of additional requests for information, and the results were provided two weeks later. Since that time, there has been no additional communication from the TDI. The Company's position is that there have been no violations of the advertising or third-party administrator statutes in Texas, although there is no assurance that the TDI will agree with this position. This action has developed slowly, and accordingly the Company has not determined any potential loss to be probable. Additionally, due to the early stage of the matter any potential loss is not reasonably estimable. Accordingly, no loss or range of loss has been recorded or disclosed.

34

*Miscellaneous*

### *Purported Securities Class Action Lawsuits*

In September 2017, three putative securities class action lawsuits were filed against the Company and certain of its current and former executive officers. The cases are styled *Cioe Investments Inc. v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-05316-NG-ST, filed in the U.S. District Court for the Eastern District of New York on September 11, 2017; *Michael Vigorito v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-06962, filed in the U.S. District Court for the Southern District of New York on September 13, 2017; and *Shilpi Kavra v. Health Insurance Innovations, Inc., Patrick McNamee, Gavin Southwell, and Michael Hershberger*, Case No. 8:17-cv-02186-EAK-MAP, filed in the U.S. District Court for the Middle District of Florida on September 21, 2017. All three of the foregoing actions (the "Securities Actions") were filed after a decline in the trading price of the Company's common stock following the release of a report authored by a short-seller of the Company's common stock raising questions about, among other things, the Company's public disclosures relating to the Company's regulatory examinations and regulatory compliance. All three of the Securities Actions, which are based substantially on the allegations raised in the short-seller report, contain substantially the same allegations and allege that the Company made materially false or misleading statements or omissions relating to regulatory compliance matters, particularly regarding to the Company's application for a third-party administrator license in the State of Florida. The Securities Actions allege violations of Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), SEC Rule 10b-5, and Section 20(a) of the Exchange Act. According to the filed complaints, the plaintiffs in the Securities Actions are seeking an undetermined amount of damages, interest, attorneys' fees and costs on behalf of putative classes of individuals and entities that acquired shares of the Company's common stock on periods ending September 11, 2017. The Company was served on October 24, 2017 in the *Kavra* case but has not yet been served with the complaints in the other actions. The Company intends to vigorously defend against the claims. It is possible that similar lawsuits may yet be filed in the same or other courts that name the same or additional defendants.

### *TPA Licensure*

On September 29, 2017, the Company and the Florida Office of Insurance Regulation ("OIR") entered into a mutual consent order relating to the Company's application for licensure as a third-party insurance administrator ("TPA") in the State of Florida. Prior to the consent order, in June 2017, the OIR denied the Company's previously filed TPA application based on the OIR's determination that the Company had not provided all information required to process the application, and in June 2017, the Company appealed the denial with the Florida Division of Administrative Hearings. Pursuant to the consent order, on October 2, 2017, the Florida Division of Administrative Hearings granted a motion to dismiss the Company's petition contesting the OIR's prior license denial, and on October 4, 2017, the OIR withdrew its prior denial of the Company's TPA license application. The mutual consent order between the Company and the OIR specifies details regarding the information to be included in the Company's new TPA application and certain procedural steps, such as a pre-submission meeting with the OIR. On October 17, 2017, the Company and the OIR held the pre-submission meeting, and the Company submitted the new TPA application in accordance with the consent order immediately following the meeting. The application is currently under active review by the staff of the OIR.

### *Telephone Consumer Protection Act*

The Company has received a number of private-party claims relating to alleged violations of the federal Telephone Consumer Protection Act (TCPA) by its independently owned and operated licensed-agent distributors, alleging that their marketing activities were potentially unlawful. The Company has been named as a defendant in multiple lawsuits relating to alleged TCPA matters, including claims styled, but not yet certified, as class actions. There are three primary cases filed in the courts by Plaintiffs Craig Cunningham, Kenneth Moser, and Amanda Hicks, each styled as a class action but not yet certified, and each Plaintiff alleging or seeking damages ranging from $160,000 to over $5,000,000. The Company is defending these claims and has filed motions to dismiss or the equivalent in each matter. The Company is presently reviewing these matters and reviewing distributor compliance, and enhancing existing compliance. While these types of claims have previously settled or resolved without any material effect on the Company, there is a possibility in the future that one or more could have a material effect. The Company requires that its independently owned and operated licensed-agent distributors reimburse or indemnify it for any such settlements.

### *Other*

The Company has previously received inquiries but no claims, litigation, or findings of violation relating to alleged data loss and/or privacy breaches relating to affiliated companies. Each allegation is investigated upon receipt and handled promptly to resolution.

The Company has received claims relating to customer service and claims handling issues arising from a prior carrier's, HCC Life Insurance Company ("HCC"), relationship to the Company. Recently, in one of the matters styled as *Azad, et al. v. Tokio Marine HCC, et al.*, Case No. Case 3:17-cv-00618, U.S. District Court for the Northern District of California, ("Azad case") the Company sought and received dismissal from the matter initially without prejudice, and subsequently on September 22, 2017, the Company was dismissed with prejudice from the case. The Company independently filed its own lawsuit against that same carrier, HCC, seeking that the Court ascertain and declare the rights and obligations between the parties. That declaratory action was filed in Hillsborough County, Florida and is styled as *Health Insurance Innovations, Inc., et al. v. HCC Medical Insurance Services, LLC, et al.*, Case No. 17-CA-6679. This declaratory action was filed in response to indemnity demands that the Company received from HCC. No lawsuit has been filed against the Company by HCC, and on August 18, 2017, HCC sent a letter to the Company limiting the scope of its indemnification demand to the Montana administrative matter discussed above (that the Company has been dismissed from), the multistate review discussed above, and the Azad case. Following the Company's dismissal from the Azad case, on September 29, 2017 HCC sent an additional letter to the Company further limiting the scope of its indemnification demand by removing the Azad case.

The Company has also received claims from insureds relating to lack of carrier coverage, claims handling, and alleged deceptive sales practices relating to this carrier. In each of these individual insureds' claims, the Company attempts to dismiss, challenge or resolve the claims as quickly as possible.

## ITEM 1A—RISK FACTORS

Except as set forth below, there were no material changes to the risk factors disclosed in our Annual Report on Form 10-K for the year ended December 31, 2016:

***Our share price may be adversely affected by short sellers and other third parties who raise questions about the Company.***

Short sellers and others who raise questions about the Company, some of whom are positioned to profit if our share price declines, can negatively affect the price and volatility of our shares. On September 11, 2017, a short-seller of our common stock distributed a report raising questions about, among other things, the Company's public disclosures relating to the Company's regulatory examinations and regulatory compliance. Following the distribution of this report, the Company's common stock experienced a significant decline in trading price. On September 28, 2017, another short-seller published a follow-on report raising questions about the Company.

Short sellers make a profit when our common shares decline in value, and their actions and public statements, together with the resulting publicity, may cause further volatility in our share price. The volatility of our stock may cause the value of a shareholder's investment to decline rapidly. These short seller publications are not regulated by any governmental, self-regulatory organization or other official authority in the U.S., are not subject to certification requirements imposed by the Securities and Exchange Commission and, accordingly, the opinions they express may be based on distortions or omissions of actual facts or, in some cases, fabrications of facts. In light of the limited risks involved in publishing such information and the significant profit that can be made from running just one successful short attack (together with the adverse financial consequences to short sellers of an increase in our stock price), short sellers may continue to issue reports in the future with respect to the Company.

***We are currently subject to securities lawsuits and we may be subject to similar or other litigation in the future, which may divert management's attention and have a material adverse effect on our business, financial condition and results of operations.***

The market price of our common stock declined following the release of a short-seller publication on September 11, 2017 raising questions about our regulatory compliance and regulatory examinations. Following this decline in market price, three purported securities class actions were filed against us and certain current and former executive officers alleging that the Company made materially false or misleading statements or omissions relating to regulatory compliance matters, particularly regarding to the Company's application for a third-party administrator license in the State of Florida. According to the complaints filed for these actions, the plaintiffs in these actions are seeking an undetermined amount of damages, interest, attorneys' fees and costs on behalf of putative classes of individuals and entities that acquired shares of the Company's common stock on periods ending September 11, 2017.

We will continue to incur legal fees in connection with these pending cases, including expenses for the reimbursement of legal fees of present and former officers under indemnification obligations. The expense of continuing to defend such litigation may be significant. We intend to defend these lawsuits vigorously, but there can be no assurance that we will be successful in any defense. If any of the lawsuits are adversely decided, we may be liable for significant damages directly or under our indemnification

36

obligations, which could adversely affect our business, results of operations and cash flows. Further, the amount of time that will be required to resolve these lawsuits is unpredictable and these actions may divert management's attention from the day-to-day operations of our business, which could adversely affect our business, results of operations and cash flows.

We cannot predict the outcome of these lawsuits and we may be subject to other similar securities litigation in the future. Monitoring and defending against legal actions, whether or not meritorious, is time-consuming for our management and detracts from our ability to fully focus our internal resources on our business activities. In addition, we may incur substantial legal fees and costs in connection with litigation. Although we have insurance, coverage could be denied or prove to be insufficient. We are not currently able to estimate the possible cost to us from the currently pending lawsuits, and we cannot be certain how long it may take to resolve these matters or the possible amount of any damages that we may be required to pay. We have not established any reserves for any potential liability relating to these or future lawsuits. It is possible that we could, in the future, incur judgments or enter into settlements of claims for monetary damages. A decision adverse to our interests on these actions could result in the payment of substantial damages and could have a material adverse effect on our business, results of operations and financial condition. In addition, the uncertainty of the currently pending lawsuits could lead to more volatility in our stock price. The ultimate outcome of litigation could have a material adverse effect on our business and the trading price for our securities.

## ITEM 2—UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS

There were no unregistered sales of equity securities during the nine months ended September 30, 2017.

### *Issuer Purchases of Equity Securities*

#### *Employee Awards*

Pursuant to certain restricted stock award agreements, we allow the surrender of restricted shares by certain employees to satisfy statutory tax withholding obligations on vested restricted stock awards. During the three months ended September 30, 2017, there were:

| Periods | Total Number of Shares Purchased | | Average Price Paid Per Share | Total Number of Shares Purchased as Part of Publicly Announced Program | Maximum Number of Shares That May Yet Be Purchased Under the Program |
|---|---|---|---|---|---|
| July 1, 2017 through July 31,2017 | 3,300 | (1) | — | — | — |
| August 1, 2017 through August 31, 2017 | — | | — | — | — |
| September 1, 2017 through September 30, 2017 | 6,963 | (1) | — | — | — |
| Total | 10,263 | | — | — | — |

(1) Includes only shares that were surrendered by employees to satisfy statutory tax withholding obligations in connection with the vesting of stock-based compensation awards.

## ITEM 3—DEFAULTS UPON SENIOR SECURITIES

None.

## ITEM 4—MINE SAFETY DISCLOSURES

Not applicable.

## ITEM 5—OTHER INFORMATION

None.

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

HEALTH INSURANCE INNOVATIONS, INC.

November 2, 2017

*/s/ Gavin D. Southwell*

**GAVIN D. SOUTHWELL**
**PRESIDENT AND CHIEF EXECUTIVE OFFICER**
**(PRINCIPAL EXECUTIVE OFFICER)**

November 2, 2017

*/s/ Michael D. Hershberger*

**MICHAEL D. HERSHBERGER**
**CHIEF FINANCIAL OFFICER, SECRETARY AND TREASURER**
**(PRINCIPAL FINANCIAL OFFICER)**

39