# EXHIBIT 5

10-Q 1 hiiq_33118x10q.htm 10-Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 10-Q

**(Mark One)**

**[X]  QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended March 31, 2018**

**or**

**[ ]  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File Number: 1-35811**

# Health Insurance Innovations, Inc.

**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **46-1282634** |
| **(State or other jurisdiction of** | **(I.R.S. Employer** |
| **incorporation or organization)** | **Identification No.)** |

**15438 N. Florida Avenue, Suite 201**

**Tampa, FL 33613**

**(Address of Principal Executive Offices)**

**(813) 397-1187**

**(Registrant's telephone number, including area code)**

**N/A**

**(Former name, former address and former fiscal year, if changed since last report)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [X] No [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act:

| | | | | | |
|---|---|---|---|---|---|
| Large accelerated filer | [ ] | Emerging growth company | [X] | Accelerated filer | [X] |
| Non-accelerated filer | [ ] | (Do not check if a smaller reporting company) | | Smaller reporting company | [ ] |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Exchange Act Rule 12b-2). Yes [ ] No [X]

As of April 30, 2018, the registrant had 12,915,760 shares of Class A common stock, $0.001 par value, outstanding and 3,841,667 shares of Class B common stock, $0.001 par value, outstanding.

*Legal Proceedings*

The Company is subject to legal proceedings, claims, and liabilities that arise in the ordinary course of business. The Company accrues losses associated with legal claims when such losses are probable and reasonably estimable. If the Company determines that a loss is probable and cannot estimate a specific amount for that loss, but can estimate a range of loss, the best estimate within the range is accrued. If no amount within the range is a better estimate than any other, the minimum amount of the range is accrued. Estimates are adjusted as additional information becomes available or circumstances change. Legal defense costs associated with loss contingencies are expensed in the period incurred.

*State Regulatory Examinations*

*Indiana Multistate Market Conduct Examination*

The Company is the subject of a previously disclosed multistate market conduct examination ("MCE") that commenced in April 2016 by the Market Actions Working Group of the National Association of Insurance Commissioners. The MCE, which is led by the Indiana Department of Insurance, comprised of 43 participating state insurance departments, was initially focused on a review of HCC Life Insurance Company's sales, marketing, and compliance practices relating to short-term medical plans. The MCE was later expanded to include the Company's marketing, sales, compliance, and administration activities. During the period from May 2016 through February 2018, the Company was served with requests for information in the form of subpoenas, and the Company has responded to the requests and has otherwise been fully cooperating with the examiners. As of May 2, 2018, no findings of any sort (including findings of breaches or wrongdoing) have been formally or informally communicated to the Company by the examiners. On April 10, 2018 the California Department of Insurance published a December 2017 Regulatory Settlement Agreement between HCC and certain states participating in the HCC MCE, although the Company was not included in that reported settlement.

In addition to the MCE led by Indiana, we are aware that several other states, including Florida and South Dakota, are reviewing the sales practices and potential unlicensed sale of insurance by independently owned and operated third-party licensed-agent call centers utilized by the Company.

*Massachusetts Regulatory Action*

The Company received notification of a civil investigative demand from the Massachusetts Attorney General's Office ("MAG") on June 16, 2016. The MAG has requested certain information and documents from the Company which will be used to review the Company's sales and marketing practices to ensure the Company is in compliance with Massachusetts laws and regulations. Additionally, the Company's materials and sales and marketing practices are being evaluated in order to ensure that they are neither deceptive nor do they constitute unfair trade practices.

The Company continues to provide all requested documents and materials requested by the MAG. The Company continues to cooperate with the MAG in the interest of bringing the matter to an agreeable conclusion. While the MAG has indicated it is amenable to exploring all available options, it is still too early to assess whether the MAG's investigation will result in a material impact on the Company. The Company believes that based on the nature of the allegations raised by the MAG, a loss arising from the future assessment of a civil penalty against the Company is probable. Notwithstanding, due to the relatively procedural stage of the investigative process, the settlement of another party (a carrier) for the same set of allegations, and the fact that the Company has neither requested nor received evidentiary material from the MAG, the Company is currently unable to estimate the amount of any potential civil penalty or determine a range of potential loss under the MAG's investigation of the Company. It is possible there may be no financial loss, a nominal or minimal loss, or some other mutually satisfactory resolution reached with the MAG in connection with the MAG's investigation of the Company. As of April 30, 2018 there have been no findings of any sort (including findings of breaches or wrongdoing) communicated to the Company by the MAG.

We are proactively communicating and cooperating with all regulatory agencies involved in the above-described examinations and actions and we continue to develop and enhance our compliance and control mechanisms. However, it is too early to determine whether any of these regulatory matters will have a material impact on our business. Any adverse finding could result in significant penalties or other liabilities and/or a requirement to modify our marketing or business practices and the practices of our third-party independent distributors, which could harm our business, results of operations, or financial condition. Moreover, an adverse regulatory action in one jurisdiction could result in penalties and adversely affect our license status or reputation in other jurisdictions due to the requirement that adverse regulatory actions in one jurisdiction be reported to other jurisdictions.

14

*Claims that involve independently licensed third-party insurance agencies and their agents, and independent insurance carriers, in which the Company is named as a co-defendant*

In January 2018, the Company was named as a defendant in a non-certified class action complaint styled as *Aliquo, et al. v. HCC Medical Insurance Services, LLC, et al.*, Case No. 18-cv-18, U.S. District Court for the Southern District of Indiana ("Aliquo case"). The Company moved to dismiss the complaint on March 9, 2018. Prior to hearing on the Motion to Dismiss the plaintiffs' counsel amended the complaint substituting in new plaintiffs named Bryant and Delgado. As such, the complaint was restyled as *Bryant et. al. v. HCC Medical Insurance Services, LLC, et al.* with the same case number. The Company and other defendants will likely respond with motions to dismiss on procedural grounds. Similar to other cases involving the conduct of independent insurance carriers and independent sales agencies, the allegations revolve largely around the conduct of independent insurance carriers related to the claims handling, processing, and resolution process, though the complaint also alleges that potentially deceptive sales practices and unfair trade practices or misrepresentations may also have occurred. The Bryant case, which largely attempts to bring claims under the RICO Act, seeks to link the Company's marketing efforts to the independent carriers' conduct of alleged improper claims handling, post-claims underwriting, and denials despite the Company being uninvolved in any of these listed activities. In fact, with at least one of the newer plaintiffs (Delgado), it seems that the Company had no relationship. An additional claim for breach of contract is alleged solely against the independent insurance carriers. The Company will continue to assert that it doesn't engage in post- claims underwriting or claims handling as complained of in the case. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

In the case styled as *Charles M. Butler, III and Chole Butler v. Unified Life Ins. Co., et al.*, Case No. 17-cv-00050-SPW-TJC, U.S. District Court for the District of Montana (Billings Div.) ("Butler case"), in which allegations of misrepresentation and claims handling were made against the independent insurance agency and a carrier, the plaintiff also named the Company as a party. The Butler case is in the procedural stage of discovery and motion practice. The Company is asserting defenses against the claims not limited to that it doesn't adjudicate claims and made no misrepresentations to Butler. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

In the case styled as *Carter v. Companion Life Insurance Company et al.*, Case No. 18-cv-350, U.S. District Court for the District of Alabama ("Carter case"), in which allegations of claims handling were made against the carrier and the plaintiff also named the Company as a party. The Carter case was recently received on March 20, 2018 and the Company is evaluating the matter. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

*Other*

*Purported Securities Class Action Lawsuits*

In September 2017, three putative securities class action lawsuits were filed against the Company and certain of its current and former executive officers. The cases were styled *Cioe Investments Inc. v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-05316-NG-ST, filed in the U.S. District Court for the Eastern District of New York on September 11, 2017; *Michael Vigorito v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-06962, filed in the U.S. District Court for the Southern District of New York on September 13, 2017; and *Shilpi Kavra v. Health Insurance Innovations, Inc., Patrick McNamee, Gavin Southwell, and Michael Hershberger*, Case No. 8:17-cv-02186-EAK-MAP, filed in the U.S. District Court for the Middle District of Florida on September 21, 2017. All three of the foregoing actions (the "Securities Actions") were filed after a decline in the trading price of the Company's common stock following the release of a report authored by a short-seller of the Company's common stock raising questions about, among other things, the Company's public disclosures relating to the Company's regulatory examinations and regulatory compliance. All three of the Securities Actions, which were based substantially on the allegations raised in the short-seller report, contained substantially the same allegations, and alleged that the Company made materially false or misleading statements or omissions relating to regulatory compliance matters, particularly regarding to the Company's application for a third-party administrator license in the State of Florida.

15

In November and December 2017, the Cioe Investments and Vigorito cases were transferred to the U.S. District Court for the Middle District of Florida, and on December 28, 2017, they were consolidated with the Kavra matter under the case caption, *In re Health Insurance Innovations Securities Litigation*, Case No. 8:17-cv-2186-EAK-MAP (M.D. Fla.). On February 6, 2018, the court appointed Robert Rector as lead plaintiff and appointed lead counsel, and lead plaintiff filed a consolidated complaint on March 23, 2018. The consolidated complaint, which dropped Patrick McNamee as a defendant and added Michael Kosloske as a defendant, largely sets forth the same factual allegations as the initially filed Securities Actions filed in September 2017 and adds allegations relating to alleged materially false statements and omissions relating to the regulatory proceeding previously initiated against the Company by the Montana State Auditor, Commissioner of Securities and Insurance (the "CSI"), which proceeding was dismissed on October 31, 2017 in light of CSI's decision to join the Indiana Multistate Examination. The complaint also adds allegations regarding insider stock sales by Messrs. Kosloske and Hershberger. The consolidated complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), SEC Rule 10b-5, and Section 20(a) of the Exchange Act. According to the consolidated complaint, the plaintiffs in the action are seeking an undetermined amount of damages, interest, attorneys' fees and costs on behalf of putative classes of individuals and entities that acquired shares of the Company's common stock on periods ending September 11, 2017. The Company's response to the consolidated complaint is due on May 7, 2018. The Company intends to vigorously defend against the claims. However, at this time, it cannot predict the probable outcome of this action, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements.

*Putative Derivative Action Lawsuits*

Two individuals, Ian DiFalco and Dayle Daniels, filed separate but similar derivative action complaints on April 5 and April 6, 2018, respectively, in the Delaware Court of Chancery naming most of the Company's directors and executive officers as defendants. The derivative complaints assert alleged violations of Section 14(a) of the Securities Exchange Act, Section 10(b) of the Exchange Act and Rule 10b-5, and Section 20(a) of the Exchange Act, and claims for alleged breach of fiduciary duties, alleged unjust enrichment, alleged abuse of control, alleged gross mismanagement, and alleged waste of corporate assets. The factual allegations in the complaints are based largely on the factual allegations in the above-described consolidated securities class action consolidated complaint and include additional allegations relating to misconduct by third-party call centers utilized by the Company in its operations. To the Company's knowledge, only the Company has been served with the complaints to date. The plaintiffs are seeking declaratory relief, direction to reform and improve corporate governance and internal procedures, and an undetermined amount of damages, restitution, interest, and attorneys' fees and costs. Defendants intend to vigorously defend against these claims. However, at this time, the Company cannot predict the probable outcome of these actions, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements.

*Telephone Consumer Protection Act*

The Company has received a number of private-party claims relating to alleged violations of the federal Telephone Consumer Protection Act ("TCPA") by its independently owned and operated licensed-agent distributors, alleging that their marketing activities were potentially unlawful. The Company has been named as a defendant in multiple lawsuits relating to alleged TCPA matters, including claims styled, but not yet certified, as class actions. There are three primary cases filed in the courts by Plaintiffs Craig Cunningham, Kenneth Moser, and Amandra Hicks, each styled as a class action but not yet certified, and each Plaintiff alleging or seeking damages ranging from $160,000 to over $5,000,000. The Company is defending these claims and has filed motions to dismiss or the equivalent in each matter. On February 13, 2018, the Company successfully obtained a dismissal from the Cunningham case however, Cunningham refiled his complaint and the second case was dismissed on March 1, 2018. Making a third attempt, Cunningham refiled his complaint on April 16, 2018, in a now-third venue, the Middle District of Florida. In the Moser case, on April 19, 2018, a court-ordered Early Neutral Evaluation occurred with all parties in attendance. Settlement discussions were unproductive and the magistrate judge set the schedule for discovery. In Hicks, the case is proceeding to an initial mediation presently set for June 15, 2018. A similar case, known as Foote, was filed on March 22, 2018, and also styled but not yet certified as class action. The Company is reviewing the matter and its response is not yet due. While these types of claims have previously settled, been dismissed, or resolved without any material effect on the Company, there is a possibility in the future that one or more could have a material effect. While it is possible that a loss may arise from these cases, the amount of such loss is not known or estimable at this time. The Company requires that its independently owned and operated licensed-agent distributors reimburse or indemnify it for any such settlements.

*Data and Privacy*

The Company has previously received inquiries but no claims, litigation, or findings of violation relating to alleged data loss and/or privacy breaches relating to affiliated companies. Each allegation is investigated upon receipt and handled promptly to resolution.

*Other matters*

The Company has also received claims from insureds relating to lack of carrier coverage, claims handling, and alleged deceptive sales practices relating to carriers with which we do business. In each of these individual insureds' claims, the Company attempts to dismiss, challenge, or resolve the claims as quickly as possible.

We enter agreements in the ordinary course of business that may require us to indemnify the other party for claims brought by a third-party. From time to time, we have received requests for indemnification. Presently the Company is managing and responding to both formal and informal requests for indemnification from a number of carriers related to the multistate action and the TCPA claims identified above. Management cannot reasonably estimate any potential losses, but these claims could result in material liability for us.

*Closed Matters*

*TPA Licensure*

On February 14, 2018, the Florida Office of Insurance Regulation ("OIR") executed a consent order granting a Certificate of Authority to conduct business as a third-party insurance administrator in the State of Florida to HPIH. The consent order and Certificate of Authority were granted pursuant to an application submitted to the OIR by HPIH in October 2017. In the consent order, which sets forth terms and conditions associated with the license, the OIR assessed a fine of $140,000 as a result of a finding by the OIR (which HPIH did not contest) that HPIH conducted business as an insurance administrator in the State of Florida prior to HPIH's submission of the application.

*Texas Regulatory Action*

In September 2016, the Texas Department of Insurance ("TDI") notified the Company that it has instituted an enforcement action to investigate alleged violations of advertising rules and third-party administrator license requirements in connection with the sale of the Company's products. In connection with the investigation, the TDI requested certain information, records, and explanations, to which the Company responded. On February 8, 2018, the TDI notified the Company that it had closed the investigation effective February 2, 2018. The TDI verbally indicated that the inquiry has been coded as an "internal inquiry and review that resulted in a finding of 'no violation' with no disciplinary action taken." The matter is considered resolved without penalty or fine from the TDI.

## 11. Related Party Transactions

There have been no material changes to the Related Party Transactions disclosures made in our Annual Report on Form 10-K for the period ended December 31, 2017, except for those noted in Note 10 above related to required payments under the TRA, and the HPIH and HPI operating Agreement.

## ITEM 2—MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS

### SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

*We have made statements in Management's Discussion and Analysis of Financial Condition and Results of Operations below and in other sections of this report that are forward-looking statements. All statements other than statements of historical fact included in this quarterly report are forward-looking statements. You can identify forward-looking statements by the fact that they do not relate strictly to historical or current facts. These statements may include words such as "may," "might," "will," "should," "expects," "plans," "anticipates," "believes," "estimates," "predicts," "potential," or "continue," the negative of these terms and other comparable terminology. These forward-looking statements, which are subject to risks, uncertainties, and assumptions about us, may include projections of our future financial performance, our anticipated growth strategies, anticipated trends in our business, and other future events or circumstances. These statements are only predictions based on our current expectations and projections about future events. There are important factors that could cause our actual results, level of activity, performance or achievements, and other future events or circumstances to differ materially from the results, level of activity, performance or achievements, events or circumstances expressed or implied by the forward-looking statements, including those factors discussed in "Part I. – Item 1A. Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017 and those factors discussed in "Part II – Item 1A. Risk Factors" below.*

17

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

HEALTH INSURANCE INNOVATIONS, INC.

May 3, 2018                                        */s/ Gavin D. Southwell*

**GAVIN D. SOUTHWELL**
**PRESIDENT AND CHIEF EXECUTIVE OFFICER**
**(PRINCIPAL EXECUTIVE OFFICER)**

May 3, 2018                                        */s/ Michael D. Hershberger*

**MICHAEL D. HERSHBERGER**
**CHIEF FINANCIAL OFFICER, SECRETARY, AND TREASURER**
**(PRINCIPAL FINANCIAL OFFICER)**

28