# EXHIBIT 6

10-Q 1 hiiq_63018x10q.htm 10-Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-Q

**(Mark One)**

**[X]  QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended June 30, 2018**

**or**

**[  ]  TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File Number: 1-35811**

# Health Insurance Innovations, Inc.

**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **46-1282634** |
| **(State or other jurisdiction of** | **(I.R.S. Employer** |
| **incorporation or organization)** | **Identification No.)** |

**15438 N. Florida Avenue, Suite 201**

**Tampa, FL 33613**

**(Address of Principal Executive Offices)**

**(813) 397-1187**

**(Registrant's telephone number, including area code)**

**N/A**

**(Former name, former address and former fiscal year, if changed since last report)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [  ]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [X] No [  ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act:

| | | | | | |
|---|---|---|---|---|---|
| Large accelerated filer | [  ] | Emerging growth company | [X] | Accelerated filer | [X] |
| Non-accelerated filer | [  ] | (Do not check if a smaller reporting company) | | Smaller reporting company | [  ] |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [  ]

Indicate by check mark whether the registrant is a shell company (as defined in Exchange Act Rule 12b-2). Yes [  ] No [X]

As of July 30, 2018, the registrant had 14,242,049 shares of Class A common stock, $0.001 par value, outstanding and 2,541,667 shares of Class B common stock, $0.001 par value, outstanding.

## 10. Commitments and Contingencies

### *Health Plan Intermediaries, LLC*

HPI and its subsidiary HPIS, which are beneficially owned by Mr. Kosloske, a director and former executive officer of the Company, are deemed to be related parties of the Company by virtue of their Series B Membership Interests in HPIH, of which we are the managing member. During the six months ended June 30, 2018, HPIH paid cash distributions of $983,000 for these entities related to estimated federal and state income taxes, pursuant to the operating agreement entered into by HPIH and HPI. Of these cash distributions, $638,000 was related to amounts accrued for at December 31, 2017 and included in *Due to member* on the condensed consolidated balance sheet. For the six months ended June 30, 2017, $4.5 million in cash distributions were made for estimated federal and state income taxes. Pursuant to the operating agreement of HPIH, we determine when distributions will be made to the members of HPIH and the amount of any such distributions, except that HPIH is required by the operating agreement to make certain pro rata distributions to each member of HPIH quarterly on the basis of the assumed tax liabilities of the members. As of June 30, 2018, we have $1.2 million in accrued payments recorded in the Due to member account on the condensed consolidated balance sheet.

### *Tax Receivable Agreement*

On February 13, 2013, we entered into a Tax Receivable Agreement (the "TRA") with HPI and HPIS, as the holders of the HPIH Series B Membership Interests. The TRA requires us to pay to such holders 85% of the cash savings, if any, in U.S. federal, state, and local income tax we realize (or are deemed to realize in the case of an early termination payment, a change in control or a material breach by us of our obligations under the TRA) as a result of any possible future increases in tax basis and of certain other tax benefits related to entering into the TRA, including tax benefits attributable to payments under the TRA itself. This is the Company's obligation and not an obligation of HPIH, and the Company will benefit from the remaining 15% of any realized cash savings. For purposes of the TRA, cash savings in income tax is computed by comparing our actual income tax liability with our hypothetical liability had we not been able to utilize the tax benefits subject to the TRA itself. The TRA became effective upon completion of the IPO and will remain in effect until all such tax benefits have been used or expired, unless the Company exercises its right to terminate the TRA for an amount based on the agreed payments remaining to be made under the agreement or the Company breaches any of its material obligations under the TRA in which case all obligations will generally be accelerated and due as if the Company had exercised its right to terminate the agreement. Any potential future payments will be calculated using the market value of our Class A common stock at the time of the relevant exchange and prevailing tax rates in future years and will be dependent on us generating sufficient future taxable income to realize the benefit. Payments are generally due under the TRA within a specified period of time following the filing of our tax return for the taxable year with respect to which payment of the obligation arises.

Exchanges of Series B Membership Interests, together with an equal number of shares of our Class B common stock, for shares of our Class A common stock, are expected to increase our tax basis in our share of HPIH's tangible and intangible assets. These increases in tax basis are expected to increase our depreciation and amortization deductions and create other tax benefits and therefore may reduce the amount of tax that we would otherwise be required to pay in the future. As of June 30, 2018, Series B Membership Interests, together with an equal number of shares of Class B common stock have been exchanged for a total of 6,125,000 shares of Class A common stock subsequent to the IPO. As of June 30, 2018, as a result of these exchanges, we have recorded a liability of $26.2 million pursuant to the TRA, of which $1.1 million is included in current liabilities and $25.1 million is included in long-term liabilities on the accompanying condensed consolidated balance sheets. We have determined that this amount is probable of being paid based on our estimates of future taxable income. This liability represents the share of tax benefits payable to the entities beneficially owned by Mr. Kosloske, if we generate sufficient taxable income in the future. As of June 30, 2018, we have made $1.2 million of cumulative payments under the TRA.

### *Legal Proceedings*

The Company is subject to legal proceedings, claims, and liabilities that arise in the ordinary course of business. The Company accrues losses associated with legal claims when such losses are probable and reasonably estimable. If the Company determines that a loss is probable and cannot estimate a specific amount for that loss, but can estimate a range of loss, the best estimate within the range is accrued. If no amount within the range is a better estimate than any other, the minimum amount of the range is accrued. Estimates are adjusted as additional information becomes available or circumstances change. Legal defense costs associated with loss contingencies are expensed in the period incurred. In addition to ordinary-course litigation that the Company does not believe to be material, the Company is a party to the proceedings and matters described below:

14

*State Regulatory Examinations*

*Indiana Multistate Market Conduct Examination*

The Company is the subject of a previously disclosed multistate market conduct examination ("MCE") that commenced in April 2016 by the Market Actions Working Group of the National Association of Insurance Commissioners. The MCE, which is led by the Indiana Department of Insurance and is comprised of 43 participating state insurance departments, was initially focused on a review of HCC Life Insurance Company's sales, marketing, and compliance practices relating to short-term medical plans. The MCE was later expanded to include the Company's marketing, sales, compliance, and administration activities. During the period from May 2016 through February 2018, the Company was served with requests for information in the form of subpoenas, and the Company has responded to the requests and has otherwise been fully cooperating with the examiners. The California Department of Insurance published a December 2017 Regulatory Settlement Agreement between HCC and certain states participating in the HCC MCE (and other states have since published the same document); as the Company was not included in that reported settlement, the Company cannot predict whether the reported HCC settlement will affect the resolution or outcome of the examination of the Company. On July 10, 2018, management of the Company met with the MCE examiners for discussions. These discussions included initial feedback on the results of the examination, and options for the available processes aimed toward potential resolution of the examination. The Company agreed to provide further information on specific matters raised by the examiner. The Company currently anticipates that it will be able to satisfactorily address any concerns of the MCE but it cannot determine whether any loss, in the form of a financial payment, will be incurred.

In addition to the MCE, we are aware that other states, including Florida and South Dakota, are reviewing the sales practices and potential unlicensed sale of insurance by independently owned and operated third-party licensed-agent call centers utilized by the Company, although to the Company's knowledge, none of these reviews are being conducted directly against the Company or call centers owned by the Company. In July 2018, the Florida Department of Financial Services presented additional requests of an administrative nature and the Company is working toward resolution and anticipates that the matter will be resolved upon delivery of the requested items.

*Massachusetts Regulatory Action*

The Company received notification of a civil investigative demand from the Massachusetts Attorney General's Office ("MAG") on June 16, 2016. The MAG has requested certain information and documents from the Company which will be used to review the Company's sales and marketing practices to ensure the Company is in compliance with Massachusetts laws and regulations. Additionally, the Company's materials and sales and marketing practices are being evaluated in order to ensure that they are neither deceptive nor do they constitute unfair trade practices.

The Company continues to cooperate with the MAG in the interest of bringing the matter to an agreeable conclusion. While the MAG has indicated it is amenable to exploring all available options, it is still too early to assess whether the MAG's investigation will result in a material impact on the Company. The Company believes that based on the nature of the allegations raised by the MAG, a loss arising from the future assessment of a civil penalty against the Company is probable. Notwithstanding, due to the procedural stage of the investigative process, the settlement of another party (a carrier) for the same set of allegations, and the fact that the Company has neither requested nor received evidentiary material from the MAG, the Company is currently unable to estimate the amount of any potential civil penalty or determine a range of potential loss under the MAG's investigation of the Company. It is possible there may be no financial loss, a nominal or minimal loss, or some other mutually satisfactory resolution reached with the MAG in connection with the MAG's investigation of the Company. As of June 30, 2018, there have been no findings of any sort (including findings of breaches or wrongdoing) communicated to the Company by the MAG.

*Florida Regulatory Action*

On June 11, 2018, the Company received notice that the Florida Office of Insurance Regulation ("OIR") had conducted an investigation as a result of allegations that the Company's subsidiary, HealthPocket, Inc. d/b/a AgileHealthInsurance, had advertised inducements in the solicitation of insurance products via an independently owned, third-party website and made allegedly material misstatements on an insurance agency application for licensure. The Company has reviewed the allegations and supporting documents and disagrees with the allegations. The OIR has proposed a settlement stipulation for consent order to resolve the matter. If the Company does not proceed with the settlement stipulation, the OIR has stated it will recommend formal administrative proceedings. The Company currently anticipates that it will be able to resolve the matter amicably with the OIR.

We are proactively communicating and cooperating with all regulatory agencies involved in the above-described examinations and actions, and we continue to develop and enhance our compliance and control mechanisms. However, it is too early to determine whether any of these regulatory matters will have a material impact on our business. Any adverse finding could

result in significant penalties or other liabilities and/or a requirement to modify our marketing or business practices and the practices of our third-party independent distributors, which could harm our business, results of operations, or financial condition. Moreover, an adverse regulatory action in one jurisdiction could result in penalties and adversely affect our license status or reputation in other jurisdictions due to the requirement that adverse regulatory actions in one jurisdiction be reported to other jurisdictions.

*Claims that involve independently licensed third-party insurance agencies and their agents, and independent insurance carriers, in which the Company is named as a co-defendant*

In January 2018, the Company was named as a defendant in a non-certified class action complaint styled as *Aliquo, et al. v. HCC Medical Insurance Services, LLC, et al.*, Case No. 18-cv-18, U.S. District Court for the Southern District of Indiana ("Aliquo case"). The Company moved to dismiss the complaint on March 9, 2018. Prior to hearing on the Motion to Dismiss, the plaintiffs' counsel amended the complaint substituting in new plaintiffs named Bryant and Delgado. As such, the complaint was restyled as *Bryant et. al. v. HCC Medical Insurance Services, LLC, et al.* with the same case number. The Company and other defendants are responding and vigorously defending this matter. Similar to other cases involving the conduct of independent insurance carriers and independent sales agencies, the allegations revolve largely around the conduct of independent insurance carriers related to the claims handling, processing, and resolution process, though the complaint also alleges that potentially deceptive sales practices and unfair trade practices or misrepresentations may also have occurred. The Bryant case, which largely attempts to bring claims under the RICO Act, seeks to link the Company's marketing efforts to the independent carriers' conduct of alleged improper claims handling, post-claims underwriting, and denials. With at least one of the newer plaintiffs (Delgado), the Company had no relationship. An additional claim for breach of contract is alleged solely against the independent insurance carriers. The Company will continue to assert that it doesn't engage in post- claims underwriting or claims handling as complained of in the case. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

In the case styled as *Charles M. Butler, III and Chole Butler v. Unified Life Ins. Co., et al.*, Case No. 17-cv-00050-SPW-TJC, U.S. District Court for the District of Montana (Billings Div.) ("Butler case"), in which allegations of misrepresentation and claims handling were made against the independent insurance agency and a carrier, the plaintiff also named the Company as a party. The Butler case is in the procedural stage of discovery and motion practice. The Company is asserting defenses against the claims not limited to that it doesn't adjudicate claims and made no misrepresentations to Butler. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

In the case styled as *Carter v. Companion Life Insurance Company et al.*, Case No. 18-cv-350, U.S. District Court for the District of Alabama ("Carter case"), in which allegations of claims handling were made against the carrier and the plaintiff also named the Company as a party. The Carter case was received on March 20, 2018 and the Company is evaluating the matter. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

The Company has also received claims from insureds relating to lack of carrier coverage, claims handling, and alleged deceptive sales practices relating to carriers with which we do business. In each of these individual insureds' claims, the Company attempts to dismiss, challenge, or resolve the claims as quickly as possible.

*Other*

*Purported Securities Class Action Lawsuits*

In September 2017, three putative securities class action lawsuits were filed against the Company and certain of its current and former executive officers. The cases were styled *Cioe Investments Inc. v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-05316-NG-ST, filed in the U.S. District Court for the Eastern District of New York on September 11, 2017; *Michael Vigorito v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-06962, filed in the U.S. District Court for the Southern District of New York on September 13, 2017; and *Shilpi Kavra v. Health Insurance Innovations, Inc., Patrick McNamee, Gavin Southwell, and Michael Hershberger*, Case No. 8:17-cv-02186-EAK-MAP, filed in the U.S. District Court for the Middle District of Florida on September 21, 2017. All three of the foregoing actions (the "Securities Actions") were filed after a decline in the trading price of the Company's common stock following the release of a report authored by a short-seller of the Company's common stock raising questions about, among other things, the Company's public disclosures relating to the Company's regulatory examinations and regulatory compliance. All three of the Securities Actions, which were based substantially on the allegations raised in the short-seller report, contained substantially the same allegations, and alleged that the Company made materially false or misleading statements or omissions relating to regulatory compliance matters, particularly regarding to the Company's application for a third-party administrator license in the State of Florida.

In November and December 2017, the Cioe Investments and Vigorito cases were transferred to the U.S. District Court for the Middle District of Florida, and on December 28, 2017, they were consolidated with the Kavra matter under the case caption, *In re Health Insurance Innovations Securities Litigation*, Case No. 8:17-cv-2186-EAK-MAP (M.D. Fla.). On February 6, 2018, the court appointed Robert Rector as lead plaintiff and appointed lead counsel, and lead plaintiff filed a consolidated complaint on March 23, 2018. The consolidated complaint, which dropped Patrick McNamee as a defendant and added Michael Kosloske as a defendant, largely sets forth the same factual allegations as the initially filed Securities Actions filed in September 2017 and adds allegations relating to alleged materially false statements and omissions relating to the regulatory proceeding previously initiated against the Company by the Montana State Auditor, Commissioner of Securities and Insurance (the "CSI"), which proceeding was dismissed on October 31, 2017 in light of CSI's decision to join the Indiana Multistate Examination. The complaint also adds allegations regarding insider stock sales by Messrs. Kosloske and Hershberger. The consolidated complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), SEC Rule 10b-5, and Section 20(a) of the Exchange Act. According to the consolidated complaint, the plaintiffs in the action are seeking an undetermined amount of damages, interest, attorneys' fees and costs on behalf of putative classes of individuals and entities that acquired shares of the Company's common stock on periods ending September 11, 2017. On May 7, 2018, the Company and the co-defendants filed a motion to dismiss call claims set forth in the complaint, and as of August 2, 2018, the motion has been fully briefed and is awaiting the court's decision. At this time, the Company cannot predict the probable outcome of this action, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements.

*Putative Derivative Action Lawsuits*

Two individuals, Ian DiFalco and Dayle Daniels, filed separate but similar derivative action complaints on April 5 and April 6, 2018, respectively, in the Delaware Court of Chancery naming most of the Company's directors and executive officers as defendants. The derivative complaints assert alleged violations of Section 14(a) of the Securities Exchange Act, Section 10(b) of the Exchange Act and Rule 10b-5, and Section 20(a) of the Exchange Act, and claims for alleged breach of fiduciary duties, alleged unjust enrichment, alleged abuse of control, alleged gross mismanagement, and alleged waste of corporate assets. The factual allegations in the complaints are based largely on the factual allegations in the above-described consolidated securities class action consolidated complaint and include additional allegations relating to misconduct by third-party call centers utilized by the Company in its operations. To the Company's knowledge, only the Company has been served with the complaints to date. The plaintiffs are seeking declaratory relief, direction to reform and improve corporate governance and internal procedures, and an undetermined amount of damages, restitution, interest, and attorneys' fees and costs. On June 5, 2018, the court entered a stipulation and order staying the litigation pending resolution of the above-described securities litigation (In re Health Insurance Innovations Securities Litigation), whether by dismissal with prejudice or entry of final judgment. Defendants intend to vigorously defend against these claims. However, at this time, the Company cannot predict the probable outcome of these actions, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements.

*Telephone Consumer Protection Act*

The Company has received a number of private-party claims relating to alleged violations of the federal Telephone Consumer Protection Act ("TCPA") by its independently owned and operated licensed-agent distributors, alleging that their marketing activities were potentially unlawful. The Company has been named as a defendant in multiple lawsuits relating to alleged TCPA matters, including claims styled, but not yet certified, as class actions. There are two primary cases filed in the courts by Plaintiffs Craig Cunningham and Kenneth Moser, each styled as a class action but not yet certified, and each Plaintiff alleging or seeking damages ranging from $160,000 to over $5,000,000. In a third similar case, filed by Plaintiff Amandra Hicks, the Company was successful at obtaining a ruling from the federal court that the case could not proceed as a class action. The Company is defending these claims and has filed motions to dismiss or the equivalent in each matter. On February 13, 2018, the Company successfully obtained a dismissal from the Cunningham case however, Cunningham refiled his complaint and the second case was dismissed on March 1, 2018. Making a third attempt, Cunningham refiled his complaint on April 16, 2018, in a now-third venue, the Middle District of Florida. In the Moser case, on April 19, 2018, a court-ordered Early Neutral Evaluation occurred with all parties in attendance. Settlement discussions were unproductive and the case has entered the discovery stage. In the Hicks case on July 25, 2018, the Court ruled that the case could not proceed as a class action and instead will only proceed as an individual claim. A similar case, known as Foote, was filed on March 22, 2018, and also styled but not yet certified as class action. The Company is reviewing the matter. Similarly, the Company has received claims for alleged TCPA violations from claimants Trenton Harris (June 28, 2018), Jeremy Glapion (June 19, 2018), and James Shelton (June 3, 2018), and others. None of these aforementioned claims have resulted in litigation yet, and it should be noted that the Company believes these individuals to be professional plaintiffs and not common consumers. While these types of claims have previously settled, been dismissed, or resolved without any material effect on the Company, there is a possibility in the future that one or more could have a material effect. While it is possible that a loss may arise from these cases, the amount of such loss is not known or estimable at this time. The Company requires that its independently owned and operated licensed-agent distributors reimburse or indemnify it for any such settlements.

Document

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

HEALTH INSURANCE INNOVATIONS, INC.

August 2, 2018

*/s/ Gavin D. Southwell*

**GAVIN D. SOUTHWELL**
**PRESIDENT AND CHIEF EXECUTIVE OFFICER**
**(PRINCIPAL EXECUTIVE OFFICER)**

August 2, 2018

*/s/ Michael D. Hershberger*

**MICHAEL D. HERSHBERGER**
**CHIEF FINANCIAL OFFICER, SECRETARY, AND TREASURER**
**(PRINCIPAL FINANCIAL OFFICER)**

29