# EXHIBIT 7

10-Q 1 hiiq_93018x10q.htm 10-Q

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-Q

**(Mark One)**

**[X] QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 30, 2018**

**or**

**[ ] TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission File Number: 1-35811**

# Health Insurance Innovations, Inc.

**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **Delaware** | **46-1282634** |
| **(State or other jurisdiction of** | **(I.R.S. Employer** |
| **incorporation or organization)** | **Identification No.)** |

**15438 N. Florida Avenue, Suite 201**

**Tampa, FL 33613**

**(Address of Principal Executive Offices)**

**(813) 397-1187**

**(Registrant's telephone number, including area code)**

**N/A**

**(Former name, former address and former fiscal year, if changed since last report)**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes [X] No [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act:

| | | | | |
|---|---|---|---|---|
| Large accelerated filer | [ ] | Emerging growth company | [X] Accelerated filer | [X] |
| Non-accelerated filer | [ ] | (Do not check if a smaller reporting company) | Smaller reporting company | [ ] |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Exchange Act Rule 12b-2). Yes [ ] No [X]

As of October 25, 2018, the registrant had 14,405,824 shares of Class A common stock, $0.001 par value, outstanding and 2,541,667 shares of Class B common stock, $0.001 par value, outstanding.

million is included in long-term liabilities on the accompanying condensed consolidated balance sheets. We have determined that this amount is probable of being paid based on our estimates of future taxable income. This liability represents the share of tax benefits payable to the entities beneficially owned by Mr. Kosloske, if we generate sufficient taxable income in the future. As of September 30, 2018, we have made $1.2 million of cumulative payments under the TRA.

*Legal Proceedings*

The Company is subject to legal proceedings, claims, and liabilities that arise in the ordinary course of business. The Company accrues losses associated with legal claims when such losses are probable and reasonably estimable. If the Company determines that a loss is probable and cannot estimate a specific amount for that loss, but can estimate a range of loss, the best estimate within the range is accrued. If no amount within the range is a better estimate than any other, the minimum amount of the range is accrued. Estimates are adjusted as additional information becomes available or circumstances change. Legal defense costs associated with loss contingencies are expensed in the period incurred. In addition to ordinary-course litigation that the Company does not believe to be material, the Company is a party to the proceedings and matters described below:

*State Regulatory Examinations*

*Indiana Multistate Market Conduct Examination*

The Company is the subject of a previously disclosed multistate market conduct examination ("MCE") that commenced in April 2016 by the Market Actions Working Group of the National Association of Insurance Commissioners. The MCE, which is led by the Indiana Department of Insurance and is comprised of 43 participating state insurance departments, was initially focused on a review of HCC Life Insurance Company's sales, marketing, and compliance practices relating to short-term medical plans. The MCE was later expanded to include the Company's marketing, sales, compliance, and administration activities. During the period from May 2016 through June 2018, the Company was served with requests for information in the form of subpoenas, and the Company responded to the requests and has otherwise been fully cooperating with the examiners, including regular discussions to bring the examination to resolution. The California Department of Insurance published a December 2017 Regulatory Settlement Agreement between HCC and certain states participating in the HCC MCE (and other states have since published the same document); as the Company was not included in that reported settlement, the Company cannot predict whether the reported HCC settlement will affect the resolution or outcome of the examination of the Company. On October 3, 2018 the Company met with the MCE examiners for confidential settlement discussions. These discussions included updated feedback on the results of the examination, and discussion aimed toward potential resolution of the examination. The Company has made what it believes to be an appropriate accrual based on the nature and stage of current discussions with the MCE examiners but the Company is not able to reasonably estimate any additional settlement amount or range of settlement amounts. Under the rules of the MCE, the negotiations remain confidential.

In addition to the MCE, we are aware that other states, including South Dakota are reviewing the sales practices and potential unlicensed sale of insurance by independently owned and operated third-party licensed-agent call centers utilized by the Company, although to the Company's knowledge, none of these reviews are being conducted directly against the Company or call centers owned by the Company. Other states, including California and Missouri, have requested information of the Company relating to its sales practices, marketing, and other matters.

*Massachusetts Regulatory Action*

The Company received notification of a civil investigative demand from the Massachusetts Attorney General's Office ("MAG") on June 16, 2016. The MAG has requested certain information and documents from the Company which will be used to review the Company's sales and marketing practices to ensure the Company is in compliance with Massachusetts laws and regulations. Additionally, the Company's materials and sales and marketing practices are being evaluated in order to ensure that they are neither deceptive nor do they constitute unfair trade practices.

The Company continues to cooperate with the MAG in the interest of bringing the matter to an agreeable conclusion. While the MAG has indicated it is amenable to exploring all available options, it is still too early to assess whether the MAG's investigation will result in a material impact on the Company. The Company believes that based on the nature of the allegations raised by the MAG, a loss arising from the future assessment of a civil penalty against the Company is probable. Notwithstanding, due to the procedural stage of the investigative process, the settlement of another party (a carrier) for the same set of allegations, and the fact that the Company has neither requested nor received evidentiary material from the MAG, the Company is currently unable to estimate the amount of any potential civil penalty or determine a range of potential loss under the MAG's investigation of the Company. It is possible there may be no financial loss, a nominal or minimal loss, or some other mutually satisfactory resolution

reached with the MAG in connection with the MAG's investigation of the Company. As of June 30, 2018, there have been no findings of any sort (including findings of breaches or wrongdoing) communicated to the Company by the MAG.

*Florida Regulatory Action*

On June 11, 2018, the Company received notice that the Florida Office of Insurance Regulation ("OIR") had conducted an investigation as a result of allegations that the Company's subsidiary, HealthPocket, Inc. d/b/a AgileHealthInsurance, had advertised inducements in the solicitation of insurance products via an independently owned, third-party website and made allegedly material misstatements on an insurance agency application for licensure. The Company has reviewed the allegations and supporting documents and disagrees with the allegations. The OIR has proposed a settlement stipulation for consent order to resolve the matter. If the Company does not proceed with the settlement stipulation, the OIR has stated it will recommend formal administrative proceedings. The Company currently anticipates that it will be able to resolve the matter amicably with the OIR.

*California Regulatory Action*

On August 29, 2018, the Company received an Order to Show Cause and Notice of Hearing from the California Department of Insurance alleging that the Company made misleading statements relating to health insurance policies. The Company is actively engaged with the Department to resolve the matter.

We are proactively communicating and cooperating with all regulatory agencies involved in the above-described examinations and actions, and we continue to develop and enhance our compliance and control mechanisms. However, it is too early to determine whether any of these regulatory matters will have a material impact on our business. Any adverse finding could result in significant penalties or other liabilities and/or a requirement to modify our marketing or business practices and the practices of our third-party independent distributors, which could harm our business, results of operations, or financial condition. Moreover, an adverse regulatory action in one jurisdiction could result in penalties and adversely affect our license status or reputation in other jurisdictions due to the requirement that adverse regulatory actions in one jurisdiction be reported to other jurisdictions.

*Claims that involve independently licensed third-party insurance agencies and their agents, and independent insurance carriers, in which the Company is named as a co-defendant*

In the case styled as *Charles M. Butler, III and Chole Butler v. Unified Life Ins. Co., et al.*, Case No. 17-cv-00050-SPW-TJC, U.S. District Court for the District of Montana (Billings Div.) ("Butler case"), in which allegations of misrepresentation and claims handling were made against the independent insurance agency and a carrier, the plaintiff also named the Company as a party. The Company is asserting defenses against the claims not limited to that it doesn't adjudicate claims and made no misrepresentations to Butler. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

In the case styled as *Carter v. Companion Life Insurance Company et al.*, Case No. 18-cv-350, U.S. District Court for the District of Alabama ("Carter case"), in which allegations of claims handling were made against the carrier and the plaintiff also named the Company as a party. The Carter case was received on March 20, 2018 and an Amended Complaint was subsequently filed on July 6, 2018. The Company has since moved to dismiss the Amended Complaint, and the parties are awaiting the Court's ruling. While it is possible that a loss may arise from this case, the amount of such loss is not known or estimable at this time.

The Company has also received claims from insureds relating to lack of carrier coverage, claims handling, and alleged deceptive sales practices relating to carriers with which we do business. In each of these individual insureds' claims, the Company attempts to dismiss, challenge, or resolve the claims as quickly as possible.

16

*Other*

*Purported Securities Class Action Lawsuits*

In September 2017, three putative securities class action lawsuits were filed against the Company and certain of its current and former executive officers. The cases were styled *Cioe Investments Inc. v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-05316-NG-ST, filed in the U.S. District Court for the Eastern District of New York on September 11, 2017; *Michael Vigorito v. Health Insurance Innovations, Inc., Gavin Southwell, and Michael Hershberger*, Case No. 1:17-cv-06962, filed in the U.S. District Court for the Southern District of New York on September 13, 2017; and *Shilpi Kavra v. Health Insurance Innovations, Inc., Patrick McNamee, Gavin Southwell, and Michael Hershberger*, Case No. 8:17-cv-02186-EAK-MAP, filed in the U.S. District Court for the Middle District of Florida on September 21, 2017. All three of the foregoing actions (the "Securities Actions") were filed after a decline in the trading price of the Company's common stock following the release of a report authored by a short-seller of the Company's common stock raising questions about, among other things, the Company's public disclosures relating to the Company's regulatory examinations and regulatory compliance. All three of the Securities Actions, which were based substantially on the allegations raised in the short-seller report, contained substantially the same allegations, and alleged that the Company made materially false or misleading statements or omissions relating to regulatory compliance matters, particularly regarding the Company's application for a third-party administrator license in the State of Florida.

In November and December 2017, the Cioe Investments and Vigorito cases were transferred to the U.S. District Court for the Middle District of Florida, and on December 28, 2017, they were consolidated with the Kavra matter under the case caption, *In re Health Insurance Innovations Securities Litigation*, Case No. 8:17-cv-2186-EAK-MAP (M.D. Fla.). On February 6, 2018, the court appointed Robert Rector as lead plaintiff and appointed lead counsel, and lead plaintiff filed a consolidated complaint on March 23, 2018. The consolidated complaint, which dropped Patrick McNamee as a defendant and added Michael Kosloske as a defendant, largely sets forth the same factual allegations as the initially filed Securities Actions filed in September 2017 and adds allegations relating to alleged materially false statements and omissions relating to the regulatory proceeding previously initiated against the Company by the Montana State Auditor, Commissioner of Securities and Insurance (the "CSI"), which proceeding was dismissed on October 31, 2017 in light of CSI's decision to join the Indiana Multistate Examination. The complaint also adds allegations regarding insider stock sales by Messrs. Kosloske and Hershberger. The consolidated complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), SEC Rule 10b-5, and Section 20(a) of the Exchange Act. According to the consolidated complaint, the plaintiffs in the action are seeking an undetermined amount of damages, interest, attorneys' fees and costs on behalf of putative classes of individuals and entities that acquired shares of the Company's common stock on periods ending September 11, 2017. On May 7, 2018, the Company and the co-defendants filed a motion to dismiss call claims set forth in the complaint, and as of October 29, 2018, the motion had been fully briefed and is awaiting the court's decision. At this time, the Company cannot predict the probable outcome of this action, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements for this action.

*Putative Derivative Action Lawsuits*

Two individuals, Ian DiFalco and Dayle Daniels, filed separate but similar derivative action complaints on April 5 and April 6, 2018, respectively, in the Delaware Court of Chancery naming most of the Company's directors and executive officers as defendants. The derivative complaints assert alleged violations of Section 14(a) of the Exchange Act, Section 10(b) of the Exchange Act and Rule 10b-5, and Section 20(a) of the Exchange Act, and claims for alleged breach of fiduciary duties, alleged unjust enrichment, alleged abuse of control, alleged gross mismanagement, and alleged waste of corporate assets. The factual allegations in the complaints are based largely on the factual allegations in the above-described consolidated securities class action consolidated complaint and include additional allegations relating to misconduct by third-party call centers utilized by the Company in its operations. The plaintiffs are seeking declaratory relief, direction to reform and improve corporate governance and internal procedures, and an undetermined amount of damages, restitution, interest, and attorneys' fees and costs. On June 5, 2018, the court entered a stipulation and order staying the litigation pending resolution of the above-described securities litigation (In re Health Insurance Innovations Securities Litigation), whether by dismissal with prejudice or entry of final judgment. Defendants intend to vigorously defend against these claims. However, at this time, the Company cannot predict the probable outcome of these actions, and, accordingly, no amounts have been accrued in the Company's condensed consolidated financial statements for this action.

17

*Telephone Consumer Protection Act*

The Company has received a number of private-party claims relating to advertising activities allegedly conducted by independently owned and operated licensed-agent distributors, who are only associated with the Company by their use of our technology and billing platform. Generally, these claims assert that the Company violated the Telephone Consumer Protection Act ("TCPA"), although we believe that the Company does not engage in such activities. In fact, the Company maintains internal and external compliance staff and processes to monitor distributor compliance. Historically, the Company has been successful at obtaining dismissals or settling the claims for immaterial amounts. In the previously reported case of Hicks, the Company was dismissed from the case with prejudice without any finding of liability and without it having to make settlement payment on its behalf. As part of the complete dismissal and resolution of the case in the Company's favor, Hicks affirmatively stated that the Company made none of the alleged telephone calls as originally asserted in the complaint and had no liability or responsibility of the alleged marketing activities. The Company continues to defend itself through procedural motions in two other cases filed by what we have determined to be serial-professional plaintiffs known as Craig Cunningham and Kenneth Moser. In Cunningham, the Company has been successful at having the case dismissed twice, including receiving comments from the Federal Court encouraging Mr. Cunningham not to refile. Contrary to that suggestion, Mr. Cunningham refiled his case again and the Company has responded with another motion to dismiss. Moser, who like Cunningham, has been a plaintiff in hundreds of similar cases against companies nationwide. Similarly, the Company has received claims for alleged TCPA violations from other claimants, the majority of which are not lawsuits. The Company believes many of these individuals to be professional plaintiffs and not common consumers. The Company maintains an internal legal department that reviews these claims as they arise, coordinates the Company's response to such, and supports outside counsel when litigation defense is required. While these types of claims have previously settled, been dismissed, or resolved without any material effect on the Company, there is a possibility in the future that one or more could have a material effect. The Company commonly uses outside legal counsel to defend against such claims and requires that the independently owned, licensed-agent distributors who are related to any such claims provide indemnification and reimbursement to the Company for the costs associated with these Claims.

*Other matters*

We enter into agreements in the ordinary course of business that may require us to indemnify the other party for claims brought by a third-party. From time to time, we have received requests for indemnification. Presently the Company is managing and responding to both formal demands and informal requests for indemnification from a number of carriers related to the MCE, states' investigations into carriers relating to agent licensing, and the TCPA claims identified above. Management cannot reasonably estimate any potential losses, but these claims could result in a material liability for us.

## 11. Related Party Transactions

There have been no material changes to the Related Party Transactions disclosures made in our Annual Report on Form 10-K for the period ended December 31, 2017, except for those noted in Note 6 and Note 10 above related to required payments under the TRA, exchanges under the Exchange Agreement, and the HPIH and HPI Operating Agreement.

## ITEM 2—MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS

### SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

*We have made statements in the Management's Discussion and Analysis of Financial Condition and Results of Operations below and in other sections of this report that are forward-looking statements. All statements other than statements of historical fact included in this quarterly report are forward-looking statements. You can identify forward-looking statements by the fact that they do not relate strictly to historical or current facts. These statements may include words such as "may," "might," "will," "should," "expects," "plans," "anticipates," "believes," "estimates," "predicts," "potential," or "continue," the negative of these terms and other comparable terminology. These forward-looking statements, which are subject to risks, uncertainties, and assumptions about us, may include projections of our future financial performance, our anticipated growth strategies, anticipated trends in our business, future and continued regulatory matters and compliance, and other future events or circumstances. These statements are only predictions based on our current expectations and projections about future events. There are important factors that could cause our actual results, level of activity, performance or achievements, and other future events or circumstances to differ materially from the results, level of activity, performance or achievements, events or circumstances expressed or implied by the forward-looking statements, including those factors discussed in "Part I. – Item 1A. Risk Factors" in our Annual Report on Form 10-K for the year ended December 31, 2017 and those factors discussed in "Part II – Item 1A. Risk Factors" below.*

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

HEALTH INSURANCE INNOVATIONS, INC.

October 30, 2018

/s/ Gavin D. Southwell

**GAVIN D. SOUTHWELL**
**PRESIDENT AND CHIEF EXECUTIVE OFFICER**
**(PRINCIPAL EXECUTIVE OFFICER)**

October 30, 2018

/s/ Michael D. Hershberger

**MICHAEL D. HERSHBERGER**
**CHIEF FINANCIAL OFFICER, SECRETARY, AND TREASURER**
**(PRINCIPAL FINANCIAL OFFICER)**

29