UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

|  |  |  |
|---|---|---|
| JULIAN KEIPPEL, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 8:19-cv-00421-WFJ-CPT |
| HEALTH INSURANCE INNOVATIONS, INC. et al., | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANTS' ANSWER TO CONSOLIDATED COMPLAINT

Defendants Health Insurance Innovations, Inc. ("HIIQ"), Gavin Southwell, and Michael D. Hershberger (collectively, the "Defendants"), for their answer to the Consolidated Class Action Complaint (the "Complaint") [Docket No. 30], respond through counsel to each corresponding paragraph of the Complaint as follows:

No response is required to the table of contents or the headings in the Complaint. To the extent any response is required, denied. Except as admitted explicitly in this answer, all allegations of the Complaint are denied.

With respect to the unnumbered paragraphs, which precede paragraph 1 of the Complaint, admitted that Lead Plaintiffs Oklahoma Municipal Retirement Fund and City of Birmingham Retirement and Relief System (collectively, "Plaintiffs") purport to bring this action under the federal securities laws; admitted that Plaintiffs purport to include certain persons or entities in the putative class; admitted that Plaintiffs purport to allege a period of time that the Plaintiffs refer to as "the Class Period" but denied that the purported Class Period is appropriate and that this action may be maintained as a class action; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations pertaining to

1

4833-2768-9390.5

Plaintiffs' personal knowledge or Lead Counsel's purported investigation, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

1.      Admitted that HIIQ distributes carriers' medical discount plans, limited benefit indemnity plans, and other health insurance products; admitted that certain products that HIIQ distributes are not comprehensive health insurance and are not required to comply with the Affordable Care Act ("ACA"); Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that "these policies represent less than 1% of the health insurance marketplace," therefore denied; admitted that the products sold by HIIQ are subject to regulation by state and federal authorities; admitted that HIIQ stated in certain of its public filings with the SEC that its "business practices and the business practices of [its] third-party licensed distributors and carriers are heavily regulated by each state in the United States and various federal agencies"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

2.      Denied that Defendants falsely assured investors; admitted that HIIQ and Mr. Southwell discussed HIIQ's compliance standards at various times through the purported Class Period; admitted that Mr. Southwell used the phrases "incredibly low" and "tiny, tiny number" to describe HIIQ's DOI complaints; admitted that HIIQ and Mr. Southwell stated that HIIQ's Department of Insurance complaints as a percentage of policies in force for certain time periods was 0.00%; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents

2

purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

3.      Denied, except admitted that Mr. Southwell discussed HIIQ's compliance controls, stated that HIIQ had "outstanding compliance performance", and described HIIQ's third party call centers as "highly compliant"; admitted that the phrase "upholding the highest standards in customer service" was used in HIIQ press releases and investor conference calls; admitted that the phrases "best-in-class compliance / customer service" and "significant barriers to entry" appeared on a graphic in various HIIQ investor presentations; admitted that the following appears in the transcript of an HIIQ investor conference call: "Data is objective and reasonable.  And every data point indicates that our customer satisfaction is market-leading…."; admitted that in a conference call Mr. Southwell states that "any [distributor] we deal with has to go through a process of training, of meeting and constantly hitting our compliance matrix, our market leading compliance"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

4.      The first two sentences of the paragraph are denied; denied that Simple Health was responsible for as much as 50% of HIIQ's revenue or was HIIQ's most lucrative call center; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's or Receiver Michael I. Goldberg's (the "Receiver") purported allegations against Simple Health, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text

3

of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

5. Denied that the "truth began to emerge on November 2, 2018" about any statement alleged to have been made by Defendants; admitted that on November 2, 2018, the FTC issued a press release describing its action against Simple Health; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; admitted that HIIQ received calls to its customer service department relating to policies sold by Simple Health; the allegation that products distributed by HIIQ were worthless or deceptive is denied; the allegations of loss causation and investors' feelings in the last sentence are denied; the accuracy of quotations of or citations to published stock price information is denied to the extent inconsistent with the text of such published information; all remaining allegations and any allegations inconsistent with the foregoing are denied.

6. The first two sentences and any allegation that HIIQ engaged in any "misleading" conduct, "consumer fraud," "preying on consumers," "sales deception," "approving fraudulent sales scripts," or fielding a "seemingly endless flood" of customer complaints are denied; admitted that in certain SEC filings, HIIQ stated that "[Simple Health] was a related party by virtue of its 50% ownership of membership interests in SIL" and that "[i]n March 2015, HPIH sold its interest in SIL to [Simple Health], and [Simple Health] ceased being a related party"; admitted that HIIQ provided certain training to Simple Health's sales agents; admitted that HIIQ reviewed recordings of certain calls between Simple Health sales

4

agents and consumers; admitted that HIIQ received calls to its customer service department relating to policies sold by Simple Health; admitted that two HIIQ employees attended Steven Dorfman's wedding; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health or Steven Dorfman's purported allegations in defending litigation to which HIIQ is not a party, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

7. The first sentence is denied; admitted that the quoted language appears in an internal HIIQ e-mail sent by an HIIQ Customer Service Supervisor to a Vice President of Operations and an Agency Compliance Manager; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

8. Denied, except admitted that HIIQ's customer service department received calls from consumers regarding policies purchased through Simple Health, admitted that certain executives received periodic reports regarding escalations of certain customer service calls, and admitted that information relating to customer service calls was compiled in electronic databases; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to statements purportedly made by unidentified HIIQ former employees allegedly interviewed as part of Plaintiffs' investigation, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

4833-2768-9390.5

9.      Denied, except admitted that HIIQ's stock price has been as reflected in published stock price information; the accuracy of quotations of or citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents referenced in the paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

10.      Denied, except admitted that Plaintiffs allege that their action purports to seek redress on behalf of shareholders; all remaining allegations are denied.

11.      Denied that Oklahoma Municipal Retirement Fund suffered damages as a result of violations of the federal securities laws; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations, therefore denied.

12.      Denied that City of Birmingham Retirement and Relief System suffered damages as a result of violations of the federal securities laws; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations, therefore denied.

13.      Admitted that HIIQ distributes health and life insurance products; admitted that HIIQ is incorporated in Delaware and maintains its headquarters in Tampa, Florida; admitted that HIIQ's securities trade on the NASDAQ Stock Market under the ticker symbol HIIQ; admitted that HIIQ is a holding company and has no material assets other than its ownership of Series A Membership Interests of Health Plan Intermediaries Holdings, LLC ("HPIH"); admitted that HIIQ is the sole managing member of HPIH; admitted that HIIQ has 100% of the voting rights and control of HPIH; admitted that HealthPocket, Inc. d/b/a AgileHealthInsurance is a wholly-owned subsidiary of HPIH; all remaining allegations are denied.

6

14.     Admitted that Gavin Southwell has served as HIIQ's Chief Executive Officer since November 2016 and has served as its President since July 2016; admitted that Mr. Southwell signed HIIQ's financial report certifications and spoke with investors and securities analysts about HIIQ during the purported Class Period alleged in the Complaint; any remaining allegations are denied.

15.     Admitted that Mr. Hershberger was appointed HIIQ's Chief Financial Officer in September 2015, and remained HIIQ's CFO until November 2019; admitted that Mr. Hershberger served as CFO of Health Plan Intermediaries ("HPI") from October 2011 to November 2012, CFO of Health Plan Intermediaries Holdings, LLC ("HPIH") from November 2012 to November 2013, Senior Vice President of Finance of HPIH and HIIQ from November 2013 to July 2014 and from September 2014 to March 2015, Interim CFO of HPIH and HIIQ from July 2014 to September 2014 and from March 2015 to September 2015; admitted that Mr. Hershberger signed HIIQ's financial report certifications and spoke with investors and securities analysts about HIIQ during the purported Class Period alleged in the Complaint; any remaining allegations are denied.

16.     Admitted that the Individual Defendants had senior positions with HIIQ; admitted that the Individual Defendants possessed some power and authority to affect HIIQ's SEC filings, press releases, presentations to investors and securities analysts, money and portfolio managers and institutional investors, including those found on HIIQ's website, www.hiiq.com; any remaining allegations are denied.

17.     Denied that the entities referenced in the paragraph were responsible for roughly half of HIIQ's sales during the Class Period; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against

7

Simple Health, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in the paragraph, therefore denied.

18. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied.

19. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied.

20. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied.

21. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied.

22. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied.

23. The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the SEC filings referenced in this paragraph; admitted that Health Plan Intermediaries Holdings, LLC sold its interest in SIL to Health Benefits One, LLC in 2015; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations, therefore denied.

24. Admitted that Simple Health advertised, marketed, distributed, and/or sold products distributed by HIIQ to consumers in the United States; the last sentence in paragraph 24 of the Complaint is the Plaintiff's characterization of a public proceeding, and therefore no response is required; to the extent any response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of purported allegations against

8

Simple Health or court orders involving Simple Health entities in litigation to which HIIQ is not a party, as alleged in this paragraph, therefore denied; any remaining allegations are denied.

25. Admitted that Plaintiffs purport to bring claims pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), Sections 10(b) and 20(a) (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 (17 C.F.R. § 240.10b-5), claims which Defendants deny; any remaining allegations are denied.

26. Admitted that this Court has subject matter jurisdiction over this action; any remaining allegations are denied.

27. Admitted that venue is proper in this district and that HIIQ's principal executive office is in this district; any remaining allegations are denied.

28. Denied that Defendants engaged in the alleged acts, transactions, conduct and other wrongs alleged in the Complaint; admitted that Defendants have used means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone calls, and the facilities of a national securities exchange; any remaining allegations are denied.

29. Denied, except admitted that HIIQ is a cloud-based technology platform and distributor of affordable health and life insurance products, including short-term medical insurance plans and health benefit insurance plans, and that HIIQ offers supplemental products as described in its SEC filings; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted or cited in this paragraph; any remaining allegation are denied.

30. Denied, except admitted that HIIQ is not an insurer and does not process claims, that HIIQ has worked in concert with carriers to help them develop products for HIIQ's target markets, that the products distributed by HIIQ are underwritten by third-party insurance

9

4833-2768-9390.5

carriers, and that HIIQ assumed no underwriting, insurance or reimbursement risk; any remaining allegations and any allegations inconsistent with the foregoing are denied.

31.    Denied, except admitted that HIIQ derives revenue from marketing its products through its internal distribution network and an external distribution network of independently owned and operated distributors, that HIIQ derives more revenue from its external distribution network than from its internal distribution network, that HIIQ internal distributions channel consists of HIIQ-owned websites and subsidiaries, that HIIQ collects enrollment fees and premiums on the policies it distributes, and that HIIQ pays commissions to distributors; any remaining allegations and any allegations inconsistent with the foregoing are denied.

32.    Denied, except admitted that before and during the Class Period, HIIQ experienced revenue and profit growth and that HIIQ's external distributions channel was responsible for more Company revenues and profits than HIIQ's internal distribution channel; denied that HIIQ's revenue and profit growth resulted from "its external sales agents [selling] increasing numbers of products distributed by HIIQ"; any remaining allegations and any allegations inconsistent with the foregoing are denied.

33.    Denied, except admitted that HIIQ operates in markets that are regulated, that HIIQ is required to adhere to applicable insurance laws and regulations, and that the quoted language appears in certain of HIIQ's Forms 10-K filed with the SEC; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

34.    Denied, except admitted that certain of HIIQ's Forms 10-K contain the following language:

10

4833-2768-9390.5

> We believe our product expertise, our relationships with multiple insurance carriers, our focus on compliance and our technology platforms make us a partner of choice for our distributors.
>
> . . . .
>
> In the ordinary course of operating our business, we have received complaints that the information we provided was not accurate or misleading.  Although in the past we have resolved these complaints without significant financial cost, we cannot guarantee that we will be able to do so in the future.  In addition, these types of claims could be time-consuming and expensive to defend, could divert our management's attention and other resources and could cause a loss of confidence in our services.  As a result, these types of claims could harm our business, results of operations and financial condition.
>
> . . . .
>
> ***Enhance the Consumer Experience.***  We have invested significant resources and strive to be market leaders in our customer service and compliance areas, utilizing new technology and additional personnel;

admitted that the phrases "outstanding compliance" and "market-leading" appeared in HIIQ documents and transcripts of HIIQ investor conference calls; admitted that certain HIIQ documents state that Department of Insurance complaints as a percentage of policies in force for certain time periods was 0.01%; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

35.    Denied, except admitted that HIIQ used the term "record" when discussing its financial results; admitted that the term "laser focused" appeared in connection with discussions of customer service and compliance in certain transcripts of HIIQ investor conference calls; admitted that the terms "best-in-class" and "market leading" appeared in connection with

11

discussions of compliance and customer service in certaion HIIQ documents and conference call transcripts; admitted that the phrase "our highly compliant third-party call center distribution" appeared in an HIIQ investor conference call transcript; admitted that the phrase "upholding the highest standards in customer service and compliance" appeared in certain HIIQ press releases and investor conference call transcripts; admitted that the phrases "best-in-class compliance / customer service" and "significant barriers to entry" appeared on a graphic in various HIIQ investor presentations; admitted that the phrases "incredibly strong" and "market leading" were used to describe HIIQ's control environment in an HIIQ investor conference call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

36.     Denied, except admitted that the quoted phrases in the first sentence appear in the transcript of an HIIQ investor conference call; admitted that the transcript of an HIIQ investor conference call states that, with respect to DOI complaints, the transcript states that "although it is nearly impossible to improve on these statistics, as the numbers are so incredibly low, we continually are looking for ways to enhance our control environment"; admitted that certain HIIQ investor presentations, conference call transcripts, and press releases contain representations that complaints specific to HIIQ, which were upheld by the DOI were less than 0.01% or 0.00%; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

12

4833-2768-9390.5

37.     Denied.

38.     Denied as to any allegation regarding HIIQ; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's purported allegations against Simple Health, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

39.     Denied as to any allegation regarding HIIQ, except admitted that HIIQ distributes health insurance products; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, therefore denied.

40.     Denied as to any allegation regarding HIIQ; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, therefore denied.

41.     Denied.

42.     Denied, except admitted that HIIQ provided certain training to Simple Health's sales agents, that HIIQ conducted certain monitoring of Simple Health's sales calls, that HIIQ provided customer services to customers who purchased health insurance products from Simple

Health sales agents, that HIIQ collected premiums from customers who purchased health insurance products from Simple Health sales agents, that HIIQ distributed the commissions and other proceeds of those sales, and that HIIQ permitted Simple Health to use Defendants' online platform to quote and sell products distributed by HIIQ; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Simple Health's purported conduct; all remaining allegations and any allegations inconsistent with the foregoing are denied.

43.    Denied, except admitted that in certain SEC filings, HIIQ stated that "[Simple Health] was a related party by virtue of its 50% ownership of membership interests in SIL" and that "[i]n March 2015, HPIH sold its interest in SIL to [Simple Health], and [Simple Health] ceased being a related party"; denied that the relationship between HIIQ and Simple Health was close; all remaining allegations and any allegations inconsistent with the foregoing are denied.

44.    Denied.

45.    Denied, except admitted that HIIQ collected monthly payments from customers to whom Simple Health sold products, provided fulfillment documents to customers, fielded customer service calls, and advanced commissions to Simple Health; admitted that Simple Health granted HIIQ a security interest in Simple Health assets; admitted that Steven Dorfman and Matthew Spiewak provided HIIQ with a personal guarantees; denied that Simple Health exclusively sold products distributed by HIIQ; denied that Simple Health had a revolving credit facility with HIIQ; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

4833-2768-9390.5

46.     Denied, except admitted that by 2015, Simple Health was responsible for a majority of HIIQ limited benefit policy sales; denied that HIIQ had a financing arrangement with Simple Health; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

47.     The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

48.     Denied, except admitted that Amy Brady and Gary Raeckers attended Mr. Dorfman's wedding and that Amy Brady is HIIQ's Vice President of Sales; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the statements attributed to Matthew Spiewak, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

49.     Denied.

50.     Denied, except admitted that HIIQ and certain of its third-party distributors paid lead generators for leads; denied that HIIQ held any ownership interest in any lead generation websites during the purported Class Period; denied that any of Defendants' third-party distributors were HIIQ's "authorized agents"; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to Simple Health's conduct or to lead generation websites utilized by third party distribution channels, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

51.     Denied as to any allegation regarding HIIQ; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an

15

incomplete recitation of the text of the websites purportedly quoted in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations, therefore denied.

52.	The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the Simple Health documents purportedly quoted in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations, therefore denied.

53.	Denied, except admitted that in October 2013, Health Plan Intermediaries Holdings, LLC and Health Benefits One, LLC formed Simple Insurance Leads, LLC ("SIL") to engage in the business of generating leads, that Health Plan Intermediaries Holdings, LLC and Health Benefits One, LLC each owned 50% of SIL until 2015, when Health Plan Intermediaries Holdings, LLC sold its interest to Health Benefits One, LLC, and that HIIQ made capital contributions to SIL; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to the conduct of SIL after Health Plan Intermediaries Holdings, LLC sold its ownership interest to Health Benefits One, LLC, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

54.	The first sentence is denied; admitted that Gerod Vernon, Amy Brady, and Casey Hrvatin recruited third-party distributors and provided training to third-party distributors; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of

16

whether purported Confidential Witnesses ("CW") 1 and CW 2 made the statements attributed to them in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnotes 3 and 4 to this paragraph, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

55.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 3 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 5 to this paragraph, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

56.    Denied that the sales agents employed by Simple Health were "authorized" by HIIQ; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the other allegations related the conduct of Simple Health's sales agents or the "scale of the call centers' operations", therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations

17

inconsistent with the foregoing are denied.

57.    Denied that Simple Health's sales agents were "HIIQ's sales agents" or that HIIQ designed scripts to mislead consumers; Defendants lack knowledge or information sufficient to identify what alleged "scripts" the Plaintiffs are purporting to refer to in the paragraph, therefore denied; defendant lack knowledge of information sufficient to form a belief as to the truth or falsity of the allegations relating to Simple Health's alleged conduct or policies as to scripts, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

58.    Denied that Simple Health telemarketers were HIIQ's telemarketers; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations related to what unidentified Simple Health sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; all remaining allegations and any allegations inconsistent with the foregoing are denied.

59.    Denied that Simple Health's sales agents were "HIIQ's authorized sales agents"; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; all remaining allegations and any allegations inconsistent with the

18

4833-2768-9390.5

foregoing are denied.

60.     Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of the text of any plan or benefit document; all remaining allegations and any allegations inconsistent with the foregoing are denied.

61.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

62.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers or what Simple Health sales scripts allegedly said or did not say, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; any remaining allegations and any allegations inconsistent with the foregoing are denied.

63.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers or what Simple Health sales scripts allegedly said or did not say, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health,

19

therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

64.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers or what Simple Health sales scripts allegedly said or did not say, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; any remaining allegations and any allegations inconsistent with the foregoing are denied.

65.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers or what Simple Health sales scripts allegedly said or did not say, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; any remaining allegations and any allegations inconsistent with the foregoing are denied.

66.    Denied that Simple Health's sales agents were "HIIQ's authorized sales agents" or "the Company's" sales agents; admitted that Simple Health's sales agents could arrange for consumers to pay amounts owed on their purchased policies by credit card or debit card, including via HIIQ's web-based payment platform and that HIIQ's 2018 10-K stated that "[w]e receive credit card and Automated-Clearing-House ("ACH") payments from members at the

20

time of sale"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

67. Denied, except admitted that the verification process contained truthful statements about products distributed by HIIQ that consumers were purchasing; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health representatives purportedly represented to unidentified consumers or what Simple Health scripts allegedly said or did not say, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

68. Denied, except admitted that during the verification process, consumers were asked to confirm a series of statements; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health representatives purportedly represented to unidentified consumers or what such "consumers would feel," understand, or agree with, or what Simple Health scripts allegedly said or did not say, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

69. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers or what Simple Health scripts allegedly said or did not say, therefore denied; any remaining allegations are denied.

70. Denied, except admitted that HIIQ received customer calls regarding a variety of topics and that HIIQ sent refunds at times to customers; any remaining allegations and any

21

4833-2768-9390.5

allegations inconsistent with the foregoing are denied.

71.     The first sentence is denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 4 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 6 to this paragraph, therefore denied; the remaining allegations are denied.

72.     The first sentence is denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 5 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 7 to this paragraph, therefore denied, except admitted that during a portion of Plaintiffs' purported Class Period, Theresa Mills Snyder reported to Brian Gamlen; the remaining allegations are denied.

73.     Denied, except admitted that consumers called HIIQ's customer service telephone number, that the agents located at the Philippines call center were not insurance agents licensed in the United States, and that after opening a customer service call center in the Philippines in 2015, calls raising issues that could only be addressed by licensed insurance agents were routed from the Philippines to the United States; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 3 and CW 5 in this paragraph and purported CW3 in footnote 8 to this paragraph made the statements attributed to the purported CWs, therefore denied; the remaining allegations are denied.

74.     Denied, except admitted that HIIQ received customer calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether

22

purported CW 3 made the statements attributed to the purported CW, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; any remaining allegations are denied.

75. Denied, except admitted that certain managers received periodic reports regarding escalations/tier II customer calls, and that the FTC caused a temporary restraining order to be issued against Simple Health in 2018; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 4 and CW 5 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

76. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 6 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 9 to this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; all remaining allegations are denied.

23

4833-2768-9390.5

77.     Denied, except admitted that HIIQ received customer calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 2 and CW 3 made the statements attributed to the purported CWs in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; all remaining allegations are denied.

78.     Denied, except admitted that HIIQ received customer calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 1, CW 3, CW4 and CW 5 made the statements attributed to the purported CWs in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; Plaintiffs do not identify any particular plan or benefit program they are purporting to describe in this paragraph, and Defendants deny any characterization or allegation that is inconsistent with or is an incomplete recitation of any plan or benefit document; all remaining allegations are denied.

79.     Denied, except admitted that HIIQ received customer calls about Simple Health; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 2, CW 5, CW 6, and CW 7 made the statements attributed to the purported CWs in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 10 to this

24

4833-2768-9390.5

paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; any remaining allegations are denied.

80.     Denied, except admitted that after HIIQ terminated Simple Health, HIIQ required other third-party distributors to screen agents who previously worked at Simple Health over a certain period of time; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 1 and CW 5 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

81.     Denied, except admitted that HIIQ received customer calls, and that employees of AgileHealthInsurance, a wholly owned subsidiary of HIIQ, were located at HIIQ offices in Tampa, Florida; denied that Simple Health's or other entities' sales agents were "HIIQ's" brokers or agents; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 3 and CW 5 in this paragraph and CW 3 in footnote 11 to this paragraph made the statements attributed to the purported CWs, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified sales representatives purportedly represented to unidentified consumers, therefore denied; the remaining allegations are denied.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 2, CW 3, CW 5, CW 6, and CW 7 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

83.     Denied, except admitted that HIIQ at times issued refunds to consumers;

25

Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 3, CW 4, and CW 7 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

84. Denied.

85. Denied, except admitted that HIIQ received customer communications; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 4 made the statements attributed to the purported CW in this paragraph, therefore denied; the remaining allegations are denied.

86. Denied, except admitted that HIIQ received customer communications; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 5 made the statements attributed to the purported CW in this paragraph, therefore denied; the remaining allegations are denied.

87. Denied, except admitted that HIIQ received customer communications; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 5 and CW 4 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

88. Denied, except admitted that HIIQ provided certain documents and data to the FTC and that HIIQ received customer communications; the accuracy of any reference to, or characterization of, the documents provided by HIIQ to the FTC is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of those documents referenced in the paragraph; the remaining allegations are denied.

89. Denied, except admitted that HIIQ received customer communications; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of

26

the allegations relating to what internal Simple Health documents or calls to Simple Health purportedly communicated, therefore denied; any remaining allegations are denied.

90.     Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 3 and CW 5 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations are denied.

91.     This paragraph asserts legal opinions to which no response is required; to the extent any response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether Mr. Robert M. Willis made the statements attributed to him in this paragraph, therefore denied; the remaining allegations are denied.

92.     This paragraph asserts legal opinions to which no response is required; to the extent any response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether Mr. Robert M. Willis made the statements attributed to him in this paragraph, therefore denied; the remaining allegations are denied.

93.     This paragraph asserts legal opinions to which no response is required; to the extent any response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether Mr. Robert M. Willis made the statements attributed to him in this paragraph, therefore denied; the remaining allegations are denied.

94.     This paragraph asserts legal opinions to which no response is required; to the extent any response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether Mr. Robert M. Willis made the statements attributed to him in this paragraph, therefore denied; the remaining allegations are denied.

95.     Denied, except admitted that HIIQ maintained records of customer calls it received regarding brokers' statements, including Simple Health's statements; any remaining

4833-2768-9390.5

allegations and any allegations inconsistent with the foregoing are denied.

96.    Denied, except admitted that HIIQ maintained a proprietary product, distribution, and customer management platform known as Automated Real-Time Integrated E System or "A.R.I.E.S.", that A.R.I.E.S. was HIIQ's main platform for processing data, and that A.R.I.E.S. contains, among other data, compliance information, certain information relating to retention, calls to customer service, and other customer information; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW2, CW 6, and CW 8 made the statements attributed to the purported CWs in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 12 to this paragraph, therefore denied; the remaining allegations and any allegations inconsistent with the foregoing are denied.

97.    Denied, except admitted that HIIQ recorded certain calls including escalations/tier II customer calls, uploaded recorded calls to its servers, assigned codes to certain calls to describe the perceived reason for the call, maintained related records, and maintained certain call recordings; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 1, CW 5 and CW 8 made the statements attributed to the purported CWs in this paragraph, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

98.    Denied, except admitted that certain HIIQ managers received weekly reports; denied that Mr. Southwell received such weekly reports; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 8 made the statements attributed to the purported CW in this paragraph, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

28

4833-2768-9390.5

99.     Denied, except admitted that certain managers received weekly reports regarding escalations/tier II customer calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 2 and CW 5 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations and any allegations inconsistent with the foregoing are denied.

100.     Denied, except admitted that HIIQ employees created daily reports relating to certain customer calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 4 and CW 6 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations and any allegations inconsistent with the foregoing are denied.

101.     Denied, except admitted that HIIQ undertook various monitoring of third-party distributors and that certain HIIQ employees could ask for Simple Health call notes; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 5 made the statements attributed to the purported CW in this paragraph, therefore denied; the remaining allegations and any allegations inconsistent with the foregoing are denied.

102.     Denied, except admitted that HIIQ employees listened to and graded certain Simple Health customer calls and that at Mr. Southwell's direction, HIIQ hired a third party to conduct secret shopping of distributors; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 6 and CW 8 made the statements attributed to the purported CWs in this paragraph, therefore denied; the remaining allegations and any allegations inconsistent with the foregoing are denied.

103.     Denied, except admitted that HIIQ employees listened to and reported on calls; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of

29

whether purported CW 6 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding what unidentified Simple Health sales representatives purportedly represented to unidentified consumers, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

104. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 8 and CW 9 made the statements attributed to the purported CWs in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in footnote 13 to this paragraph, therefore denied; the remaining allegations are denied.

105. Denied.

106. Denied, except admitted that HIIQ conducted site visits of Simple Health; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

107. Denied that Simple Health drafted sales scripts in concert with HIIQ; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; any remaining allegations are denied.

108. As to the first sentence, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; the second sentence is denied; any remaining allegations are denied.

109. Denied, except admitted that on October 5, 2017, Christine Gillis, HIIQ Agency

Compliance Manager, sent an e-mail to Amy Brady and to Dan Garavuso, HIIQ Vice President of Compliance; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

110.    Denied, except admitted that Susan Adcock, HIIQ's Customer Service Supervisor, e-mailed Christine Gillis and Brian Gamlen, HIIQ's Vice President of Operations, on October 5, 2017, and that Dan Garavuso sent an e-mail on March 11, 2016; the accuracy of any purported quotation of these e-mails is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the e-mails referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

111.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations asserted against Simple Health in this paragraph; any remaining allegations are denied.

112.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations asserted against Simple Health in this paragraph; any remaining allegations are denied.

113.    The first sentence is denied; admitted that on August 9, 2017, Nick Marley, HIIQ's Chief Risk Officer, sent an e-mail to Candida Girouard, Simple Health's Chief Compliance Officer; the accuracy of any purported quotation of this e-mail is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the e-mail referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

31

114.   The first sentence is denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to internal Simple Health e-mails to which HIIQ was not a party, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to an e-mail purportedly sent to Mr. Hershberger sometime in April 2016 relating to National Brokers of America, Inc.; any remaining allegations are denied.

115.   Denied.

116.   Denied, except admitted that various lawsuits have been filed against HIIQ; the allegations as to what those lawsuits allege are denied to the extent that they are inconsistent with or that they are an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

117.   Denied, except admitted that Belin is a plaintiff in a putative consumer class action pending in the Southern District of Florida; the allegations as to what that lawsuit alleges are denied to the extent that they are inconsistent with or that they are an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

118.   Denied, except admitted that Mitchell is a named plaintiff in the Belin putative consumer class action; the allegations as to what that lawsuit alleges are denied to the extent that they are inconsistent with or that they are an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

119.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 6 made the statements attributed to the purported CW in this paragraph, therefore denied; the remaining allegations are denied.

32

120. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of whether purported CW 7 made the statements attributed to the purported CW in this paragraph, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations related to what unidentified customers thought they had purchased, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

121. Denied.

122. Denied, except admitted that on November 2, 2018 the FTC issued a press release announcing its enforcement action against Dorfman and Simple Health; the accuracy of any purported quotation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

123. Denied, except admitted that on November 2, 2018 the FTC issued a press release announcing its enforcement action against Dorfman and Simple Health; the accuracy of any purported quotation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

124. Denied, except admitted that the FTC issued a press release and caused the issuance of a temporary restraining order and appointment of a Receiver regarding Dorfman-

4833-2768-9390.5

related entities; the accuracy of any purported quotation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Dorfman-related entities, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

125.    Denied, except admitted that newspapers and other publications reported the allegations against Simple Health; the accuracy of any purported quotation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health or Dorfman, therefore denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations related to what unidentified Simple Health sales representatives purportedly represented to unidentified customers, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

126.    Denied, except admitted that newspapers reported the allegations and the temporary restraining order against Simple Health; the accuracy of any purported quotation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health or Dorfman, therefore denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

127.    The first sentence is denied; the accuracy of citations to published stock price

34

4833-2768-9390.5

information is denied to the extent inconsistent with the text of such published information; admitted that *Investor's Business Daily* published an article on November 5, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the article purportedly referenced in this paragraph; all remaining allegations are denied.

128. The first sentence is denied; admitted that HIIQ issued a press release on November 2, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

129. Denied that HIIQ made misrepresentations; admitted that securities analysts issued reports regarding HIIQ; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

130. Denied, except admitted that Aurelius Value published a document relating to HIIQ on November 27, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation in footnote 14 regarding the basis of Aurelius Value's assertions, therefore denied; all remaining allegations are denied.

131. Denied that the Aurelius Value document was relying on newly disclosed facts or extensive documentary record; the accuracy of any purported quotation or citation is denied as to

any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; all remaining allegations are denied.

132.   The accuracy of or citations to published stock price information is denied to the extent inconsistent with the text of such published information and documents referenced in the paragraph; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

133.   Denied.

134.   Denied, except admitted that between February 1 and February 13, 2019, Mr. Southwell sold shares of HIIQ common stock pursuant to a previously adopted 10b5-1 trading plan and that the value of those shares was approximately $3.22 million; admitted that Mr. Southwell did not sell any shares of HIIQ stock prior to February 1, 2019; admitted that Mr. Southwell's February 1 through February 13, 2019 stock sales represented approximately 13% of his non-derivative stock holdings at the time; all remaining allegations and any allegations inconsistent with the foregoing are denied.

135.   Denied, except admitted that between February 1 and February 13, 2019, Mr. Hershberger sold shares of HIIQ stock pursuant to a previously adopted 10b5-1 trading plan, that the value of those shares was approximately $2 million, that these sales represented approximately 56% of his non-derivative stock holdings at the time, that Mr. Hershberger sold HIIQ stock in the 8 month period prior to the purported Class Period, and that during the purported class period, Mr. Hershberger only sold stock in February 2019; all remaining allegations and any allegations inconsistent with the foregoing are denied.

136.   Denied, except admitted that on March 13, 2019, the U.S. House of

36

4833-2768-9390.5

Representatives Committee on Energy & Commerce ("House E&C Committee") issued a press release entitled "*E&C Launches Investigation into Companies That Sell or Broker Junk Health Insurance Plans*"; admitted that HIIQ's 2018 Form 10-K states that "the Company also has a direct-to-consumer website that allows consumers to research health insurance trends, comparison shop, and purchase IFPs under the AgileHealthInsurance brand"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph and in footnote 16 to this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

137.   The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health or press release or news media characterizations of what Congress was looking into, therefore denied; all remaining allegations are denied.

138.   The accuracy of or citations to published stock price information is denied to the extent inconsistent with the text of such published information and documents referenced in the paragraph; all remaining allegations are denied.

139.   Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of characterizations of what Congress was looking into or of reasons for sales of shares of HIIQ stock, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any

37

allegations inconsistent with the foregoing are denied.

140. The first sentence is denied; admitted that on March 25, 2019, Steven Dorfman filed a Memorandum in Opposition to a Preliminary Injunction in the FTC action; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Dorfman-related entities or Dorfman's purported allegations in defending litigation to which HIIQ is not a party, therefore denied; all remaining allegations are denied.

141. Denied, except admitted that the filing referenced in the paragraph includes reports of HIIQ site visits at Simple Health over various time periods; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Dorfman's purported allegations in defending litigation to which HIIQ is not a party, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

142. The first sentence is denied; admitted that HIIQ had processes in place to perform certain monitoring and oversight relating to Simple Health including site visits, that HIIQ compiled reports regarding site visits of Simple Health, and that a site visit report dated June 11, 2018 contains the language quoted in this paragraph; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Dorfman's

38

purported allegations in defending litigation to which HIIQ is not a party, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

143.    Denied, except admitted that certain reports regarding HIIQ's site visits of Simple Health stated that Simple Health does not provide members with product information "by means of email or text"; admitted that one due diligence audit report relating to Simple Health stated that at one point Simple Health advised "the client" that "the premium is significantly lower because they will be part of a group association which makes the rate lower. The benefits are provided for the plan so the client is aware of the coverage but the acceptance to the group seems to come across as misleading since it is a guarantee issue plan. There aren't specific standards set for a client to sign for the policy. Cameron states that this is just the way the plan is marketed and how they present that the client is part of the MSGA association."; Defendants lack knowledge or information sufficient to identify what alleged "scripts" the Plaintiffs are purporting to refer to in the paragraph, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of Dorfman's purported allegations in defending litigation to which HIIQ is not a party, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

144.    Denied, except admitted that a purpose of the site visits was to monitor agent performance; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; the second sentence is denied; any remaining allegations and any allegations inconsistent with the foregoing are denied.

39

145.    The accuracy of or citations to published stock price information is denied to the extent inconsistent with the text of such published information referenced in the paragraph; all remaining allegations are denied.

146.    Denied, except admitted that on April 12, 2019, the court appointed Receiver over Simple Health filed his "First Interim Report" in the FTC action; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's or the FTC's purported allegations against Dorfman-related entities, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

147.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's purported allegations against Dorfman-related entities, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

148.    Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's purported allegations against Dorfman-related entities, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

4833-2768-9390.5

149. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's purported allegations against Dorfman-related entities, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

150. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the Receiver's purported allegations against Dorfman-related entities, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

151. Denied, except admitted that after the Court in the FTC action entered a Temporary Restraining Order against Simple Health, HIIQ collected premiums from members who purchased policies through Simple Health and that HIIQ offset the amounts collected from the commissions owed to Simple Health; denied that these actions violated the TRO; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

152. The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

4833-2768-9390.5

153.    The accuracy of or citations to published stock price information is denied to the extent inconsistent with the text of such published information and documents referenced in the paragraph; all remaining allegations are denied.

154.    The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

155.    The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

156.    The accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations are denied.

157.    Denied.

158.    Denied, except admitted that the Plaintiffs purport to assert a class period beginning on September 25, 2017, which Defendants deny; admitted that HIIQ filed a Form 8-K on that date; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

159.    Denied.

160.    Denied.

161.    Denied, except admitted that HIIQ received customer calls relating to Simple Health from 2014 through 2018, that HIIQ conducted site visits of Simple Health and that those

42

site visits were documented in reports, that HIIQ maintains scorecards relating to third-party distributors, that HIIQ maintains a proprietary data management platform known as "A.R.I.E.S", and that scorecards and A.R.I.E.S. contain information relating to customer satisfaction; all remaining allegations and any allegations inconsistent with the foregoing are denied.

162.    Admitted that HIIQ issued a press release on September 27, 2017; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations are denied.

163.    Denied.

164.    Admitted that HIIQ issued a press release on November 1, 2017, that the press release was filed with the SEC on a Form 8-K, that the Form 8-K was signed by Mr. Hershberger; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

165.    Admitted that HIIQ issued a press release on November 1, 2017; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

166.    Admitted that HIIQ held an investor call on November 2, 2017, and that Southwell and Hershberger participated in the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation

43

of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

167.    Admitted that HIIQ held an investor conference call on November 2, 2017, and that Southwell made statements in the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the conference call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

168.    Admitted that HIIQ held an investor conference call on November 2, 2017, that analysts asked questions on the call, and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the questions asked or the statements made during the conference call purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Admitted that HIIQ made an investor presentation available on its website on November 8, 2017; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

173.    Denied.

44

174.     Admitted that HIIQ filed a Form 8-K with the SEC on December 15, 2017, that the Form 8-K was signed by Hershberger, and that the Form 8-K included a press release issued on December 15, 2017 that included quotations of Paul Gabos, Chairman of HIIQ's Board of Directors; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

175.     Denied.

176.     Admitted that HIIQ held an investor call on March 1, 2018, that Messrs. Southwell and Hershberger participated in the call, that analysts asked questions on the call, and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

177.     Admitted that HIIQ held an investor call on March 1, 2018, that Messrs. Southwell and Hershberger participated in the call, that analysts asked questions on the call, and that Southwell and Hershberger made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the conference call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

178.     Denied.

4833-2768-9390.5

179.   Admitted that HIIQ made an investor presentation available on its website on March 13, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

180.   Denied.

181.   Admitted that HIIQ held an investor call on May 3, 2018, that Messrs. Southwell and Hershberger participated in the call, and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

182.   Admitted that HIIQ held an investor call on May 3, 2018 and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

183.   Admitted that HIIQ held an investor call on May 3, 2018, that analysts asked questions on the call, and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

46

184.    Denied.

185.    Admitted that HIIQ made an investor presentation available on its website on May 8, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

186.    Denied.

187.    Admitted that HIIQ held an investor call on August 2, 2018, and that Mr. Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

188.    Admitted that HIIQ held an investor call on August 2, 2018, that analysts asked questions on the call, and that Southwell made statements on the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

189.    Denied.

190.    Admitted that HIIQ made an investor presentation available on its website on August 31, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the document

4833-2768-9390.5

purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

191.   Denied.

192.   Admitted that HIIQ held an investor call on October 30, 2018, and that Southwell and Hershberger participated and made statements in the call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during the call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

193.   Denied.

194.   Admitted that the FTC and HIIQ issued press releases on November 2, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the documents purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

195.   Admitted that HIIQ issued a press release on December 20, 2018; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the document purportedly quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

196.   Denied.

197.   Admitted that on December 20, 2018 HIIQ published a presentation on its website; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the document purportedly quoted in this

48

paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

198.   Admitted that on December 20, 2018 HIIQ published a presentation on its website; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

199.   Denied.

200.   Admitted that on January 7, 2019, HIIQ filed a Form 8-K report with the SEC signed by Mr. Hershberger; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

201.   Denied.

202.   Admitted that on March 6, 2019 HIIQ held an investor conference call, that Messrs. Southwell and Hershberger participated in that call, and that Southwell made statements in that call; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the statements made during that call purportedly quoted in this paragraph; any remaining allegations and any allegations inconsistent with the foregoing are denied.

203.   Denied.

204.   Denied.

49

205.    Denied, except admitted that Health Plan Intermediaries Holdings, LLC and Health Benefits One, LLC formed Simple Insurance Leads, LLC ("SIL"), that Health Plan Intermediaries Holdings, LLC provided capital contributions to SIL, and that HIIQ provided certain training to Simple Health's sales agents; all remaining allegations and any allegations inconsistent with the foregoing are denied.

206.    Denied, except admitted that HIIQ conducted site visits of Simple Health, reviewed certain complaint and escalation data, Better Business Bureau complaints, and Department of Insurance inquiries relating to Simple Health, and stated in certain SEC filings that Simple Health "was a related party by virtue of its 50% ownership of membership interests in SIL" and that "[i]n March 2015, HPIH sold its interest in SIL to [Simple Health], and [Simple Health] ceased being a related party"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced or quoted in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

207.    Denied, except admitted that on October 5, 2017, Christine Gillis, HIIQ Agency Compliance Manager, sent an e-mail to Amy Brady and to Dan Garavuso, HIIQ Vice President of Compliance, and that Susan Adcock, HIIQ's Customer Service Supervisor, e-mailed Christine Gillis and Brian Gamlen, HIIQ's Vice President of Operations, on October 5, 2017, and that Dan Garavuso sent an e-mail on March 11, 2016; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

50

208.    The first sentence is denied; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations relating to internal Simple Health e-mails to which HIIQ was not a party, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

209.    Denied, except admitted that HIIQ documented customer calls and escalations and compiled reports in ARIES and that HIIQ provided documentation to the FTC; the accuracy of any reference to, or characterization of, the documents provided by HIIQ to the FTC is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of those documents referenced in the paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

210.    The first and last sentences are denied; admitted that in October 2013, Health Plan Intermediaries Holdings, LLC and Health Benefits One, LLC formed SIL; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the FTC's purported allegations against Simple Health, therefore denied; all remaining allegations and any allegations inconsistent with the foregoing are denied.

211.    Denied, except admitted that, on April 9, 2019, The Capitol Forum published a document entitled "Health Insurance Innovations: Evidence Submitted in Support of Preliminary Injunction Suggests that the Company Knew of Problematic Sales Practices by Dorfman Entities as Early as 2014"; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that The Capitol Forum is a securities research firm, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations are denied.

51

212.    Denied, except admitted that, on April 9, 2019, The Capitol Forum published a document entitled "Health Insurance Innovations: Evidence Submitted in Support of Preliminary Injunction Suggests that the Company Knew of Problematic Sales Practices by Dorfman Entities as Early as 2014," and admitted that Southwell made statements relating to Department of Insurance or Better Business Bureau complaints; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the documents purportedly quoted in this paragraph; all remaining allegations are denied.

213.    Denied, except admitted that, on April 10, 2019, Aurelius Value issued a document entitled "HIIQ: The Big Deception"; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that there were securities analysts at Aurelius Value who issued that document, therefore denied; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations are denied.

214.    Denied, except admitted that HIIQ's management's statements were true, and admitted that on April 10, 2019, Aurelius Value issued a document entitled "HIIQ: The Big Deception"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly quoted in this paragraph; all remaining allegations are denied.

215.    Denied, except admitted that, on April 10, 2019, Aurelius Value issued a document entitled "HIIQ: The Big Deception"; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation

of the text of the document purportedly quoted in this paragraph; all remaining allegations are denied.

216.    Denied, except admitted that HIIQ reported $13.1 million, $26.5 million, and $18.9 million in net income in 2016, 2017, and 2018, respectively; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegation regarding what alleged "securities analysts" have pointed out, therefore denied; any remaining allegations are denied.

217.    Denied, except admitted that in 2015, Simple Health comprised 62.8% of HIIQ's advanced commission balance, in 2016, Simple Health comprised 65% of HIIQ's advanced commission balance, and that in 2017, Simple Health comprised 35.8% of HIIQ's advanced commission balance; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

218.    Denied.

219.    Denied, except admitted that between February 1 and February 13, 2019, Mr. Southwell sold shares of HIIQ common stock pursuant to a previously adopted 10b5-1 trading plan and that the value of those shares was approximately $3.22 million, that between February 1 and February 13, 2019, Mr. Hershberger sold shares of HIIQ stock pursuant to a previously adopted 10b5-1 trading plan, that the value of those shares was approximately $2 million, that Mr. Southwell did not sell any shares of HIIQ stock prior to February 1, 2019, that Mr. Hershberger sold HIIQ stock in the 8 month period prior to the purported Class Period, and that Mr. Hershberger did not sell any stock during the purported Class Period before the February

53

2019 sales; the accuracy of or citations to published stock price information is denied to the extent inconsistent with the text of such published information and documents referenced in the paragraph; all remaining allegations and any allegations inconsistent with the foregoing are denied.

220. Denied.

221. The accuracy of purported citations to published stock price information is denied to the extent inconsistent with the text of such published information; any remaining allegations are denied.

222. Denied, except admitted that, on November 2, 2018, the FTC published a press release regarding Simple Health, Dorfman, and additional entities; the accuracy of any purported quotation or citation is denied as to any allegation that is inconsistent with or that is an incomplete recitation of the text of the document purportedly referenced in this paragraph; the accuracy of purported citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents; all remaining allegations and any allegations inconsistent with the foregoing are denied.

223. Denied, except admitted that, on November 27, 2018 Aurelius Value published a report titled "HIIQ: Boiler Rooms, 'Worthless' Policies, and Defrauded Families"; the accuracy of purported citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents; all remaining allegations are denied.

224. Denied, except admitted that, on March 13, 2019, the United States House of Representatives Committee on Energy & Commerce issued a press release entitled "E&C Launches Investigation Into Companies That Sell Or Broker Junk Health Insurance Plans"; the

accuracy of purported citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents; all remaining allegations are denied.

225.   Denied, except admitted that, on March 25, 2019, Steven Dorfman made a filing in the FTC enforcement action against Simple Health; the accuracy of purported citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents; all remaining allegations are denied.

226.   Denied, except admitted that, on April 12, 2019, the court-appointed Simple Health Receiver filed a report in the FTC enforcement action against Simple Health; the accuracy of purported citations to published stock price information and other documents is denied to the extent inconsistent with the text of such published information and documents; all remaining allegations are denied.

227.   Denied.

228.   Admitted that Plaintiffs purport to bring this case as a putative securities class action, that Plaintiffs purport to include in or exclude from the putative class certain persons or entities, and that Plaintiffs purport to allege a period of time that the Plaintiff refers to as the Class Period, all of which Defendants deny; any remaining allegations are denied.

229.   Denied, except admitted that HIIQ's securities trade on the NASDAQ under the ticker symbol HIIQ and that millions of shares have been traded publicly; Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding how many members Plaintiffs allege would be in the putative class and who owned how many shares of HIIQ stock as of various points in time, therefore denied; any remaining allegations are denied.

55

230. Denied.

231. As to the first sentence, Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, therefore denied; the remaining allegations are denied.

232. Denied.

233. Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the circumstances under which Lead Plaintiffs or other putative class members purchased or acquired HIIQ stock, therefore denied; the remaining allegations are denied.

234. Denied.

235. Denied.

236. Denied.

237. Denied, except admitted that HIIQ's securities trade on the NASDAQ, that HIIQ is a public company that filed periodic reports with the SEC and NASDAQ, that securities analysts issue public reports about HIIQ, and that HIIQ communicated with investors and distributed press releases and other public communications; any remaining allegations and any allegations inconsistent with the foregoing are denied.

238. Denied.

239. Denied.

240. Denied.

241. Denied.

242. Defendants incorporate by reference answers to other paragraphs as if fully set forth herein.

4833-2768-9390.5

243. Denied.

244. Denied.

245. Denied.

246. Denied.

247. Denied.

248. Denied.

249. Denied.

250. Denied.

251. Defendants incorporate by reference answers to other paragraphs as if fully set forth herein.

252. Denied.

253. Denied.

254. Denied, except admitted that Mr. Hershberger and Mr. Southwell signed HIIQ's SEC filings during the Class Period; all remaining allegations are denied.

255. Denied.

256. Denied.

257. Denied.

Except as otherwise explicitly admitted herein, Defendants deny each and every allegation and heading contained in the Complaint, including the Plaintiff's Prayer for Relief, including the Wherefore clause and paragraphs (a)-(d) of the Prayer for Relief, and Plaintiff's demand for a jury trial, and put Plaintiffs to strict proof thereof.

WHEREFORE, the Defendants pray that the Court enter judgment as follows:

1. That judgment be entered in favor of the Defendants;

57

2.  That Plaintiffs take nothing from the Defendants by this Complaint, and that the Complaint be dismissed with prejudice;

3.  Awarding costs, including attorneys' fees, disbursements, expert witness fees, and court hearing costs, incurred herein; and

4.  For such other relief as the Court deems just and proper.

## AFFIRMATIVE AND OTHER DEFENSES

Defendants have not completed their full investigation of the facts of this case, have not completed discovery in this matter, and have not completed their preparation for trial. The defenses asserted herein are based on Defendants' knowledge, information, and belief at this time. Defendants specifically reserve the right to assert additional affirmative or other defenses and/or to modify, amend, or supplement any defense contained herein at any time. Without admitting any of the facts alleged in the Complaint or assuming any burden of proof, persuasion, or production not otherwise legally assigned to it as to any element of Plaintiffs' claims, Defendants assert the following affirmative and other defenses:

## FIRST DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, by the Private Securities Litigation Reform Act of 1995.

## SECOND DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the safe harbor provisions for forward-looking statements in the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-5(c)) and Section 11 of the Securities Act of 1933 (15 U.S.C. § 77z-2(c)).

58

## THIRD DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because the substance of the information Plaintiffs allege was omitted or misrepresented was disclosed in HIIQ's public filings or other public sources or was otherwise known to the market.

## FOURTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs and/or any putative class members have failed to mitigate their alleged damages (to which, in any event, they are not entitled) by failing to act reasonably under the circumstances and/or otherwise failing to sell the securities at issue upon learning of the alleged misrepresentations.

## FIFTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because they fail to state claims against Defendants upon which relief may be granted.

## SIXTH DEFENSE

Defendants are not liable for losses allegedly suffered by Plaintiffs and/or any members of the putative class because acts or omissions of others or other factors or events over which Defendants had no control constituted independent, intervening and superseding causes of such alleged losses.  In the alternative, any damages that Plaintiffs and/or any putative class members may be entitled to recover against Defendants (of which there are none), must be reduced to the extent that such damages are attributable to the intervening acts and/or omissions of persons or entities other than Defendants.

## SEVENTH DEFENSE

Expressly denying that Defendants engaged in any unlawful conduct, Plaintiffs and/or any members of the putative class are barred from relief because, even if the allegations asserted

59

in the Complaint were true, the alleged damages are too speculative to give rise to the claims asserted in the Complaint.

### EIGHTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, and neither Plaintiffs nor the putative class are entitled to any recovery from Defendants under the Exchange Act, because Defendants did not make any untrue statement of material fact or omit to state any material fact required to be stated or necessary to make the statements made not misleading.

### NINTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because the allegedly untrue statements of material fact and/or omissions of material fact asserted by Plaintiffs were not material to the investment decisions of a reasonable investor in view of, *inter alia*, the total mix of available information.

### TENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because any increase or decrease in the market value of HIIQ stock held by Plaintiffs and/or any putative class members was the result of market or other economic factors separate from the alleged wrongful conduct by Defendants.

### ELEVENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because neither Plaintiffs nor any members of the putative class suffered any cognizable injury or damages and they lack standing.

### TWELFTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs cannot establish actual and/or justifiable reliance upon the alleged misstatements or omissions in

4833-2768-9390.5

HIIQ's disclosures. Among other legal and factual defects, Plaintiffs cannot establish a causal connection exists between Defendants' alleged conduct and any alleged injury through direct reliance, through the fraud-on-the-market presumption, or, because Defendants neither owed nor breached any duty to Plaintiffs or to the putative class to disclose information allegedly omitted from HIIQ's disclosures, through the *Affiliated Ute* presumption.

### THIRTEENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Defendants acted with reasonable care with respect to the matters alleged to have been misrepresented in or misleadingly omitted from HIIQ's disclosures. Defendants had reasonable ground to believe, and did believe, at the time of the disclosure that HIIQ's statements were true and did not contain omissions of material fact.

### FOURTEENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Defendants at all times acted in good faith and reasonably relied, after disclosure of all relevant facts, upon the work, opinions, advice, representations and/or information of HIIQ's professionals and others upon whom they were entitled to rely regarding HIIQ's disclosures.

### FIFTEENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Defendants lacked the requisite scienter, including specific intent to deceive, willfulness, and/or recklessness necessary to establish violations of the Exchange Act.

### SIXTEENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because Plaintiffs cannot establish loss causation.

4833-2768-9390.5

## SEVENTEENTH DEFENSE

Defendants are absolved from any and all liability for the wrongs alleged in the claims asserted in the Complaint by reason of their full compliance with all statutes, regulations, or other laws invoked by Plaintiffs in the Complaint and in effect at the time of the conduct alleged in the claims asserted in the Complaint.

## EIGHTEENTH DEFENSE

The claims asserted in the Complaint are barred, in whole or in part, because this action may not be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## NINETEENTH DEFENSE

Defendants preserve and assert all affirmative defenses available under any applicable law.  Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, defenses available.  Therefore, Defendants reserve their right to supplement this Answer and to assert additional defenses, cross-claims, and third party claims in the event that discovery or other means indicate that they would be appropriate, including but not limited to the delineation of such defenses against the putative class members because no class has been certified, and the putative class members are not parties

62

4833-2768-9390.5

to this litigation.

Dated:  December 9, 2019.

Respectfully submitted,


*/s/ Michael P. Matthews* \_
Michael P. Matthews, FL Bar No. 063988
mmatthews@foley.com
Lauren L. Valiente, FL Bar No. 034775
lvaliente@foley.com
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, Florida 33602-5810
Tel: 813-229-2300
Fax: 813-221-4210
*Counsel for Defendants*

63

64

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 9, 2019, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

*/s/ Michael P. Matthews*
Attorney

4833-2768-9390.5