**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

---

JULIAN KEIPPEL, Individually and On
Behalf of All Others Similarly Situated,

        Plaintiff,

v.

HEALTH INSURANCE INNOVATIONS,
INC. n/k/a BENEFYTT TECHNOLOGIES,
INC., GAVIN SOUTHWELL, and MICHAEL
D. HERSHBERGER,

        Defendants.

---

CASE NO. 8:19-cv-00421-WFJ-CPT

<u>CLASS ACTION</u>

**LEAD PLAINTIFFS' REPLY IN FURTHER SUPPORT
OF THEIR MOTION FOR CLASS CERTIFICATION,
APPOINTMENT OF CLASS REPRESENTATIVES,
AND APPOINTMENT OF CLASS COUNSEL**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 2

      A.    The Evidence Conclusively Establishes That the Class Period Appropriately
            Ends on April 11, 2019 ................................................................................... 2

      B.    Defendants' Remaining Arguments Fail ......................................................... 7

III.  CONCLUSION ......................................................................................................... 8

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ak. Elec. Pen. Fund v. Pharmacia Corp.*,
  2007 WL 276150 (Jan. 25, 2007)......................................................................3

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013) ................................................................................ 1, 3, 5

*Aranaz v. Catalyst Pharm. Partners Inc.*,
  302 F.R.D. 657 (S.D. Fla. 2014) ......................................................................8

*City of Sunrise Gen. Empl. Ret. Plan v. FleetCor Tech., Inc.*,
  2019 WL 3449671 (N.D. Ga. 2019) ................................................................6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)................................................................................... 1, 3

*In re Am. Italian Pasta Co. Sec. Litig.*,
  2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ..................................................3

*In re CMS Energy Sec. Litig.*,
  236 F.R.D. 338, (E.D. Mich. 2006)..................................................................7

*In re Data Access Sys. Sec. Litig.*,
  103 F.R.D. 130 (D.N.J. 1984) ..........................................................................3

*In re Novatel Wireless Sec. Litig.*,
  2010 WL 11470156 (S.D. Cal. May 12, 2010)..................................................7

*In re Recoton Corp. Sec. Litig.*,
  248 F.R.D. 606 (M.D. Fla. 2006) ................................................................ 4, 7

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001) ......................................................................6

*In re Ribozyme Pharm. Inc. Sec. Litig.*,
  205 F.R.D. 572 (D. Colo. 2001)......................................................................3

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007) ..........................................................6

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
  2017 WL 4297450 (D.S.C. Sep. 28, 2017)......................................................5

*Local 703, I.B. of T Grocery & Food Empl. Welfare Fund v. Regions Fin. Corp.*,
  762 F.3d 1248 (11th Cir. 2014) ................................................................ 2, 5, 8

*Local 703, I.B. of T Grocery & Food Empl. Welfare Fund v. Regions Fin. Corp.*,
  2014 WL 6661918 (N.D. Ala. Nov. 19, 2014)..................................................8

*Monroe Cty. Empl. Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019) ......................................................................................8

*Petrie v. Elec. Game Card, Inc.*,
  308 F.R.D. 336 (C.D. Cal. 2015).....................................................................................5

*Tapken v. Brown*,
  1992 WL 178984 (S.D. Fla. Mar. 13, 1992) ...................................................................8

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) .................................................................5

 *W. Va. Pipe Trades Health & Wel. Fund v. Medtronic, Inc.*,
  325 F.R.D. 280 (D. Minn. 2018) .....................................................................................3

<u>Rules</u>

Fed. R. Civ. P. 23 .................................................................................................... 1, 3

## I.      INTRODUCTION[1]

In a concession that is extremely rare in securities fraud class action litigation, Defendants agree that this Action should be certified as a class action, that Lead Plaintiffs should be appointed as Class Representatives, and that Lead Counsel should be appointed as Class Counsel. Furthermore, Defendants do not dispute that all of Rule 23's requirements have been easily satisfied, or that the market for HIIQ common stock was efficient throughout the Class Period of September 25, 2017 to April 11, 2019. Instead, Defendants' sole contention—that the Class Period should be shortened by several months—is based on recycled arguments that have already been denied at the pleading stage, are replete with factual and legal inaccuracies, and are routinely rejected by courts because they expressly contradict binding Supreme Court precedent.

*First*, Defendants contend that the Class Period should end on November 27, 2018, with the publication of an analyst report partially revealing Defendants' fraud. However, this argument prematurely asks the Court to determine fact-intensive loss causation issues that the Supreme Court has expressly held are improper to resolve at the class certification stage. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Moreover, Defendants' argument ignores the fact that they continued to make materially false and misleading statements after November 27, 2018—which the Court has held are actionable—and that materially new information regarding Defendants' fraud—which Defendants themselves admit had a "whopping" impact on HIIQ's share price—was released to the market on March 13, 25, and April 12, 2019.

*Second*, Defendants' fallback position, that the Class Period should end on February 18,

---

[1] Unless otherwise noted, (i) all capitalized terms and abbreviations have the same meanings as in Plaintiffs' Motion for Class Certification ("Mot." or "Motion"); (ii) references to "Opp. __" are to Defendants' Opposition (ECF No. 80); (iii) all emphasis is added and all internal citations and quotation marks are omitted; and (iv) references to "Rep. Ex. __" are to documents attached as exhibits to the accompanying Declaration of Brandon T. Grzandziel in Further Support of Lead Plaintiffs' Motion ("Grzandziel Reply Decl.").

1

2019 because the initial complaint was filed on this date, fails for the exact same reasons. Indeed, courts routinely certify class periods extending beyond the filing of an initial complaint where, as here, defendants continue to make actionable false and misleading statements, and previously undisclosed information regarding defendants' fraud is later exposed. In addition, Defendants' argument that the Class Period should be shortened merely because OKMRF bought some stock after the initial complaint was filed, is baseless because as a litany of courts across the country have held, such purchases provide no basis to shorten a class period, and there is no evidence whatsoever that OKMRF's purchases were improper or made with full knowledge of the fraud.

*Third*, Defendants' remaining arguments fail. Plaintiffs are entitled to the *Affiliated Ute* presumption of reliance because of the confirmatory false statements and omissions at issue, and, as the Eleventh Circuit has explained, the application of the presumption in these circumstances "evidences good, reasoned judging," *Local 703 v. Regions Fin. Corp.*, 762 F.3d 1248, 1256 n.5 (11th Cir. 2014). Finally, all Class Members who relied on the market price in acquiring HIIQ common stock and who were damaged thereby should be included in the Class definition.

Plaintiffs respectfully submit that their Motion should be granted in its entirety.

## II.    ARGUMENT

### A.    The Evidence Conclusively Establishes That the Class Period Appropriately Ends on April 11, 2019

While Defendants agree that the Class should be certified in this Action, they contend that the Class Period should end on either November 27, 2018, when Aurelius Value issued its report revealing the illicit ties between HIIQ, Simple Health, and Steven Dorfman, or on February 18, 2019, when the initial complaint was filed in this Action. Both of these arguments are meritless.[2]

---

[2] Throughout their Opposition, Defendants misleadingly refer to the Class Period as the "Proposed Expanded Class Period." The Class Period, however, is the same period alleged in the Complaint. ¶228.

*First*, Defendants' alternative class periods require the Court to determine, at the class certification stage, a disputed issue of loss causation: namely, whether the alleged corrective disclosures on March 13, 2019, March 25, 2019, and April 12, 2019 revealed no new information to the market. Defendants' argument directly contravenes binding Supreme Court authority holding that courts "err[] by requiring proof of loss causation for class certification." *Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 809 (2011). This is because loss causation is a "common question[]" to all class members, and therefore not appropriate to resolve on a Rule 23 motion. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 475 (2013).[3]

*Second*, Defendants' contention ignores the fact that—as this Court has explicitly held— ***Defendants continued to make materially false and misleading claims after November 27, 2018.*** Specifically, in response to Aurelius Value reporting that Dorfman's companies were responsible for "roughly half of HIIQ's sales" and that a "material portion of HIIQ's 377,000 policies in force may . . . be contaminated by insurance fraud" (¶¶130-31), Defendants ***denied the accuracy of the report*** and minimized their connections to Dorfman and Simple Health. Indeed, among other things, Defendants falsely stated on December 20, 2018 that Dorfman's companies comprised just 8.2% of HIIQ's business, and that total and upheld DOI complaints decreased from 2017 to 2018. ¶¶128, 133, 198. Defendants reiterated these false denials in HIIQ's January 2019 Form 8-K, and made additional actionable false statements in March 2019. ¶¶200, 202. Defendants cannot

---

[3] Defendants' cases are no longer good law as they pre-date *Halliburton I. E.g., In re Fed. Nat'l Morg. Ass'n Sec., Deriv. & ERISA Litig.*, 247, F.R.D. 32, 39 (D.D.C. 2008) (making factual finding with respect to loss causation); *In re Am. Italian Pasta Co. Sec. Litig.*, 2007 WL 927745, at *4 (W.D. Mo. Mar. 26, 2007) (same); *Ak. Elec. Pen. Fund v. Pharmacia Corp.*, 2007 WL 276150, at *3 n.7 (Jan. 25, 2007) (same); *In re Ribozyme Pharm. Inc. Sec. Litig.*, 205 F.R.D. 572, 581 (D. Colo. 2001) (same); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J. 1984) (same). Defendants' reliance on *W. Va. Pipe Trades Health & Wel. Fund v. Medtronic, Inc.*, 325 F.R.D. 280 (D. Minn. 2018) is inapposite. The court shortened the class period in that case specifically because it found that "[a]n issue of reliance" would arise with respect to those who purchased a security between two corrective disclosures, noting that "without the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action." *Id*. at *293. Here, Defendants do not dispute that the market for HIIQ common stock was efficient—and that as a result, Plaintiffs are entitled to the fraud-on-the-market presumption of reliance, thus obviating any reliance-based arguments.

3

credibly claim that the full truth regarding their fraud was revealed in November 2018 (Opp. at 12-13), when Defendants continued to make false statements throughout the Class Period.[4]

*Third*, the evidence establishes that, contrary to Defendants' arguments, new information *was* released to the market after November 27, 2018, which directly sent HIIQ's share price plummeting 17.2% on March 13, 2019; 7.4% on March 25, 2019; and 7.6% on April 12, 2019. Specifically, the March 13, 2019 disclosure revealed Congress's conclusion, *after* an investigation, that HIIQ's practices were "disturbing" and "concerning," and that its products were "junk." ¶¶136-37. Likewise, Dorfman's March 25, 2019 filing in the FTC Action clearly revealed that HIIQ was well-aware of Simple Health's misconduct, and that HIIQ performed site visits not to ensure compliance, but to "protect business" (¶¶143-44)—a fact that Defendants have not denied—and far exceeds the mere "review[] . . . of sales calls' that Defendants claim. Opp. at 15-16. Similarly, the April 12, 2019 Receiver's Report revealed, among other things, that even after the FTC's TRO had been entered in November 2018, *HIIQ continued to violate it* by collecting money from Simple Health's victims (¶151)—a fact that Defendants notably fail to mention. The public disclosure of this new information revealing previously undisclosed facts concerning Defendants' fraud requires that the Class be certified through April 11, 2019. *In re Recoton Corp. Sec. Litig.*, 248 F.R.D. 606, 623 (M.D. Fla. 2006) ("[W]hen there are substantial questions as to the length of the class period, a broader time period should be certified").

*Fourth*, as numerous courts have explicitly recognized, the dramatic stock price declines

---

[4] Additionally, the Aurelius Value report could not have corrected Defendants' false statements regarding HIIQ's "high levels of compliance and customer satisfaction" (Opp. at 11-12) given the fact that Defendant Southwell continued to falsely boast of HIIQ's "best-in-class compliance [and] customer care." ¶202. Contrary to Defendants' misleading characterization, City of Birmingham did not admit that the full extent of Defendants' fraud was exposed in November 2018; a cursory review of the transcript reveals that the witness was being asked to speculate—under objection—as to why an investment manager with full discretionary authority sold HIIQ common stock. Cutting the Class Period short because one investment advisor chose to sell its holdings in a Company's stock that it viewed as untruthful—prior to the revelation of additional falsehoods to the market—provides no basis for shortening the Class Period.

that occurred after the corrective disclosures in March and April 2019 are compelling evidence that new, material information was released to the market on those days. Significantly, Defendants do not dispute that HIIQ stock suffered statistically significant declines on those days, and tellingly, Defendants offer ***no explanation*** whatsoever for these sharp declines in the Company's share price. Nor have Defendants submitted any expert analysis in support of their contention. Their failure to do so speaks volumes and fatally undermines their position that the full truth was already known to the market in November 2018. *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, 2017 WL 4297450, at *8 (D.S.C. Sep. 28, 2017) (refusing to shorten class period where later corrective disclosure caused share price decline of over 5%); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 359 (C.D. Cal. 2015) (refusing to shorten class period where plaintiffs "provided unrefuted evidence that [company's] stock price dropped after key revelations.").[5]

*Fifth*, Defendants' argument that their false statements after November 27, 2018 "had no material impact" (Opp. at 17 & n.7) asks the Court to conclusively determine materiality at the class certification stage, which the Supreme Court has expressly prohibited. *Amgen*, 568 U.S. at 469-70; *see also Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 4006661, at *14 (S.D. Fla. Mar. 16, 2016) (defendants' arguments that "the corrective disclosures cannot be linked to the alleged misstatements" are "simply repackaged assertion that the corrective disclosure was in fact not corrective. Thus the Court is unable to decouple Defendants' arguments from a materiality inquiry, which would impermissibly require the Court to scrutinize the underlying merits . . . ."). Moreover, Defendants' argument is directly belied by the fact that the market credited Defendants' false statements in December 2018 and January 2019, sending HIIQ's stock price rising over $13.00

---

[5] In *Regions*, the class period was shortened by a single day based on the incontrovertible fact that the timing of the final corrective disclosure was prior to the market opening, not on the basis that the alleged corrective disclosures were not corrective or that the information contained therein had previously been disclosed. 762 F.3d at 1261.

per share by early February 2019. ¶134.

*Sixth*, Defendants' argument that the Class Period should end on the date of the initial complaint is meritless. There is no alleged corrective disclosure on that date, and Defendants point to none. Indeed, courts routinely certify class periods that extend beyond the filing of an initial securities fraud complaint where, as here, Defendants not only continued to make materially false and misleading statements to the market after the initial complaint was filed, but previously undisclosed information also emerged after filing which revealed the full truth regarding defendants' fraudulent conduct. *E.g.*, *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1323 (N.D. Ga. 2007) (certifying class period ending August 18, 2001 when action originally filed on July 24, 2001); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 185 (E.D. Pa. 2001) (certifying class where "defendants misled the public . . . after the filing of the first complaint").[6]

*Finally*, Defendants' contention that OKMRF was "buying" HIIQ stock simply to extend the Class Period and claim additional damages is meritless. Defendants base this notion on nothing more than four HIIQ stock purchases in March 2019, after the initial complaint was filed but prior to the last corrective disclosure. Opp. at 18-19. Contrary to what Defendants contend, courts have repeatedly held that purchases made after partial corrective disclosures in no way render plaintiffs atypical or inadequate. *City of Sunrise Gen. Empl. Ret. Plan v. FleetCor Tech., Inc.*, 2019 WL 3449671, at *11 (N.D. Ga. 2019) (plaintiff not atypical where "largest purchase during the Class Period occurred the day after" the second of three partial disclosures); *Recoton*, 248 F.R.D. at 619 (purchase of 111,800 shares between first and second corrective disclosures does not render

---

[6] Defendants' contention that the filing of the initial complaint put investors on inquiry notice misapprehends the law. As discussed below, OKMRF's CEO testified that Counsel's investigation uncovered Defendants' continued fraudulent conduct after the initial complaint was filed. The date when investors were first put on notice that fraud may be occurring, thus triggering the statute of limitations, has no bearing here on the date when Defendants' fraud was finally revealed, on April 12, 2019.

6

plaintiff atypical). Indeed, there is nothing improper about OKMRF's March 2019 purchases here. OKMRF made *20* previous purchases of HIIQ common stock during the Class Period in 2018 and was significantly damaged as a result, which is more than sufficient to invalidate Defendants' absurd charge. ECF No. 7-2 (Certification of OKMRF). Moreover, OKMRF's CEO testified at her deposition that the March 2019 purchases were made ***before*** knowing that the Class Period would be extended. Rep. Ex. A at 210:16-211:15 (OKMRF deposition transcript excerpt).[7]

In sum, the record easily establishes that new, material information regarding HIIQ's fraud was disclosed to the market in March and April 2019. The Court should reject Defendants' attempt to truncate the length of the Class Period. Indeed, while Defendants' brief is silent on this issue, one of the principle reasons that Defendants seek to shorten the Class Period is undoubtedly because they want to avoid having the jury consider evidence of their egregious insider selling. Specifically, between February 1 and 13, 2019—just weeks after their false denials of the fraud caused HIIQ's share price to rise dramatically—Defendant Southwell sold $3.22 million worth of HIIQ stock despite previously never having sold any shares, and Defendant Hershberger sold over $2 million worth of stock, reducing his holdings by 56%. ¶¶134-35. The extremely suspicious nature of these sales underscores that Defendants knew full well that HIIQ stock remained inflated and would decline substantially once the full scope of the fraud was revealed.

### B.    Defendants' Remaining Arguments Fail

Defendants' remaining arguments regarding the *Affiliated Ute* presumption and the Class definition fail. Significantly, even if the Court were to accept these arguments—which it should

---

[7] Notably, Defendants do not contend that these purchases render OKMRF atypical. Defendants' citation to the pre-*Haliburton I* decision *In re CMS Energy Sec. Litig.*, 236 F.R.D. 338, (E.D. Mich. 2006) is unavailing. Opp. at 18. There, the court ruled that the post-complaint disclosures relating to "internal management controls" were categorically "not appropriately part of a securities litigation claim." 236 F.R.D.at 342. Defendants make no such argument here. The decision *In re Novatel Wireless Sec. Litig.*, 2010 WL 11470156 (S.D. Cal. May 12, 2010) (Opp. at 18) is inapposite as there were no alleged misstatements after the initial complaint was filed.

7

not—it does not change the fact that Defendants still concede that the Class should be certified.

*First*, the *Affiliated Ute* presumption of reliance applies. Defendants concede that they repeated certain of their false statements over time. Opp. at 17 n.7. The *Affiliated Ute* presumption applies in situations, as here, where defendants make confirmatory false statements and omissions. *Regions*, 762 F.3d at 1256 n.5 (district court's application of *Affiliated Ute* presumption to "confirmatory misrepresentations" "evidences good, reasoned judging" because it is an "affirmative representation that omits negative information.").[8]

*Second*, the Class definition should include those who "otherwise acquired" HIIQ common stock. Here the Class definition expressly requires that those who "acquired HIIQ common stock" to have been damaged by their purchase (Mot. at 3), while the class definition in *Aranaz v. Catalyst Pharm. Partners Inc.* did not. 302 F.R.D. 657, 663-64 (S.D. Fla. 2014). If those acquirers relied on the market price for HIIQ common stock in acquiring the shares—for example, in accepting HIIQ stock in exchange for services or as collateral—then they are entitled to damages. Accordingly, "acquirers" who were damaged are routinely included in class definitions certified in this Circuit. *E.g., Monroe Cty. Empl. Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 401 (N.D. Ga. 2019); *Local 703 v. Regions Fin. Corp.*, 2014 WL 6661918, at \*10 (N.D. Ala. Nov. 19, 2014).[9]

## III.    CONCLUSION

For the foregoing reasons and the reasons set forth in Lead Plaintiffs' Motion, Plaintiffs respectfully request that the Court grant Lead Plaintiffs' Motion in its entirety.

---

[8] Even if the Court were to find that the *Affiliated Ute* presumption does not apply, the Class is still nevertheless entitled to rely on *Basic*'s fraud-on-the-market presumption, which Defendants do not challenge.

[9] "Defendants may at the appropriate stage introduce evidence demonstrating the lack of market reliance by a given class member." *Tapken v. Brown*, 1992 WL 178984, at \*32 (S.D. Fla. Mar. 13, 1992).

Dated: August 13, 2020

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Brandon T. Grzandziel*
Maya Saxena (Fla. Bar 35494)
Joseph E. White, III (Fla. Bar 621064)
Brandon T. Grzandziel (Fla. Bar 58732)
Adam Warden (Fla. Bar 873691)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
brandon@saxenawhite.com
awarden@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street
8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the
Class*

**ABRAHAM, FRUCHTER AND
TWERSKY, LLP**

Mitchell M.Z. Twersky (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Additional Counsel*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2020, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

/s/ Brandon T. Grzandziel
Brandon T. Grzandziel