**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated, | CASE NO. 8:19-CV-00421-WFJ-CPT |
| Plaintiff, | CLASS ACTION |
| v. | |
| HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER, | |
| Defendants. | |

**LEAD PLAINTIFFS' MOTION FOR RECONSIDERATION**
**OF THE COURT'S AUGUST 28, 2020 ORDER [ECF No. 90]**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 3

      A.    The Court Should Reconsider its Class Certification Order ............................ 3

      B.    The Court Should Certify the Class Period as Alleged in Plaintiffs'
            Complaint to Correct Clear Error ................................................................... 4

III.  CONCLUSION ........................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
568 U.S. 455 (2013) ........................................................................................ 2, 6

*Busby v. JRHBW Realty, Inc.*,
513 F.3d 1314 (11th Cir. 2008)............................................................................ 6

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........................................................................................ 2, 6

*FindWhat Inv'r Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011)................................................................... *passim*

*Gomes v. Portfolio Recovery Assoc's., LLC*,
2018 WL 7820545 (S.D. Fla. Dec. 14, 2018) ..................................................... 4

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ........................................................................ 7

*In re CMS Energy Sec. Litig.*,
236 F.R.D. 338, (E.D. Mich. 2006)...................................................................... 6

*In re Dynegy, Inc. Sec. Litig.*,
226 F.R.D. 263 (S.D. Tex. 2005) ..................................................................... 5, 7

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ........................................................................ 5

*In re Novatel Wireless Sec. Litig.*,
2010 WL 11470156 (S.D. Cal. May 12, 2010) ................................................... 6

*In re Oxford Health Plans, Inc.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................ 5

*In re Recoton Corp. Sec. Litig.*,
248 F.R.D. 606 (M.D. Fla. 2006)......................................................................... 9

*In re SCOR Holding (Switzerland) AG Litig.*,
537 F. Supp. 2d 556 (S.D.N.Y. 2008).......................................................... 2, 5, 7

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
 2017 WL 2062985 (S.D.N.Y. May 15, 2017)....................................................................... 7

*Keippel v. Health Ins. Innovations, Inc.*,
 2019 WL 5698329 (M.D. Fla. Nov. 4, 2019)............................................................... 1, 2, 9

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*,
 762 F.3d 1248 (11th Cir. 2014)........................................................................................ 7

*Schleicher v. Wendt*,
 618 F.3d 679 (7th Cir. 2010)........................................................................................... 4

*Shin v. Cobb Cty. Bd. of Educ.*,
 248 F.3d 1061 (11th Cir. 2001)....................................................................................... 3

*W. Va. Pipe Trades Health & Wel. Fund v. Medtronic, Inc.*,
 325 F.R.D. 280 (D. Minn. 2018)...................................................................................... 5

**RULES**

Fed. R. Civ. P.
 23(c)(1)(C) ................................................................................................................... 1, 3
 54(b) ............................................................................................................................... 1

Pursuant to Fed. R. Civ. P. 23(c)(1)(C) and 54(b), Lead Plaintiffs respectfully move for reconsideration of the Court's August 28, 2020 Order (the "Class Certification Order" [ECF No. 90]).[1]

## I.     INTRODUCTION

Plaintiffs seek reconsideration of the Court's Class Certification Order to correct clear errors of law and prevent manifest injustice. Specifically, on May 21, 2020, Plaintiffs moved for certification of a Class consisting of all persons or entities who purchased or otherwise acquired HIIQ common stock between September 25, 2017 and April 11, 2019 (the "Proposed Class Period")—the same Class Period as alleged in the operative Complaint, which the Court sustained in its entirety in its Order denying Defendants' motion to dismiss. *Keippel v. Health Ins. Innovations, Inc.*, 2019 WL 5698329 (M.D. Fla. Nov. 4, 2019). On August 28, 2020, the Court ruled that the Class Period should end on February 18, 2019—the date that the initial complaint was filed in this Action (the "Shortened Class Period"). Reconsideration of the Class Certification Order is warranted under these circumstances for several reasons.

*First*, the Court's determination that the Shortened Class Period should end on February 18, 2019 constitutes a clear error of law. Indeed, it is undisputed that no corrective disclosure occurred on that date. As numerous courts around the country have held, class periods must

---

[1] Lead Plaintiffs are Oklahoma Municipal Retirement Fund ("OKMRF") and City of Birmingham Retirement and Relief System ("City of Birmingham") (together, "Lead Plaintiffs" or "Plaintiffs"). This Action asserts claims against Defendants Health Insurance Innovations, Inc. ("HIIQ" or the "Company") n/k/a Benefytt Technologies, Inc., Gavin Southwell, and Michael D. Hershberger (collectively, "Defendants"). Unless otherwise noted herein: (i) capitalized terms and abbreviations have the same meanings as in the Consolidated Class Action Complaint (the "Complaint," [ECF No. 30]); (ii) references to "¶__" refer to paragraphs of the Complaint; (iii) all emphasis is added; and (iv) all internal citations and quotation marks are omitted.

1

end on the final corrective disclosure of the alleged fraud, because that is the date when the company's share price is no longer artificially inflated by prior false statements. *See, e.g., FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011); *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 583 (S.D.N.Y. 2008).

*Second*, the inquiry notice standard that the Court applied in the Class Certification Order is erroneous. The reasoning that the filing of the initial complaint should limit Class members' claims incorrectly conflates concepts relating to the statute of limitations with a determination of whether news of Defendants' fraud was fully revealed to the market, which under binding Supreme Court precedent is inappropriate at the class certification stage. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 469-70 (2013); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). This conflation is particularly prejudicial to Class Members here because Defendants continued to make actionable false statements denying the fraud in March 2019, and because the Court has already determined that corrective disclosures occurred in March and April 2019. *Keippel*, 2019 WL 5698329, at **3-5, 9.

*Third*, OKMRF's post-February 18, 2019 purchases should not impact the Class Period's end date. Defendants do not contest, and the Court has made no finding, that these purchases render OKMRF atypical or inadequate. Indeed, as OKMRF's CEO testified under oath, those purchases were made ***without knowledge*** that the Class Period would be extended through April 2019, and by a third-party investment manager who likewise was unaware of the litigation proceedings at the time of the transactions. Truncating the Class Period based on these purchases would prejudice all other Class Members who purchased shares both before and after this date with no knowledge of this Action.

*Finally*, reconsideration of the Class Certification Order is appropriate to prevent manifest injustice. The Shortened Class Period includes Defendants' false statements in December 2018 and January 2019 (which the Court held were actionable in denying Defendants' motion to dismiss) but excludes the alleged corrective disclosures that occurred in March and April 2019. Because there was no corrective disclosure and corresponding stock price drop on February 18, 2019, investors who purchased HIIQ shares in reliance on Defendants' December 2018 and January 2019 false statements, but before February 18, 2019, will be unable to recover any damages attributable to such purchases. *FindWhat*, 658 F.3d at 1315 (only after a corrective disclosure will "investors who purchased at inflated prices (and who still hold their stock) . . . suffer economic loss.").

Accordingly, Plaintiffs respectfully request that the Court reconsider its Class Certification Order and certify Plaintiffs' Proposed Class Period, which ranges from September 25, 2017 to April 11, 2019.

## II.   ARGUMENT

### A.   The Court Should Reconsider its Class Certification Order

Under Fed. R. Civ. P. 23(c)(1)(C), "[a]n order that grants or denies class certification may be altered or amended before final judgment." Motions for reconsideration are especially suitable for orders addressing class certification. *Shin v. Cobb Cty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001) ("Because the district court retains the ability, and perhaps even a duty, to alter or amend a certification decision, a motion for reconsideration of a class certification order is a better way to correct any errors in the certification order").

Courts have established "three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Gomes v. Portfolio Recovery Assoc's., LLC*, 2018 WL 7820545, at *1 (S.D. Fla. Dec. 14, 2018).

### B. The Court Should Certify the Class Period as Alleged in Plaintiffs' Complaint to Correct Clear Error

The Court should reconsider the Class Certification Order to correct clear error and prevent the manifest injustice that would occur if the Shortened Class Period stands, which would result in injured Class Members having no remedy for their damages.

*First*, the Class Certification Order clearly errs by ending the Class Period on February 18, 2019, which is the date that the initial complaint was filed. ***It is undisputed, however, that no corrective disclosure occurred on that date***. It is necessary that a class period in a securities fraud case end on the final corrective disclosure, because that is the date on which the truth regarding a defendant's fraud is finally revealed to the market, and the company's share price reacts to remove any artificial inflation introduced into the price by previous false statements. *FindWhat*, 658 F.3d at 1310 ("If and when the misinformation is finally corrected by the release of truthful information, the market will recalibrate the stock price to account for this change in information, eliminating whatever artificial value it had attributed to the price"); *Schleicher v. Wendt*, 618 F.3d 679, 683 (7th Cir. 2010) (Easterbrook, J.) ("When an unduly

4

optimistic false statement causes a stock's price to rise, the price will fall again when the truth comes to light.").[2]

Indeed, Defendants never identified any purported corrective disclosure on February 18, 2019, nor did they ever claim that the initial complaint itself was a corrective disclosure; neither does the Class Certification Order state that the initial complaint was a corrective disclosure. Ending the Class Period on a day on which there is no corrective disclosure contradicts the decisions of courts throughout the country which hold that class periods in securities fraud actions must end on a corrective disclosure. *E.g., SCOR Holding*, 537 F. Supp. 2d at 583 ("It is appropriate to end the class period when the market was cured,—*i.e.,* when the full truth has been disclosed to the market and the natural market forces have had a reasonable period of time to receive, digest *and reflect the bad news in the market price* of the security"); *In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 378 (S.D.N.Y. 2000) (same); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 292 (S.D. Tex. 2005) (rejecting earlier class period end-date where the market did not reflect the bad news found in the purported disclosures); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 114 (E.D.N.Y. 2012) ("At this early stage in the proceedings, it is inappropriate for the Court to adjudicate whether the truth regarding Gentiva's alleged fraud had fully been disclosed to *and reflected by the market* by a specified date").[3]

---

[2] Here, there could be no price reaction at all on February 18, 2019, as the stock markets were closed in observance of President's Day.

[3] The opinion in *W. Va. Pipe Trades Health & Wel. Fund v. Medtronic, Inc.*, 325 F.R.D. 280 (D. Minn. 2018), cited in the Order, supports reconsideration. Order at 3. There, the court held that under Supreme Court precedent a district court must set "the end of the class period at the date of the corrective disclosure." *Id.* at 292 n.2. This is an uncontroversial proposition, as the

*Second*, reconsideration is appropriate because the Court applied an incorrect standard when it found that the market had "prior notice" or "inquiry notice" of Defendants' fraudulent statements as a result of the initial complaint. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008) (applying the wrong legal standard when evaluating class certification is an abuse of discretion). Inquiry notice, a concept related to the commencement of a statute of limitations, is not relevant to the question of when the Class Period should end here because Defendants continued to make false and misleading statements on March 6, 2019 (¶¶202-03) and corrective disclosures occurred on March 13, March 25, and April 11, 2019 (¶¶224-26)—*after* the filing of the initial complaint in February. Ending the Class Period prior to these false statements and corrective disclosures requires the Court to make conclusive findings that the false statements were not material and that the corrective disclosures did not release new information to the market—two areas of inquiry that the Supreme Court has expressly forbidden at the class certification stage. *Amgen Inc.*, 568 U.S. at 469-70; *Halliburton*, 563 U.S. at 809.

---

Eleventh Circuit has explained. *FindWhat*, 658 F.3d at 1310. Although the *Medtronic* court ultimately held that the earlier disclosure constituted the "corrective disclosure" sufficient to end the class period, the case is entirely distinguishable on that point. The plaintiffs there did not allege that the company made *any* misrepresentations after the initial disclosure, and therefore, the market did not reflect any inflationary value from post-disclosure statements. Similarly, the decision *In re Novatel Wireless Sec. Litig.*, 2010 WL 11470156 (S.D. Cal. May 12, 2010) (Order at 4) is inapposite as there were no alleged misstatements after the initial complaint was filed. Nor should the opinion in *In re CMS Energy Sec. Litig.*, 236 F.R.D. 338, (E.D. Mich. 2006) (Order at 4) sway the Court. There, the court ruled that the post-complaint disclosures relating to "internal management controls" were categorically "not appropriately part of a securities litigation claim." 236 F.R.D. at 342. Defendants advanced no such argument here.

Accordingly, where, as here, a defendant makes "reassuring statements" after the supposed inquiry notice arose, each statement must be analyzed in its complete particular context. *SCOR Holding*, 537 F. Supp. 2d at 581 ("A claim for securities fraud under the Exchange Act arises each time a defendant, in connection with the purchase or sale of securities, ma[kes] a materially false statement or omit[s] a material fact, with scienter. . . ."). As such, the concept of general inquiry notice "sheds little light on whether reasonable reliance can be established" for shareholders "who purchased after such inquiry notice arose." *Id*; *see also Dynegy, Inc.*, 226 F.R.D. at 292 (rejecting the date of inquiry notice as the ending date for the class period); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at \*7 (S.D.N.Y. May 15, 2017) ("[C]ourts repeatedly have refused to shorten a class period based on alleged inquiry notice."); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 291 (S.D.N.Y. 2008) (same).

*Third*, OKMRF's March 2019 purchases should not impact the Class Period's end date. Significantly, ***Defendants never asserted, and the Court did not find***, that these purchases rendered OKMRF atypical of the Class or inadequate to serve as a class representative. Nor could Defendants make any such argument. *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014) ("[R]eliance on the integrity of the market prior to disclosure of alleged fraud (i.e. during the class period) is unlikely to be defeated by postdisclosure reliance on the integrity of the market.").

OKMRF's CEO testified under oath that the March 2019 purchases were made at a time when OKMRF did not know the Consolidated Complaint would allege a broader class period. Cox Trans. 210:16-211:15 [ECF No. 84-1]. Moreover, as explained at the hearing, OKMRF's investment managers had discretion regarding the ability to purchase shares and

did not consult with OKMRF prior to any particular transaction, including the March 2019 purchases. Hearing Trans. [ECF No 88] at 7:20-10:10; Cox Trans. (Ex. A to the accompanying Declaration of Brandon T. Grzandziel in Further Support of this Motion) at 89:8-24, 101:2-17, 172:1-3. Defendants had every opportunity to depose the OKMRF investment manager responsible for the March 2019 purchases but failed to do so. Indeed, far from being "bothersome," the notion that these purchases were made with the intent to participate in this Action requires a series of implausible assumptions that: (i) OKMRF instructed its investment advisor to specifically purchase shares of HIIQ, despite sworn testimony to the contrary; (ii) OKMRF knew at the time these purchases were made that the Class Period would be extended through April 2019, despite sworn testimony to the contrary; (iii) OKMRF's investment manager made these purchases with an intent to lose money, in complete violation of its fiduciary duties to OKMRF and its other clients; and (iv) OKMRF and its investment manager—but not any other market participant, including hedge funds, investment banks, and analysts—knew that corrective information would be released to the market by Steven Dorfman and the FTC Receiver after these purchases were made. The purchases made through March 2019 are alleged to have caused OKMRF and other Class Members damages and should therefore be included in this Action. *FindWhat*, 658 F.3d at 1315 ("Every investor who purchases at an inflated price—whether at the beginning, middle, or end of the inflationary period—is at risk of losing the inflationary component of his investment when the truth underlying the misrepresentation comes to light.").

*Fourth*, the February 18, 2019 end date results in manifest injustice by preventing numerous injured Class Members from obtaining relief. In ending the Class Period on February

8

18, 2019, the Court made no finding that Defendants' false and misleading statements in December 2019 (¶¶195,197-98), January 2019 (¶200), and March 2019 (¶202) were not actionable—all statements that the Court held ***were actionable*** in its Order denying Defendants' motion to dismiss. *Keippel*, 2019 WL 5698329, at \*\*3-5, 9. Accordingly, investors who purchased HIIQ stock in reliance on these false and misleading statements— including the December 20, 2018 and January 7, 2019 statements that are ***still within the certified Class Period***—were injured when HIIQ's share price precipitously fell in direct response to the three corrective disclosures in March and April 2019, but have no way to recover their damages because those disclosures were excluded from the Shortened Class Period and there was no corrective disclosure or price reaction on February 18, 2019. Without a corresponding price decline, Class Members who purchased between November 27, 2018 and February 18, 2019 are simply stuck with their fraudulently overpriced investments. *See FindWhat*, 658 F.3d at 1315 (only after a corrective disclosure will "investors who purchased at inflated prices (and who still hold their stock) . . . suffer economic loss.").

In sum, because there was no price reaction on February 18, 2019, any doubts as to the ending date of the Class Period must be resolved in favor of the Proposed Class Period that ends on April 11, 2019. *In re Recoton Corp. Sec. Litig*., 248 F.R.D. 606, 623 (M.D. Fla. 2006) ("[W]hen there are substantial questions as to the length of the class period, a broader time period should be certified.").

## III.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court reconsider its August 28, 2020 Order certifying the Shortened Class Period and certify the Proposed Class

9

Period of September 25, 2017 through April 11, 2019.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that counsel for Lead Plaintiffs conferred with counsel for Defendants, and Defendants oppose the relief requested herein.

Dated: September 11, 2020

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Brandon T. Grzandziel*
Maya Saxena (Fla. Bar 35494)
Joseph E. White, III (Fla. Bar 621064)
Brandon T. Grzandziel (Fla. Bar 58732)
Adam Warden (Fla. Bar 873691)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
brandon@saxenawhite.com
awarden@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street
8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Class*

**ABRAHAM, FRUCHTER AND TWERSKY, LLP**

Mitchell M.Z. Twersky (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Additional Counsel*

10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 11, 2020, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

/s/ Brandon T. Grzandziel
Brandon T. Grzandziel