**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER,<br><br>     Defendants. | CASE NO. 8:19-CV-00421-WFJ-CPT<br><br>CLASS ACTION |

**DECLARATION OF BRANDON T. GRZANDZIEL**
**IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR**
**RECONSIDERATION OF THE COURT'S AUGUST 28, 2020 ORDER**

I, Brandon T. Grzandziel, declare as follows:

1.      I am a Director of Saxena White P.A., Court-appointed Lead Counsel for Lead Plaintiffs, Class Representatives Oklahoma Municipal Retirement Fund ("OKMRF") and City of Birmingham Retirement and Relief System ("City of Birmingham") (together, "Lead Plaintiffs"), and the Class.  I respectfully submit this Declaration in further support of Lead Plaintiffs' Motion for Reconsideration of the Court's August 28, 2020 Order.

2.      Attached as Exhibit A is a true and correct copy of excerpts from the deposition of Lead Plaintiff Oklahoma Municipal Retirement Fund's Rule 30(b)(6) representative, Jodi Cox.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: September 11, 2020.                    */s/ Brandon T. Grzandziel*
                                               Brandon T. Grzandziel

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 11, 2020, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

*/s/ Brandon T. Grzandziel*
Brandon T. Grzandziel

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.:  8:19-cv-00421-WFJ-CPT

JULIAN KEIPPEL, Individually and on
behalf of all others similarly situated,

        Plaintiff,

vs.

HEALTH INSURANCE INNOVATIONS,
INC., n/k/a BENEFYTT TECHNOLOGIES,
INC., et al.,

        Defendants.
_____

                    ***  CONFIDENTIAL  ***

               V I D E O   D E P O S I T I O N

                            o f

                          JODI COX

                taken on behalf of Defendants


        DATE:           June 23, 2020

        TIME:           10:06 a.m. to 5:15 p.m.

        PLACE:          ***  REMOTE  ***

        BEFORE:         Dawn A. Hillier, RMR, CRR, CLR
                        Notary Public - State of
                        Florida, at Large

        JOB NO:         301189

APPEARANCES:

ATTORNEYS FOR PLAINTIFF

     BRANDON GRZANDZIEL, ESQUIRE (remote)
     SAXENA WHITE, P.A.
     7777 Glades Road, Suite 300
     Boca Raton, Florida  33434
     561.206.6713
     brandon@saxenawhite.com


ATTORNEYS FOR DEFENDANTS

     CHRISTINA KENNEDY, ESQUIRE (remote)
     MICHAEL P. MATTHEWS, ESQUIRE (remote)
     NATHAN IMFELD, ESQUIRE (remote)
     FOLEY & LARDNER, LLP
     100 North Tampa Street, Suite 2700
     Tampa, Florida  33602
     813.229.2300
     ckennedy@foley.com
     mmatthews@foley.com



ALSO PRESENT:

     Stephanie Scott, paralegal to Foley & Lardner
     Alexsis Jackson
     Lee Utterback, videographer
     Jon Bortolini, document technician

CONFIDENTIAL

Transcript of Jodi Cox
Conducted on June 23, 2020                    89

also be a variety of industries, perhaps, represented?

A    Correct.  Industries and sectors.  That's correct.

Q    Okay.  And you also were starting to discuss the concept of discretion for the different money managers?

A    Yes.

Q    So what kind of discretion does a money manager have under the investment policy?

A    They have --

MR. GRZANDZIEL:  Objection.

THE WITNESS:  Oh.  Go ahead, Brandon.

MR. GRZANDZIEL:  Go ahead.

THE WITNESS:  They have full discretion over who they are going to invest with.  But we provide them the investment policies and guidelines on an annual basis.  We ask that they acknowledge that they reviewed our guidelines and that they could adhere to our guidelines.

But we never get involved with picking and choosing underlying investments.  That is why we hire them.  That's their job.  They are a fiduciary as well.  In our contracts, we ask them to be a fiduciary as well.

CONFIDENTIAL

Transcript of Jodi Cox
Conducted on June 23, 2020                                    101

A    100 percent.

Q    Okay.  Okay.  In terms of the particular securities that the money managers will invest in, does Oklahoma -- and I had been doing so good.  Let me rephrase.

In terms of the particular money managers -- I'm going to start that one more time.  We'll try this -- a third time, hopefully, is a charm.

So in terms of the securities that the particular money managers invest in, does OMRF do any type of independent financial due diligence on those companies?

MR. GRZANDZIEL:  Objection to form.

THE WITNESS:  No, we don't.  We receive our own -- we receive the reports.

But, no, we do not.  Again, it is 100 percent up to the money manager's discretion.

BY MS. KENNEDY:

Q    Okay.  And you said "receive the reports." Which reports are you talking about?

A    We require them under our investment policies and guidelines under the communications section for them to send quarterly reports.

Even though they don't come before our board, we ask them to report on a quarterly basis.  We ask them

CONFIDENTIAL

Transcript of Jodi Cox

Conducted on June 23, 2020                    172

A    I would like to correct something:  Realize OMRF never does the purchasing.  It's our money managers that purchase.

However, yes, he can look at the portal.  He can look at the quarterly reports out on the portal.  Or when a manager comes in, as you can see, in their report to us, they'll give us their holdings or sometimes it's just their top 15 or 20 holdings.

Q    Okay.  Okay.  And so --

A    He reads the reports.

Q    And I know earlier you do -- when we looked at that one email, you knew based off your review from the TimesSquare statement, that there had been a sell.

So I take it he would do something similar to that.  He just recalls the information?

MR. GRZANDZIEL:  Object.

THE WITNESS:  I would say I can't speak on behalf of Jim, but he's very observant.  So, yes, I think he could --

BY MS. KENNEDY:

Q    Okay.

A    -- come to the same conclusion as I do as he reads through the monthly or quarterly reports.

Q    Okay.  And so if I'm looking back again at, I believe it's 21, which is the 6/25 email, you know,

CONFIDENTIAL

Transcript of Jodi Cox
Conducted on June 23, 2020                                    210

BY MS. KENNEDY:

Q    Okay.  So let's see.  Let me see if I can orient yourself here because it's not that you didn't know that River Road owned HIIQ stock; right?

MR. GRZANDZIEL:  Objection to form.

THE WITNESS:  Of course it was listed in their quarterly report as we saw earlier.

BY MS. KENNEDY:

Q    Right.

A    I didn't -- I didn't know that it was inside an extended class period, perhaps, at one point during this process.  But again, you have to go from A to B. So the first complaint we complied with the schedule. And we extended the complaint, and we provided the schedule.

Q    Okay.  So and we looked in emails earlier where Ms. Stewart was reaching into Northern Trust -- right? -- in order to identify the TimesSquare holdings.  Do you remember those?

A    Yes.  Because that was inside the initial class period, yes.

Q    Okay.  So we know at least as of that date that the class period had not been extended; is that right?

A    Correct.  It only was extended after

CONFIDENTIAL

Transcript of Jodi Cox
Conducted on June 23, 2020                                    211

Saxena White did their thorough investigation.

Q    Right.  And that's exactly what I'm trying to hone in on, is just when that happened.  Because I have the April 22nd filing, which was the motion for -- and then I have board minutes, you know, at the end of each month.

And so I'm trying to orient in time when that would have happened, so I can understand how the documents line up.

A    I would -- once we were appointed co-lead plaintiff in May, May 13th of 2019, that is when Saxena White started doing their thorough investigation.

So between May 13th and July 17th, I definitely knew the extent -- the class period had been extended.

Q    Okay.  Okay.  Because when you received, for example, statements from River Road that had HIIQ on them, you would have raised your hand and said, Hey, these need to be on the schedules; right?

A    No, because the initial schedule had already been filed.  These purchases were done after the initial class action period in the initial complaint.

Q    Understood.  And what I'm getting at is obviously I -- I'm sorry?

A    I'm not understanding what you're asking me.