UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JULIAN KEIPPEL, Individually and on
behalf of all others similarly situated,

            Plaintiff,

v.

HEALTH INSURANCE INNOVATIONS,
INC. n/k/a BENEFYTT TECHNOLOGIES,
INC., GAVIN SOUTHWELL, and
MICHAEL D. HERSHBERGER,

            Defendants.

Case No.   8:19-cv-00421-WFJ-CPT

**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THE COURT'S CLASS CERTIFICATION ORDER AND
INCORPORATED MEMORANDUM OF LAW**

Defendants Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, Inc.,

("HIIQ"), Gavin Southwell, and Michael D. Hershberger oppose Lead Plaintiffs Oklahoma

Municipal Retirement Fund's ("OMRF") and City of Birmingham Retirement and Relief

System's ("BRRS") Motion for Reconsideration (Dkt. 94, "Motion" or "Mot.") of the Court's

August 28, 2020 Order granting class certification with a class period ending on February 18,

2019, the date of the filing of this action (Dkt. 90, "Order").

Lead Plaintiffs come nowhere close to satisfying the exceedingly high bar for motions for

reconsideration. They present no newly discovered evidence and no intervening change in

controlling law, instead merely re-litigating the same arguments the Court already rejected or

asserting arguments they could have raised but failed to raise before, which are now waived. In

fact, in trying (in vain) to distinguish the key cases the Court relied on in the Order (at 4), *In re

Novatel* and *In re CMS*, Lead Plaintiffs do nothing more than copy and paste word for word the

1

identical arguments from their Reply in support of their class certification motion. *Compare* Mot. at 5-6 n.3 *with* Reply (Dkt. 83) at 7 n.7. And Lead Plaintiffs repeat the same legal errors they made before, for example, citing only the 2011 *Halliburton I* Supreme Court case (Mot. at 2, 6) but failing to cite the more recent, on-point 2014 *Halliburton **II*** Supreme Court case affirming that plaintiffs bear "the burden of proving – before class certification" the "market timing" element of the *Basic* presumption, *Halliburton II,* 573 U.S. 258, 276 (2014), which element this Court correctly held means the "class period ends 'when curative information is publicly announced or otherwise effectively disseminated to the market.'" (Order at 3, citing *W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 291 (D. Minn. 2018).)

While Lead Plaintiffs' new angles on their arguments and additional cases could have been raised before and thus should be disregarded as waived, none of them warrant reconsideration in any event. For example, Lead Plaintiffs paradoxically argue that the Court may not consider loss causation at this stage (which it did not) while they also argue for reconsideration because of a lack of "price reaction" caused by the filing of this case on President's Day 2019 when the markets were closed, which no authority supports. *See, e.g., Medtronic*, 325 F.R.D. at 295 ("the Court need not consider whether there was a decrease in stock price"). Lead Plaintiffs' Motion should be denied.

## **ARGUMENT**

### I.    STANDARD OF REVIEW.

Reconsideration is an "extraordinary remedy to be employed sparingly." *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC,* No. 8:10-CV-2008, 2013 WL 149649, at *1 (M.D. Fla. Jan. 14, 2013). "A motion for reconsideration must demonstrate why the court should reconsider its past decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* There are three recognized grounds for reconsideration: (1) an

2

intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Mills v. Foremost Ins. Co.*, No. 8:06-CV-00986, 2010 WL 4840050, at *2 (M.D. Fla. Nov. 23, 2010). Lead Plaintiffs argue only the third.

"To demonstrate clear error, or manifest injustice, 'the movant must do more than simply restate his or her previous arguments, and any arguments the movant failed to raise in the earlier motion will be deemed waived.'" *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) (citation omitted); *see also Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 684 (S.D. Fla. 2007) ("[T]o the extent Plaintiff ... tries to raise new arguments and point to new evidence that could have been raised earlier, this is insufficient grounds to satisfy the clear error or manifest injustice standard for granting a motion for reconsideration."). "Clear error or manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.... Such problems rarely arise and the motion to reconsider should be equally rare." *Mierzwicki v. Citigroup, Inc.*, No. 14-CV-61753, 2015 WL 13388667, at *2 (S.D. Fla. Oct. 13, 2015) (quoting *Campero*, 916 F. Supp. 2d at 1292-93).

These limitations apply with equal force to motions for reconsideration of class certification orders. *See, e.g., Mills*, 2010 WL 4840050, at *2 (denying motion for reconsideration of denial of class certification order where the plaintiffs "[s]imply want another at-bat, something this Court will not permit"). In particular, motions for reconsideration of class certification orders on the basis of alleged clear error or manifest injustice should be denied when they re-argue the same points previously raised. *Stalley v. ADS All. Data Sys.*, Inc., 296 F.R.D. 670, 687 (M.D. Fla. 2013) (denying plaintiffs' motion to reconsider class certification order where the plaintiffs failed "to demonstrate that reconsideration is necessary to prevent

3

manifest injustice or clear error" because plaintiffs only provided "this Court with additional in-depth analysis in an attempt to relitigate issues already decided by the Court"); *Baez v. LTD Fin. Servs.*, L.P., No. 615-CV-1043-ORL-40-TBS, 2016 WL 11594585, at *1 (M.D. Fla. Oct. 4, 2016) (denying motion for reconsideration, stating that "although Defendant couches its motion for reconsideration in terms of correcting clear error and manifest injustice, Defendant does nothing more than re-argue the positions it raised in opposition to class certification and vent its dissatisfaction with the Court's ruling," which is not appropriate for reconsideration).[1]

## II.   LEAD PLAINTIFFS FAIL TO SATISFY THEIR HEAVY BURDEN TO DEMONSTRATE THAT RECONSIDERATION OF THE COURT'S CLASS CERTIFICATION ORDER IS WARRANTED.

Lead Plaintiffs advance four arguments for reconsideration, all of which they raised before, and none of which have merit for the reasons Defendants previously explained in the following record cites and as further set forth below: (1) there allegedly was no corrective disclosure and no "price reaction" on February 18, 2019, and *Novatel* and *CMS* are distinguishable (Mot. at 1-2, 4-6, Reply (Dkt. 83) at 1, 4-7, and Aug. 25, 2020 Hrg. Tr. (Dkt. 88, "Tr.") at 13, 22-23, 57, 62-66; Def. Opp. (Dkt. 80) at 17-19 and Tr. at 40-41, 45-47, 54); (2) the "inquiry notice" standard conflates concepts with the statute of limitations and cannot be applied at this stage because of *Halliburton I* and *Amgen* (Mot. at 2, 6, Reply at 1, 3-4, 6, and Tr. at 15-16, 24, 57; Def. Opp. at 9-10, 13-14 and Tr. at 34-38, 42-47); (3) OMRF's post-Complaint purchases of HIIQ stock do not render it atypical or inadequate and were not made to participate in this action (Mot. at 2, 7-8, Reply at 6-7, and Tr. at 7-11; Def. Opp. at 17-19 and Tr. at 41-43, 51, 53-54); and (4) some purchasers might not recover damages because there was no "price

---

[1] Lead Plaintiffs cite *Shin v. Cobb Cty. Bd. Of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001), but that case did not rule on a motion for reconsideration, nor did it hold that motions for reconsideration were "especially suitable" for class certification. (Mot. at 3.) *Shin* simply holds that tolling the time to appeal during the pendency of a motion for reconsideration is preferable to requiring an immediate petition for interlocutory appeal. 248 F.3d at 1064.

4

reaction" on February 18, 2019 when markets were closed (Mot. at 3, 8-9, and Tr. at 66; Def. Opp. at 17 n.8, 18-19 and Tr. at 41-42; Tr. at 27. Defendants will not repeat the arguments here, but address below only Lead Plaintiffs' new angles on their arguments and additional cases.

A.      **The Court did not commit clear error by determining that the proper end date for the class is February 18, 2019, when the markets happened to be closed for President's Day.**

Lead Plaintiffs cite five additional cases, all of which are old cases that could have previously been cited, in an attempt to argue that the Court's determination of the end date of the class is clear error because HIIQ's stock price did not fall that day in reaction to a corrective disclosure, as the markets were closed that day for President's Day. That is not the law. By that theory, corrective information could only come out between 9:30am-4pm Eastern time on non-holiday weekdays when markets are open, which there is no case law to support. *See, e.g., Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1261 (11th Cir. 2014) (shortening class period because the "corrective disclosure on January 20 was made before the market opened for trading"); *In re Vesta Ins. Grp., Inc., Sec. Litig.*, No. 98-CV-1407, 1999 WL 34831475 (N.D. Ala. Oct. 25, 1999) (certifying class period ending on Sunday, June 28, 1998), *amended on other grounds*, *In re Vesta Ins. Grp., Inc. Sec. Litig.*, No. CV-98-BE-1407-S, 2008 WL 11381802 (N.D. Ala. July 22, 2008). A stock price decrease on a class period end date is not required. *Medtronic*, 325 F.R.D. at 295 ("the Court need not consider whether there was a decrease in stock price"); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-WODS, 2007 WL 927745, at *4 (W.D. Mo. Mar. 26, 2007) ("the date of 'full correction' need not coincide with the stock price's absolute nadir").

Moreover, the Motion cites no cases contrary to the *CMS* and *Novatel* cases holding that "the appropriate class end date is … when the alleged securities violations were disclosed through the commencement of this action." *Novatel*, 2010 WL 11470156, at *7; *CMS*, 236

5

F.R.D. at 342 (same). The Complaint filed on February 18, 2019 in this case disclosed quite a bit to the market. That Complaint asserted publicly that Defendants HIIQ, Mr. Southwell, and Mr. Hershberger committed securities fraud by making materially false and misleading statements and omissions revealed to be false by Simple Health's and its principal Steven Dorfman's fraud that left "tens of thousands of consumers who thought they had purchased comprehensive health insurance without such coverage." (Dkt. 1 ¶ 29.) The alleged misstatements included "positive" statements about the company and its operations and the statement that Simple sold "less than 10%" of HIIQ's submitted policies in year to date 2018. (Dkt. 1 ¶¶ 26, 28.)

Lead Plaintiffs ignore all this and instead cite *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1310 (11th Cir. 2011), but that was not a class certification ruling, let alone a ruling regarding the proper end date of a class period. Rather, in the course of reviewing the district court's orders on motions to dismiss and summary judgment, the court simply noted that "[i]f and when" misinformation is corrected the market "will" recalibrate the stock price so it is no longer artificially inflated, which Lead Plaintiffs say makes this Court's Order clear error because the markets were closed on February 18, 2019 (Mot. at 1-2, 4-5 and n.2), a leap unsupported by *FindWhat*. Likewise, *Schleicher v. Wendt*, 618 F.3d 679, 683 (7th Cir. 2010), does not address the proper end date of a class period, but rather addresses whether materiality had to be proved by plaintiffs before class certification (later decided in *Amgen*, 568 U.S. at 470).

All the other additional cases cited by Lead Plaintiffs in support of this assertion of clear error, *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 583 (S.D.N.Y. 2008), *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 292 (S.D. Tex. 2005), and *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 114 (E.D.N.Y. 2012), rely upon the same quotation from *In re Oxford Health Plans, Inc.*: "[T]he class period ends when the full truth has been disclosed to the market

and the natural market forces have had a reasonable period of time to receive, digest and reflect the bad news in the market price of the security." 191 F.R.D. 369, 378 (S.D.N.Y. 2000). Nothing about this general "uncontroversial proposition" (Mot. at 5 n.5), however, demonstrates the clear error of this Court's determination that the most apt end date of the class period is the filing date of the initial complaint, as in *Novatel* and *CMS*. Lead Plaintiffs simply assume, without submitting any evidence in support (though it would be too late now in any event), that the share price was still artificially inflated after February 18, 2019 because they "***alleged***" later misstatements and corrective disclosures causing damages. (Mot. at 3, 4, 8 (emphasis added).)

Moreover, in *SCOR*, the plaintiffs did not try to extend the class period end date beyond the filing of the case, and the court declined to shorten the class period because the plaintiffs submitted evidence (unlike here) that the corrective truth had not been revealed yet. 537 F. Supp. 2d at 583. Likewise, in *Dynegy*, the court did not address whether the class period should end on the filing date, merely finding there was "an issue of fact" as to when the market absorbed the information given lead plaintiffs' "evidentiary support" for their proposed end date. 226 F.R.D. at 292.[2] Finally, the court in *In re Gentiva* was not evaluating a motion for class certification, but rather competing motions for appointment as lead plaintiff, using the alleged class period as a "reference point" only for "the purpose of determining a lead plaintiff." 281 F.R.D. at 110, 113.

**B.      The "inquiry notice" standard referenced in the Order is not clear error.**

Again, Lead Plaintiffs' additional cases cited in support of this argument are not new and

---

[2] In *Dynegy*, the court also relied on outdated precedent in stating that "when a substantial question of fact exists, then a broader time period will be certified." 226 F.R.D. at 292 (citing *In re Ribozyme Pharm., Inc. Sec. Lit.*, 205 F.R.D. 572, 579–580 (D. Colo.2001). That standard is no longer good law, as lead plaintiffs now bear the burden of proof on class certification. *See*, *e.g.*, *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 456–57 (M.D. Fla. 2018) ("The party seeking certification 'must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'") (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 28 (2013)). The court in *Oxford* likewise declined to undertake any meaningful analysis of the class period end date since it would "require this Court to adjudicate in advance of trial when the market had responded to a truthful and complete disclosure." 191 F.R.D. at 378.

4810-8343-2910.11

could have been previously cited, and again, they do not change the result even if they were considered. (Dkt. 94 at 5, 6.) For example, in *In re Alstom SA Securities Litigation,* the court applied the same "inquiry notice" standard this Court applied when it shortened the class period to when "Plaintiffs had received sufficient notice regarding the facts giving rise to the ATI Fraud, which in the exercise of reasonable diligence, would have led to actual knowledge." 253 F.R.D. 266, 292 (S.D.N.Y. 2008).[3] Meanwhile, Lead Plaintiffs make no mention of the on-point authority for the inquiry notice standard cited in the Court's Order (at 4), *Alaska Electric Pension Fund v. Pharmacia Corp.*, No. 03–1519, 2007 WL 276150, at *3 & n.7 (D.N.J. Jan. 25, 2007), and *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 143 (D.N.J. 1984).[4]

**C.     OMRF's post-complaint share purchases and failure to submit its manager's declaration of no knowledge of this case further support the Court's decision, which is correct with or without the purchases in any event.**

Lead Plaintiffs say Defendants had the opportunity to depose OMRF's investment manager to disprove that the manager "was unaware of the litigation proceedings at the time of the transaction" buying large amounts of HIIQ stock after this case was filed (Mot. at 2, 8), ignoring that Lead Plaintiffs bear "the burden of proving – before class certification" the "market timing" element of the *Basic* presumption, *Halliburton II*, 573 U.S. at 276 (2014), and that Lead

---

[3] Lead Plaintiffs' citations to *Dynegy, SCOR,* and *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-CV-1249, 2017 WL 2062985 (S.D.N.Y. May 15, 2017) (Mot. at 7) also do not support Lead Plaintiffs' argument that the "inquiry notice" standard applied was erroneous, as each applied the same analysis the Court applied in this case, namely, when the market knew about the alleged corrective information and whether "Lead Plaintiff offered substantial evidence that the market was misled throughout the class period." *Virtus*, 2017 WL 2062985, at *7. While the parties in those cases submitted evidence supporting their positions, here, Lead Plaintiffs submitted no evidence to support the end date of their proposed class period. Instead, they simply cited to their allegations of three post-complaint alleged corrective disclosures and, tellingly, described all three at oral argument as "confirmation" or that they "confirmed" the alleged corrective information. (Tr. at 20:1-2, 22:23-24.) "[C]onfirmatory information—that information already known to the market—may not constitute such a corrective disclosure." *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 314 (5th Cir. 2008*)*; *Meyer v. Greene*, 710 F.3d 1189, 1197–98 (11th Cir. 2013).

[4] The *Alaska* case cited by the Court in its Order (at 4) and ignored by Lead Plaintiffs in their Motion also refutes Lead Plaintiffs' argument that they get an extended class period because they alleged that Defendants made post-Complaint misstatements (Mot. at 6). *Alaska*, 2007 WL 276150, at *4; Tr. at 38.

4810-8343-2910.11

Plaintiffs have submitted no such evidence of its manager's lack of knowledge.[5]

In any event, the class period end date does not turn on Lead Plaintiffs' managers' knowledge of this case, nor have Defendants argued that it does. Although not necessary to the Court's decision, OMRF's efforts to blame the March 2019 purchases on its investment manager further highlight why the class period should not extend beyond the filing of this case, because it avoids individualized issues as to whether a putative class member purchased HIIQ stock to participate in this action, as Defendants explained at oral argument (Tr. at 41-42), in their Opposition (at 19), and as supported by Lead Plaintiff BRRS's testimony. (Dkt. 81-9, 65:23:66:2 ("Q: Do you agree that if someone did purchase HII stock after the case was filed for the purpose of participating in the litigation, that would not be proper? A: Yes.")); *CMS,* 236 F.R.D at 342.

**D.      Lead Plaintiffs cannot demonstrate manifest injustice by arguing that some class members might have difficulty calculating or recovering damages.**

Lead Plaintiffs' last attempt at reconsideration is their argument that allegedly injured investors who purchased stock in reliance on alleged misstatements in December 2018, January 2019, and March 2019 might not be able to calculate or prove damages if the class period ends on February 18, 2019 (Mot. at 8), as Lead Plaintiffs previously asserted at oral argument (Tr. at 66). While Lead Plaintiffs argue that merits issues such as loss causation cannot be decided at the class certification stage (Reply at 1, 3), this manifest injustice argument relies on a chain of merits issues from falsity, to loss causation, all the way through to damages, none of which are

---

[5] Although Lead Plaintiffs likely will not be able to submit with their reply in support of this Motion the manager's sworn declaration that it had no knowledge of this case when it made the purchases, any such evidence would now be untimely in any event, as Lead Plaintiffs had the opportunity to submit it with their class certification briefing but did not. *See Williams v. Obstfeld,* 314 F.3d 1270, n. 6 (11th Cir. 2002) (affirming denial of reconsideration where submitted declarations were not "new evidence unobtainable prior to the district court's order" on the underlying motion). All Lead Plaintiffs offered was speculation about the manager's possible reasons to purchase (other than price, as an efficient market relies on under the *Basic* presumption) that the "manager may have had any number of reasons to purchase the shares. They might have thought there was value in the shares." (Tr. at 8.)

appropriately considered at the class certification stage, nor do Lead Plaintiffs submit any evidence in support. Lead Plaintiffs assert that the alleged misstatements have been established as actionable because the Court denied Defendants' motion to dismiss, which is wrong as a matter of law, as the allegations were assumed to be true solely for purposes of that motion. (Dkt. 51 at 2 n.2.) Defendants vigorously contest that they made misstatements that caused damages, but none of that is appropriately decided at this stage, as Lead Plaintiffs themselves argued. (Reply at 1, 3; Tr. at 27 ("damages, which obviously is the issue for later on in the litigation").)

There is also no "manifest injustice" to any class member given the notice requirements of a class action and the ability of any class member to opt out. Fed. R. Civ. P. 23(c)(2)(B). To the extent that any class members do not like the class period end date or believe it prevents them from recovering damages, they may opt under Rule 23 and will not be bound by the end date.

## CONCLUSION

Defendants respectfully request denial of Lead Plaintiffs' Motion for Reconsideration.

Dated: October 19, 2020

**FOLEY & LARDNER, LLP**

*/s/ Michael P. Matthews*
Michael P. Matthews (FL Bar No. 63988)
Lauren L. Valiente (FL Bar No. 034775)
100 North Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Fax: (813) 221-4210
mmatthews@foley.com
lvaliente@foley.com

Christina Kennedy (FL Bar No. 58242)
111 N. Orange Ave., Suite 1800
Orlando, FL 32801
Telephone: (407) 423-7656
Fax: (407) 648-1743
ckennedy@foley.com

*Counsel for Defendants*

10

4810-8343-2910.11