# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated,

               Plaintiff,

v.

HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER,

               Defendants.

CASE NO. 8:19-CV-00421-WFJ-CPT

<u>CLASS ACTION</u>

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE CLASS, AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     HISTORY OF THE LITIGATION AND THE SETTLEMENT...............................3

III.    CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE ............................................................6

IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL..........................8

        A.    Lead Plaintiffs and Lead Counsel Are Adequate Representatives .................10

        B.    The Settlement is the Product of Arm's-Length Negotiations ......................11

        C.    The Relief Provided to the Class is Substantial...........................................12

              1.    The Costs, Risks, and Delay of Trial and Appeal ..............................12

              2.    Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval.....................................................................15

        D.    All Settlement Class Members Are Treated Equitably ..................................17

        E.    The Remaining Eleventh Circuit Factors Are Satisfied ................................18

              1.    The Settlement Amount is Reasonable Considering the Range of Possible Recoveries .......................................................................18

              2.    The Stage of Proceedings at Which Settlement was Achieved Strongly Supports Preliminary Approval..........................................19

              3.    Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement ..............................................................20

V.      THE PROPOSED NOTICE SHOULD BE APPROVED .......................................20

VI.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS .....................................22

VII.    CONCLUSION ..................................................................................22

## TABLE OF AUTHORITIES

Cases

*Aranaz v. Catalyst Pharm. Partners Inc.*,
   2014 WL 11870214 (S.D. Fla. Dec. 3, 2014) ....................................................21

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984)............................................................. 8, 10, 20

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008)..........................................................................10

*Cook v. Palmer, Reifler & Assocs.*,
   2019 WL 3383634 (M.D. Fla. May 17, 2019) ....................................................9

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977).......................................................................8, 20

*Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.*,
   2019 WL 1487340 (M.D. Fla. Apr. 4, 2019) ....................................................10

*Deas v. Russell Stover Candies, Inc.,*
   2005 WL 8158201 (N.D. Ala. Dec. 22, 2005) ...........................................18, 19

*Ferguson v. Upscale Saturday Night, Inc.*,
   2007 WL 2774196 (M.D. Fla. Sep. 6, 2007) ......................................................9

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) ....................................................21

*Hanley v. Tampa Bay Sports & Entm't LLC*,
   2020 WL 357002 (M.D. Fla. Jan. 7, 2020).........................................................7

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)....................................................17

*Hernandez v. Tropical Const. & Maintenance Corp.*,
   2007 WL 1201143 (M.D. Fla. Apr. 23, 2007) ...................................................9

*Holman v. Student Loan Xpress, Inc.*,
   2009 WL 4015573 (M.D. Fla. Nov. 19, 2009).................................................11

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)....................................................15

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................................12, 14

*In re Checking Account Overdraft Litig*,
275 F.R.D. 654 (S.D. Fla. 2011) ....................................................................................11

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)................................................................11

*In re Healthsouth Corp. Sec. Litig.*,
334 F. Appx. 248 (11th Cir. 2009) ................................................................................17

*In re Rayonier Inc. Sec. Litig.*,
2017 WL 4542855 (M.D. Fla. Oct. 5, 2017)....................................................................7

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ....................................................................18, 20

*In re Theragenics Corp. Sec. Litig.*,
205 F.R.D. 687 (N.D. Ga. 2002) .....................................................................................8

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992)..........................................................................................8

*In re Equifax Inc. Customer Data Sec. Breach Litig.,*
2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ..................................................................16

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ................................................................................17

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..........................................................................20

*Ressler v. Jacobson*,
822 F. Supp. 1551 (M.D. Fla. 1992)...............................................................................19

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)......................................................................................15

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) ...................................................................................11

*Strube v. Am. Equity Inv. Life Ins. Co.*,
226 F.R.D. 688 (M.D. Fla. 2005) .......................................................................... 8, 12, 20

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ...................................................................16

*Williams v. Bluestem Brands, Inc.*,
  2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) ......................................................................9

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
  2001 WL 686879 (M.D. Fla. May 3, 2001) .......................................................................19

Statutes

15 U.S.C. § 78u-4(a)(7) ..........................................................................................................21

Rules

Fed. R. Civ. P. 23 .............................................................................................................passim

Lead Plaintiffs Oklahoma Municipal Retirement Fund ("OKMRF") and City of Birmingham Retirement and Relief System ("City of Birmingham") (together, "Lead Plaintiffs" or "Plaintiffs"), respectfully submit this Unopposed Motion for (I) Preliminary Approval of Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice.

## I.   INTRODUCTION

Lead Plaintiffs and Defendants have negotiated, at arms' length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Action for $11,000,000.00 in cash. This resolution, which represents a substantial recovery that falls well within the range of possible approval, involved, among other things: (i) a thorough pre-filing investigation of the claims in this matter, (ii) the filing of a detailed amended complaint, (iii) consultation with experts, (iv) successfully opposing Defendants' motion to dismiss, (v) extensive discovery, including the review and analysis of over 1.9 million pages of documents and deposition practice, (vi) the briefing of a motion for class certification, which resulted in the certification of the Class, (vii) the submission of detailed mediation statements setting forth the Parties' respective positions on the hotly disputed issues in the case, and (viii) a formal full-day mediation involving rigorous and extensive negotiations. The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), filed simultaneously herewith.[1]

Lead Plaintiffs and Lead Counsel approve of the Settlement. Lead Plaintiffs are institutional investors who oversaw the litigation and authorized the Settlement. Lead Counsel

---

[1] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation, and internal quotation marks have been omitted.

have substantial securities litigation experience and are recognized as leading experts in the field. Based upon their experience, their evaluation of the facts and the applicable law, their recognition of the substantial amount of the Settlement, and their analysis of the risk and expense of protracted litigation against Defendants, Lead Counsel and Lead Plaintiffs submit that the proposed Settlement is fair, reasonable, and adequate, and is in the best interests of the Class and Settlement Class. This is especially so in light of the risk that Class and Settlement Class members might recover substantially less (or nothing) if the Action were litigated through dispositive motions, trial, and the post-trial motions and appeals that would likely follow, a process that could last several years. Indeed, Lead Plaintiffs faced significant risks with respect to establishing liability, particularly on the issues of falsity, scienter, loss causation, and damages, which Defendants vigorously dispute.

Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value, the Settlement represents an excellent result.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, to determine whether notice of the proposed Settlement should be disseminated. In light of the substantial recovery obtained and the risks and expenses posed by protracted litigation against Defendants, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed Preliminary Approval Order, which will, among other things:

(i)     preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    certify the Settlement Class for purposes of Settlement;

2

(iii)     approve the form and content of the Notice and Summary Notice attached as Exhibits A-1 and A-3 to the proposed Preliminary Approval Order;

(iv)     find that the procedures for disseminating the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

(v)     set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and reimbursement of litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## II.    HISTORY OF THE LITIGATION AND THE SETTLEMENT

HIIQ developed and sold short-term medical discount plans and other health insurance products through third-party call centers. Because these health insurance products offered limited benefits and were not compliant with the ACA, HIIQ's call centers allegedly engaged in aggressive, and sometimes deceptive, sales tactics directed at unsuspecting customers. These improper sales tactics led to a flood of customer complaints to HIIQ. Yet, throughout the Class Period (September 25, 2017 through February 18, 2019), the Defendants—HIIQ, CEO Gavin Southwell, and CFO Michael Hershberger—repeatedly touted the Company's "best in class" compliance and its "incredibly low" number of customer complaints.

On November 2, 2018, the U.S. Federal Trade Commission ("FTC") announced an enforcement action aimed at shuttering HIIQ's largest and most significant third-party call center, Simple Health, allegedly due to its widespread deceptive sales tactics. This announcement caused HIIQ's stock price to fall almost 22% over a two-day period, and subsequent disclosures related to HIIQ's and its distributors' business practices resulted in additional share price drops.

This securities fraud class action was commenced with the filing of an initial complaint on February 18, 2019. Following briefing and pursuant to the PSLRA's lead plaintiff process, on May 13, 2019, the Court appointed OKMRF and City of Birmingham as Lead Plaintiffs and approved Lead Plaintiffs' selection of Saxena White P.A. ("Saxena White") as Lead Counsel for the class. ECF No. 21.

Following an extensive investigation, and after consultation with experts, Lead Plaintiffs filed their Consolidated Class Action Complaint (the "Complaint") on July 19, 2019, on behalf of a class of HIIQ shareholders, asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants (HIIQ CEO Gavin Southwell and CFO Michael Hershberger) under Section 20(a) of the Exchange Act. ECF No. 30. The Complaint alleges, among other things, that Defendants: (1) made false and misleading statements or omissions regarding HIIQ's compliance; and (2) made false and misleading statements or omissions about the purportedly "incredibly low" number of customer complaints upheld by state departments of insurance. The Complaint further alleges that HIIQ's stock price was artificially inflated as a result of Defendants' false and misleading

4

statements, and that HIIQ's stock price declined when the truth regarding Defendants' alleged misrepresentations was revealed.

On August 28, 2019, Defendants moved to dismiss the Complaint for failure to state a claim. ECF No. 41. After full briefing, on November 4, 2019, the Court issued an Order denying in full Defendants' motion to dismiss. ECF No. 51.

From December 2019 through September 2020, counsel for Lead Plaintiffs and Defendants engaged in extensive fact discovery. Among other things, Lead Plaintiffs served document requests and requests for admissions on Defendants. Defendants produced approximately 230,000 pages of documents to Lead Plaintiffs, with an additional 1.7 million pages of documents produced by Simple Health's court-appointed receiver, a third party to the litigation. Lead Plaintiffs also deposed HIIQ's former head of broker compliance, and Defendants deposed Lead Plaintiffs' representatives.

On May 21, 2020, Lead Plaintiffs filed their motion for class certification, together with the expert report of Chad Coffman, CFA, opining on market efficiency. ECF No. 70. On July 2, 2020, after deposing Lead Plaintiffs' market efficiency expert as well as representatives of both Lead Plaintiffs, Defendants filed their opposition to class certification. ECF No. 80. On August 13, 2020, Lead Plaintiffs filed their reply in further support of class certification. ECF No. 83.

On August 28, 2020, the Court issued its order on class certification. ECF No. 90 (the "Certification Order"). The Court granted class certification and certified the following Class: "All persons or entities that purchased or otherwise acquired HIIQ common stock between September 25, 2017 through February 18, 2019, inclusive, and who were damaged thereby."

5

The class period certified by the Court shortened the class period proposed in the Complaint by moving the ending date from April 11, 2019 to February 18, 2019.

While Lead Plaintiffs were actively pursuing fact discovery, the Parties participated in a mediation before neutral Jed D. Melnick, Esq. of JAMS. In advance of the September 3, 2020 mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, loss causation, and damages. The full-day mediation was conducted live, remotely via videoconference. The session ended without an agreement to settle. Following the mediation, however, extensive arms' length discussions and negotiations concerning a possible settlement of the Action continued with the aid of Mr. Melnick.

On October 21, 2020, the Parties reached an agreement in principle to settle and release all claims asserted against the Defendants in the Action in return for a cash payment of $11,000,000. The parties then negotiated the full settlement terms set forth in the Stipulation.

## III.    CERTIFICATION OF THE SETTLEMENT CLASS FOR PURPOSES OF THE SETTLEMENT IS APPROPRIATE

As noted in Section II *supra*, on August 28, 2020, this Court granted class certification, certifying the following Class: "[a]ll persons or entities that purchased or otherwise acquired HIIQ common stock between September 25, 2017 through February 18, 2019, inclusive, and who were damaged thereby." Certification Order at 5. Under the terms of the Stipulation, Defendants have agreed, for the sole purpose of settlement and without adjudication of the merits, to certification of the following Settlement Class: "[a]ll persons or entities that purchased or otherwise acquired HIIQ common stock between September 25, 2017 through April 11, 2019, inclusive." The proposed Settlement Class, which merely extends the certified

6

Class by less than two months, satisfies all of the applicable requirements of Rule 23(a) and Rule 23(b)(3).[2]

It is well-established that a class may be certified solely for purposes of settlement. *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542855, at *1 (M.D. Fla. Oct. 5, 2017) (certifying class "for the purposes of the Settlement only"). In deciding whether to certify a settlement class, courts consider the same factors as in connection with a proposed litigation class, except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial. *Hanley v. Tampa Bay Sports & Entm't LLC*, 2020 WL 357002, at *1–2 (M.D. Fla. Jan. 7, 2020).

The Court is familiar with the requirements under Rule 23(a), and explained in its Certification Order that it "has conducted an independent review of these [Rule 23(a)] factors and agrees that these factors are met."[3] Order at 2 & n.1. For all of the same reasons set forth in Lead Plaintiffs' Motion for Class Certification and the Certification Order, the Rule 23(a) factors of numerosity, commonality, typicality, and adequacy are satisfied here with respect to the Settlement Class.

The Court is also familiar with the requirements under Rule 23(b)(3). Certification Order at 2-3 & n.2. With respect to the predominance factor, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they

---

[2] At the time the Settlement was reached, Lead Plaintiffs had filed a motion for reconsideration of the Certification Order. ECF No. 94. As further explained below, the outcome of this motion was far from certain, and claims relating to disclosures excluded in the Certification Order have been heavily discounted to reflect this fact.

[3] Lead Plaintiffs incorporate by reference herein the evidence submitted in support of their motion for class certification, including the expert report, previously filed as ECF No. 70.

predominate over individual questions." *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002). There are no significant, let alone predominant, individual issues in this case; where, as here, all Settlement Class Members were subject to the same alleged misrepresentations and omissions, and Defendants' alleged misrepresentations were part of a common course of conduct, common questions predominate. *Id*. Indeed, if Lead Plaintiffs and each Settlement Class Member were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability.

Finally, the Certification Order held that the superiority element of Rule 23(b)(3) was satisfied (Order at 2-3), a ruling that applies equally to all persons or entities in the Settlement Class.

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts have long recognized a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."). "Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Indeed, the promotion of fair, adequate, and reasonable settlements is a fundamental tenet of litigation in the federal courts, and there is a strong initial presumption that the compromise is fair and

reasonable. *See Hernandez v. Tropical Const. & Maintenance Corp.*, 2007 WL 1201143, at \*2 (M.D. Fla. Apr. 23, 2007) (a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."); *Ferguson v. Upscale Saturday Night, Inc.*, 2007 WL 2774196, at \*1 (M.D. Fla. Sep. 6, 2007) (same).

Federal Rule of Civil Procedure 23(e) provides for court approval for any settlement of a class action, which is a two-step process. First, in the stage currently before the Court on this Motion, the Court performs a preliminary review to determine whether notice of the proposed settlement should be disseminated. Second, after notice has been provided and a hearing has been held, the Court determines whether to approve the settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Preliminary approval should be granted upon a finding that a Court "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B); *Williams v. Bluestem Brands, Inc.*, 2019 WL 1450090, at \*1 (M.D. Fla. Apr. 2, 2019); *see also Cook v. Palmer, Reifler & Assocs.*, 2019 WL 3383634 at \*3 (M.D. Fla. May 17, 2019) (preliminary approval appropriate where "the court will likely be able to [] approve the propos[ed settlement] as fair, reasonable, and adequate.").

As amended effective December 1, 2018, Rule 23(e)(2) lists the following factors relevant in approving a settlement as fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account; (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including time of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

9

However, "the amendment does not displace considerations [previously] announced by the Eleventh Circuit." *Cty. of Monmouth, New Jersey v. Fla. Cancer Specialists, P.L.*, 2019 WL 1487340, at *2 (M.D. Fla. Apr. 4, 2019). As such, the Eleventh Circuit's traditional settlement approval factors also still apply: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Id.* (quoting *Bennett,* 737 F.2d at 986). As set forth below, the Settlement satisfies all of these criteria.

## A.    Lead Plaintiffs and Lead Counsel Are Adequate Representatives

Lead Plaintiffs and Lead Counsel have adequately represented the Class, as required by Rule 23(e)(2)(A), during both the litigation of this Action and its settlement. Lead Plaintiffs' claims are typical of the claims of the Class, and they have no antagonistic interests. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). Indeed, in granting class certification, the Court's Certification Order specifically found that all of the Rule 23(a) class certification factors, including adequacy, had been met. ECF No. 90.

Lead Plaintiffs also retained counsel who are highly experienced in securities litigation and who have a long and successful track record of representing investors in such cases. *See* ECF No. 71-6 (Saxena White Firm Resume). Lead Counsel vigorously prosecuted the claims and expended significant time and effort throughout the litigation. *See* Secs. II, *supra* and IV.E.2, *infra*. Lead Plaintiffs and Lead Counsel are adequate representatives.

10

**B.     The Settlement is the Product of Arm's-Length Negotiations**

Settling parties are entitled to a presumption that a proposed settlement is fair and reasonable and not the product of collusion "where the parties have negotiated at arm's length." *Saccoccio v. JP Morgan Chase Bank, N.A*., 297 F.R.D. 683, 692 (S.D. Fla. 2014); *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *5 (M.D. Fla. Nov. 19, 2009) (same). This presumption applies even more so where a settlement "was reached with the assistance of a well-qualified and experienced mediator*." In re Checking Account Overdraft Litig*, 275 F.R.D. 654, 661-662 (S.D. Fla. 2011).

Here, the Parties engaged in a full-day mediation session before a highly experienced and qualified mediator, Jed Melnick of JAMS. Mr. Melnick is an acclaimed, widely-respected mediator who has mediated hundreds of complex disputes with aggregate values in the billions of dollars. He is also the Managing Mediator for the Weinstein Melnick Team, which includes the Hon. Daniel Weinstein (Ret.), one of the nation's preeminent mediators of complex civil disputes. *See In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("[T]his settlement is the result of a mediation held before Jed Melnick, Esq., a JAMS mediator. Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive"). In connection with the mediation, the Parties exchanged detailed written submissions that addressed, among other things, issues related to liability, loss causation, and damages. While the mediation session ended without an agreement to settle, the Parties, with the aid of Mr. Melnick, continued to engage in settlement discussions for several weeks. These continuing negotiations ultimately resulted in the Parties' agreement to settle the Action in return for a cash payment of $11,000,000.

11

Thus, the proposed Settlement was achieved only after extensive arm's length negotiations overseen by a well-respected third-party neutral.

### C.   The Relief Provided to the Class is Substantial

#### 1.   The Costs, Risks, and Delay of Trial and Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube*, 226 F.R.D. at 697-98; *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011) (court need not determine if the settlement "is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."). Here, there is no question that continued litigation would have been costly, risky, and protracted. Indeed, even though Lead Plaintiffs prevailed at the pleading stage, the Court substantially shortened the Class Period, excluding more than half of the alleged corrective disclosures and significantly reducing class-wide damages. While Lead Plaintiffs moved for reconsideration of that decision, there was serious doubt as to whether the Court would reverse its opinion. And even though the Court granted class certification, there are no guarantees that class action status would be maintained. *See* Rule 23(c)(1) ("An order that grants or denies class certification may be altered or amended before final judgment"). Lead Plaintiffs cannot completely disregard the possibility that the Court would later decertify the action, particularly given the already-truncated Class Period.

Furthermore, Lead Plaintiffs still had to prove their claims. Defendants deny that their public statements contained any material misstatements or omissions, and deny allegations of

12

fault, liability, wrongdoing, and damages. Defendants would have continued to argue that their public statements were not false or misleading because such statements accurately reflected the quality of compliance and the number of upheld customer complaints. ECF No. 41-1 at 9-16. More specifically, Defendants would likely have argued that HIIQ had heavily invested in its compliance and customer service processes in recent years and that the Individual Defendants' reasonable belief that HIIQ had "best in class" compliance undercuts an inference of scienter.

Defendants would also likely argue that HIIQ did not approve or condone the use of any deceptive trade practices by its third party call centers, and that when HIIQ learned of any potential improper sales practices, it quickly intervened to stop them. Moreover, based on filings in the FTC enforcement action against Simple Health, Defendants would almost certainly argue that Simple Health actively sought to hide its illicit activities from HIIQ by failing to disclose regulatory investigations and by editing customer calls prior to sending the recordings to HIIQ for review. Defendants would likely further argue that, even accounting for all customer complaints made to the Company and not just customer complaints upheld by state departments of insurance, the complaint ratio was immaterial. While Lead Plaintiffs were prepared with arguments to respond to these contentions, they recognize that Defendants' arguments posed significant risk at summary judgement and trial that could have undermined the viability of the entire Action.

With respect to damages, Defendants argued that the November 2, 2018 corrective disclosure (the FTC's announcement of the enforcement action against Simple Health) did not contain any allegations against HIIQ or contain any corrective information relating to HIIQ's

compliance, customer service, or customer complaints. ECF No. 41, at 23. Moreover, Plaintiffs' damages related to this first corrective disclosure were based on a two-day stock drop: Friday, November 2, 2018, the day of the FTC's announcement, and continuing into the next trading session on Monday, November 5, 2018. But defendants in securities class actions invariably argue that stock price declines in multi-day event windows such as this are not causally related to the initial announcement. Plaintiffs expected that Defendants would make that argument here, and if the Court or a jury were to eliminate the stock drop on November 5, 2018, Plaintiffs' damages would significantly decrease even further.

With respect to the second alleged corrective disclosure, the November 27, 2018 Aurelius Value short-seller report, Defendants previously argued that the report contained already-public information, and would likely continue to do so. *Id.* Further, damages were significantly reduced when the Court shortened the class period end date from April 11, 2019 to February 18, 2019, thereby excluding three of the five corrective disclosures alleged in the Complaint from the Class Period (March 13, 2019, March 25, 2019, and April 12, 2019)— including the largest share price drop as percentage of market share, the March 13, 2019 announcement of an investigation by the U.S. House of Representative Energy & Commerce Committee, which caused HIIQ's stock price to decline by 17.2%. Compl. ¶¶ 136-139.

While Lead Plaintiffs believe they had credible counterarguments on these points, the fact remains that the Court at summary judgment or the jury at trial could have lent such arguments substantial weight, thereby significantly reducing or eliminating recoverable damages. Thus, even after a successful outcome at trial, Lead Plaintiffs believe that the maximum recoverable damages that could be realistically established ranged from $31.9

14

million to $63.3 million. Accordingly, the recovery here—17% to 34% of the realistic maximum recoverable damages—is an outstanding result, and far exceeds the median recovery of 2.1% in securities class actions in 2019. *See* Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review" (NERA Jan. 21, 2020) at p. 20, Fig. 13.

Moreover, Lead Plaintiffs also faced substantial risks of recovering on any judgment they obtained based on HIIQ's ability to pay. According to filings with the SEC before being taken private, HIIQ itself had only limited cash available to contribute to any settlement or other recovery.

In sum, even after a successful trial, there would be no guarantee that Lead Plaintiffs would have obtained a judgment greater than the $11 million Settlement, as there was a very significant risk that continued litigation might yield a smaller recovery—or indeed, no recovery at all—several years in the future. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

### 2. Other Factors Established by Rule 23(e)(2)(C) Support Preliminary Approval

Under Rule 23(e)(2)(C), courts consider whether the settlement relief is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified

under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the approval of the Settlement.

*First*, Lead Plaintiffs propose well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Specifically, Epiq Class Action & Claims Solutions, Inc. ("Epiq" or the "Claims Administrator"), the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Stipulation ¶¶ 20-33. This method of claims processing is standard in securities class settlements and has long been found to be effective.

*Second*, as disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed one-third to compensate them for the services they rendered on behalf of the Class. The proposed attorneys' fees of up to one-third of the Settlement Fund is reasonable in light of the work performed and the results obtained and is comparable to other settlements approved in the Eleventh Circuit and nationwide. *See*, *e.g.*, *In re: Equifax Inc. Customer Data Sec. Breach Litig.,* 2020 WL 256132, at *34 (N.D. Ga. Jan. 13, 2020) ("[a]wards of up to 33% of the common fund are not uncommon in the Eleventh Circuit" in complex class actions, and noting that median fee was 33% between 2009 and 2013); *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *11 (S.D. Fla. Oct. 17, 2016) (awarding fee of one-third of $24 million settlement).

16

*Third*, with respect to Rule 23(e)(2)(C)(iv), as explained further, *supra*, the Parties have entered into a confidential agreement which establishes certain conditions under which Defendants may terminate the Settlement if a certain number of potential Class Members request exclusion (or "opt-out") of the Settlement. Stipulation. ¶ 40. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. Appx. 248, 250 n.4 (11th Cir. 2009). As is standard in securities class actions, such agreements are not made public to avoid incentivizing the formation of a group of opt-outs for the purpose of leveraging the opt-out threshold to exact an individual settlement. *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'").

### D.    All Settlement Class Members Are Treated Equitably

As set forth in the Stipulation at ¶¶ 20-33, under the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiffs' damages expert and treats all Settlement Class Members equitably, the Authorized Claimants shall receive their pro rata share of the Net Settlement Fund based upon their recognized claim compared to the total recognized claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice

17

attached hereto as Exhibit A-1 to Exhibit 1). As described in the "Plan of Allocation" section of the Notice, because the Class Period certified by the Court ends on February 18, 2019, claims relating to three alleged corrective disclosures—March 13, 2019, March 25, 2019, and April 12, 2019—were not included in the Class Period. At the time that the Settlement was reached, Lead Plaintiffs had filed a motion for reconsideration arguing that the Class Period as certified was incorrectly shortened and should properly be extended to end on April 11, 2019. Because the outcome of this motion was far from certain and these claims faced substantial risk, the artificial inflation on those corrective disclosures has been discounted by 95%. Notice at ¶ 43.

### E. The Remaining Eleventh Circuit Factors Are Satisfied

#### 1. The Settlement Amount is Reasonable Considering the Range of Possible Recoveries

"The second and third factors in the Eleventh's Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Deas v. Russell Stover Candies, Inc.,* 2005 WL 8158201, at *11 (N.D. Ala. Dec. 22, 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (these factors "are easily combined").

As set forth above, the $11 million cash Settlement Amount is well within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Class. Lead Plaintiffs calculated realistic maximum damages in the case to range between $31.9 million to $63.3 million, and Defendants raised a number of credible arguments concerning falsity, scienter, loss causation and damages throughout the litigation that, if accepted, would have substantially reduced or eliminated altogether

18

recoverable damages, further underscoring the valuable benefits obtained through the proposed Settlement. *See e.g., Zuckerman v. Smart Choice Auto. Grp., Inc.*, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions."); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) ("In the 'battle of experts,' it is impossible to predict with any certainty which arguments would find favor with the jury."). In light of these significant litigation risks, particularly concerning loss causation and damages, the Proposed Settlement is well within the range of reasonableness.

### 2. The Stage of Proceedings at Which Settlement was Achieved Strongly Supports Preliminary Approval

In assessing the stage of the proceedings at which a settlement is achieved, the "relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Deas,* 2005 WL 8158201, at *12. Here, the Settlement was reached after over a year and a half of hard-fought litigation, and after Lead Plaintiffs conducted an extensive investigation and substantial fact discovery, including a review and analysis of over 1.9 million pages of documents. Lead Plaintiffs also successfully opposed Defendants' motion to dismiss, fully briefed a class certification motion (resulting in certification of the Class), deposed HIIQ's former head of broker compliance, and participated in extensive settlement negotiations. *See* Section II, *supra*. In sum, by the time the Settlement was reached, Lead Plaintiffs had sufficient information to assess the strengths and

19

weaknesses of their claims and were "well aware of the other side's position and the merits thereof." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1332.[4]

### 3. Recommendation of Experienced Counsel Favors Preliminary Approval of the Settlement

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *accord Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007); *Strube*, 226 F.R.D. at 703. Here, Lead Counsel are highly experienced in litigation of this type, are well informed about the strengths and weaknesses of this case, and strongly endorse the Settlement.

## V. THE PROPOSED NOTICE SHOULD BE APPROVED

As outlined in the agreed-upon proposed Preliminary Approval Order, if the Court grants preliminary approval, Lead Counsel will cause the Claims Administrator to notify Settlement Class Members and Class Members of the Settlement by mailing the Notice and Claim Form to all persons and entities who can be identified with reasonable effort. The Notice will advise Class and Settlement Class members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. The Notice will also provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Class, for objecting to the Settlement, the proposed Plan

---

[4] Moreover, as demonstrated in Section IV.C *supra*, the complexity, expense and duration of continued litigation all support preliminary approval of the Settlement, particularly given the risks involved in further litigation. *See Bennett*, 737 F.2d at 986.

of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over the *PR Newswire*, and to post a copy of the Notice and Claim Form on the Settlement website created specifically for this Settlement.

The form and manner of providing notice to the Class and Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice "concisely and clearly state, in plain, easily understood language, the nature of the action; the definition of the class certified; the class claims, issues, and defenses; that a class member may enter an appearance through counsel if the member so desires; and the binding effect of a class judgment on class members." *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *8 (S.D. Fla. May 14, 2007). The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Aranaz v. Catalyst Pharm. Partners Inc.*, 2014 WL 11870214, at *3 (S.D. Fla. Dec. 3, 2014) (notice distributed by first class mail to all class members "who can be identified with reasonable effort . . . constitute[s] the best notice practicable under the circumstances; and constitute[s] due and sufficient notice to all persons and entities entitled thereto").

Lead Plaintiffs propose Epiq to administer the notice and claims process. Epiq, which has administered numerous complex securities class action settlements, is an independent settlement and claims administrator that Lead Counsel selected as the proposed Claims

21

Administrator after a competitive bidding process. If the Court preliminarily approves the Settlement, HIIQ will provide contact information of potential Settlement Class Members, and Epiq will disseminate the Notice and Claim Form to all identified potential Settlement Class Members. Epiq will also utilize a list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of Notice.

## VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

The Parties respectfully propose the following schedule for the Court's consideration, as set forth in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing the Notice to Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | 25 business days after entry of the Preliminary Approval Order |
| Deadline to publish the Summary Notice | 10 days after the Notice Date |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 days prior to the Settlement Hearing |
| Deadline for submitting objections | 21 days prior to the Settlement Hearing |
| Deadline for requesting exclusion | 21 days prior to the Settlement Hearing |
| Deadline for filing reply papers | 7 days prior to the Settlement Hearing |
| Settlement Hearing | At least 100 days after entry of the Preliminary Approval Order |
| Deadline for submitting Claim Forms | Postmarked no later than 120 days after the Notice Date |

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the accompanying Preliminary Approval Order.

22

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Counsel for Lead Plaintiffs certifies that they have conferred with counsel for Defendants, and Defendants do not oppose entry of the proposed Order Preliminarily Approving Settlement and Providing for Notice.

Dated: December 3, 2020

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Brandon T. Grzandziel*
Maya Saxena (Fla. Bar 35494)
Joseph E. White, III (Fla. Bar 621064)
Brandon T. Grzandziel (Fla. Bar 58732)
Adam Warden (Fla. Bar 873691)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
brandon@saxenawhite.com
awarden@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street
8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Class*

**ABRAHAM, FRUCHTER AND TWERSKY, LLP**

Mitchell M.Z. Twersky (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Additional Counsel*

23

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 3, 2020, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

/s/ Brandon T. Grzandziel
Brandon T. Grzandziel