# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JULIAN KEIPPEL, Individually and
On Behalf of All Others Similarly
Situated,

                    Plaintiff,

v.

HEALTH INSURANCE
INNOVATIONS, INC. n/k/a
BENEFYTT TECHNOLOGIES,
INC., GAVIN SOUTHWELL, and
MICHAEL D. HERSHBERGER,

                  Defendants.

CASE NO. 8:19-CV-00421-WFJ-
CPT

<u>CLASS ACTION</u>

## LEAD PLAINTIFFS' MOTION
## FOR ATTORNEYS' FEES AND LITIGATION EXPENSES
## AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................1

II.  ARGUMENT .....................................................................................6

    A.   In the Eleventh Circuit, a Reasonable Percentage of the Recovery is the Appropriate Method for Awarding Attorneys' Fees...................6

    B.   The Johnson Factors Support the Fee Request ...............................7

        1.   The Amount Involved and Results Achieved Support the Requested Fee ......................................................................8

        2.   The Time and Labor Required Support the Requested Fee....9

        3.   The Novelty and Difficulty of the Issues Supports the Requested Fee ...................................................................11

        4.   The Skill, Experience, and Ability of the Attorneys Supports the Requested Fee...............................................................14

        5.   The Customary and Contingent Nature of the Fee Supports the Requested Fee...............................................................15

        6.   The "Undesirability" of The Action ...................................17

        7.   The Preclusion of Other Employment Supports the Requested Fee ......................................................................18

        8.   The Positive Reaction of the Settlement Class Supports the Requested Fee ..................................................................18

        9.   The Requested Fee is Fair and Reasonable Compared to Similar Actions..................................................................19

        10.  Lead Plaintiffs' Endorsement Supports Approval of the Requested Fee ..................................................................22

    C.   Lead Counsel's Expense Reimbursement Is Fair and Reasonable ..22

    D.   Lead Plaintiffs' Reimbursement Awards are Fair and Reasonable .23

III. CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Behrens v. Wometco Enterprises, Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988) ............................................................... 16, 17

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .............................................................................................6

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .........................................................6, 7, 14, 19

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   587 F. Supp. 2d 1266 (N.D. Ga. 2008) ............................................................23

*City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.*,
   2014 WL 12621611 (M.D. Fla. Mar. 4, 2014) ................................................22

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) .......................................... 10, 14

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
   2008 WL 11234103 ...........................................................................................18

*David v. Am. Suzuki Motor Corp.*,
   2010 WL 1628362 n.15 (S.D. Fla. Apr. 15, 2010)...........................................14

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ........................................... 19, 20

*George v. Acad. Mortg. Corp. (UT)*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019)............................................................14

*Goldstein v. Juris Publ'g, Inc.*,
   2007 WL 9702141 (S.D. Fla. May 29, 2007) ....................................................7

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .............................................4, 11

*Hanley v. Tampa Bay Sports & Entm't LLC*,
2020 WL 2517766 (M.D. Fla. Apr. 23, 2020)...............................................19

*In re Abrams & Abrams, P.A.*,
605 F.3d 238 (4th Cir. 2010) ...........................................................................8

*In re Banco Bradesco S.A. Sec. Litig.*,
2019 WL 6114713 (S.D.N.Y. Nov. 18, 2019)..........................................22, 23

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ..................................................17

*In re BellSouth Corp. Sec. Litig.*,
2007 WL 9676400 (N.D. Ga. Apr. 9, 2007) ...................................................21

*In re BHP Billiton Secs. Litig.*,
2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)..................................................21

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011)......................................................17, 21

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
2020 WL 256132 (N.D. Ga. Jan. 13, 2020) .................................................6, 23

*In re Flowers Foods, Inc. Sec. Litig.*,
2019 WL 6771749 (M.D. Ga. Dec. 11 ......................................................20, 21

*In re Friedman's Inc. Sec. Litig.*,
2009 WL 1456698 (N.D. Ga. May 22, 2009) .............................................8, 16

*In re Groupon, Inc. Sec. Litig.*,
2016 WL 3896839 (N.D. Ill. July 13, 2016)....................................................22

*In re NetBank, Inc. Sec. Litig.*,
*2011 W*L 13353222 (N.D. Ga. Nov. 9, 2011)..........................................passim

*In re Rayonier Inc. Sec. Litig.*,
2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) .............................................passim

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001)............................................................15

iv

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009)......................................................................22

*In re Walter Energy, Inc. Sec. Litig.,*
  2016 WL 7230505 (N.D. Ala. May 3, 2016)............................................ 20, 21

*In re Wells Fargo & Co. S'holder Derivative Litig.,*
  2020 WL 1786159 (N.D. Cal. Apr. 7, 2020)..................................................15

*In re Wilmington Tr. Sec. Litig.,*
  2018 WL 6046452 (D. Del. Nov. 19, 2018)..................................................15

*Johnson v. Georgia Highway Express, Inc.,*
  488 F.2d 714 (5th Cir. 1974) ..........................................................................7

*Jones v. Diamond,*
  636 F.2d 1364 (5th Cir. 1981) ......................................................................16

*KBC Asset Mgmt. NV v. 3D Sys. Corp.,*
  2018 WL 3105072 (D.S.C. June 25, 2018) ....................................................21

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,*
  2015 WL 5626414 (N.D. Ala. Sept. 14, 2015) ..............................................21

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.,*
  762 F.3d 1248 (11th Cir. 2014).....................................................................22

*Medoff v. CVS Caremark Corp.,*
  2016 WL 632238  (D.R.I. Feb. 17, 2016) ....................................................21

*Pinto v. Princess Cruise Lines, Ltd.,*
  513 F. Supp. 2d 1334 (S.D. Fla. 2007)..........................................................16

*Pritchard v. APYX Med. Corp.,*
  2020 WL 6937821 (M.D. Fla. Nov. 18, 2020) ..............................................24

*Ressler v. Jacobson,*
  149 F.R.D. 651 (M.D. Fla. 1992)............................................................ 11, 15

*Reyes v. AT&T Mobility Servs., LLC,*
  2013 WL 12219252 (S.D. Fla. June 21, 2013) ..............................................19

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997)..........................................................................17

*Seaman v. Duke Univ.*,
  2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) ...........................................8, 21

*Smith v. Floor & Decor Outlets of Am., Inc.,*
  20*17 WL 11495273 (N.D. Ga. Jan. 10, 2017).......................................9, 10, 23

*Thorpe v. Walter Inv. Mgmt. Corp.*,
  2016 WL 10518902 (S.D. Fla. Oct. 17, 2016)..........................................passim

*Tussey v. ABB, Inc.*,
  2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ..............................................21

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999).............................................................10, 20

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...................................................................................5, 24

**OTHER AUTHORITIES**

Cornerstone Research, *Securities Class Action Settlements,*
  2019 Review and Analysis (2020) ....................................................................8

Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class
  Action Litigation: 2020 Full Year Review (NERA Jan. 25, 2021)....................8

Theodore Eisenberg, Geoffrey Miller, and Roy Germano, *Attorneys' Fees in Class
  Actions: 2009-2013,* 92 N.Y.U. L. Rev. 937 (Oct. 2017),  ..................................19

Lead Plaintiffs Oklahoma Municipal Retirement Fund ("OKMRF") and City of Birmingham Retirement and Relief System ("City of Birmingham") (together, "Lead Plaintiffs" or "Plaintiffs"), respectfully request that the Court grant their motion for an award of (i) attorneys' fees in the amount of one-third of the Settlement Fund, representing a 0.76 multiplier of Plaintiffs' Counsel's lodestar; (ii) reimbursement of $377,837.59 in litigation expenses that Plaintiffs' Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (iii) $14,573.30 in total time and expenses incurred by Lead Plaintiffs, directly related to their representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    INTRODUCTION

The proposed $11,000,000 Settlement resolves all claims in the Action and, under any measure, represents an outstanding outcome for the Settlement Class and fully supports Lead Counsel's fee request. Indeed, as Lead Plaintiffs describe in their accompanying Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Final Approval Motion"), the proposed Settlement secures a substantial recovery representing between 17% and 34% of Plaintiffs' estimated

---

[1] Lead Plaintiffs respectfully refer the Court to the accompanying Declaration of Brandon Grzandziel in Support of Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Plaintiffs' Unopposed Motion for Attorneys' Fees and Litigation Expenses ("Grzandziel Declaration" or "Grzandziel Decl."), filed herewith, for a detailed description of the case and the Settlement. Unless otherwise indicated, all capitalized terms have the same meanings as in the Stipulation and Agreement of Settlement, dated December 2, 2020 (ECF No. 100-2), or the Grzandziel Declaration. "¶_" references are to the Grzandziel Declaration. Unless otherwise indicated, all emphasis has been added, and all internal citations and quotation marks have been omitted.

damages in this action—a rate that is 10 to 20 times greater than the 1.7% median recovery for similar securities class actions in 2020. Moreover, if the Court or a jury embraced any of Defendants' anticipated challenges to Lead Plaintiffs' claims, provable damages in the Action would have been materially impacted, perhaps to zero. Against the real risk of a diminished or no recovery, Lead Counsel obtained a meaningful and immediate benefit to the Settlement Class, all while avoiding the substantial expense, delay, and uncertainty inherent in continued litigation. This recovery is particularly notable given the ability to pay issues that Lead Plaintiffs encountered. Indeed, according to filings with the SEC before being taken private, HIIQ itself only had limited cash available to contribute to any settlement, and the remaining proceeds of Defendants' directors and officers insurance tower were virtually exhausted by the time that the Settlement was reached.

These very real risks that Lead Counsel faced in prosecuting this action would have persisted through trial and the inevitable appellate proceedings. Indeed, Defendants would have vigorously argued that Plaintiffs could not establish the fundamental elements of falsity or scienter in the Action. Defendants asserted that the challenged statements about the Company's compliance and the number of upheld customer complaints were either not material to investors, or else were true at the time they were made, and that contemporaneous internal data and publicly reported information showed that HIIQ had heavily invested in its compliance and customer service processes in recent years.

In addition, Defendants would have argued that Plaintiffs could not establish loss causation for the alleged corrective disclosures on November 2, 2018 and November 27, 2018. Specifically, Defendants argued that the FTC's November 2, 2018 announcement of its enforcement action against Simple Health did not contain any corrective information relating to HIIQ's compliance, customer service, or customer complaints. With respect to the November 27, 2018 Aurelius Value short-seller report, Defendants argued that the report contained already-public information. Moreover, damages were significantly reduced in this case when the Court shortened the Class Period end date from April 11, 2019 to February 18, 2019, thereby excluding three of the five corrective disclosures alleged in the Complaint from the Class Period. Although Lead Counsel had strong arguments in response to Defendants' arguments, if the Court at summary judgment, or the jury at trial, lent credence to Defendants' arguments, the Class could have recovered nothing at all.

Despite these considerable risks, and as set forth in greater detail in the Grzandziel Declaration, Lead Counsel's vigorous prosecution of this Action produced an outstanding recovery for the Class, thereby justifying the requested fee award. Plaintiffs' Counsel expended over 9,400 hours litigating this Action, which included: (1) conducting an extensive investigation of all potential claims that could be asserted against HIIQ and its executives or others, (2) conducting interviews with fact witnesses in connection with the pre-filing investigation, (3) filing an amended complaint based on the results of that investigation, (4) opposing Defendants' motion to dismiss, which was denied in full, (5) engaging in extensive discovery, including the review and

analysis of over 1.9 million pages of documents, and deposition practice, (6) briefing a motion for class certification, which resulted in certification of the Class, (7) participating in a formal full-day mediation and extensive follow-up negotiations after the case did not settle at mediation, and (8) negotiating and drafting appropriate documentation of the Settlement, including the Stipulation and the Notices to be issued to potential Class Members. ¶¶19-33.

Given the substantial recovery Lead Counsel obtained for the Settlement Class in the face of the significant risks posed by this litigation, as well as the complexity and amount of work involved, and Lead Counsel's skill and expertise in completing that work, Lead Counsel's fee request of one-third of the Settlement Amount is fair and reasonable. Indeed, courts in this District have awarded percentage fees of 30% or higher in comparable securities class actions, and the reasonableness of Lead Counsel's fee request is also supported by the lodestar crosscheck, which yields a negative multiplier of 0.76—meaning that the value of Plaintiffs' Counsel's time is substantially higher than the amount of the fee requested, which courts have recognized fully supports the reasonableness of the fee. *See In re NetBank, Inc. Sec. Litig.,* 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011) (negative multiplier confirms that 34% fee award was proper); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("Courts have repeatedly recognized that the reasonableness of the fee request" is reinforced where "'the percentage fee would represent a negative multiplier of the lodestar.'")

4

Lead Counsel also seek an award of litigation expenses of $377,837.59. The expenses incurred by Lead Counsel are reasonable and well in-line with what is typically expended in similar cases. *See, e.g., In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017) (approving award of $616,806.40 in expenses at similar stage of litigation). Lead Plaintiffs also respectfully request a total of $14,573.30 in reasonable costs and expenses, including lost wages, pursuant to 15 U.S.C. § 78u-4(a)(4), directly related to their representation of the Class. Lead Plaintiffs collectively spent a significant amount of time, which could have been spent on their pension funds' business, overseeing the Action, reviewing pleadings and briefs, collecting and producing documents, preparing for and sitting for their class representative depositions, and supervising Lead Counsel.

Finally, the Settlement Class's positive reaction and Lead Plaintiffs' endorsement further support granting this motion. Lead Plaintiffs—sophisticated institutional investors who were closely involved in the prosecution of the Action and the Settlement negotiations—have reviewed and fully endorsed Lead Counsel's one-third fee request and expense request. Additionally, while the deadline for Settlement Class Members to object to the requested attorneys' fees has not yet passed, thus far no objections to the fee request have been lodged.

For these reasons, and as set forth in more detail below and in the Grzandziel Declaration, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve this motion.

## II.    ARGUMENT

In undertaking this difficult and costly litigation on a fully contingent basis, Lead Counsel faced numerous challenges to proving both liability and damages that raised serious risks of a significantly lesser recovery than $11 million—or even no recovery at all. As discussed in greater detail below, Lead Counsel's requested award of one-third of the Settlement Fund is fair, adequate, and reasonable when judged against the relevant Eleventh Circuit factors courts consider in evaluating requests for attorneys' fees in complex class actions.

### A.    In the Eleventh Circuit, a Reasonable Percentage of the Recovery is the Appropriate Method for Awarding Attorneys' Fees

Courts have long recognized that attorneys who represent a class and achieve a benefit for class members are entitled to be compensated for their services, and that attorneys who obtain a recovery for a class in the form of a common fund are entitled to an award of fees and expenses from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Indeed, the Eleventh Circuit has held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("*Camden*"); *see also In re: Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *31 (N.D. Ga. Mar. 17, 2020) (*Camden*, the "controlling

authority in the Eleventh Circuit . . . holds that fees in common fund cases must be calculated using the percentage approach.").[2]

### B.   The Johnson Factors Support the Fee Request

The Eleventh Circuit has explained that, in determining whether a requested percentage fee award is reasonable, district courts consider, *inter alia*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Camden*, 946 F.2d at 772 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). *Camden* also recognized that in awarding a percentage fee award, a court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action." *Id*. at 775.

---

[2] Courts in this Circuit have emphasized that the percentage approach is "consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Goldstein v. Juris Publ'g, Inc.*, 2007 WL 9702141, at *3 (S.D. Fla. May 29, 2007).

### 1.    The Amount Involved and Results Achieved Support the Requested Fee

Courts have repeatedly recognized that the level of success achieved in a class action settlement is "the most critical factor in determining the reasonableness of a fee award." *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) (quoting *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) ("excellent result obtained" was "the most critical factor" in approving one-third fee award in $54.5 million class action settlement.); *see also NetBank*, 2011 WL 13353222, at *3 (awarding 34% fee, and noting that it is "well-settled that one of the primary determinants of the quality of the work performed is the result obtained"); *In re Friedman's Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009) (same).

The $11 million cash Settlement achieved here is considerable, exceeding the inflation-adjusted median of $6.3 million in securities class action settlements in the Eleventh Circuit from 2010 through 2019.[3] Moreover, the Settlement represents between 17% to 34% of Plaintiffs' estimated recoverable damages of $31.9 million to $63.3 million—a remarkable recovery that is 10 to 20 times above the 1.7% median achieved in 2020, where the median settlement value was $13 million.[4] Thus, by any measure, the $11 million Settlement is an outstanding result that weighs heavily in favor of the requested fee award. *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902,

---

[3] *See* Cornerstone Research, *Securities Class Action Settlements, 2019 Review and Analysis* (2020) at 20.

[4] *See* Janeen McIntosh and Svetlana Starykh, "Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review" (NERA Jan. 25, 2021) at 17, fig 15; 20, fig. 16; https://www.nera.com/publications/archive/2021/recent-trends-in-securities-class-action-litigation--2020-full-y.html.

at *3 (S.D. Fla. Oct. 17, 2016) (settlement worth 5.5% of maximum damages was "an excellent recovery" warranting one-third fee).

### 2.     The Time and Labor Required Support the Requested Fee

A review of the efforts and time expended by Plaintiffs' Counsel[5] confirms that the requested fee is fully justified. Plaintiffs' Counsel expended 9,480.75 hours in this litigation with a resulting lodestar of $4,815,428.75. ¶91. The time and labor expended by Plaintiffs' Counsel amply support the requested fee. *Thorpe,* 2016 WL 10518902, at *8 (the "significant time and labor that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid" supported a 33.3% fee request); *see also Smith v. Floor & Decor Outlets of Am., Inc.*, 2017 WL 11495273, at *4 (N.D. Ga. Jan. 10, 2017) (more than 3,000 hours of counsel's "time and labor" supported one-third fee award).

The Grzandziel Declaration details the time, labor and skill that Lead Counsel devoted to the successful prosecution of the Action, which included: preparing a detailed amended complaint based on an extensive investigation (¶¶6, 19, 75); successfully opposing Defendants' motion to dismiss, which challenged the fundamental elements of Plaintiffs' claims (¶¶6, 21, 75); conducting extensive fact

---

[5] "Plaintiffs' Counsel" includes Lead Counsel Saxena White as well as additional counsel Abraham, Fruchter &Twesrky, LLP (Ex. 5A-5B). In April 2019, prior to OKMRF being appointed Lead Plaintiff, Saxena White entered into a fee sharing agreement with David Davis, outside General Counsel to the OKMRF Board of Trustees, by which Mr. Davis's firm would receive 10% of any fee that may be received by Saxena White in consideration for his work and counsel in connection with this Action. Vianale & Vianale LLP is also receiving a portion of Saxena White's fee in consideration for their work on the case. Vianale & Vianale's lodestar is $6,987.50. Neither Mr. Davis's fee nor Vianale & Vianale's fee will decrease the Settlement Class's recovery, as both are being paid from Saxena White's share of the fee award.

discovery, including reviewing over 1.9 million pages of documents, preparing for fact witness depositions and deposing HIIQ's former head of broker compliance (¶¶6, 22-29, 75); fully briefing their class certification motion and defending the depositions of Lead Plaintiffs' representatives and their expert (¶¶30-31, 75); and engaging in extensive settlement negotiations, including a full-day formal mediation session and weeks of follow-up negotiations (¶¶6, 32-33).

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a one-third fee award. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison").

Here, based on the $11 million Settlement Fund, the requested one-third fee award, or $3,666,666.67 before interest, represents a negative multiplier of 0.76 on Plaintiffs' Counsel's total lodestar.[6] The multiplier requested here falls significantly below the "2.26 to 4.5" range of multipliers frequently awarded in similar class action settlements within the Eleventh Circuit. *See, e.g., Thorpe*, 2016 WL 10518902, at *7 (finding 3.58 lodestar multiplier—and 33.3% fee—reasonable, and citing authority for multipliers ranging from 2.26 to 4.5); *Smith*, 2017 WL 11495273, at *4 (2.5 multiplier was "well within the accepted range" and supported one-third fee award); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26,

---

[6] The multiplier is calculated by dividing the $3,666,666.67 fee request by the $4,815,428.75 in lodestar that Plaintiffs' Counsel incurred.

2012) (one-third fee of $75 million fund "would represent a multiplier of approximately four times lodestar, which is well within the range of approved fees.").[7] Courts have regularly recognized that the reasonableness of a fee request is reinforced where "the percentage fee would represent a negative multiplier of the lodestar," supporting "an award at the higher end of the spectrum." *See, e.g., Guevoura Fund Ltd.*, 2019 WL 6889901, at *18.

Accordingly, the considerable time and labor expended by Lead Counsel in this Action fully supports the requested fee here.

### 3.   The Novelty and Difficulty of the Issues Supports the Requested Fee

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *see also NetBank*, 2011 WL 13353222, at *3 (awarding 34% fee and noting "the complexity of securities class action litigation is notably difficult and notoriously uncertain.").

This Action was no exception. Lead Counsel faced numerous substantial hurdles in this Action, with Defendants raising significant challenges to loss causation and damages, in addition to vigorously contesting liability on falsity, materiality, and scienter grounds. For example, Defendants maintained throughout the litigation that their statements that HIIQ's compliance was "best in class" and that the number of

---

[7] Moreover, Lead Counsel will incur substantial additional hours and resources overseeing the Settlement claims administration process.

upheld customer complaints was "incredibly low" were not false or misleading because such statements accurately reflected the quality of compliance and the number of upheld customer complaints. ECF No. 41 at 9-16. Defendants would also likely have argued that HIIQ had heavily invested in its compliance and customer service processes in recent years and that the Individual Defendants' reasonable belief that HIIQ had "best in class" compliance undercuts an inference of scienter.

With respect to loss causation and damages, Defendants argued that none of the alleged corrective disclosures revealed the falsity of any alleged prior misrepresentation by Defendants. ECF No. 41, at 23. Specifically, Defendants argued that the November 2, 2018 corrective disclosure (the FTC's announcement of the enforcement action against Simple Health) in no way corrected any prior alleged false or misleading statement by HIIQ, as the FTC action did not contain any allegations against HIIQ or contain any corrective information relating to HIIQ's compliance, customer service, or customer complaints. *Id.* Moreover, Plaintiffs' damages arising from this first corrective disclosure were based on a two-day stock drop: Friday, November 2, 2018, the day of the FTC's announcement, and continuing over the weekend into the next trading session on Monday, November 5, 2018. But defendants in securities class actions invariably argue that stock price declines in multi-day event windows such as this—particularly over weekends—are not causally related to the initial announcement. Plaintiffs expected that Defendants would make that argument here, and if the Court or a jury were to eliminate the stock drop on November 5, 2018, Plaintiffs' damages would significantly decrease even further.

With respect to the second alleged corrective disclosure, the November 27, 2018 Aurelius Value short-seller report, Defendants previously argued that the report contained already-public information, and would certainly continue to do so. *Id.* Further, damages were significantly reduced when the Court shortened the Class Period end date from April 11, 2019 to February 18, 2019, thereby excluding from the Class Period three of the five corrective disclosures alleged in the Complaint (March 13, 2019, March 25, 2019, and April 12, 2019)—including the largest single-day share price drop as a percentage of market share, the March 13, 2019 announcement of an investigation by the U.S. House of Representative Energy & Commerce Committee, which caused HIIQ's stock price to decline by 17.2%. Complaint ¶¶136-139.

Had the litigation continued, Defendants would have contested these issues through summary judgment, trial, and appeals, which represented a substantial risk that the proposed Settlement Class would have seen its damages significantly reduced, if not eliminated entirely. *See Thorpe*, 2016 WL 10518902, at *9 (noting risk of "successfully maintain[ing] class certification through trial, and prov[ing] damages, requiring additional complicated expert testimony").

Moreover, Lead Plaintiffs also faced significant risks of recovering on any judgment they obtained based on HIIQ's ability to pay. Since this case was originally filed, HIIQ has changed its name, has changed its business model, and according to filings with the SEC before being taken private, the Company had only limited cash available to contribute to any settlement or other recovery. In light of these considerations and the fact that the remaining proceeds of Defendants' directors' and

officers' insurance tower were virtually exhausted by the time of the Settlement, the Settlement represents an exceptional recovery for the Settlement Class.

Lastly, the fact that Lead Counsel "was able to achieve substantial results in the most efficient manner possible without requiring protracted and extended litigation further supports the [requested 30%] fee in this case under the *Camden I* analysis." *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1383 (N.D. Ga. 2019) (awarding 33% fee, noting the "swift and successful conclusion supports an upward deviation from the benchmark."). Accordingly, Lead Counsel achieved an excellent result for the Class, thus strongly supporting the requested fee award.

### 4. The Skill, Experience, and Ability of the Attorneys Supports the Requested Fee

In evaluating an attorney fee request, courts in this Circuit consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp.*, 2010 WL 1628362, at *8 n. 15 (S.D. Fla. Apr. 15, 2010) and "the experience, reputation, and ability of the attorneys" involved. *Camden*, 946 F.2d at 772 n. 3; *see also Columbus Drywall*, 2012 WL 12540344, at *4 ("The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation.").

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues, and the skill to respond to a host of legal and factual issues raised

14

by Defendants during the litigation. Moreover, as demonstrated by their firm résumé, Saxena White is a highly qualified and experienced firm in litigating complex securities class actions such as this one. *See* Ex. 5A to Grzandziel Decl. Indeed, Saxena White has served as lead or co-lead counsel in some of the largest securities and derivative litigation recoveries achieved in the nation.[8] Without question, Lead Counsel's skills and experience were a major factor in obtaining the excellent result achieved here.

Lastly, the "quality of the opposition the plaintiffs' attorneys faced" supports Lead Counsel's fee request. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Here, Defendants were represented by Foley & Lardner, a prominent nationally-recognized law firm that vigorously contested this Action through a motion to dismiss, motion for class certification, in the extensive discovery process, and in the Settlement negotiations. Lead Counsel's ability to obtain the Settlement against this formidable opposition confirms the quality of the representation.

### 5.    The Customary and Contingent Nature of the Fee Supports the Requested Fee

The "customary fee" in class actions is a contingency fee, because "virtually no individual plaintiff has a large enough stake in the litigation to justify charging on an hourly basis." *See Ressler*, 149 F.R.D. at 654. The contingent nature of Plaintiffs'

---

[8] *See, e.g., In re Wells Fargo & Co. S'holder Derivative Litig.*, 2020 WL 1786159 (N.D. Cal. Apr. 7, 2020) ($240 million settlement plus substantial corporate governance relief); *In re Wilmington Tr. Sec. Litig.*, 2018 WL 6046452, at *8 (D. Del. Nov. 19, 2018) ($210 million common fund in securities class action); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *1 (M.D. Fla. Oct. 5, 2017) ($73 million common fund in securities class action).

Counsel's fees should be given substantial weight in assessing the requested fee. Courts have consistently recognized that the risk that class counsel could receive little or no recovery is a major factor in determining a fee award:

> A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee . . . and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is "perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *see also In re Friedman's Inc.*, 2009 WL 1456698, at *3 (contingent nature of fee "should be given substantial weight" in assessing award); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").

 "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds*, 790 F.2d 1174 (5th Cir. 1986). This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever—a risk that is particularly acute in the context of securities fraud class actions:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged. . . . If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class

actions and of contingency fee arrangements—often the only means of legal representation available given the incredible expense associated with these actions—must be promoted.

*Behrens,* 118 F.R.D. at 548. Moreover, the risk of obtaining no compensation would have persisted even after trial.[9] The contingency risk here justifies the requested fee.

### 6. The "Undesirability" of The Action

Courts consider the "undesirability" of a case in awarding attorney fees in recognition that, given the "positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important" cases, "such decisions must be properly incentivized." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011). This case was "undesirable" for purposes of supporting a fee award for several compelling reasons.

First, only one other law firm moved to be appointed lead counsel, demonstrating that many experienced firms deemed the case sufficiently risky that they did not believe that this action was worth pursuing on a contingent basis. *Thorpe,* 2016 WL 10518902, at *11; *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 (noting this was "a case from which other law firms shrunk."). Second, as discussed herein, the case presented a number of complex and difficult issues— particularly in proving loss causation and damages. These issues were only heightened as a result of the Court's decision at class certification that dramatically shortened the

---

[9] *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning jury verdict); *In re BankAtlantic Bancorp, Inc.,* 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (same).

Class Period. These facts and obstacles further underscore the undesirability of this case from a risk perspective, which "warrant[s] a higher percentage of the fund" in awarded fees. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11234103, at *4 (awarding 30% of common fund where "[t]he prospect of expending thousands of hours and millions of dollars with no assurance of payment to litigate a case against multiple, well-represented defendants would deter many lawyers from assuming a representation like this one."). Accordingly, this factor weighs heavily in support of the reasonableness of Lead Counsel's requested fee.

### 7.    The Preclusion of Other Employment Supports the Requested Fee

The considerable amount of time spent prosecuting this case—9,480.75 hours (¶91)—was time that Plaintiffs' Counsel could not devote to other matters. Moreover, Plaintiffs' Counsel expended this time and effort without any assurance that they would ever be compensated for their hard work. Accordingly, this factor also supports the requested fee.

### 8.    The Positive Reaction of the Settlement Class Supports the Requested Fee

In further confirmation of the reasonableness of the requested fee, to date, no Settlement Class member has filed an objection. The Notice advised Settlement Class Members that Lead Counsel would apply for fees not to exceed one-third of the Settlement Fund, and that the deadline for filing objections to the fee application is

18

March 2, 2021. Should any objections be filed, Lead Counsel will address them in reply papers to be filed on March 16, 2021.[10]

### 9.   The Requested Fee is Fair and Reasonable Compared to Similar Actions

The Eleventh Circuit has explained that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 774-75. In recent years, Eleventh Circuit courts have noted that the "trend in this circuit" in complex class actions is toward fees of one-third of the settlement fund. *See, e.g., Reyes v. AT&T Mobility Servs., LLC*, 2013 WL 12219252, at *3 (S.D. Fla. June 21, 2013) (collecting cases and stating that "Class Counsel's request for one-third of the settlement fund is consistent with the trend in this Circuit.").

Indeed, recent empirical studies have shown that, in this Circuit, the median percentage fee award is currently 33%, which is not surprising as "courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund." *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (collecting cases); Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 951 (Oct. 2017) (finding that, over a four year period, the mean fee award in the Eleventh Circuit was 30% and the median award was 33%); *Hanley v. Tampa*

---

[10] Additionally, as of this filing, no requests for exclusion have been received.

*Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund").

A one-third fee award is appropriate here because of the excellent result achieved—particularly in the face of the risks and challenges of the litigation, the substantial investment of time and resources, and the approval of Lead Plaintiffs. Such an award is in-line with recent awards in similar securities and complex class actions in this Circuit. *See, e.g., In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1-2 (M.D. Ga. Dec. 11, 2019) (awarding one-third of $21 million settlement as "consistent with awards in similar cases"); *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1-2 (N.D. Ala. May 3, 2016) (awarding 33% of $25 million settlement as "consistent with awards in similar cases"); *Thorpe*, 2016 WL 10518902 at *11 (awarding 33.3% of $24 million settlement).

Indeed, as the charts below demonstrate, a wide-ranging review of percentage fee awards in securities and other complex class actions both in this Circuit and nationwide confirms that a one-third fee award here is fair and reasonable:

| Comparable Class Cases Within the Eleventh Circuit | Settlement Amount | Fee Award |
|---|---|---|
| *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at *3-4 (S.D. Fla. Dec. 18, 2017) | $25 million | 35% |
| *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999), cert. denied 530 U.S. 1223 (2000) | $40 million | 33.3% |
| *City Pension Fund for Firefighters & Police Officers in City of Miami Beach v. Aracruz Celulose S.A.*, No. 08-cv-23317, ECF No. 201 at 7 (S.D. Fla. July 17, 2013) | $37.5 million | 33.3% |

| | | |
|---|---|---|
| *Thorpe v. Walter Inv. Mgmt. Corp.*, 2016 WL 10518902, at *13 (S.D. Fla. Oct. 17, 2016) | $24 million | 33.3% |
| *In re Flowers Foods, Inc. Sec. Litig.*, 2019 WL 6771749, at *1 (M.D. Ga. Dec. 11, 2019) | $21 million | 33.3% |
| *In re Walter Energy, Inc. Sec. Litig.*, 2016 WL 7230505, at *1(N.D. Ala. May 3, 2016) | $25 million | 33% |
| *In re HD Supply Holdings, Inc. Securities Litig.*, No. 1:17-cv-02587-ELR, ECF No. 102 at 2 (N.D. Ga. July 21, 2020) | $50 million | 30% |
| *In re Rayonier Secs. Litig.*, 2017 WL 4542852 at *3 (M.D. Fla. Oct. 5, 2017) | $73 million | 30% |
| *Mosser v. TD Bank, N.A.* (*In re Checking Account Overdraft Litig.*, MDL No. 1:09-md-2036-JLK, ECF No. 3339 at 27 (S.D. Fla. Mar. 18, 2013) | $62 million | 30% |
| *In re BellSouth Corp. Sec. Litig.*, 2007 WL 9676400, at *2-3 (N.D. Ga. Apr. 9, 2007) | $35 million | 30% |
| *In re Cryolife, Inc. Sec. Litig.*, No. 1:02-cv-1868-BBM, ECF No. 276 at 9-10 (N.D. Ga. Nov. 9, 2005) | $23.25 million | 30% |

| Comparable Class Cases Nationwide | Settlement Amount | Fee Award |
|---|---|---|
| *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *6 (W.D. Mo. Aug. 16, 2019) | $55 million | 33.3% |
| *In re Wellbutrin SR Antitrust Litig.*, Nos. 04–5525, 05–396, ECF No. 413 at 14 (E.D. Pa. Nov. 21, 2011) | $49 million | 33.3% |
| *Schleicher v. Wendt*, No. 1:02-cv-1332, ECF No. 458 at 5-6 (S.D. Ind. Feb. 17, 2011) | $41.465 million | 33.3% |
| *Seaman v. Duke Univ.*, 2019 WL 4674758, at *3 (M.D.N.C. Sept. 25, 2019) | $54.5 million | 33.3% |
| *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:07-cv-02830, ECF No. 345 at 21 (W.D. Tenn. Aug. 5, 2013) | $62 million | 30% |
| *KBC Asset Mgmt. NV v. 3D Sys. Corp.,* 2018 WL 3105072, at *1 (D.S.C. June 25, 2018) | $50 million | 30% |
| *In re BHP Billiton Secs. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) | $50 million | 30% |
| *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *4 (D.R.I. Feb. 17, 2016) | $48 million | 30% |
| *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *8 (N.D. Ill. July 13, 2016) | $45 million | 30% |

### 10.   Lead Plaintiffs' Endorsement Supports Approval of the Requested Fee

In enacting the PSLRA, Congress encouraged institutional investors to serve as lead plaintiffs and direct the litigation, including selecting and monitoring class counsel. *See Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1260 (11th Cir. 2014). Accordingly, "in a PSLRA case . . . a fee request that has been approved and endorsed by properly-appointed lead plaintiffs . . . enjoys a presumption of reasonableness." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009).

Here, the requested fee was "approved as fair and reasonable by Lead Plaintiffs, sophisticated institutional investors that were directly involved in the prosecution and resolution of the claims and who have a substantial interest in ensuring that any fees paid to Lead Counsel are duly earned and not excessive." *Rayonier*, 2017 WL 4542852, at \*3; *see* Exs. 3 and 4 to the Grzandziel Decl. Lead Plaintiffs' endorsement of Lead Counsel's fee request supports approval. *See City of St. Clair Shores Gen. Emps.' Ret. Sys. v. Lender Processing Servs., Inc.,* 2014 WL 12621611, at \*2 (M.D. Fla. Mar. 4, 2014) (approving fee that was "reviewed and approved as fair and reasonable by Lead Plaintiff, a sophisticated institutional investor"); *In re Banco Bradesco S.A. Sec. Litig.*, 2019 WL 6114713, at \*2 (S.D.N.Y. Nov. 18, 2019).

### C.   Lead Counsel's Expense Reimbursement Is Fair and Reasonable

Lead Counsel also request reimbursement of $377,837.59 in Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting the Action (plus $14,573.30 in

reasonable reimbursement for Lead Plaintiffs, as detailed below), which is significantly less than the $450,000 amount contained in the Notice. It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action.'").

These expenses for which Plaintiffs' Counsel seek reimbursement were "reasonably and necessarily incurred" in obtaining the Settlement, and thus their reimbursement is warranted. *Smith*, 2017 WL 11495273, at *5. These expenses are of the type necessarily incurred in litigation and routinely charged to clients billed by the hour. The vast majority of these expenses were incurred for experts, mediation, a document database, legal research, and investigations, and also include court fees and deposition fees—all costs that were "reasonable and [] necessarily incurred." *See*, *e.g.*, *Equifax*, 2020 WL 256132, at *40 (approving similar expenses); *Rayonier,* 2017 WL 4542852, at *3 (approving award of $616,806.40 in expenses at similar stage of litigation). A breakdown of these expenses is included as Ex. 5A and 5B to the Grzandziel Declaration, which were billed separately from Plaintiffs' Counsel's hourly rates. To date, there have been no objections to the request for expenses.

## D.   Lead Plaintiffs' Reimbursement Awards are Fair and Reasonable

Lead Plaintiffs also seek reimbursement of the costs and expenses they incurred directly in their representation of the Class. The PSLRA specifically provides that an

"award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Lead Plaintiffs City of Birmingham Retirement and Relief System and Oklahoma Municipal Retirement Fund seek reimbursement of $7,503.75 and $7,069.55, respectively, for the reasonable time and expenses dedicated by their employees to furthering and supervising the Action. *See* Grzandziel Decl. Exs. 3 and 4. Numerous courts have approved similar awards to compensate lead plaintiffs for their efforts. *See, e.g., Thorpe*, 2016 WL 10518902, at *12 (awarding $15,000 to each class representative as "fair and reasonable"); *Pritchard v. APYX Med. Corp.*, 2020 WL 6937821, at *2 (M.D. Fla. Nov. 18, 2020) (awarding $7,500 to lead plaintiff "as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class").

## III.   CONCLUSION

For the reasons discussed above and in the Grzandziel Declaration, Lead Counsel respectfully submit that their requested fee award meets all of the relevant factors under Eleventh Circuit precedent and is fully supported by the factual record in this Action. Accordingly, Lead Plaintiffs and Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of one-third of the Settlement Fund (i.e. $3,666,666.67), plus interest earned at the same rate as the Settlement Fund; (ii) award $377,837.59 in reimbursement of Litigation Expenses; and (iii) award a total of $14,573.30 to Lead Plaintiffs as Representative Reimbursements.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Lead Plaintiffs certifies that they have conferred with counsel for Defendants, and Defendants take no position on this motion.

Dated: February 16, 2021

Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Brandon T. Grzandziel*
Maya Saxena (Fla. Bar 35494)
Joseph E. White, III (Fla. Bar 621064)
Brandon T. Grzandziel (Fla. Bar 58732)
Adam Warden (Fla. Bar 873691)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
brandon@saxenawhite.com
awarden@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street
8th Floor
White Plains, NY 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Class*

**ABRAHAM, FRUCHTER AND TWERSKY, LLP**

Mitchell M.Z. Twersky (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Additional Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2021, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

*/s/ Brandon T. Grzandziel*
Brandon T. Grzandziel