# EXHIBIT 5

**EXHIBIT 5**

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

**SUMMARY OF PLAINTIFFS' COUNSEL'S
LODESTAR AND EXPENSES**

| EXHIBIT | FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|---|
| 5A | Saxena White | 8,679.5 | $4,367,043.75 | $377,017.71 |
| 5B | Abraham, Fruchter & Twersky | 801.25 | $448,385.00 | $819.88 |
| | **TOTAL:** | 9,480.75 | $4,815,428.75 | $377,837.59 |

# EXHIBIT 5A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER, <br><br> Defendants. | CASE NO. 8:19-CV-00421-WFJ-CPT <br><br> CLASS ACTION |

**DECLARATION OF BRANDON T. GRZANDZIEL IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF SAXENA WHITE P.A.**

I, Brandon T. Grzandziel, declare as follows:

1.      I am a Director of the law firm Saxena White P.A. ("Saxena White"), Court-appointed Co-Lead Counsel in the above-captioned class action (the "Action").[1]  I submit this Declaration in support of Lead Plaintiffs' motion for an award of attorneys' fees in connection with services rendered in the Action, as well as for payment of Litigation Expenses incurred by my firm in connection with the Action.

---

[1] Unless otherwise defined in this Declaration, all capitalized terms have the meanings set out in the Stipulation and Agreement of Settlement dated December 2, 2020 (ECF No. 100, Ex. 2).

I have knowledge of the matters set forth herein based on personal knowledge, my review of the firm's records, and consultation with other firm personnel.

2.      My firm, as Lead Counsel for Lead Plaintiffs City of Birmingham Retirement and Relief System and Oklahoma Municipal Retirement Fund, (collectively, "Lead Plaintiffs"), was involved in all aspects of the prosecution and resolution of the Action, as set forth in the Declarations in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

3.      The information in this Declaration regarding the firm's time, including in the schedule attached hereto as Exhibit 1, was prepared from daily time records regularly prepared and maintained by my firm in the ordinary course of business.  I am the director who oversaw my firm's activities in the litigation, and I, together with attorneys working under my direction, reviewed my firm's daily time records to confirm their accuracy. As a result of this review, I believe that the time reflected in the firm's lodestar calculation and the expenses and charges for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation. Time expended in preparing the application for fees and expenses has not been included in this report, and time for timekeepers who had worked less than 10 hours on the matter was also removed from the time report.

4.      The total number of hours expended on this Action by my firm's attorneys and professional support staff employees from its inception through October 21, 2020 was 8,679.50.  The total resulting lodestar for my firm is $4,367,043.75.  The schedule attached hereto as Exhibit 1 is a detailed summary reflecting the amount of time spent by each attorney and professional support staff employee of my firm who was involved in the Action, and the lodestar calculation based on my firm's current hourly rates.

5.      The hourly rates shown in Exhibit 1 attached hereto are the current rates set by the firm for each individual.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the hourly rates of such personnel in his or her final year of employment by my firm.  The hourly rates are comparable to the rates submitted by my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications within this Circuit and nationwide. *See, e.g. In re HD Supply Holdings, Inc. Securities Litigation*, No. 1:17-CV-02587-ELR, ECF No. 102 at 4 (N.D. Ga. July 21, 2020); *Milbeck v. TrueCar, et al.*, No. 2:18-cv-02612-SVW-AGR, ECF No. 181-3 at pp. 6-8 (C.D. Cal. Dec. 23, 2019); *In re Wells Fargo & Co. Shareholder Derivative Litig.*, No. 3:16-cv-05541-JST, ECF No. 278-8 at pp. 7-8 (N.D. Cal. Jun. 27, 2019); *In re Rayonier Inc. Sec. Litig.*, Case No. 3-14-cv-1395-TJC-JBT (M.D. Fla.) (ECF No. 164-9).

6.      My firm's lodestar figures are based upon the firm's hourly rates, which do not include expense items.  Expense items are recorded separately, and these amounts are not duplicated in my firm's hourly rates.

7.      My firm has incurred a total of $377,017.71 in unreimbursed expenses in connection with the prosecution of this Action from its inception, which are detailed in Exhibit 2 to this Declaration.  The expenses incurred in this Action are reflected in the books and records of Saxena White, which are regularly prepared and maintained in the ordinary course of business.  These records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

8.      With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and its current attorneys.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of February 2021.

/s/ Brandon T. Grzandziel
Brandon T. Grzandziel

**EXHIBIT 1**

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

**SAXENA WHITE TIME REPORT**

**Inception through October 21, 2020**

| NAME | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **Shareholders** | | | |
| Maya Saxena | 43.50 | $895.00 | $38,932.50 |
| Joseph E. White, III | 30.00 | $895.00 | $26,850.00 |
| | | | |
| **Directors** | | | |
| Steven B. Singer | 124.75 | $895.00 | $111,651.25 |
| Lester R. Hooker | 149.75 | $800.00 | $119,800.00 |
| David Kaplan | 406.50 | $800.00 | $325,200.00 |
| Brandon Marsh | 550.50 | $775.00 | $426,637.50 |
| Brandon T. Grzandziel | 750.00 | $675.00 | $506,250.00 |
| | | | |
| **Attorneys** | | | |
| Fei-Lu Qian | 126.25 | $650.00 | $82,062.50 |
| Scott Guarcello | 347.00 | $625.00 | $216,875.00 |
| Adam D. Warden | 742.25 | $600.00 | $445,350.00 |
| Jonathan Lamet | 190.25 | $600.00 | $114,150.00 |
| Dianne Pitre | 35.25 | $550.00 | $19,387.50 |
| Donald Grunewald | 26.25 | $525.00 | $13,781.25 |
| Hani Farah | 440.00 | $525.00 | $231,000.00 |
| Jill M. Schorr-Miller | 161.00 | $525.00 | $84,525.00 |
| Mario Alvite | 102.75 | $450.00 | $46,237.50 |
| | | | |
| **Staff Attorneys** | | | |
| Craig Walenta | 1,103.75 | $365.00 | $402,868.75 |
| | | | |
| **Discovery Attorneys** | | | |
| Kathleen Lynch | 827.50 | $365.00 | $302,037.50 |
| Kathleen Pierrilus | 1,006.25 | $365.00 | $367,281.25 |
| Steven Ganim | 859.50 | $365.00 | $313,717.50 |
| | | | |

| Paralegals | | | |
|---|---|---|---|
| Brandon Smith | 27.00 | $275.00 | $7,425.00 |
| Kaye Martin | 114.50 | $275.00 | $31,487.50 |
| Amara Demirovich | 62.00 | $250.00 | $15,500.00 |
| Charlene Wallace | 85.00 | $250.00 | $21,250.00 |
| Fabricia Resende | 75.50 | $250.00 | $18,875.00 |
| | | | |
| **Financial Analyst** | | | |
| Marc D. Grobler | 47.00 | $295.00 | $13,865.00 |
| | | | |
| **Support Staff** | | | |
| Sam Jones | 42.00 | $295.00 | $12,390.00 |
| Stefanie Leverette | 31.25 | $275.00 | $8,593.75 |
| Andrea Africano | 172.25 | $250.00 | $43,062.50 |
| | | | |
| **TOTAL LODESTAR** | **8,679.50** | | **$4,367,043.75** |

2

**EXHIBIT 2**

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

**SAXENA WHITE EXPENSE REPORT**

| CATEGORY | AMOUNT($) |
|---|---|
| Consulting Expert | $156,622.10 |
| Discovery Costs | $96,951.56 |
| Filing Fees | $1,120.63 |
| Investigating Expense | $54,143.75 |
| Meals and Meetings | $1,074.23 |
| Mediator | $16,911.32 |
| Online Legal and Factual Research* | $27,830.61 |
| Postage and Delivery | $392.90 |
| Press Releases and Marketing | $16.25 |
| Printing and Photocopy | $2,476.25 |
| Processing Services | $1,050.00 |
| Telephone, Conference Call | $1,039.63 |
| Transcript and Deposition Expense | $15,384.19 |
| Travel | $2,004.29 |
|  |  |
| **TOTAL EXPENSES:** | **$377,017.71** |

\* The charges reflected for on-line research are for out-of-pocket payments to the vendors for research done in connection with this litigation. Online research is billed to each case based on actual time usage at a set charge by the vendor. There are no administrative charges included in these figures.

3

# EXHIBIT 3

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

## <u>FIRM RESUME</u>



# SAXENA WHITE

"A highly experienced
group of lawyers
with national reputations in large securities class actions…"

*- Hon. Alan Gold, U.S. District Court, Southern District of Florida*

## FIRM RESUME

FLORIDA **I** NEW YORK **I** CALIFORNIA **I** DELAWARE

www.saxenawhite.com

S
W

# SAXENA WHITE

Saxena White P.A. was founded in 2006 by Maya Saxena and Joseph White. After spending many years at one of the country's largest class action law firms, we wanted to do business a different way. Our goal in forming the Firm was to become big enough to handle prominent and complex litigation while remaining small enough to offer each client responsive, ethical, and personalized service.

Today our Firm's capabilities rival those of our largest competitors. We obtain victories against major corporations represented by the nation's top defense firms. We represent some of the largest pension funds in major securities fraud cases and have recovered over $2 billion on behalf of injured investors. We have succeeded in improving how corporations do business by requiring the implementation of significant corporate governance reforms. We have formed long-lasting relationships with our clients who know we are only a phone call away. However, the most important attribute of the Firm, and the key to its continued success, is the people. Saxena White was built upon the quality, integrity, and camaraderie, of its people — attributes that continue to be its greatest legacy.

*What Makes us Different?*

- *We are proud to be the only certified woman- and minority-owned firm in the securities litigation business representing institutional investors and have an ongoing commitment to diversity.*

- *We take a selective approach to litigation, recommending only a few fraud cases per year and litigating them aggressively.*

- *The securities fraud cases in which we have served as lead counsel are rarely dismissed due to our careful selection criteria.*

- *We offer tailored portfolio monitoring services to our clients that reflect their individual philosophies toward litigation.*

- *We emphasize community outreach and welcome opportunities to support our clients in their communities.*



## RECENT RECOVERIES

### ▪ *In re Wells Fargo & Company Shareholder Derivative Litigation*

Saxena White served as co-Lead Counsel in this landmark case alleging that the Board and executive management of Wells Fargo knew or consciously disregarded that Wells Fargo employees were illicitly creating millions of deposit and credit card accounts for their customers, without those customers' consent, in an attempt to drive up "cross selling," i.e., selling complementary Wells Fargo banking products to prospective or existing customers.

Over significant competition from the top law firms in our industry, the Court selected Saxena White as one of the two firms most qualified in the nation to lead this high-profile case, noting the superior quality of the work performed. Through this shareholder derivative action, Saxena White held Defendants accountable for a scandal that has significantly damaged one of America's largest financial institutions.

On April 7, 2020, the Northern District of California approved a $320 million settlement on behalf of nominal Defendant Wells Fargo & Company with the Company's officers, directors, and senior management. The Settlement includes a $240 million cash payment from Defendants' insurers—representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.

Saxena White zealously advocated for the interests of the Company and obtained excellent results. In sum, after a thorough investigation of the relevant claims; the filing of a detailed complaint; success in defeating two motions to dismiss; active intervention in, stays of, and dismissals of multiple state court actions; consolidation and coordination with related federal actions; extensive review of over 3.5 million pages of documents from Defendants, Wells Fargo, and numerous third parties; consultation with experts; and research and preparation for depositions, the $320 million settlement was reached in this derivative action.

In approving the historic Settlement, the Court remarked that "this represents an excellent result for the shareholders" of Wells Fargo. The Court went on to praise "the risk" that Saxena White "took in litigation on a contingency basis – a risk they have borne for more than three years."

### ▪ *In re Wilmington Trust Securities Litigation*

Saxena White served as co-Lead Counsel in a class action against Wilmington Trust, its senior executives, board of directors, outside auditor, and the underwriters of one of its secondary offerings. Following the appointment of the Coral Springs Police Pension Fund, St. Petersburg Firefighters' Retirement System, Pompano Beach General Employees Retirement System as co-Lead Plaintiffs and Saxena White as co-Lead Counsel, Lead Plaintiffs conducted a comprehensive and wide-ranging investigation, culminating in an amended complaint that detailed how Defendants violated the Securities Exchange Act of 1934 by concealing the drastic deterioration of Wilmington Trust's loan portfolio and improperly accounting for the value of its loans under Generally Accepted Accounting Principles. In particular, Defendants understated Wilmington Trust's provision for loan losses as its loan portfolio declined in quality, improperly delayed recognition of losses on the portfolio, and inflated its financial results by misstating the fair value of its loan portfolio. Defendants' misconduct served to artificially inflate the price of Wilmington Trust securities during the Class Period. Lead Plaintiffs further alleged that Defendants violated the Securities Act of 1933 by issuing untrue statements in connection with the Company's February 23, 2010 public equity offering, by understating Wilmington Trust's provision for loan losses.

After prevailing over thousands of pages of briefing on Defendants' multiple motions to dismiss, Lead Plaintiffs sought to be appointed as class representatives and certify a class of damaged investors. After extensive briefing and discovery, the Court certified a class on September 3, 2015. In certifying the class, Saxena White also secured important new precedent for aggrieved shareholders nationwide who have fallen victim to securities fraud. The Court's opinion rejected Defendants' argument that the Supreme Court's opinion in Comcast Corp. v. Behrend, 569 U.S. 27 (2013) requires plaintiffs to submit a damages methodology and model at the class certification stage. Having defeated an argument that securities fraud defendants are increasingly relying upon to avoid responsibility for their illegal actions, Saxena White's efforts have again provided investors with a powerful weapon with which to combat corporate wrongdoing at the class certification stage. Indeed, in addition to certifying the class, the Court applauded Saxena White's "excellent lawyers" and noted that Ms. Saxena's "argument was very well argued."

Having certified a class, Saxena White and Lead Plaintiffs embarked on a monumental discovery effort to marshal the highly complex and technical evidence required to establish Defendants' fraud. As part of this massive undertaking, we closely reviewed and analyzed nearly 13 million pages of documents. Our efforts required us to not only take on a veritable who's who of highly skilled defense counsel, but also multiple branches of the U.S. Government. After two years of hard-fought motion practice, we successfully compelled the Federal Reserve and the Office of the Comptroller of the Currency to waive the bank examination privilege for over 35,000 documents that those regulators had withheld. Compelling the production of such documents is a rare feat and was the culmination of a multi-year effort to relentlessly fight for the information and facts that were relevant to the prosecution of the case. We also prevailed over the U.S. Attorney's Office, successfully moving to lift the discovery stay imposed at its request. As a result, we were able to depose key fact witnesses. In all, we deposed 39 witnesses in seven states, which generated nearly 11,000 pages of testimony and almost 900 exhibits.

After nearly eight years of hard-fought litigation, we negotiated an outstanding $210 million recovery on behalf of the Class. This remarkable settlement represents a recovery of nearly 40% of the Class's maximum likely recoverable damages, which is eight times greater than the 5% median recovery in the Third Circuit. The recovery also ranks among the top ten securities fraud settlements in the Third Circuit, and is in the top 5% of all securities fraud settlements since the PSLRA was enacted in 1995. On November 19, 2018, the Court approved the settlement in its entirety. Notably, the Court twice observed that Saxena White achieved the recovery independently of the Government's criminal investigation. The Court was also complimentary of the "legal prowess" exhibited by Saxena White's "highly experienced attorneys."

### ■ *Milbeck v. TrueCar, et al.*

Saxena White served as Lead Counsel in a class action against TrueCar, Inc. that alleged that the company and its senior executives misled investors about TrueCar's relationship with its most significant business partner, United States Automobile Association (USAA). TrueCar's SEC filings disclosed that USAA's marketing of TrueCar's services on USAA's website alone generated approximately one third of TrueCar's annual revenue and warned that if USAA made even a minor change to its marketing of TrueCar on USAA's website, TrueCar's business could be harmed. The complaint alleged that, prior to the start of the Class Period, USAA informed TrueCar that it intended to substantially modify its website, including by reducing the prominence of its marketing of TrueCar's services. Thus, defendants knew that the risk TrueCar had warned investors about had, in fact, materialized, but failed to disclose this material information. The complaint also alleged that TrueCar's CFO and other insiders engaged in insider trading while in possession of material non-public information regarding the impending USAA website changes. When the truth that TrueCar's earnings were

3



severely negatively impacted as a result of USAA's website redesign was finally revealed, the company's stock price declined significantly, causing investors substantial losses.

Saxena White engaged in extensive litigation efforts on an exceptionally expedited case schedule, including defeating Defendants' motion to dismiss, reviewing over 200,000 documents produced by defendants and obtaining class certification. Thereafter, the parties participated in negotiations through which Plaintiff ultimately obtained a $28.25 million cash settlement on behalf of the Clas

### ▪ *John Cumming v. Wesley R. Edens, et al. (New Senior Investment Group)*

Described as a "landmark" settlement by Law360, in 2019 the Delaware Court of Chancery approved a $53 million settlement in a shareholder derivative action against real estate investment trust New Senior Investment Group. The suit targeted New Senior's $640 million acquisition of a portfolio of senior living properties owned by an affiliate of its investment manager, which, according to Plaintiff's experts, damaged New Senior by over $100 million. The settlement is the largest derivative action settlement as a percentage of market capitalization to date in Delaware and is one of the top ten derivative action settlements in the history of the Court of Chancery.

 The Plaintiff's extensive discovery efforts in the case included the review of more than 800,000 pages of documents, 16 depositions, and the filing of six motions to compel. Following fact discovery, the parties exchanged ten expert reports related to the damages from the real estate portfolio purchase and from a related secondary stock offering. After a mediation and extensive follow-up negotiations, the parties agreed to settle the litigation in exchange for the payment of $53 million in cash to New Senior. The settlement also included valuable corporate governance reforms, including the board's agreement to approve and submit to New Senior's stockholders for adoption at the annual meeting amendments to New Senior's bylaws and certificate of incorporation which would (a) provide that directors be elected by a majority of the votes cast in any uncontested election of directors, and (b) eliminate New Senior's staggered board, so that all directors are elected on an annual basis.

In his remarks at the final settlement hearing, Vice-Chancellor Joseph R. Slights called the settlement "impressive" and further described counsel's efforts as "hard fought, but fought in the right way to reach a productive result."

### ▪ *In re Rayonier Inc. Securities Litigation*

Saxena White served as co-Lead Counsel in a class action against Rayonier that accused the company and its senior executives of misleading investors about its timber inventory and harvesting rates in the Pacific Northwest. When the company's new management ultimately disclosed that Rayonier had overharvested its premium Pacific Northwest timberlands by over 40% each year for over a decade and overstated its merchantable timber by 20% in this critical region, the company's stock price declined significantly, causing investors substantial losses.

After litigating this case for nearly three years and defeating Defendants' motion to dismiss, Plaintiffs ultimately negotiated a $73 million cash settlement on behalf of the Class, the second largest recovery from a securities class action achieved in the Middle District of Florida. The $73 million settlement is nearly nine times the national median settlement and nearly ten times greater than the median recovery in the Eleventh Circuit. As noted by Judge Timothy J. Corrigan, M.D. Fla., this was an "exceptional result[] achieved for the benefit of the Settlement Class."

S
W

### *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.*

Saxena White filed an original action in the United States District Court for the Southern District of New York against Brixmor and certain of its senior executives for securities fraud on May 31, 2016. Following the appointment of the Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds, Teamsters Local 456 Annuity Fund, and City of Birmingham Retirement and Relief System as Lead Plaintiffs and Saxena White as Lead Counsel, Lead Plaintiffs filed a comprehensive amended complaint alleging that throughout the Class Period, Defendants purposefully falsified Brixmor's income items for over two years in order to portray consistent quarterly same property NOI growth; the Company lacked adequate internal and financial controls; and as a result, Defendants' Class Period statements about Brixmor's business, operations, and prospects were false and misleading.

After extensive litigation efforts and negotiation, Lead Plaintiffs obtained a $28 million settlement. The Settlement is an exceptional recovery for the Class, representing a significant percentage of the Class's maximum estimated aggregate damages that was multiples ahead of the typical recovery in securities class actions. After a fairness hearing to evaluate the merits of the settlement, on December 13, 2017, the Honorable Analisa Torres issued an order granting the final approval of the Settlement as fair, adequate, and reasonable. Saxena White is pleased to achieve such a favorable settlement for shareholders.

### *In re Jefferies Group, Inc. Shareholders Litigation*

Saxena White served as co-Lead Counsel in a class action involving breach of fiduciary duty claims against the board of directors of Jefferies Group, Inc., in connection with that company's merger with Leucadia National Corporation. In 2012, Jefferies entered into a merger agreement with Leucadia, a holding company which owned 28% of Jefferies and whose founders served on Jefferies' board. Leucadia's founders had a longstanding personal and professional relationship with Jefferies CEO, Richard Handler, which included lucrative joint ventures, personal investment advice and support, numerous financing transactions, and off-market stock purchases. As Leucadia's founders neared retirement, Handler recognized an opportunity to merge his company with Leucadia and serve as CEO of the much larger, combined company. Negotiating in secret for months before informing the independent board members, Handler and Leucadia's founders structured a deal that greatly benefitted Leucadia, to the detriment of Jefferies shareholders.

After aggressively litigating this case for almost two years and defeating Defendants' motion to dismiss and motion for summary judgment, Plaintiffs ultimately negotiated a settlement which required Leucadia to pay $70 million to class members, an outstanding result for former Jefferies shareholders.

### *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*

One of our Firm's areas of expertise is litigating cases against foreign corporations. We recently obtained a significant victory against a Brazilian corporation, Aracruz Celulose. Accomplishing what no other law firm has ever done, Saxena White successfully served process on all three individual executives under the Inter-American Convention on Letters Rogatory. Our efforts included working closely with a Brazilian law firm to defeat Defendants' challenges to service in both the Brazilian trial and appellate courts.

After defeating three motions to dismiss filed by the foreign Defendants, Saxena White began the massive and highly technical discovery process. Because the vast majority of the documents were in Portuguese, we hired native Brazilian attorneys to analyze and translate the tens of thousands of documents that were

produced. These documents were also incredibly complex, dealing with five dozen separate financial derivative instruments. Simply valuing one instrument required approximately 50,000 calculations. We consulted closely with highly-respected industry and academic experts to gain an unprecedented understanding of the workings of these instruments and how they were valued.

In the end, our hard work paid off. Saxena White successfully negotiated a $37.5 million settlement against Aracruz and its executives. This represents up to 50% of maximum provable damages – an outstanding result compared to the average national recovery of just 2.5% in cases of this magnitude.

### ▪ *In re Bank of America Securities, Derivative and ERISA Litigation*

This derivative case arose out of Bank of America's acquisition of Merrill Lynch during the height of the financial crisis in late 2008. After successfully defending the complaint's core allegations against multiple motions to dismiss, Saxena White embarked on an extensive discovery process that included 31 depositions of senior BofA and Merrill executives and their attorneys, the review and analysis of 3 million pages of documents from BofA, Merrill, and multiple third parties, and close consultation with nationally recognized financial and economic experts.

On January 11, 2013, the Court approved the Settlement, which includes a $62.5 million cash component and fundamental corporate governance reforms. The cash component alone ranks this Settlement among the top ten derivative settlements approved by federal courts. The extensive corporate governance reforms include the creation of a Board-level committee tasked with special oversight of mergers and acquisitions, which is aimed at preventing the alleged deficiencies surrounding the Merrill Lynch acquisition. The corporate governance reforms also include other components, including revisions to committee charters and director education requirements, which caused one noted scholar to observe that BofA is now at the forefront of corporate governance practices.

### ▪ *In re Lehman Brothers Equity/Debt Securities Litigation*

After conducting an extensive investigation into Lehman and its executives, Saxena White was the first firm to file a complaint alleging violations of the federal securities laws. Subsequent events, including the largest bankruptcy filing in U.S. history, interjected unique challenges to prosecuting this case – not the least of which was that because Lehman itself was in bankruptcy, damaged shareholders could not recover damages from it.

Despite these formidable obstacles, we continued to prosecute the case. Our efforts paid off. In the spring of 2012, the Court approved a $90 million partial settlement with Lehman's senior executives and directors, and a $426 million settlement with several dozen underwriters of its securities. After nearly two more years of hard-fought litigation, we reached a $99 million settlement with E&Y, Lehman's outside auditor, which was approved in the spring of 2014. The $99 million settlement ranks among the largest ever obtained from an outside auditor and is an outstanding recovery for damaged shareholders.

### ▪ *FindWhat Investor Group v. FindWhat.com*

Saxena White also has significant appellate experience. In this Eleventh Circuit appeal, we won a precedent-setting opinion with the court holding that corporations and their executives who make fraudulent statements that prevent artificial inflation in a company's stock price from dissipating are just as liable under the securities laws as those whose fraudulent statements introduce artificial inflation into the stock price



in the first place. The Eleventh Circuit rejected Defendants' position that the mere repetition of lies already transmitted to the market cannot damage investors. "We decline to erect a per se rule," wrote the court, that "once a market is already misinformed about a particular truth, corporations are free to knowingly and intentionally reinforce material misconceptions by repeating falsehoods with impunity."

The Eleventh Circuit's opinion is a significant win for aggrieved investors. It is the first such ruling from any of the Courts of Appeals in the nation, and will help defrauded investors seeking to recover damages due to fraud.

### ■ Central Laborers' Pension Fund v. Sirva

Saxena White served as sole Lead Counsel in this case, which was litigated in the Northern District of Illinois (SIRVA is the parent company of North American Van Lines). After two and a half years of hard-fought litigation, an extensive investigation which involved conducting nearly 120 witness interviews, and the review of approximately 2.7 million documents produced by Defendants, a two day mediation was conducted at which we were able to reach a global $53.3 million settlement on behalf of the proposed shareholder class. In addition, Saxena White conducted a comprehensive review of SIRVA's corporate governance procedures in an effort to ensure that securities fraud and accounting violations were less likely to occur at the Company in the future. This careful and comprehensive review, which was spearheaded in conjunction with retained corporate governance experts, confirmed that SIRVA had made great strides in improving its governance standards over the course of our lawsuit. This was especially true in the area of its internal controls, which was a primary concern. The company formally recognized, in writing, that the lawsuit was one of the main reasons it reformed its governance standards, which confirmed that Saxena White was the key catalyst compelling SIRVA to recognize the need to change the way it does business.

In addition, Saxena White was able to obtain even more governance improvements by convincing the Board to discard their plurality (also known as "cumulative") standard for the election of their directors in favor of a modified majority standard (also known as the "Pfizer model"). This important change gives every SIRVA shareholder a greater voice, as well as improving director accountability, by forcing directors who do not receive a majority of the votes to tender their resignation for the Board's consideration. Furthermore, SIRVA also agreed to strengthen its requirements regarding director attendance at shareholder meetings, which created more director accountability and increased shareholder input. Importantly, judges are unable to order these types of governance changes – it was only the negotiation and litigation pressure that we imposed upon the Company that allowed these changes to be implemented.

### ■ In re Sadia S.A. Securities Litigation

Sadia was a Brazilian company specializing in poultry and frozen goods that exported a majority of its products. Like Aracruz, it engaged in wildly speculative currency hedging while telling investors that its hedges were conservative and used to protect against sudden changes in currency fluctuation. Plaintiffs filed a securities fraud complaint against Sadia and its senior executives and board members alleging violations of the federal securities laws. Because the individual Defendants in this case were also citizens of Brazil, they had to be served pursuant to the Inter-American Convention on Letters Rogatory. We were successful in serving the individuals, once again accomplishing what few other law firms have been able to do.

We prevailed on the motion to dismiss and on the motion for class certification. Discovery was greatly complicated by the fact that the vast majority of the documents were in Portuguese, and the Court had no subpoena power to force witnesses to appear for deposition. In spite of this, we hired attorneys fluent in

Portuguese to help us with the review, and we were able to depose one of the Company's executives. After three mediations over the course of eight months, we were able to reach a $27 million cash settlement with the Defendants.

### ▌ *In re Cox Radio, Inc. Shareholders Litigation*

Saxena White represented a Florida Police Pension Plan in an action against Cox Radio. The Pension Plan alleged that the initial price offered to public shareholders in the tender offer was unfair and did not properly value the assets of Cox Radio. After considerable discovery and expedited motion practice, we were instrumental in raising the price of the deal by nearly 30%, creating nearly $18 million in additional value for all public shareholders, including the Pension Plan. We also obtained the issuance of additional meaningful disclosures regarding the valuation process used in the deal.

### ▌ *In re Clear Channel Outdoor Holdings, Inc. Derivative Litigation*

Saxena White, on behalf of an institutional investor client, filed a derivative action on behalf of nominal Defendant Clear Channel Outdoor Holdings ("Outdoor" or the "Company") against certain of the Company's current and former directors, its majority stockholder, Clear Channel Communications, Inc. ("Clear Channel"), and other entities with respect to a 2009 agreement between the Company and Clear Channel. The derivative action brought forth claims that Outdoor's directors breached their fiduciary duties by approving a $1 billion unsecured loan on highly unfavorable terms to Clear Channel. In response to the claims brought forth in the derivative action, the Company's Board of Directors established a Special Litigation Committee (the "SLC") and empowered it to investigate the matters and claims raised in the action.

After an extensive evaluation and investigation of the derivative claims, the SLC initiated discussions with certain of the Defendants to explore the prospects of settlement. The SLC also initiated discussions with Plaintiffs in order to explore the prospects of settling the derivative action. After several months of working with the SLC, the parties to the derivative action reached an agreement in principle to resolve the action on terms that will provide substantial and meaningful benefits to the Company and its shareholders, including an agreement that would provide a dividend to shareholders in the amount of $200 million, as well as additional corporate governance reforms. The settlement agreement acknowledges that Plaintiffs' involvement in the settlement negotiations was a factor in achieving the benefits received by Outdoor and its shareholders as a result of the settlement.

## SHAREHOLDERS & DIRECTORS



### MAYA SAXENA

Maya Saxena, co-founder of Saxena White P.A., has been practicing exclusively in the securities litigation field for over 20 years, representing institutional investors in shareholder actions involving breaches of fiduciary duty and violations of the federal securities laws. Prior to forming Saxena White, Ms. Saxena served as the Managing Partner of the Florida office of one of the nation's largest securities litigation firms, successfully directing numerous high profile securities cases. Ms. Saxena gained valuable trial experience before entering private practice while employed as an Assistant Attorney General in Ft. Lauderdale, Florida. During her time as an Assistant Attorney General, Ms. Saxena represented the State of Florida in civil cases at the appellate and trial level and prepared amicus curiae briefs in support of state policies at issue in state and federal courts. In addition, Ms. Saxena represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.

Ms. Saxena has been instrumental in recovering nearly a billion dollars on behalf of investors. Recently, Ms. Saxena played a key role in obtaining a $320 million settlement against Wells Fargo & Company. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.  Ms. Saxena also led the litigation team that settled against Wilmington Trust for $210 million, one of the largest settlements in 2018. Other prominent settlements include: Rayonier, Inc. ($73 million settlement), SIRVA, Inc. ($53.3 million settlement), Aracruz Celulose ($37.5 million settlement), Brixmor Property Group ($28 million settlement), and Sunbeam (settled with Arthur Andersen LLP for $110 million-one of the largest settlements ever with an accounting firm-and a $15 million personal contribution from former CEO Al Dunlap).

Ms. Saxena is a frequent speaker at educational forums involving public pension funds and advises public and multi-employer pension funds on how to address fraud-related investment losses. She is an active member of the National Association of Public Pension Attorneys ("NAPPA") and co-chairs its Securities Litigation Committee. As part of her professional endeavors, Ms. Saxena writes numerous articles on protecting shareholder rights, and works closely with other NAPPA members to author, update, and publish a white paper on post-*Morrison* International Securities Litigation.

Ms. Saxena has been recognized in the *South Florida Business Journal's* "Best of the Bar" as one of the top lawyers in South Florida, and has been selected to the Florida *Super Lawyers* list for ten consecutive years in a row. Ms. Saxena was also selected by her peers for inclusion in *The Best Lawyers in America*® four years in a row, as well as one of Florida's "Legal Elite" by *Florida Trend* magazine. Recently, Ms. Saxena was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993 with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996. Ms. Saxena is a member of the Florida Bar, and is admitted to practice before the United States District Courts for the Southern and Middle Districts of Florida, as well as the Eleventh Circuit Court of Appeals, and the Supreme Court of the United States.





## JOSEPH E. WHITE, III

Joseph E. White, III, co-founder of Saxena White P.A., has represented shareholders as lead counsel in major securities fraud class actions and derivative actions for nearly 20 years. He has represented lead and representative plaintiffs in front-page cases, including actions against Bank of America, Lehman Brothers and Washington Mutual. He has successfully settled cases yielding over one billion dollars against numerous publicly traded companies, including cases against Rayonier, Inc. ($73 million), Brixmor Property Group ($28 million), SIRVA, Inc. ($53.3 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million). Mr. White has also developed an expertise in litigating precedent-setting cases against foreign publicly traded companies, and settled two cases involving Brazilian corporations: Sadia, Inc. ($27 million) and Aracruz Celulose ($37.5 million).

Mr. White has also helped achieve meaningful corporate governance and monetary recoveries for shareholders in merger related and derivative lawsuits. Recently, Mr. White played an instrumental role in obtaining a $320 million settlement in *In re Wells Fargo & Company Shareholder Litigation*. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million.  In *In re Clear Channel Outdoor Holdings Derivative Litigation*, Mr. White's efforts obtained repayment of a $200 million loan from Outdoor's parent which was then paid as a special dividend to Outdoor shareholders. Mr. White regularly lectures on topics of interest to pension trustees, and advises municipal, state, and international institutional investors on instituting effective systems to monitor and prosecute securities and related litigation.

Mr. White has been recognized by *Palm Beach Illustrated* as a "Top Lawyer," and is a current *Lawyers of Distinction* Certified Member. He was also named a Florida's "Legal Elite" by *Florida Trend* magazine. Recently, Mr. White was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his Juris Doctor from Suffolk University School of Law.

Mr. White is a member of the Massachusetts, Florida, New York and Pennsylvania Bars. He is also admitted to the United States District Courts for the Southern, Northern, and Middle Districts of Florida, the Southern District of New York, the District of Massachusetts, the District of Colorado, the Western District of Michigan, and the Northern District of Illinois. Mr. White is also a member of the United States Circuit Courts of Appeals for the First and Eleventh Circuits, and the Supreme Court of the United States.



## STEVEN B. SINGER

Steven B. Singer is a Director at Saxena White P.A., and oversees the Firm's securities litigation practice. Prior to joining the Firm, Mr. Singer was employed for more than 20 years at Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, where he served as a senior partner and member of the firm's management committee.

During his career Mr. Singer has been the lead partner responsible for prosecuting many of the most significant and high-profile securities cases in the country, which collectively have recovered billions of dollars for investors. He led the litigation against Bank of America relating to its acquisition of Merrill Lynch, which resulted in a landmark settlement shortly before trial ($2.43 billion), one of the largest recoveries in history. Mr. Singer's work on that case was the subject of extensive media coverage, including numerous



articles published in The New York Times. He also has substantial trial experience and was one of the lead trial lawyers on the WorldCom Securities Litigation ($6 billion settlement) after a four-week jury trial.

Recently, Mr. Singer led the litigation team that successfully recovered $320 million against Wells Fargo & Company. The settlement includes a $240 million cash payment from Defendants' insurers-representing the largest insurance-funded monetary component of any shareholder derivative settlement by over $100 million. In addition, Mr. Singer has been lead counsel in numerous other actions that have resulted in substantial settlements, including cases involving Citigroup Inc. ($730 million, representing the second largest recovery in a case brought on behalf of bond purchasers), Lucent Technologies ($675 million), Mills Corp. ($203 million), WellCare Health Plans ($200 million), Satyam Computer Services ($150 million), Biovail Corp. ($138 million), Bank of New York Mellon ($180 million), JP Morgan Chase ($150 million), and one of the largest settlements in 2018, Wilmington Trust ($210 million).

At Saxena White, Mr. Singer serves as lead counsel in many highly significant securities matters, including class actions involving The Chemours Company, Novo Nordisk, DaVita, Inc., and Credit Suisse Group AG.

Mr. Singer has been consistently recognized by industry observers for his legal excellence and achievements. He has been selected by *Lawdragon* magazine as one of the "500 Leading Lawyers in America," by *Benchmark Plaintiff* as a "Litigation Star", and by the *Legal 500 US Guide* as one of the "Leading Lawyers" in securities litigation — one of only seven plaintiffs' attorneys so recognized. Recently, Mr. Singer was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. Singer graduated *cum laude* from Duke University in 1988, and from Northwestern University School of Law in 1991. He is a member of the New York State Bar, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, and the District of Colorado.



## DAVID KAPLAN

David R. Kaplan is a Director at Saxena White and manages the Firm's California office. Mr. Kaplan has over fifteen years of experience in the field of securities and shareholder litigation. He has helped investors achieve hundreds of millions of dollars in recoveries in federal and state courts nationwide, including in class actions, direct "opt out" actions, and shareholder derivative litigation.

Prior to joining Saxena White, Mr. Kaplan was a partner at Bernstein Litowitz Berger & Grossman LLP, where he co-chaired its direct-action practice, and counseled institutional investor clients on potential legal claims as a member of the firm's new matters department. Before that, Mr. Kaplan was a senior associate at Irell & Manella LLP, where he handled a variety of high-stakes business disputes and complex litigation matters.

A large part of Mr. Kaplan's day-to-day practice involves advising mutual funds, insurance companies, pension funds, hedge funds, and other institutional asset managers on whether to remain passive participants in securities class actions or opt out to maximize, accelerate, and protect their securities fraud recoveries. Most recently, Mr. Kaplan represented prominent institutional investor opt out groups in New York, New Jersey, Connecticut, and Texas federal courts. Mr. Kaplan has also successfully represented institutional investors in opt out actions in California federal and state courts.

Mr. Kaplan also has extensive experience advising institutional clients on pursuing securities fraud recoveries in international jurisdictions. His work in this area includes virtually all countries in which shareholder

S
W

collective actions are authorized by law, including Canada, Australia, England, the Netherlands, Germany, Italy, France, Japan, Israel, and Brazil.

Mr. Kaplan has authored multiple articles relating to class actions and the federal securities laws, which have been published in *The National Law Journal, The Daily Journal, Law360, Pensions & Investments*, and *The NAPPA Report*, among other publications. Mr. Kaplan is an editor of the *American Bar Association's* Class Actions and Derivative Suits Committee's Newsletter. For his achievements, Mr. Kaplan has been selected as a "Rising Star" by *Super Lawyers* and a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon*.

Mr. Kaplan graduated with a Bachelor of Arts, *cum laude*, from Washington and Lee University, and earned his Juris Doctor, High Honors, from Duke University School of Law, where he was an editor of *Duke Law Review*. He is admitted to practice in California, United States District Courts for the Central, Northern, and Southern Districts of California, and the Eastern District of Wisconsin. He is also admitted to the United States Court of Appeals for the Ninth Circuit, and the and United States Bankruptcy Court for the Central District of California.



### LESTER R. HOOKER

Lester Hooker, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Hooker has obtained substantial monetary recoveries and secured valuable corporate governance reforms on behalf of investors nationwide.

Mr. Hooker played a key role on the litigation teams that have successfully prosecuted securities fraud class and derivative actions, including *In re Wells Fargo & Company Shareholder Litigation* ($320 million settlement, which includes a $240 million cash payment from Defendants' insurers - representing the largest insurance - funded monetary component of any shareholder derivative settlement by over $100 million), *In re HD Supply Holdings, Inc. Securities Litigation* ($50 million settlement-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.*, ($28 million settlement), Central Laborers' Pension Fund v. Sirva, Inc., ($53.3 million settlement along with the adoption of important corporate governance reforms), *City Pension Fund for Firefighters and Police Officers in the City of Miami Beach v. Aracruz Celulose S.A., et al.*, ($37.5 million settlement), *In re Sadia, Inc. Securities Litigation* ($27 million settlement), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million settlement). Mr. Hooker is currently part of the litigation teams prosecuting securities fraud class actions against companies such as The Chemours Company, DaVita, Inc., Patterson Companies, Inc., Perrigo Company plc, and Sinclair Broadcast Group.

Mr. Hooker received a Bachelor of Arts degree with a major in English from the University of California at Berkeley. He earned his Juris Doctor from the University of San Diego School of Law, where he was awarded the Dean's Outstanding Scholar Scholarship. Mr. Hooker received his master's degree in Business Administration with an emphasis in International Business from the University of San Diego School of Business, where he was awarded the Ahlers Center International Graduate Studies Scholarship. Mr. Hooker has recently been recognized as a *Super Lawyer* "Rising Star" for 2017 and 2018, a *South Florida Legal Guide's* "Up and Comer" in 2017, and a *Palm Beach Illustrated* "Top Lawyer" in 2018. Recently, Mr. Hooker was named a "500 Leading Plaintiff Financial Lawyer" by *Lawdragon.*



Mr. Hooker is a member of the State Bars of California, Florida, New York, and the District of Columbia, and is admitted to practice law in the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Southern, Middle and Northern Districts of Florida, the Western District of Michigan, the District of Colorado, and the Northern District of Illinois. Mr. Hooker is also admitted to practice law in the United States Courts of Appeals for the Ninth Circuit.



### BRANDON GRZANDZIEL

Brandon Grzandziel, Director, is involved in all of Saxena White's practice areas, including securities class action litigation and shareholder derivative actions. During his tenure at Saxena White, Mr. Grzandziel has obtained substantial monetary recoveries including the one of the largest settlements in 2018, In re Wilmington Trust Corporation Securities Litigation ($210 million).

Additionally, Mr. Grzandziel has been a member of the teams securing significant recoveries for investors *In re Rayonier Securities Litigation* ($73 million), *City Pension Fund v. Aracruz Celulose S.A.* ($37.5 million against a foreign defendant), *In re Bank of America* ($62.5 million, which ranks among the top ten derivative settlements approved by the federal courts), and *In re Sadia, S.A. Securities Litigation* ($27 million against foreign defendants). Having extensive appellate experience, Mr. Grzandziel has also successfully secured important new precedent for the protection of investors in cases such as FindWhat Investor Group v. FindWhat.com.

Mr. Grzandziel earned his Bachelor of Arts from Wake Forest University, where he graduated with Honors in 2005. In 2008, he received his Juris Doctor from the University of Miami School of Law while being Executive Editor of the University of Miami Business Law Review. His article, "A New Argument for Fair Use Under the Digital Millennium Copyright Act," was published in the Spring/Summer 2008 issue. During his recent legal career, Mr. Grzandziel has been recognized as a *Super Lawyer* "Rising Star" for 2017 through 2019.

Mr. Grzandziel is a member of the Florida Bar, the United States District Courts for the Southern and Middle Districts of Florida, and the United States Court of Appeals for the Second Circuit.



### THOMAS CURRY

Thomas Curry is a Director at Saxena White and manages the Firm's Delaware office. He represents investors in corporate governance matters, with a particular focus on M&A litigation in the Delaware Court of Chancery.

Prior to joining Saxena White, Mr. Curry was an associate at Labaton Sucharow LLP, where he represented investors in many of the most significant and highest profile corporate governance matters to arise in recent years. Mr. Curry has particular expertise in representing public investors shortchanged by corporate sales and other M&A activity influenced by insider conflicts of interest. He has successfully represented investors in a wide variety of derivative, class, and appraisal matters challenging conflicted M&A transactions in the Delaware Court of Chancery and other jurisdictions around the United States. Mr. Curry also has significant experience advising United States-based investors seeking to protect their interests in connection with M&A activity subject to the law of foreign jurisdictions.



Mr. Curry successfully represented the lead petitioners in appraisal actions arising from Coach's acquisition of Kate Spade and General Electric's combination of its oil and gas business with Baker Hughes. He was a key member of teams that secured a $35.5 million derivative recovery in litigation arising from AGNC Investment Corp.'s internalization of its investment manager and corporate reforms valued at approximately $25 million in litigation arising from a related-party loan extended by Clear Channel Outdoor Holdings to its controlling stockholder, iHeart Communications.

Mr. Curry has been named a "Rising Star" in the field of M&A litigation by *The Legal 500* in both 2019 and 2020.

Mr. Curry began his legal career at the prominent Wilmington defense firm Morris, Nichols, Arsht & Tunnell LLP. He earned a Juris Doctor from Cornell Law School and a Bachelor of Arts from Temple University.

Mr. Curry is admitted to practice in Delaware, and the United States District Court for the District of Delaware.



### KYLA GRANT

Kyla Grant has extensive experience in federal securities class action suits, securities enforcement, and complex commercial litigation in both federal and state courts. Before joining Saxena White, Ms. Grant practiced securities litigation at two top-ranked global law firms, Shearman & Sterling LLP and WilmerHale. Ms. Grant has been a member of the litigation teams that have successfully recovered hundreds of millions of dollars on behalf of injured shareholders, including the recent $320 million derivative settlement against Wells Fargo & Company. She was also a member of the litigation team that obtained a $28 million settlement against Brixmor Property Group, Inc. Ms. Grant is currently a member of the litigation teams prosecuting significant securities fraud class actions against Patterson Companies, Inc., Perrigo Company plc, and DaVita, Inc.

Ms. Grant graduated from the University of Hawai'i at Mānoa with distinction in 2004, where she received a Bachelor of Arts degree, majoring in both English and Political Science. She received her Juris Doctor degree from the University of Virginia School of Law in 2008. While attending law school, she was a recipient of the Dean's Scholarship, was appointed as a Dillard Fellow (a role in which she worked with first year students to improve their persuasive writing skills) and was an Articles Editor for the *Virginia Journal of International Law.*

Ms. Grant is a member of the New York State Bar and the United States District Court for the Southern District of New York.



## ATTORNEYS



### MARIO ALVITE

Mario Alvite performs analysis of potential securities and shareholder rights actions. Mr. Alvite's efforts are focused on stages of litigation including case origination and pre-trial discovery. Mr. Alvite is experienced in e-discovery and project management in the corporate litigation, transactional, and regulatory areas. He has served on teams representing investors against Wilmington Trust and Rayonier Inc.

Mr. Alvite received his Bachelor of Business Administration from Florida International University. He later earned his Juris Doctor from Nova Southeastern University. He is a member of the Florida Bar, and is admitted to practice in the United States District Court for the Southern and Middle Districts of Florida.



### RHONDA CAVAGNARO

Rhonda Cavagnaro is Special Counsel to Saxena White and a member of the Firm's Institutional Outreach group. She brings extensive expertise in many areas of employee benefits and pension administration with nearly two decades of public fund experience. Ms. Cavagnaro frequently speaks at industry conferences to further trustee education on fiduciary issues facing institutional investors.

Ms. Cavagnaro began her legal career as an Assistant District Attorney in New York City, where she was instrumental in creating the office's General Crimes Unit, covering major crimes. As an ADA, Ms. Cavagnaro gained valuable trial experience and prosecuted hundreds of misdemeanor and felony cases.

Ms. Cavagnaro started her career serving public pensions as Assistant General Counsel at the New York City Employees' Retirement System. She then went on to become the first General Counsel to the New York City Police Pension Fund in February 2002, where she worked for over 11 years, providing advice to the Board of Trustees and 140-member staff with respect to benefits administration, fiduciary issues, employment issues, legislation, and transactional matters. Ms. Cavagnaro last served as the Assistant CEO for the Santa Barbara County Employee's Retirement System, where under the general direction of the CEO and Board of Trustees, she oversaw the day to day operations of the System.

Ms. Cavagnaro graduated with a Bachelor of Arts in Political Science and History from the University of Rochester, in Rochester, New York, and earned her Juris Doctor from the California Western School of Law in San Diego, California. She is a member of the New York and New Jersey State Bars, and is admitted to the United States District Court for the Southern and Eastern Districts of New York, and is a current member of the National Association of Public Pension Attorneys.



### SARA DILEO

Sara DiLeo has extensive experience in federal securities class action lawsuits, derivative litigation, and complex commercial litigation in both federal and state courts. Ms. DiLeo is currently part of the litigation teams prosecuting securities fraud class actions against companies such as DaVita, Inc. and Evolent Health, Inc. Recently, Ms. DiLeo was a member of the litigation team that



successfully recovered a $320 million derivative settlement for shareholders of Wells Fargo & Company. She was also part of the litigation teams that obtained a $28.25 million settlement for shareholders of TrueCar, Inc., and a $50 million settlement for shareholders of HD Supply Holdings, Inc.-one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia. Before joining Saxena White, Ms. DiLeo practiced securities litigation for nine years at a top-ranked global law firm, Skadden, Arps, Slate, Meagher & Flom LLP.

Ms. DiLeo graduated from New York University's College of Arts & Sciences program in 2003, where she received a Bachelor of Arts degree with a double major in Political Science and Psychology. She received her Juris Doctor degree from Fordham University School of Law in 2008. While attending law school, Ms. DiLeo was an Articles Editor for the *Fordham Urban Law Journal* and interned for the Hon. Barbara Jones in the United States District Court for the Southern District of New York.

Ms. DiLeo is a member of the New York Bar.

### HANI FARAH

Hani Farah is an Attorney at Saxena White's California office. Prior to joining Saxena White, Mr. Farah practiced at a leading securities litigation law firm where he analyzed potential new cases, primarily U.S. securities class action and individual opt-outs suits, as well as international securities litigation.

Prior to joining traditional practice, Mr. Farah was the primary legal counsel for a U.S. presidential candidate. In this role, Mr. Farah researched and provided counsel on myriad issues relevant during the 2016 campaign.

Mr. Farah graduated *cum laude* from the University of California San Diego in 2011. He later graduated *cum laude* from the University of San Diego School of Law in 2015. He is a member of the California Bar, and is admitted to practice in the United States District Court for the Central District of California.



### WILLIAM FORGIONE

Prior to joining Saxena White, William Forgione served as a senior legal executive with Teachers Insurance and Annuity Association ("TIAA") and its subsidiaries for over 25 years. While at TIAA, he held a variety of leadership positions, including as Executive Vice President and General Counsel with TIAA Global Asset Management and Nuveen, a leading financial services group of companies that provides investment advice and portfolio management through TIAA and numerous investment advisors. He oversaw the legal, compliance, and corporate governance aspects associated with the organization's $900 billion investment portfolios and asset management businesses, including TIAA's general account, various separate accounts, registered and unregistered funds and institutional investment mandates.

Under Mr. Forgione's leadership, TIAA was actively involved in a number of significant investment litigation matters in order to recover the maximum amount for the benefit of its investment portfolios and the beneficial owners. These included acting as lead plaintiff in class action lawsuits, initiating proxy contests, pursuing direct actions where appropriate and asserting appraisal rights when it felt the consideration to be paid to shareholders in connection with various merger and acquisition activity involving portfolio companies was inadequate.



Mr. Forgione also served as Deputy General Counsel to TIAA, where among his many responsibilities, he acted as a strategic partner and advisor to the heads of TIAA's pension and insurance business lines. He also served as a member of TIAA's Senior Leadership Team, actively participating on a number of management committees. In addition, Mr. Forgione has valuable corporate governance experience, having advised and served on a number of Boards, including Nuveen, the Westchester Group, several foreign operating subsidiaries of TIAA, as well as various Risk Management, Investment, Asset-Liability and Audit Committees. He also has served as lead counsel on several large business acquisitions.

After graduating *summa cum laude* from Binghamton University with a B.S. in Accounting, Mr. Forgione received his J.D. degree from Boston University. Among many industry associations, he has served as President and a member of the Board of Trustees of the Association of Life Insurance Counsel, President and Trustee of the American College of Investment Counsel and Chairman of the Investment Committee of the Life Insurance Council of New York. Mr. Forgione has spoken at many industry conferences and seminars, taught undergraduate and graduate courses in Accounting and Law and has won such awards as *Charlotte Business Journal's* Corporate Counsel Award for his success in corporate law.

Prior to joining TIAA, Mr. Forgione was associated with Fried, Frank, Harris, Shriver & Jacobson LLP, and Csaplar & Bok, where he practiced in the areas of mergers and acquisitions and corporate finance. He is admitted to the Bar of the State of New York.



### DONALD GRUNEWALD

Donald Grunewald focuses on performing research for securities and derivatives litigation. Before joining Saxena White, Mr. Grunewald taught Legal Research and other legal courses at a college in New York for six years. He has prepared economic and legal research for litigation, businesses, and academics.

Mr. Grunewald earned his Bachelor of Arts in Economics, *magna cum laude*, from Haverford College in 2004. He later earned a Bachelor of Arts in Jurisprudence from Oxford University and a Master of Laws from the University of Pennsylvania Law School.

Mr. Grunewald has been a member of the New York State Bar since 2008.



### SCOTT GUARCELLO

Scott Guarcello's practice focuses on the discovery stage of litigation. With over ten years of significant complex e-discovery experience, he brings to Saxena White an expertise honed by the numerous e-discovery services and training programs that he created, led and supported while serving as a Senior Managing Attorney for a global e-discovery consulting and services provider.

Combining both discovery and technical expertise, Mr. Guarcello advises on best practices concerning information governance principles, ESI protocols, collections, processing, large-scale document reviews, production management, and related infrastructure applications. Recently, Mr. Guarcello was a member of the litigation team that successfully obtained a $320 million derivative settlement against Wells Fargo & Company. He was also part of the litigation teams that recovered a $28.25 million settlement against TrueCar, Inc., and secured a $50 million settlement against HD Supply Holdings, Inc.-one of the largest securities

class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia. He is currently a member of the litigation teams prosecuting securities class actions against Credit Suisse Group AG, Evolent Health, Inc., DaVita, Inc., Perrigo Company plc, and Patterson Companies.

Mr. Guarcello earned a Bachelor of Science from Stetson University and received a Juris Doctor from Florida International University where he graduated *cum laude* with a concentration in securities law. He was a regular recipient of the Dean's List Award and received the CALI Book Awards for the Complex Litigation and Corporate Tax courses. Mr. Guarcello has also received the Legal Elite Award for 2017 and 2018 and holds extensive industry certifications that span review tools, feature-specific technical applications, project management and analytics. As an active member in the e-discovery community, Mr. Guarcello has been a guest speaker for both intimate and large audiences.

Mr. Guarcello is a member of the Florida Bar.



### SCOTT KOREN

Scott Koren is an Attorney at Saxena White. Mr. Koren concentrates on new case development by performing research on potential securities class actions and new derivative and corporate governance actions. Mr. Koren's efforts are focused on beginning stages of litigation including case origination and pre-trial discovery. Additionally, Mr. Koren has served on teams representing investors against HD Supply Holdings Inc. and DaVita, Inc.

Mr. Koren received his undergraduate degree in Business Management and Entrepreneurship from the University of Arizona and received his Juris Doctor degree from Pace University School of Law.



### JONATHAN D. LAMET

Jonathan D. Lamet has extensive experience in litigating direct securities actions and derivative actions involving publicly traded companies. Mr. Lamet is currently part of the litigation teams prosecuting securities fraud class actions against companies such as Health Insurance Innovations, Inc. n/k/a Benefytt Technologies and Patterson Companies, Inc.

Before joining Saxena White, Mr. Lamet practiced commercial and civil litigation, including directors and officers liability, securities and fraud litigation, bankruptcy adversary proceedings, and class action defense for seven years at an Am-Law 100 firm, Akerman LLP.

Mr. Lamet graduated from Yeshiva University, Sy Syms School of Business in 2010, where he received his Bachelor of Science in Business Management. He received his Juris Doctor degree from University of Miami School of Law in 2013. Mr. Lamet was a member of the University of Miami Law Review. While attending law school, Mr. Lamet interned for the United States Attorney's Office, Economic Crimes Division, for the Southern District of Florida, and for the Hon. William Turnoff in the United States District Court for the Southern District of Florida.

Mr. Lamet is a member of the Florida Bar, the United States District Courts for the Southern and Middle Districts of Florida, and the United States Court of Appeals for the Eleventh Circuit.





### DOUG McKEIGE

Douglas McKeige, Counsel, brings unparalleled experience investigating, commencing and prosecuting meritorious securities fraud and corporate governance cases to Saxena White. Mr. McKeige was co-managing partner of Bernstein Litowitz Berger & Grossmann LLP, a well-known plaintiffs' firm, for many years. During his time at that firm, he spearheaded the firm's institutional investor practice and developed and led its case starting department. Utilizing his extensive knowledge of the securities markets, Mr. McKeige counseled pension funds, hedge funds, private equity firms and, most importantly, hardworking men and women saving for their retirement, on potential claims and avenues for case prosecution. Under Mr. McKeige's supervision, the firm successfully commenced and prosecuted hundreds of cases in state and federal courts throughout the country, and recovered more than $12 billion on behalf of defrauded investors, including cases involving WorldCom ($6.2 billion), Nortel Networks ($2.45 billion), Freddie Mac ($410 million), Bristol-Myers Squibb ($300 million), and Mills Corporation ($203 million).

Mr. McKeige combines at Saxena White his more than two decades of legal experience with years of knowledge as a hedge fund Managing Director, during which time he helped build two multi-billion dollar hedge funds. As a result of his hedge fund experience, Mr. McKeige has extensive experience with macroeconomic themes, company-specific opportunities and trade implementation strategies across all asset classes (equities, fixed income, foreign exchange and commodities), and with using derivatives across all major geographies. His unique perspective on the workings of the financial markets provides Saxena White's institutional clients with valuable information when considering strategies for recovering investment losses.

Mr. McKeige earned his B.A. in Economics from Tufts University, *cum laude*, and his J.D. from Tulane Law School, *magna cum laude*, Order of the Coif. Mr. McKeige was Articles Editor of the *Tulane Law Review* and is admitted to the Bar of the State of New York.



### JILL MILLER

Jill Miller focuses her practice on e-discovery, including project management and litigation support services for class actions and other complex litigation. Ms. Miller was a member of the team that secured one of the largest settlements in 2018, In re Wilmington Trust Corporation Securities Litigation ($210 million). Prior to joining Saxena White, Ms. Miller served as team lead at various law firms for discovery in large, complex class actions and mass torts in the areas of securities fraud, software technology, pharmaceutical and patent infringement.

Prior to her litigation experience, Ms. Miller was an associate at Ruden McClosky where she practiced real estate law. During her 11 years with the firm, she represented large developers of residential and commercial real estate throughout the South Florida area. Ms. Miller began her legal career as an associate in the real estate practice division of a major New Jersey law firm where she concentrated her practice on residential and commercial real estate transactions and development. She also dedicated a significant portion of her practice to casino licensing and compliance.

For the past several years, Ms. Miller has volunteered her time as a Guardian ad Litem, protecting the rights of abused and neglected children in Broward County, Florida.

Ms. Miller received her law degree from Hofstra University in New York where she was the Articles Editor of the *International Property Investment Journal*. She also interned at the United States Federal Court, Eastern District of New York during her third year of law school.

Ms. Miller is admitted to practice in Florida, and the United States District Court for the Southern District of Florida.



### DIANNE PITRE

Dianne Pitre prosecutes securities fraud, corporate governance and shareholder rights litigation on behalf of injured shareholders. Ms. Pitre has served on the litigation teams that successfully prosecuted securities fraud class actions such as *In re Wells Fargo & Company Shareholder Litigation* ($320 million settlement), *In re Rayonier Inc. Securities Litigation* ($73 million settlement), *Westchester Putnam Counties Heavy and Highway Laborers Local 60 Benefit Funds v. Brixmor Property Group, Inc. et al.* ($28 million settlement), and *In re Tower Group International, Ltd. Securities Litigation,* ($20.5 million settlement). Ms. Pitre is currently a member of the litigation teams prosecuting significant securities fraud class actions against Patterson Companies, Sinclair Broadcast Group, Novo Nordisk, and The Chemours Company.

Before joining Saxena White, Ms. Pitre was a legal intern for Jack in the Box, Inc. and Alliant Insurance Services, Inc. She worked extensively with their in-house departments, assisting in a variety of corporate, employment, and government regulation matters. Ms. Pitre was an intern for Jewish Family Service of San Diego and Housing Opportunities Collaborative, two San Diego pro bono legal organizations. Additionally, she served as a Legal Intern for the San Diego City Attorney's Office with their Advisory Division, Public Works Section. Ms. Pitre has recently been recognized as a *Super Lawyer* "Rising Star" for 2018 and 2019.

Ms. Pitre graduated from the University of California, San Diego in 2008, where she received a Bachelor of Arts degree, majoring in Political Science with a minor in Law and Society. In 2012, she received her Juris Doctor degree from the University of San Diego School of Law. While attending law school, Ms. Pitre earned various scholarships and awards, including the San Diego La Raza Lawyers Association Scholarship and Frank E. and Dimitra F. Rogozienski Scholarship for outstanding academic performance in business law courses. Her outstanding law school academic achievements culminated in two CALI Excellence for the Future Awards for receiving the top grade in her Fall 2011 International Sports Law and Entertainment Law classes. Ms. Pitre is an alumnus of Phi Delta Phi, the international legal honor society and oldest legal organization in continuous existence in the United States.

Ms. Pitre is a member of the Florida and California State Bars. She is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida and the Northern, Central, Southern, and Eastern Districts of California.



### JOSHUA SALTZMAN

Joshua Saltzman focuses his practice on securities and derivative litigation. Before joining Saxena White, Mr. Saltzman litigated investor class actions, opt-out securities actions and derivative actions at two boutique law firms in New York City. Recently, Mr. Saltzman was a member of the litigation team that obtained a $53 million derivative settlement on behalf of New Senior Investment Group, which was the largest settlement of all time in a derivative lawsuit when measured as a percentage of the company's total market capitalization. He was also a member of the litigation team that obtained a $50 million settlement on behalf of HD Supply Holdings, Inc. – one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia.

Additionally, Mr. Saltzman has been a member of litigation teams that have obtained numerous other substantial recoveries on behalf of investors, including cases involving American International Group ($40 million settlement on behalf of AIG employees who invested in AIG's company stock fund, representing one of the largest ERISA stock drop recoveries of all time), Cornerstone Therapeutics ($17.9 million for minority stockholders of Cornerstone Therapeutics whose shares were purchased in a controller buyout), and Petrobras (high percentage recovery on behalf of state pension system in opt-out securities action). Mr. Saltzman is currently a member of the litigation teams prosecuting securities fraud class actions against companies such as Perrigo Company plc, and Evolent Health, Inc.

Mr. Saltzman received a Bachelor of Arts degree in English from Rutgers University in 2002, and a Juris Doctor degree from Brooklyn Law School in 2011, graduating *magna cum laude*. During law school, Mr. Saltzman served as an editor on the Brooklyn Law Review, where he published a note, and interned for the Honorable Victor Marrero in the United States District Court for the Southern District of New York.

Mr. Saltzman is a member of the New York Bar, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Third Circuit.



### ADAM WARDEN

Adam Warden is involved in all of Saxena White's practice areas, including shareholder derivative actions, securities fraud litigation, and merger and acquisition litigation. During his tenure at Saxena White, Mr. Warden has been a member of the teams securing significant recoveries, including *Cumming v. Edens* (derivative settlement of $53 million for claims challenging acquisition by senior living operator New Senior Investment Group, Inc., representing more than 10% of the company's market capitalization), *In re Wells Fargo & Company Shareholder Litigation* (derivative settlement valued at $320 million, including $240 million in cash and corporate governance reforms), *In re Jefferies Group, Inc. Shareholders Litigation* (class action settlement of $70 million, one of the largest settlements in the history of the Delaware Court of Chancery), and *In re Parametric Sound Corporation Shareholders' Litigation* ($9.65 million settlement, the second largest post-merger class action settlement in Nevada state history). Mr. Warden is currently part of the litigation teams prosecuting securities fraud class actions against Credit Suisse Group AG, Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, and AmTrust Financial Services, Inc.

Mr. Warden has been recognized as a *Super Lawyer* "Rising Star" in 2018, a *South Florida Legal Guide's* "Up and Comer" from 2018-2020, and a *Palm Beach Illustrated* "Top Lawyer" in 2020. Mr. Warden is also a member of Saxena White's Diversity and Social Responsibility Committee.

Mr. Warden earned his Bachelor of Arts degree from Emory University in 2001 with a double major in Political Science and Psychology. He received his Juris Doctor from the University of Miami School of Law in 2004. During law school, Mr. Warden served as the Articles Editor of the *University of Miami International and Comparative Law Review*.

Mr. Warden is a member of the Florida Bar and the District of Columbia Bar. He is admitted to the United States District Courts for the Southern, Middle, and Northern Districts of Florida.





## KATHRYN WEIDNER

Kathryn Weidner has extensive experience in prosecuting securities class actions. Ms. Weidner has obtained substantial monetary recoveries including one of the largest settlements in 2018, *In re Wilmington Trust Corporation Securities Litigation* ($210 million). She has also prosecuted numerous other class actions that resulted in significant recoveries for investors, such as *In re HD Supply Holdings, Inc.* ($50 million, and one of the largest securities class action settlements ever achieved in the U.S. District Court for the Northern District of Georgia), *In re Rayonier Securities Litigation* ($73 million), and *In re Tower Group International, Ltd. Securities Litigation* ($20.5 million).

Ms. Weidner is very involved in the community and participates in organizations such as the League of Women Voters and the Women's Foundation of Florida and is also a member of numerous professional organizations such as FAWL, NAWL, and NAPPA. Ms. Weidner is a regular contributor at conferences, publications, CLE courses, and is the Chair of Saxena White's Diversity and Social Responsibility Committee. In addition, Ms. Weidner has been recognized as a *Super Lawyer* "Rising Star" for 2017 through 2019, and as a *South Florida Legal Guide* "Up and Comer" for 2018 and 2019.

Prior to joining Saxena White, Ms. Weidner developed valuable litigation skills as a Certified Legal Intern for the Department of Homeland Security. Ms. Weidner earned a Bachelor of Business Administration from the University of Miami in 2003, with a major in Political Science. During college, she studied abroad at Oxford University, as part of an Honors program for law and politics. Ms. Weidner received her Juris Doctor from Nova Southeastern University in 2006, where she graduated *cum laude* with a concentration in International Law. While at Nova, her outstanding course work regularly earned Dean's List and Provost Honor Roll, and she was honored with CALI Book Awards for Secured Transactions and Business Planning Law. Upon graduation, Ms. Weidner was the recipient of the Larry Kalevitch Scholarship Award for exhibiting the most promise in Business and Bankruptcy law.

Ms. Weidner is a member of the Florida Bar, and the United States District Courts for the Southern and Northern Districts of Florida.



## PROFESSIONALS



### SHERRIL CHEEVERS
*Client Services Specialist*

Ms. Cheevers is a Client Services Specialist at Saxena White. She is responsible for client outreach and business development among institutional investors. Ms. Cheevers attends industry conferences and organizes events and opportunities to give back to the community.

Prior to joining Saxena White, Ms. Cheevers worked as a sales and community liaison in multiple markets. Ms. Cheevers earned her Bachelor of Science from the University of Tampa.



### MARC GROBLER
*Manager of Case Analysis*

Marc Grobler plays a key role in new case development including performing in-depth investigations into potential securities fraud class actions, derivative, and other corporate governance related actions. By using an array of financial and legal industry research tools, Mr. Grobler analyzes information that helps support the theories behind our litigation efforts. He is also responsible for protecting the financial interests of our clients by managing the Firm's portfolio monitoring services and performing complex loss and damage calculations.

Prior to joining the Firm, he served as the Senior Business Analyst in the New York office of a leading securities class action law firm and has worked within the securities litigation industry for over 15 years.

Mr. Grobler graduated *cum laude* from Tulane University's A.B. Freeman School of Business in 1997, with a concentration in Accounting. With over 20 years of overall professional financial experience, he started his career in New York at PricewaterhouseCoopers performing audits within the Financial Services Group. Prior to entering the securities litigation industry, he worked within the asset management group at Goldman Sachs where he was responsible for the financial reporting of a group of billion dollar fund-of-fund investments. Mr. Grobler also previously worked at UBS Warburg as a Financial Analyst in the investment banking division that focused on financial institutions such as banks, asset managers, insurance and start-up financial technology companies.



### CHUCK JEROLOMAN
*Senior Client Services Specialist*

Chuck Jeroloman, Senior Client Services Specialist, has been with the Firm since 2010. Mr. Jeroloman focuses on public pension clients to provide relevant educational materials, and personalized communication and service. Mr. Jeroloman is a frequent participant and speaker at state and national investor conferences, including the Georgia Public Pension Trustee Association, the Florida Public Pension Trustee Association, the National Conference on Public Employee Retirement Systems, and many more. He currently serves on the Florida Public Pension Trustees Association's Advisory Board.

Prior to joining Saxena White, Mr. Jeroloman worked in law enforcement for 28 years. He was at the Delray Beach Police Department for 23 years, and served as a homicide/robbery detective, street level narcotics investigator, field training officer, and a member of the S.W.A.T. and Terrorists Task Force. He was a Delray Beach Police and Fire Pension Board Trustee for 14 years, five of which he served as Chairman, and was also a member of the Delray Beach Fire and Police VEBA Board. Mr. Jeroloman also spent five years as a Deputy Sheriff with the Rockland County Sheriff's Department in New York. During that time, he was a member of the Joint Terrorists Task Force with the FBI, NYPD, Rockland County Sheriff's Department. During his tenure in law enforcement, Mr. Jeroloman served for 23 years as Union Representative for the Police Benevolent Association (PBA) and Fraternal Order of Police (FOP) as Union Treasurer for PBA in N.Y from 1982-87, then for Delray Beach FOP 1988-94, and last with Delray Beach PBA from 1994-2006 with 2001-2006 as President.

Mr. Jeroloman earned his Associate Degree in Criminal Justice from Pasco-Hernando Community College. After college, Mr. Jeroloman was very active in the baseball community. He was an associate scout with the Anaheim Angels and Texas Rangers, and volunteered as a youth baseball coach through high school levels. Mr. Jeroloman also served as a director vice president for the Okeeheelee Athletic Association, and was Founding Chairman to Wellington High Baseball Booster Association and Palm Beach Central Baseball Booster Association.



### SAM JONES
*Financial Analyst*

Sam Jones is a Financial Analyst with Saxena White's California office. Prior to joining Saxena White, Mr. Jones worked for over ten years as a financial analyst at a leading securities litigation law firm where he specialized in developing techniques for data modeling and visualization. He worked on numerous landmark securities cases including *In re Bank of America Securities Litigation* ($2.425 billion recovery); *In re Lehman Brothers Equity/Debt Securities Litigation* ($735 million recovery); *In re Wachovia Corp. Securities Litigation (*$627 million recovery); and *Merrill Lynch Mortgage Pass-Through Litigation* ($315 million recovery).

In the fallout of the housing and credit crisis, Sam pioneered techniques in data management and analysis for the firm's then-developing RMBS and structured finance practice. He has worked on numerous individual and class action RMBS cases against most of the major Wall Street banks.

Sam graduated from Vassar College in 1996, where he studied anthropology with a focus on economics. After graduation he worked extensively as a field archaeologist throughout the U.S. and in Israel before transitioning to a career in securities litigation and financial analysis.



### STEFANIE LEVERETTE
*Manager of Client Services*

Stefanie Leverette is Saxena White's Manager of Client Services. In this role, she manages the Firm's client outreach and developmental programs and oversees the Firm's portfolio monitoring program. Since joining Saxena White in 2008, Ms. Leverette has coordinated the Firm's presence at industry conferences attended by representatives of various institutional clients throughout the United



States. In addition, Ms. Leverette is responsible for the timely dissemination of all reports, notifications and all new cases and class action settlements that may have an impact to an investment portfolio. Ms. Leverette's main role is acting as the liaison between institutional clients and the Firm.

Ms. Leverette is a member of the Firm's Diversity and Social Responsibility Committee and a member of the Women's Initiative Subcommittee. She is also a member of the Firm's Case Starting Team, providing institutional clients with important information regarding potential litigation.

Ms. Leverette earned her undergraduate degree in Business Administration with a focus on Management from the University of Central Florida, and her Master's in Business Administration with a focus on International Business at Florida Atlantic University.



### JEROME PONTRELLI
*Chief of Investigations*

With over two decades of law enforcement experience, including 12 years with the Federal Bureau of Investigation, Jerome Pontrelli serves as Saxena White's Chief of Investigations. He oversees all of the Firm's efforts to detect, investigate, and prosecute securities cases. Prior to joining Saxena White, Mr. Pontrellli was Director of Investigations at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, in the FBI and in private practice, Mr. Pontrelli has led over one hundred investigations of possible securities violations. Throughout his award-winning career, he has developed extensive experience in securities-related matters. Mr. Pontrelli began his career with the FBI in Covert Special Operations, and was later assigned to the FBI/NYPD Joint Bank Robbery Task Force. Following the September 11th attacks, Mr. Pontrelli was assigned to the Joint Terrorism Task Force. He later transferred to the White Collar Crime Heath Care Fraud Unit. Mr. Pontrelli has an extensive network of high-level relationships throughout the state and federal law enforcement communities.

Mr. Pontrelli received a Bachelor of Arts degree from St. Thomas Aquinas College and a Master of Arts degree from Seton Hall University. He graduated from the FBI Academy in 1996.



### RIAN WROBLEWSKI
*Head of Investigative Intelligence*

With over eighteen years of intelligence gathering experience, Rian Wroblewski serves as Saxena White's Head of Investigative Intelligence. He oversees all of the Firm's efforts to generate proprietary sources of intelligence using advanced technological tools, systems, and methods. Prior to joining Saxena White, Mr. Wroblewski was Senior Manager of Investigative Intelligence at Labaton Sucharow LLP, where his cases resulted in monetary relief for harmed investors in excess of $4 billion. He was also part of the firm's initial SEC Whistleblower Program.

Over the years, Mr. Wroblewski has provided expert commentary to The Washington Post, Investor's Business Daily, Canadian Broadcasting Corporation, and other news outlets. Mr. Wroblewski has provided consulting to database providers, eDiscovery vendors, corporate boards, and government entities throughout the



world. He has extensive pro bono experience assisting political asylum seekers and targets of honor killings, working alongside the FBI and Department of State. Mr. Wroblewski is an active member of the FBI's InfraGard Program. He has an extensive network of high-level relationships within the global intelligence community.

Mr. Wroblewski received a Bachelor of Science degree from John Jay College of Criminal Justice.

## STAFF ATTORNEYS



### DENISE BRYAN

With over 20 years of overall professional experience, Ms. Bryan began her legal career in New York at Prudential Securities. While at Prudential Securities, she reviewed claims alleging fraudulent practices and determined settlements in accordance with the guidelines of the Limited Partnership Settlement Fund as established by the Securities and Exchange Commission.

Ms. Bryan gained experience in the insurance industry as an attorney in the Environmental Claims Department of American International Group, and as an underwriter focusing on Professional Liability coverage for financial institutions including banks, insurance companies, and broker dealers. She was an Assistant Vice President at Marsh Inc. in New York and Chicago, where she was an insurance broker focused on providing Professional Liability coverage to Fortune 500 companies.

Ms. Bryan has been working in the area of e-discovery since 2007. She supervised teams of attorneys conducting large scale document reviews at a consulting group specializing in providing litigation support services to national and international companies. Ms. Bryan is a member of the New York Bar.



### REBECCA NILSEN

Ms. Nilsen is experienced in e-discovery and litigation support services for class actions and other complex litigation. She has over 13 years of litigation experience in matters related to Federal Trade Commission, U.S Securities and Exchange Commission, Fair Debt Collection Practices and Consumer Financial Protection Bureau.

Ms. Nilsen graduated cum laude from Florida Atlantic University where she received a Bachelor of Arts with a major in Criminal Justice. In 2002, she received her Juris Doctorate degree from Nova Southeastern University, Shepard Broad College of Law. While attending law school, Ms. Nilsen interned in the Pro Bono Honor Program earning the Gold Award for 2001 – 2002. Ms. Nilsen is a member of the Florida Bar, and is admitted to practice before the United States District Courts for the Southern and Northern Districts of Florida.



### CHRISTINE SCIARRINO

Christine Sciarrino has extensive experience in e-discovery as a project attorney for class action securities fraud litigation. Her legal practice has focused primarily on early resolution of matters, with an objective toward achieving optimum results for litigating parties through superb pre-trial preparation and informed decision making. As an experienced practitioner for plaintiffs who have been wronged by financial institutions and other entities, Ms. Sciarrino has most recently dedicated her expertise exclusively to this area.

Ms. Sciarrino graduated from Florida Atlantic University in 1988, where she received a Bachelor of Arts degree with a major in History. In 1992, she received her Juris Doctor from the St. Thomas University School of Law. Ms. Sciarrino also earned a Master of Fine Arts in Creative Writing at Florida Atlantic University in 2004. Ms. Sciarrino is a member of the Florida Bar.



### HARRIET ATSEGBUA

Ms. Atsegbua received her Juris Doctor from the Southern Methodist University Dedman School of Law, Master of Arts from the University of Denver, Josef Korbel School of International Studies, and her Bachelor of Science from Emory University. Ms. Atsegbua is a member of the New York and Texas Bars.

### ATHMA BIRJU

Mr. Birju received his Juris Doctor from Western Michigan University Thomas M. Cooley Law School and his Bachelor of Science from Nova Southeastern University Farquhar College of Arts and Sciences. Mr. Birju is a member of the Florida Bar.

### VALERIE KANNER BONK

Ms. Bonk received her Juris Doctor from Catholic University of America Columbus School of Law and her Bachelor of Arts from University of Maryland. Ms. Bonk is a member of the Maryland Bar.

### PAUL BURNS

Mr. Burns received his Juris Doctor from St. Thomas University School of Law and his Bachelor of Science from University of Central Florida. Mr. Burns is member of the Florida Bar.

### CHRISTOPHER DONNELLY

Mr. Donnelly received his Juris Doctor from University of Pennsylvania Law School, his LL.M from New York University and his Bachelor of Arts from Rutgers University. Mr. Donnelly is a member of the Florida, California, New Jersey, and New York Bars, and he is admitted to practice before the United States District Court for the Southern District of Florida.

### MICHELE FASSBERG

Ms. Fassberg received her Juris Doctor from St. Thomas University School of Law and her Bachelor of Arts from Florida International University. Ms. Fassberg is a member of the Florida Bar.

### NINA HAKOUN

Ms. Hakoun received her Juris Doctor from Nova Southeastern University and her Bachelor of Arts from Florida International University. Ms. Hakoun is a member of the Florida Bar.

### TARA HEYDT

Ms. Heydt received her Juris Doctor from UCLA School of Law and her Bachelor of Arts from the University of Pennsylvania. Ms. Heydt is a member of the Florida Bar.

### RYAN JOSEPH

Mr. Joseph received his Juris Doctor from New York Law School and his Bachelor of Science from Boston University. Mr. Joseph is a member of the Florida Bar.

### MAX KOTELEVETS

Mr. Kotelevets received his Juris Doctor from New York Law School and his Bachelor of Arts from Stony Brook University. Mr. Kotelevets is a member of the New York, Florida and New Jersey Bars, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

S
W

## MAURI LEVY

Ms. Levy received her Juris Doctor Degree from Villanova University School of Law and her Bachelor of General Arts and Sciences from Pennsylvania State University. Ms. Levy is a member of the Pennsylvania Bar and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania.

## LESLIE MARTEY

Ms. Martey received her Juris Doctor from Fordham University School of Law and her Bachelor of Arts from C.W. Post College. Ms. Martey is a member of the New York Bar.

## ELISABETH PORTER

Ms. Porter received her Juris Doctor from University of Miami School of Law, her Master of Arts from Hunter College-CUNY, and her Bachelor of Arts from Columbia College. Ms. Porter is a member of the Florida Bar and is admitted to practice before the United States Supreme Court and the United States District Court for the Southern District of Florida.

## ZERIN TAHER

Ms. Taher received her Juris Doctor from Western Michigan University, and her Masters of Business Administration and Bachelor of Science from Nova Southeastern University. Ms. Taher is a member of the Florida Bar.

## KAREN THOMPSON

Karen Thompson received her Juris Doctor from St. Thomas University School of Law and her Bachelor of Arts from the University of Bridgeport. Ms. Thompson is a member of the Florida Bar.

## CRAIG WALENTA

Mr. Walenta received his Juris Doctor and Master of Business Administration from Seton Hall University and his Bachelor of Arts from Drew University. Mr. Walenta is a member of the New Jersey Bar.

## COURTNEY WEISHOLTZ

Ms. Weisholtz received her Juris Doctor from Nova Southeastern University and her Bachelor of Arts from Northern Illinois University. She is a member of the Florida Bar, and is admitted to practice before the United States District Court for the Southern District of Florida.



## OFFICES

### FLORIDA

7777 Glades Road, Suite 300
Boca Raton, FL 33434
P: 561.394.3399
F: 561.394.3382

### NEW YORK

10 Bank Street, 8th Floor
White Plains, NY 10606
P: 914.437.8551
F: 888.631.3611

### CALIFORNIA

12750 High Bluff Drive, Suite 475
San Diego, CA 92130
P: 858.997.0860
F: 858.369.0096

### DELAWARE

1000 N West Street
Suite 1200, Office 1265
Wilmington, DE 19801
P: 302.485.0483
F: 888.331.1606

www.saxenawhite.com

# EXHIBIT 5B

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER, <br><br> Defendants. | CASE NO. 8:19-CV-00421-WFJ-CPT <br><br> CLASS ACTION |

## DECLARATION OF MITCHELL M.Z. TWERSKY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES, FILED ON BEHALF OF ABRAHAM, FRUCHTER & TWERSKY, LLP

I, Mitchell M.Z. Twersky, declare as follows:

1.      I am a partner at the law firm Abraham, Fruchter & Twersky, LLP. I submit this Declaration in support of Lead Plaintiffs' motion for an award of attorneys' fees in connection with services rendered in the Action, as well as for payment of Litigation Expenses incurred by my firm in connection with the Action. I have knowledge of the matters set forth herein based on personal knowledge, my review of the firm's records, and consultation with other firm personnel.

2.      My firm served as counsel to Employees' Retirement System of the Puerto Rico Electric Power Authority and as additional counsel in this Action.  At the direction of Lead Counsel, my firm has been involved in the active and vigorous litigation of this Action, including participating in drafting portions of the opposition to Defendants' motion to dismiss and motion for class certification, and conducting discovery.

3.      The information in this Declaration regarding the firm's time, including in the schedule attached hereto as Exhibit 1, was prepared from daily time records regularly prepared and maintained by my firm in the ordinary course of business. I am the attorney who oversaw my firm's activities in the litigation, and I, together with attorneys working under my direction, reviewed my firm's daily time and expense records to confirm their accuracy. As a result of this review, I believe that the time reflected in the firm's lodestar calculation and the expenses and charges for which payment is sought are reasonable in amount and were necessary for the effective and efficient prosecution and resolution of the litigation.  Time expended in preparing the application for fees and expenses has not been included in this report.

4.      The total number of hours expended on this Action by my firm's attorneys and professional support staff employees from its inception through October 21, 2020 was 801.25. The total resulting lodestar for my firm is $448,385.00. The schedule attached hereto as Exhibit 1 is a detailed summary reflecting the amount of time spent by each attorney and professional support staff employee of my firm who

was involved in the Action, and the lodestar calculation based on my firm's current hourly rates.

5.      The hourly rates shown in Exhibit 1 attached hereto are the current rates set by the firm for each individual. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the hourly rates of such personnel in his or her final year of employment by my firm. The hourly rates are comparable to the rates submitted by my firm and accepted by courts for lodestar cross-checks in other securities class action litigation fee applications nationwide including *Pyramid Holdings, Inc. v. Terraform Global, Inc.*, 16-cv-7981-PKC (S.D.N.Y.), *Vandevar v. American Renal Holdings, Inc., et al.*, No. 2:19-cv-09074-ES-MAH (D.N.J.), and *In re Finisar Corporation Securities Litigation*, No. 5:11-CV-01252-EJD (N.D. Cal.).

6.      My firm's lodestar figures are based upon the firm's hourly rates, which do not include expense items. Expense items are recorded separately, and these amounts are not duplicated in my firm's hourly rates.

7.      My firm has incurred a total of $819.88 in unreimbursed expenses in connection with the prosecution of this Action from its inception through October 21, 2020, which are detailed in Exhibit 2 to this Declaration. The expenses incurred in this Action are reflected in the books and records of my firm, which are regularly prepared and maintained in the ordinary course of business. These records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

8.  With respect to the standing of my firm, attached hereto as Exhibit 3 is a brief biography of my firm and its current attorneys.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of February 2021.

_____
Mitchell M.Z. Twersky

# EXHIBIT 1

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

## ABRAHAM, FRUCHTER & TWERSKY, LLP TIME REPORT

### Inception through October 21, 2020

| NAME | HOURS | HOURLY RATE | | LODESTAR | |
|---|---|---|---|---|---|
| **Partner** | | | | | |
| Mitchell M.Z. Twersky | 58.50 | $ | 885.00 | $ | 51,772.50 |
| **Of Counsel** | | | | | |
| Ian Berg | 20.00 | $ | 800.00 | $ | 16,000.00 |
| Todd Kammerman | 154.00 | $ | 775.00 | $ | 119,350.00 |
| **Associates** | | | | | |
| Sean Handron-O'Brien | 53.25 | $ | 550.00 | $ | 29,287.50 |
| Daniel Goodman | 218.50 | $ | 450.00 | $ | 98,325.00 |
| Charles Pietrofesa | 297.00 | $ | 450.00 | $ | 133,650.00 |
| **Total** | **801.25** | | | **$** | **448,385.00** |

**EXHIBIT 2**

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

**ABRAHAM, FRUCHTER & TWERSKY, LLP EXPENSE REPORT**

**Inception through April 17, 2020**

| CATEGORY | AMOUNT($) |
|---|---|
| Filing Fees | $ 300.00 |
| Online Legal and Factual Research* | $ 415.03 |
| Postage and Delivery | $ 104.85 |
| **TOTAL EXPENSES:** | **$ 819.88** |

* The charges reflected for on-line research are for out-of-pocket payments to the vendors for research done in connection with this litigation. Online research is billed to each case based on actual time usage at a set charge by the vendor. There are no administrative charges included in these figures.

6

**EXHIBIT 3**

*Julian Keippel, et al., v. Health Insurance Innovations, Inc., et al.*
Case No. 8:19-CV-00421-WFJ-CPT

**<u>FIRM RESUME</u>**



**NEW YORK | CALIFORNIA**

**AFTLAW.COM**

---

**FIRM RESUME**

---

Abraham, Fruchter & Twersky, LLP ("AF&T" or the "Firm") works to protect shareholder rights, bring claims on behalf of consumers who have been damaged by false advertising or the improper marketing of goods or services, and to protect individuals, businesses, and investment funds from unfair business practices. AF&T's attorneys have a broad range of experience in representing investors in securities and shareholder litigation in both trial and appellate courts throughout the United States. In regard to shareholder rights, we litigate individual and representative actions involving among other things, claims of corporate fraud, mismanagement, anti-competitive conduct, insider trading and breaches of fiduciary duties. The Firm seeks to protect investors and maximize recoveries through the diligent and capable representation of our clients. AF&T also represents consumer fraud victims as well as those damaged by anti-competitive conduct, such as collusive price fixing, and has participated in cases involving, among others, mortgage lenders, banks, broker-dealers, consumer product manufacturers and insurance companies.

AF&T maintains offices located in New York, New York and San Diego, California. Our Firm's lawyers pride themselves on their diligence, professionalism, courtesy, responsiveness and capacity to deal with the most complex legal and factual issues. As a consequence of these qualities, skills and experiences, we have achieved

7

favorable results in the cases we have litigated and have successfully litigated issues of first impression.

**FIRM PRACTICE AREAS**

### Securities Fraud Litigation

AF&T's Securities Fraud Litigation practice includes the prosecution of shareholder actions on behalf of purchasers or sellers of public and private securities, and relates to the misrepresentation of, or failure to disclose, material facts to investors. AF&T has represented clients in pursuit of their individual and class action claims. Typically, actions brought by the Firm's Securities Fraud Litigation practice group allege violations of the Securities Exchange Act of 1934 and the Securities Act of 1933.

AF&T has been appointed to serve as lead counsel to a class in several securities actions that are pending in federal court. To best protect our client's and the class's interests AF&T brings an intense focus and tenacious advocacy to the lead plaintiff stage of a securities case. This tenacity allows AF&T to vigorously protect the interests of our clients throughout the lead plaintiff appointment process. In many cases AF&T was the only firm to detect and raise unique issues pertaining to the presumptive lead plaintiff movant which led to the appointment of AF&T's client over the presumptive lead plaintiff. For example in *Utesch v. Lannett Company et al.*, No. 2:16-cv-05932-WB (E.D. Pa.), AF&T's client, the University of Puerto Rico Retirement System, was appointed Lead Plaintiff as a consequence of arguments raised by AF&T concerning a conflict of interest pertaining to the selected counsel for the presumptive lead plaintiff, and in *BRS v. Volkswagen AG et al.*, No. 3:16-cv-03435-CRB (N.D. Cal.), AF&T represents the Puerto Rico Government Employees and Judiciary System as Lead Plaintiff in a securities class action brought on behalf of Volkswagen bondholders in connection with its highly publicized emissions scandal.

AF&T's lawyers have substantial experience successfully resolving securities and shareholder actions, including resolving *In re Peregrine Systems, Inc. Securities Litigation,* 2002 U.S. Dist. LEXIS 27690 (S.D. Cal.), where AF&T served as co-lead counsel representing a class of shareholders who acquired Peregrine securities in exchange for their shares of stock in certain companies that were acquired by Peregrine. Along with a class of open-market purchasers, a settlement of approximately $117.5 million was obtained to resolve all claims, despite the company's bankruptcy filing, the lack of any insurance proceeds to contribute to the settlement and the dissolution of Arthur Anderson, LLP, the company's auditor, which was responsible for certifying the relevant false and misleading financial statements. Of the settlement amount, approximately $65 million was obtained from individual corporate officers and

8

directors, amounting to one of the largest recoveries from individual defendants in a case of this nature. As a result of AF&T's efforts, its clients, the class of investors who acquired their Peregrine shares through a stock exchange pursuant to a prospectus, received a recovery that was approximately three times greater than those shareholders who acquired their shares in the open market.

In *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.) a settlement approved in 2019, AF&T, as sole lead counsel for the class, secured a $48.75 million settlement representing more than 50% of likely recoverable damages based upon rulings in a related multi-district litigation.

*Citiline Holdings, Inc. v. iStar Financial, Inc.,* No. 08-cv-3612-RWS (S.D.N.Y.), where AF&T served as Co-Lead Counsel and secured a settlement fund of $29 million on behalf of a class of damaged investors.

*In re Global Crossing Securities Litigation,* 2005 U.S. Dist. LEXIS 16232 (S.D.N.Y.), where our firm's lawyers represented purchasers of Asia Global Crossing securities, our attorneys helped achieve an incredibly strong recovery for the benefit of the Asia Global Crossing shareholders in an amount equal to 8% of the funds recovered in the entire Global Crossing case, when they only suffered 1% of the losses.

In *In re Finisar Corporation Securities Litigation*, No. 5:11-cv-01252-EJD (N.D. Cal.), where AF&T represents the Oklahoma Firefighters Pension and Retirement System, a settlement of $6.8 million was recently preliminarily approved by the Court.

In *Godinez v. Alere Inc., et al.*, No. 1:16-cv-10766-PBS (D. Mass.), AF&T, as lead counsel, obtained a $20 million settlement on behalf of the class.

In *Vandevar v. American Renal Associates Holdings, Inc. et al.,* No. 2:19-cv-09074 (D.N.J.), AF&T, representing the City of Hialeah Employees' Retirement System, was appointed lead counsel to the class in which a preliminary settlement of $5.775 was recently preliminarily approved by the court.

AF&T as Lead Counsel also achieved settlements in the following class actions:

> *In re Fuqi International Inc. Securities Litigation*, No. 1:10-cv-02515-DAB (S.D.N.Y.) ($8.6 million);

9

*In re Giant Interactive Group, Inc. Sec. Litig.,* No. 07-cv-10588-RWS (S.D.N.Y.) ($13 million);

*In re Warner Chilcott Lt. Sec. Litig.,* No. 06-cv-11515-WHP (S.D.N.Y.) ($16.5 million);

*Liberty Cap. Group, Inc. v. Kongzhong Corp.,* No. 04-cv-6746-SAS (S.D.N.Y.) ($7.5 million); and

*In re Internap Network Serv. Corp. Sec. Litig.,* No. 08-cv-3462-JOF (N.D. Ga.) ($9.5 million).

In addition to AF&T's substantial class action practice, AF&T has also been successful in pursuing direct action recoveries. AF&T often seeks to resolve claims prior to filing a complaint. As such, the recoveries obtained are often not public information. However, our publicly disclosed work representing institutional investors with respect to direct action ("opt-out") claims against AIG is representative of the Firm and the services we provide. In connection with the class action titled *In re American International Group, Inc. 2008 Securities Litigation*, No. 1:08-cv-04772 (S.D.N.Y.) against AIG, among others, AF&T filed direct actions on behalf of funds related to the General Electric Pension Funds and Lord Abbett & Co. LLC mutual funds.

## Antitrust Litigation

AF&T's antitrust practice is designed to protect consumers and businesses from anticompetitive behavior such as price fixing, bid rigging, and price discrimination. AF&T has prosecuted cases alleging violations of the Sherman Act, Clayton Act, and state antitrust laws. AF&T brings a uniquely thorough approach to the antitrust cases that it chooses to prosecute. This allows AF&T's team of attorneys to focus on antitrust cases that best protect the interests of our clients.

AF&T has represented plaintiffs in connection with several antitrust class actions including the following matters:

*In re Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation.,* No. 1:05-md-01720 (E.D.N.Y.);

*In re Treasury Securities Auction Antitrust Litigation,* No. 1:15-md-02673 (S.D.N.Y.); and

10

*In re Domestic Airline Travel Antitrust Litigation*, No. 1:15-mc-01404 (D. D.C.).

## Insider Trading

AF&T's Insider Trading practice focuses on both federal and state law claims that seek to remedy and/or prevent unlawful insider trading by corporate insiders. These actions include claims that arise out of short-swing insider trading in violation of Section 16(b) of the Securities Exchange Act of 1934 which prohibits a statutorily defined insider from purchasing and selling on issuers shares within a six-month period. The Firm's attorneys are among the leading experts in the nation with respect to Section 16(b) litigation, and have been at the forefront of obtaining favorable court rulings that have both enabled substantial recoveries for the ultimate benefit of investors and helped prevent future acts of corporate malfeasance associated with short-swing insider trading.

In one such 16(b) action, AF&T successfully resolved the matter for a cash settlement of $20 million. In another Section 16(b) case, AF&T achieved a $9.4 million settlement following a successful appeal to the U.S. Court of Appeals for the Eleventh Circuit.

In another case, former Judge John S. Martin of the U.S. District Court for the Southern District of New York complimented the lawyers at AF&T for the work they had done in securing a $20 million settlement of an insider trading case by stating in a written decision that:

> Here, the shareholders of Illinois Superconductor received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiffs counsel.

*Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 U.S. Dist. LEXIS 7097, at *7-8 (S.D.N.Y. May 31, 2001).

In *Rosenberg v. Delta Air Lines Inc.,* No. 1:00-cv-00461-JJF (D. Del.), an action commenced in Delaware District Court against Delta Air Lines on behalf of Priceline.com for violations of the insider trading provisions of Section 16(b), AF&T procured a settlement valued at $38 million.

In addition to bringing cases under Section 16(b), AF&T has been at the forefront of efforts to cause corporate insiders to disgorge the proceeds of insider trading profits earned during the time period the issuer's financial results were improperly reported or other material facts were improperly concealed from members of the investing public. These cases have involved asserting claims arising under state law principles of

11

fiduciary duty in shareholder derivative actions which are described in the section below. In one such case, Defendants agreed to pay $4.5 million to settle claims of unlawful insider trading. *Silverberg v. Gold, et al.* ("*Dendreon*"), C.A. No. 7646-VCP (Del. Ch.). AF&T also secured a substantial victory at the Delaware Supreme Court in *Sandys v. Pincus et al.,* C.A. No. 157, 2016 (Del. Supreme Court). In the Sandys case, AF&T represented a shareholder who alleged that members of Zynga's management breached their fiduciary duties by selling stock in a secondary offering based on insider information.

### Shareholder Derivative Litigation

AF&T's Shareholder Derivative Litigation practice focuses on actions brought by shareholders of a corporation in order to obtain a recovery on behalf of that corporation from a corporate insider or other party for a violation of state or federal law that has caused damage to the corporation. Often, these actions seek to disgorge corporate insiders of the proceeds realized from self-interested transactions that deprive the company and its public shareholders of the true value of the assets involved or from insiders exploiting their positions for their own personal gain. Many of these actions also result in remedial corporate governance changes designed to prevent recurrent wrongdoing.

The *In re Third Avenue Shareholder and Derivative Litigation* demonstrates AF&T's zealous representation of shareholders. AF&T diligently litigated the case regarding the trustee's failure to address significant valuation issues the funds faced and along with co-lead counsel, secured a $25 million cash settlement.

In approving the settlement of a shareholder derivative action brought on behalf of CytRx Corporation in *In re CytRx Corp. Stockholder Derivative Litigation*, C.A. No. 9864-VLC (Del. Ch.), Vice Chancellor Laster of the Delaware Court of Chancery complimented AF&T's attorneys for the noteworthy result they achieved in resolving the case:

> I will tell you that it would be a wonderful thing, I think for the state of stockholder litigation in this country if this was more an example of the types of suits that were usually seen … I think you guys did a fine job. I'm not going to be overly effusive because I actually think that this is the type of thing litigation ordinarily ought to be.

12

Among the shareholder derivative cases in which AF&T has served as a lead counsel is *Kahn v. Buttner*, Index No. 650320/2008 (Sup. Ct. N.Y. Cty.), where a controlling shareholder would pay $2.9 million to a settlement fund for the sole benefit of Value Line Inc.'s shareholders who held 13.5% of Value Line Inc.'s stock, representing a recovery for the minority shareholders of more than 85% of the maximum amount of monetary damages recoverable if shareholders were successful at trial and on appeal.

Our Shareholder Derivative Litigation practice also extends to cases involving the reckless management of a company's operations that causes damage to the company. One action making such allegations in which members of the Firm played a leading role was brought on behalf of the Bank of New York Corporation against corporate insiders with respect to the damage caused to the company by their failure to properly institute the internal controls necessary to prevent money laundering. After the denial of a motion to dismiss, the taking of substantial pre-trial discovery and the defeat of an effort to have the case decided by a special committee, the case was resolved for a cash payment of $26.5 million for the benefit of the Bank of New York.

AF&T's Shareholder Derivative Litigation practice also places great emphasis on achieving substantive corporate governance reform. For example, members of the Firm had a leading role in gaining significant and valuable remedial benefits designed to prevent a recurrence of corporate malfeasance at ImClone Systems Inc. (in addition to gaining a cash payment of $8.75 million). AF&T also served as lead counsel in a derivative shareholder action against Merck & Co. related to the company's misconduct surrounding its pain reliever Vioxx. The Firm successfully brought about material corporate governance reform, which the presiding Judge described as "far reaching and act[ing] to position Merck at the forefront of sound corporate governance and risk management practices," "ensur[ing] scientific integrity and drug patient safety," and "provid[ing] substantial benefit to Merck and its shareholders because they may serve to prevent future liability from the sale of potentially dangerous drugs." The corporate governance changes, which provided, *inter alia*, for a Chief Medical Officer to act as an advocate for patient safety, were similarly praised by industry analysts as something "every pharma company should have..." Likewise, in *In re Schering-Plough Corp. Shareholders Derivative Litig.*, Master Derivative Docket Civ. Action No. 01-1412, 2008 U.S. Dist. LEXIS 2569 (D. N.J. Jan. 14, 2008), the Firm was responsible for obtaining comprehensive corporate governance changes at Schering-Plough Corporation. Also, AF&T served as a lead counsel in a shareholder derivative action brought on behalf of Google, Inc. in which substantial governance reforms were achieved. *In re Google Inc. Shareholder Deriv. Litig.*, No. 11 Civ. 4248 (P JH) (N.D. Cal.). Under the terms of the settlement, Google was required to spend at least $50 million

13

per year principally on its product quality operations, policy enforcement, and User Safety Initiative collectively.

## Corporate Transactions & Shareholder Rights

AF&T's Corporate Transactions & Shareholder Rights practice handles cases dealing with transactions in which the interests of minority shareholders or limited partners are eliminated through either the sale of the entity's underlying assets or through the sale of the entity itself. In such transactions, corporate officers may be liable for advancing the financial or corporate interests of the controlling shareholder(s) or general partner(s) at the expense of minority investors. These cases often arise under Section 14(a) of the Securities Exchange Act of 1934 and state law principles requiring corporate officers and controlling shareholders to discharge their fiduciary duties with loyalty, care and prudence.

Members of the Firm have been active in this practice area, and the Firm has represented investors in challenging these transactions. For example, AF&T achieved a settlement of $10.5 million in a case brought on behalf of the limited partners of a series of limited partnerships controlled by Jones Intercable, Inc. The Firm also achieved a $5 million case settlement in a transaction involving the sale of a cable television system owned by American Cable TV Partners V, L.P. Another notable case led by AF&T resulted in an approximately 20% increase in the price offered in a management buyout of the minority interests of an investment trust.

## Consumer Fraud

Consumers often feel powerless to stop major corporations from engaging in wrongful conduct, whether it be in the form of an improper fee or charge, an undelivered service, or a product that simply does not live up to expectations based on the company's advertising and labeling. AF&T regularly fights to protect consumers who have been wronged, no matter how small the individual damages.

As an example, AF&T achieved a favorable ruling from a New York State Appellate Court on an issue of first impression barring mortgage lenders from charging New York State residents a fax fee in connection with the provision of mortgage payoff statements and holding that consumers had an implied private right of action to recover any such fees paid. The decision was "Decision of the Day" in the November 19, 1999, edition of The New York Law Journal and is reported as *Negrin v. Norwest Mortgage, Inc.* (163) A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

14

AF&T also played a key role in a series of cases brought in state and federal courts in California and New Jersey on behalf of consumers across the country against leading sunscreen manufacturers in the U.S., alleging the false advertising and labeling of sunscreen products. As a consequence of the Firm's efforts, sunscreen labeling in the U.S. was changed and millions of dollars in monetary recoveries were obtained for the benefit of consumers.

## FIRM ATTORNEYS

### *Jeffrey S. Abraham,* Partner

Following his graduation from Columbia University School of Law, Mr. Abraham worked for one year as a corporate securities lawyer for a mid-size New York City law firm. Thereafter, Mr. Abraham joined what, at the time, was the largest firm specializing in plaintiffs' securities litigation, a firm then known as Milberg Weiss Bershad Specthrie & Lerach. After working at Milberg Weiss for several years, Mr. Abraham left to start the Law Offices of Jeffrey S. Abraham, which subsequently merged with and into Fruchter & Twersky, LLP, to become AF&T.

Mr. Abraham's practice at Milberg Weiss focused on the prosecution of shareholder class actions on behalf of defrauded investors with the occasional representation of corporate clients in various litigation matters. Among the class actions which he was active in prosecuting during his tenure at Milberg Weiss were *In Re Crazy Eddie Securities Litigation,* 97 Civ. 87-0033 (E.D.N.Y.) in which a recovery in excess of $76 million was achieved for defrauded investors, and *Axton Candy & Tobacco Co., Inc. v. Alert Holdings Inc., (Alert Holdings Income Limited Partnership Litigation),* 92-Z-1191 (D. Colo.), in which a recovery of $60 million was achieved for defrauded investors. Mr. Abraham also successfully defended the appeal challenging the terms of that settlement before the Tenth Circuit. *See Hillman v. Webley,* 1996 U.S. App. LEXIS 25702 (10th Cir. 1996).

At AF&T, Mr. Abraham continues to focus on securities and shareholder litigation. During his tenure at the Firm, Mr. Abraham has served as lead counsel in many cases, including: *In re Peregrine Securities Litigation,* Civil No. 02cv870-J (S.D. Cal.) in which a settlement of approximately $117.5 million was achieved notwithstanding the company's bankruptcy, the lack of insurance proceeds to contribute to the settlement, and the dissolution of the company's auditors who shared liability. In another case, Mr. Abraham acted as co-lead counsel on behalf of purchasers of the securities of Asia Global Crossing in connection with *In Re Global Crossing Securities Litigation,* 02 CV 910 (S.D.N.Y.) in which a pro rata recovery was

15

achieved for the Asia Global Subclass members that far exceeded the pro rata recovery obtained by the other defrauded investors in Global Crossing securities.

On another occasion, in a case arising under the short-swing insider trading provisions of Section 16(b) of the Securities Exchange Act of 1934, Mr. Abraham assisted in achieving a cash recovery of $20 million (without the benefit of insurance coverage) which at the time was the largest known cash recovery under that statute. Judge John S. Martin, Jr., the former U.S. Attorney for the Southern District of New York and the presiding Judge in the action, complimented the Firm's performance in the case in stating "the shareholders of Illinois Semiconductor Company received a $20,000,000.00 benefit as the sole result of the diligence and sagacity of Plaintiffs counsel." *Steiner v. Williams; Levy v. Southbrook Int'l Investments, Ltd.,* 2001 U.S. Dist. LEXIS 7097, at *20 (S.D.N.Y. May 31, 2001).

Other cases in which Mr. Abraham has had a primary litigation role include: *City Partnership Co. v. Jones Intercable, Inc.*, Civil Action No. 99-WM-1051 (D. Colo.), in which a recovery of $10 million was achieved on behalf of investors with respect to the sale of cable television systems and *City Partnership Co. v. IR-TCI Partners V, L.P.*, Civil Action No. 99-RB-2122 (D. Colo.) in which $5 million was recovered on behalf of limited partners with respect to the sale of a cable television system to a business affiliate of the general partner.

Mr. Abraham has successfully argued appeals in the U.S. Courts of Appeals for the Second, Third, Tenth, and Eleventh Circuits.

Mr. Abraham is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern District of New York, Eastern District of New York and District of Colorado, and the U.S. Courts of Appeal for the Second, Third, Fourth, Seventh, Ninth, Tenth, and Eleventh Circuits as well as before the U.S. Supreme Court.

### *Jack G. Fruchter,* Partner

Mr. Fruchter is a *cum laude* graduate of the Benjamin N. Cardozo School of Law. Prior to founding the law firm of Fruchter & Twersky, LLP whose name was later changed to Abraham, Fruchter & Twersky, LLP, Mr. Fruchter was employed by the enforcement division of the U.S. Securities and Exchange Commission as well as a litigation associate at the law firm of Hughes Hubbard and Reed, LLP in New York City.

Mr. Fruchter has played a lead role in many of the securities fraud class actions litigated by our firm, including most recently *Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.) a settlement approved in 2019, AF&T, as sole lead counsel for the class, secured a $48.75 million settlement.

In *Liberty Capital Group, Inc. v. Kongzhong Corporation,* 04-CV06746SAS (S.D.N.Y.), for example, Mr. Fruchter took the lead in a securities class action alleging that the issuer's registration statement in connection with an IPO failed to disclose that the issuer had breached its service agreement with its primary customer, China Mobile Communications Corporation, resulting in sanctions against the issuer and a strained relationship with the customer. The case settled for 20% of the maximum provable damages, which is well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Fruchter has also focused on short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934. Mr. Fruchter has appeared at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Fruchter is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Third and Eleventh Circuits. Mr. Fruchter has also routinely appeared *pro hac vice* in Courts throughout the United States.

### *Mitchell M.Z. Twersky,* **Partner**

Following his graduation from the Georgetown University Law Center, Mr. Twersky was employed for several years as a commercial and civil litigation associate for a boutique litigation firm in New York City. In 1996 he founded the law firm of Fruchter & Twersky, LLP, which later changed its name to Abraham, Fruchter & Twersky, LLP.

17

At Abraham, Fruchter & Twersky, LLP, Mr. Twersky has focused on, among other things, short-swing insider trading actions pursuant to the provisions of Section 16(b) of the Securities Exchange Act of 1934.  Mr. Twersky played a lead role in *Levy v. Office Depot, Inc.*, in which a shareholder of Purchasepro.com alleged that as a consequence of the CEO of Office Depot serving on the Board of Directors of Purchasepro.com, Office Depot's trades in Purchasepro.com securities violated the insider trading provision of Section 16(b).  Following PurchasePro.com's bankruptcy filing, AF&T was retained by the Debtor with the Bankruptcy Court's approval to continue with the prosecution of the action on the Debtor's behalf.  The case settled for $9.4 million, more than half of the recoverable profits, after the Firm's successful appeal to the U.S. Court of Appeals for the Eleventh Circuit.

Mr. Twersky played a lead role in a settlement valued at $38 million in *Rosenberg v. Delta Airlines, Inc.,* an action commenced in Delaware District Court against Delta Air Lines on behalf of Priceline.com for violations of the insider trading provisions of Section 16(b).  He also played a lead role in a $20 million cash settlement of a Section 16(b) action in *Levy v. Southbrook International Investments, Ltd., et al.* brought in the U.S. District Court for the Southern District of New York, where Judge John S. Martin, Jr. in praising AF&T's work stated "counsel's effort here provided a bonanza to the corporation... as the sole result of the diligence and sagacity of Plaintiff's counsel." 2001 U.S. Dist. LEXIS 7097, at *20 (S.D.N.Y. May 31, 2001).

Mr. Twersky has appeared several times at SEC staff meetings to discuss pending issues concerning Section 16(b) litigation, has provided the SEC with written comments concerning the proposed promulgation of SEC Rules pertaining to Section 16(b) (Comments with respect to *Proposed Rule: Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Release Nos. 34-49895, 35-27861, IC-26471* (June 21, 2004), available at www.sec.gov) and has been referred to as a leading practitioner in the field of Section 16(b) litigation. Romeo & Dye, Comprehensive Section 16 Outline 288 (June 2003).

Mr. Twersky has played a leading role in AF&T's consumer and antitrust class action litigation.  Mr. Twersky achieved a favorable ruling from a New York State Appellate Court on an issue of first impression barring mortgage lenders from charging New York State residents a fax fee in connection with the provision of mortgage payoff statements and holding that consumers had an implied private right of action to recover any such fees paid.  The decision was "Decision of the Day" in the November 19, 1999, edition of The New York Law Journal and is reported as *Negrin v. Norwest Mortgage, Inc.* (163) A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999).

18

Mr. Twersky has played a key role in a series of cases brought by the Firm in state and federal courts in California and New Jersey on behalf of consumers across the country against leading sunscreen manufacturers in the U.S., alleging the false advertising and labeling of sunscreen products. As a consequence of the Firm's efforts, sunscreen labeling in the U.S. was changed and significant monetary recoveries were obtained for the benefit of consumers.

Mr. Twersky plays a prominent role in the *Utesch v. Lannett Company et al.*, case. The complaint in this securities fraud class action alleges that the Defendants misled investors in asserting 1) that the high pricing of its generic drugs were the result of competitive market forces when in truth they resulted from a price-fixing conspiracy among competitors in the market; and 2) that Lannett's internal investigation determined that Lannett was not involved in any price-fixing conspiracy with regard to any of its products. These misleading statements significantly damaged Lannett's shareholders in artificially inflating the price of the stock they purchased during the alleged class period.

Mr. Twersky has led the litigation team in the *In re Finisar Corp. Sec. Litig.*, case. A proposed settlement of the action has been preliminarily approved. Additionally, in the *Boston Retirement System v. Volkswagen AG et al.*, case, Mr. Twersky leads a team of attorneys pursuing claims against Volkswagen, AG, among others, concerning the well-publicized emissions cheating scandal and related misleading statements made in connection with bond offerings.

Mr. Twersky has been interviewed and quoted widely by the media, including the *Los Angeles Times*, *The New York Times*, *The New York Post*, *The Miami Herald*, and *The Wall Street Journal*. Mr. Twersky has also appeared on television and radio programs, including NBC's *Today in New York*, Comcast's *Nitebeat*, and National Public Radio's *Marketplace*.

Mr. Twersky has served on the Federal Regulation of Securities Committee of the American Bar Association as well as its Civil Litigation and SEC Enforcement Matters and Annual Review of Federal Securities Regulation Subcommittees.

Mr. Twersky is admitted to practice in the Courts of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, the U.S. Courts of Appeal for the First, Second, Third, Seventh, Ninth and Eleventh Circuits, and the Supreme Court of the United States of America. Mr. Twersky has also routinely appeared *pro hac vice* in Courts throughout the United States.

19

*Atara Hirsch,* **Of Counsel**

Ms. Hirsch concentrates her practice in securities litigation and institutional investor relations. Ms. Hirsch is a graduate of Brooklyn Law School and is admitted to practice before the Courts of the State of New York, the United States District Court for the Southern District of New York and the United States District for the Eastern District of New York.

Ms. Hirsch serves as the Firm's Director of Institutional Investor Services, advising public and private institutions throughout the world with respect to shareholder rights related to class action and individual direct action claims arising under U.S. federal and state securities laws. Ms. Hirsch is a frequent speaker on securities litigation issues, particularly as they relate to the rights and responsibilities of institutional investors. Ms. Hirsch has addressed the National Conference on Public Employee Retirement Systems, the Native American Finance Conference and the Florida Public Pension Trustees Association, and has authored, "Custodians Leave Investor Money on the Table" *(PERSist,* National Conference on Public Employee Retirement Systems (Fall 2009)) detailing the myriad issues that may arise when pension funds rely solely on their custodians to monitor their stock portfolio.

*Ian D. Berg,* **Of Counsel**

Mr. Berg is an experienced litigator, representing public and private institutional investors, and has helped recover over $4 billion for clients and class members who invested in public companies. Mr. Berg has strong skills in all aspects of complex litigation, including developing and implementing strategies, conducting discovery, and negotiating favorable resolutions. Mr. Berg has argued *successfully* before federal courts throughout the country, including the Ninth Circuit Court of Appeals and First Circuit Court of Appeals.

Mr. Berg is playing, or has recently played, a leading role in the following actions:

*Lord Abbett Affiliated Fund, Inc., et al. v. American International Group, Inc. et al.*, 1:15-cv-00774-LTS (S.D.N.Y.) (Direct Action, resolved)

*General Electric Pension Trust, et al. v. American International Group, Inc. et al.*, 1:15-cv-00957-LTS (S.D.N.Y.) (Direct Action, resolved)

*In re Finisar Corp. Sec. Litig.*, 5:11-cv-01252-EJD (N.D. Cal.) (Class Action, pending)

20

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (CRB); *BRS v. Volkswagen AG, et al.*, 16-cv-3435 (N.D. Cal.) ("Bondholder Securities Action") (Class Action, pending)

*City of Orlando Police Pension Fund v. Page*, 4:13-cv-02038-PJH (N.D. Cal.) (Google Shareholder Deriv. Action, resolved)

*Silverstrand Investments, et al. v. Amag Pharmaceuticals, Inc.*, 10-cv-10470-NMG (D. Mass.) (Class Action, resolved)

*Brown v. China Integrated Energy, Inc.*, 2:11-cv-02559-BRO (C.D. Cal.) (Class Action, resolved)

Mr. Berg is also involved in the firm's case development and lead plaintiff appointment process for our clients, analyzing their interests and best options to maximize their recovery. Mr. Berg has recently played a prominent role in AF&T's successful representation of institutional investors in lead plaintiff contests in the following representative securities fraud class actions:

*In re SunEdison, Inc. Sec. Litig.* MDL No. 02742 (PKC); *Pyramid Holdings, Inc. v. TerraForm Global, Inc. et al*, 1:16-cv-07981-PKC (S.D.N.Y.)

*Perlmutter v. Intuitive Surgical, Inc. et al*, 5:10-cv-03451-LHK (N.D. Cal.)

*In re Finisar Corp. Sec. Litig.*, 5:11-cv-01252-EJD (N.D. Cal.)

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (CRB); *BRS v. Volkswagen AG, et al.*, 16-cv-3435 (N.D. Cal.) ("Bondholder Securities Action")

*Brown v. China Integrated Energy, Inc.*, 2:11-cv-02559-BRO (C.D. Cal.)

Mr. Berg is most proud of his work educating investors about securities litigation. Towards that goal, Mr. Berg has been a speaker on various topics and has authored or co-authored the following articles: "Other People's Money: The Unrealized Conflicts of Securities Lending" (Wall Street Lawyer, July 2010); "Why Institutional Investors Opt-Out of Securities Fraud Class Actions and Pursue Direct Individual Actions" (PLI Securities Litigation and Enforcement Institute, July 23, 2009); "Credit Rating Agencies: Out of Control and in Need of Reform" (Securities Litigation & Regulation Reporter, June 30, 2009); "Ruling Warns Funds to Follow Class Actions" (Pensions & Investments, December 8, 2008); and "The 7th Circuit Sends a Strong Message:

21

Institutions Must Monitor Securities Class Actions Claims" (The NAPPA Report, August 2008).

### *Lawrence D. Levit,* **Of Counsel**

Mr. Levit has specialized in class action litigation for approximately twenty years, primarily representing shareholders and consumers. Prior to joining AF&T, Mr. Levit was a partner at a mid-size law firm until 2002, where he was involved in actions that recovered hundreds of millions of dollars for class members. While at AF&T, he has served as co-lead counsel in *In re Peregrine Systems, Inc. Securities Litigation,* No. 02- CV-0870-BEN (RBB) (S.D. Cal.), representing a class of claimants for violations of the federal securities laws. A settlement was obtained for approximately $117.5 million, with approximately $65.5 million of that amount being obtained from individual corporate officers and directors, one of the largest recoveries directly from individuals in a case of this nature. The investors represented by the Firm (*i.e.,* those who acquired their Peregrine shares as a result of a stock exchange pursuant to a prospectus) received a recovery that was approximately three times greater than shareholders who acquired their shares by purchasing them on the open market. In another action, *Liberty Capital Group, Inc. v. KongZhong Corp.,* No. 1:04-CV-06746-SAS (S.D.N.Y.), Mr. Levit served co-lead counsel and was responsible for settling the action for 20% of the maximum provable damages, well in excess of the average recovery of 2-3% of damages in securities fraud litigation.

Mr. Levit is a graduate of Franklin and Marshall College. He also received an M.A. in Political Science from the Eagleton Institute of Politics. Mr. Levit is a graduate of Brooklyn Law School where he was the Second Circuit Editor for the Law Review. He published an article entitled: *Habeas Corpus and the Exhaustion Doctrine: Daye Lights Dark Corner of the Law,* 50 Brooklyn Law Review 565 (1984).

Mr. Levit is a member of the New York and New Jersey bars and is admitted to practice before the United States District Courts for the Southern District of New York, the Eastern District of New York, the District of New Jersey and the District of Colorado as well as the United States Courts of Appeal for the Second, Third, and Fourth Circuits.

### *Todd Kammerman,* **Of Counsel**

Mr. Kammerman focuses his practice on securities class action litigation, shareholder derivative litigation, and commercial litigation. Prior to joining Abraham, Fruchter & Twersky, LLP as Of Counsel in 2017, Mr. Kammerman was a partner at

Milberg LLP where he practiced for over 14 years. A sample of Mr. Kammerman's successful litigations include *In re CMS Energy Securities Litigation*, No. 02-72004 (E.D. Mich.) ($200 million recovery); *In re Royal Dutch/Shell Transport ERISA Litigation*, No. 04-1398 (D.N.J.) ($90 million recovery); *Scheiner v. i2 Technologies*, No. 01-0418 (N.D. Tex.) ($87.8 million recovery); and *Mich II Holdings LLC v. Schron*, No. 600736/10 (Sup. Ct. N.Y. Cnty.) (represented certain defendants in connection with real estate dispute and successfully litigated motion to dismiss all claims against those defendants).

Mr. Kammerman played a leading role in the *Platinum Partners Value Arbitrage Fund, LP, et al. v. Chicago Board Options Exchange, Inc. and Options Clearing Corporation*, No. 10 CH 54472 (Ill. Cir. Ct. Cook Cnty.) litigation, including litigating the successful appeal leading to the precedent-setting decision, reported at 2012 IL App (1st) 112903 (Ill. App. Ct. 2012), where the Illinois Appellate Court, First District, reversed the previous dismissal of the case on regulatory immunity grounds, and held that regulatory immunity does not apply where self-regulated organizations privately disclose information about the price adjustment of a stock option to selected market participants before that information is made publicly available.

Mr. Kammerman played a pivotal role in the *In re Comverse Technology, Inc. Derivative Litigation,* No. 601272/06 (Sup. Ct. N.Y. Cnty.) ($62 million recovery), particularly in drafting the appellate briefs which led to the seminal New York Appellate Division opinion, reported at 56 A.D.3d 49 (1st Dept 2008), clarifying the standards of demand futility, and holding that a board of directors loses the protection of the business judgment rule where there is evidence of self-dealing and poor judgment by the directors. He was also a member of the team that litigated the appeal in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* before the United States Supreme Court, in which the Supreme Court issued an opinion defining the pleading standard for scienter in all federal securities fraud cases, and is reported at 551 U.S. 308 (2007).

Mr. Kammerman has been selected as a New York Metro Super Lawyer from 2014-2018. While attending the Benjamin N. Cardozo School of Law, Mr. Kammerman was named an Alexander Fellow, and through the associated fellowship he worked as a judicial intern in the chambers of the Honorable Joseph A. Greenaway, Jr., United States District Judge in Newark, New Jersey.

Mr. Kammerman is a member of the bars of the States of New York and New Jersey and is admitted to practice before the United States Courts of Appeals for the Third and Eleventh Circuits and the United States District Courts for the District of New Jersey, Southern and Eastern Districts of New York, and Eastern District of Michigan.

23

### *Takeo A. Kellar,* **Of Counsel**

Mr. Kellar practices out of the Firm's San Diego office and concentrates his practice in the area of securities litigation on behalf of public and private institutional investors. Prior to joining Abraham, Fruchter & Twersky, LLP, Mr. Kellar practiced securities litigation at Bernstein, Litowitz, Berger & Grossmann LLP, where he prosecuted securities fraud and derivative shareholder actions on behalf of institutional investors. Mr. Kellar has helped obtain significant recoveries on behalf of class members in several nationwide securities class actions, including *In re Williams Securities Litigation* ($311 million), *In re Maxim Integrated Products, Inc. Securities Litigation* ($173 million), *In re New Century Securities Litigation* ($125 million) and *Atlas v. Accredited Home Lenders Holding Co.* ($22 million settlement). Mr. Kellar also worked on the trial team responsible for successfully prosecuting the *In re Clarent Corp. Securities Litigation,* which resulted in a favorable jury verdict for shareholders against the company's former CEO. In addition, Mr. Kellar has assisted in successfully prosecuting and settling important shareholder derivative cases pertaining to corporate waste such as the Apollo Group, Inc. and the Activision, Inc. stock option backdating cases.

Mr. Kellar is a graduate of the University of California, Riverside (B.A.) and the University of San Diego School of Law (J.D.). Mr. Kellar is admitted to practice in the State of California and before the United States District Courts for the Northern, Central and Southern Districts of California.

### *Michael J. Klein*, **Of Counsel**

Mr. Klein focuses his practice on securities litigation, shareholder derivative litigation, and litigation under the Employee Retirement Income Security Act of 1974 ("ERISA").

Prior to joining Abraham, Fruchter & Twersky, LLP in 2019, Mr. Klein practiced law at Stull, Stull & Brody for almost fifteen years. Examples of litigation in which Mr. Klein had substantial responsibility include: *Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.) (recovery of $70.525 million in cash to the company's 401(k) plan in a case alleging the company's stock was artificially inflated; Mr. Klein participated in over eighty days of deposition testimony); *National City Corporation Sec., Derivative & ERISA Litig.*, 1:08-cv-07000-PAG (N.D. Ohio) (recovery of $43 million in cash to the company's 401(k) plan in a case alleging the company's stock was artificially inflated); *Zilhaver v. UnitedHealth Group, Inc.*, Case No. 06-cv-2237 (JMR) (D. Minn.) (recovery of $17 million in cash to the company's 401(k) plan in a case alleging the company's stock was artificially inflated); *In re 2014 Avon Products, Inc. ERISA Litig.*,

24

1:14-cv-10083-LGS (S.D.N.Y.) (recovery of $6.25 million in cash to the company's 401(k) plan in a case alleging the company's stock was artificially inflated); *In Re SunTrust Banks, Inc. ERISA Litigation*, Docket No. 1:08-cv-03384-RWS (N.D. Ga.) (recovery of $4.75 million in cash to the company's 401(k) plan in a case alleging the company's stock was artificially inflated); *Griffin v. Flagstar Bancorp, Inc.*, 2:10-cv-10610-PDB-MKM (E.D. Mich.) (recovery of $3 million in cash to the company's 401(k) plan, representing 85% of likely recoverable damages, was recognized as "excellent" by the court, in a case alleging the company's stock was artificially inflated).

Mr. Klein has also prosecuted several cases seeking to enforce federal securities laws, causing disclosures required thereunder.

Mr. Klein was named by *Super Lawyers* magazine as a Super Lawyer in 2016 – 2017.

Mr. Klein received his undergraduate degree in 2001 from Emory University and his J.D., with honors, from the University of Connecticut School of Law in 2004. While at the University of Connecticut, Mr. Klein served as an Executive Editor of the Connecticut Law Review.

Mr. Klein is a member of the New York and Connecticut State Bars and is admitted to practice before the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Fifth, Sixth, Ninth and Eleventh Circuits, and the United States District Courts for the Southern, Eastern and Western Districts of New York, the District of Connecticut, the Northern District of Illinois, the Eastern District of Wisconsin, the Eastern District of Michigan, and the District of Colorado.

### *Wei Chen,* Associate

Ms. Chen is an Associate in our New York office where she focuses on securities litigation. She is a graduate of the City University of New York School of Law where she was a recipient of the Charles H. Revson Public Interest Fellowship and a final round participant in the CUNY Moot Court competition. Ms. Chen is admitted to practice in the states of New York, New Jersey, and Connecticut in addition to the U.S. District Court of New Jersey. She is fluent in both the Mandarin and Cantonese dialects of Chinese as well as Taiwanese.

### *Sean M. Handron-O'Brien*, Associate

Mr. Handron-O'Brien is an Associate in our New York office where he focuses on securities litigation, derivative litigation, and related market analysis. While at

AF&T, Mr. Handron-O'Brien has played a notable role in the Firm's prosecution of class action matters involving alleged violations of the federal securities laws, including *Vandevar v. American Renal Associates Holdings, Inc, et al.*, No. 2:19-cv-09074-ES-MAH (D.N.J.) (Class Action, pending).

Mr. Handron-O'Brien is a graduate of New England Law | Boston (J.D.), where he studied under legal experts in the fields of corporate law, bankruptcy, and the Uniform Commercial Code. Mr. Handron-O'Brien is also a *cum laude* graduate of the University of Massachusetts at Amherst's Isenberg School of Management, where he studied finance and operations management. Mr. Handron-O'Brien is admitted to practice in both New York and Massachusetts.