# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Mosser v. TD Bank, N.A.*
E.D. Pa. Case No. 2:10-cv-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mazzadra, et al v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

*Hughes, et al. v. TD Bank, N.A.*
D.N.J. Case No. 11-7257
S.D. Fla. Case No. 12-22372-JLK

---

## ORDER OF FINAL APPROVAL OF SETTLEMENT, AUTHORIZING
## SERVICE AWARDS, AND GRANTING APPLICATION FOR ATTORNEYS' FEES

On January 10, 2013, Plaintiffs and Class Counsel filed their Motion for Final Approval

of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses, and

Incorporated Memorandum of Law ("Motion"), seeking Final Approval of the Settlement

Agreement and Release ("Agreement" or "Settlement") with TD Bank, N.A. ("TD Bank" or "the

Bank").[1] (DE # 3158). In support, Plaintiffs filed declarations from experts in class action law

and attorneys' fees, as well as several other declarations supplementing the factual record to

enable the Court to evaluate the fairness and adequacy of this Settlement. (DE # 3158-2, 3158-3,

---

[1] This Order incorporates the definitions of terms used in the Agreement attached to the Motion
(DE #3158).

3158-4, 3158-5, 3158-6).

This matter came before the Court on March 7, 2013, for a Final Approval Hearing pursuant to the Court's Preliminary Approval Order dated September 19, 2012. (DE # 2960). The Court reviewed all of the filings related to the Settlement and heard argument on the Motion.

After careful consideration of the presentations of the Parties, the Court concludes that this Settlement provides a fair, reasonable and adequate recovery for Settlement Class Members, representing approximately forty-two percent (42%) of the most probable recoverable damages based on the creation of a $62,000,000 common fund. The Settlement constitutes an excellent result for the Settlement Class under the circumstances and challenges presented by the Action. The Court specifically finds that the Settlement is fair, reasonable and adequate, and a satisfactory compromise of the Settlement Class Members' claims. The Court overrules the two remaining objections to the Settlement.[2] The Settlement fully complies with Fed. R. Civ. P. 23(e), and, thus, the Court grants Final Approval to the Settlement, certifies the Settlement Class, and awards the fees and costs requested by Class Counsel as well as the requested Service Awards for the eight (8) representative Plaintiffs.

## BACKGROUND

The Court is familiar with the history of this consumer class action brought against TD Bank, having presided over MDL 2036 for over three years. During that time, the Court has had ample opportunity to observe Class Counsel and TD Bank's counsel in action. These attorneys, several of whom have practiced before this Court for many years, are extremely skilled advocates, and vigorously litigated the Action up to the time of the Settlement. The Settlement is quite obviously the result of arm's-length negotiations, and the Court so finds.

---

[2] On March 7, 2013, the Court entered an Order (DE # 3315) approving the withdrawal of two objections (DE # 3222, 3223) to the Settlement.

2

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness and adequacy of the Settlement. A fundamental question is whether the district judge has sufficient facts before him to evaluate and intelligently and knowledgeably approve or disapprove the settlement. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)). In this case, the Court clearly has such facts before it in considering the Motion, including the evidence and opinions of Class Counsel and their experts.

## 1.    Factual and Procedural Background of the Action.

On December 15, 2009, Plaintiff Carly A. Dwyer filed *Dwyer v. Toronto-Dominion Bank* Case No. 1:09-cv-12118-RBC ("*Dwyer*") in the United States District Court for the District of Massachusetts.  On January 8, 2010, Plaintiff Anne-Marie Mascaro filed *Mascaro v. TD Bank, Inc. and John Does 1-50*, Case No. 1:10-cv-00040-ESH ("*Mascaro*") in the United States District Court for the District of Columbia.  On January 11, 2010, Plaintiff Donald Kimenker filed *Kimenker v. TD Bank, N.A. and TD Bank Financial Group*, Case No. 1:10-CV-00136-NLS-JS ("*Kimenker*") in the United States District Court for the District of New Jersey.  On February 19, 2010, Plaintiff Todd M. Mosser filed *Mosser v. TD Bank, N.A.*, Case No. 2:10-CV-00731-PD ("*Mosser*") in the United States District Court for the Eastern District of Pennsylvania.  All of the aforementioned actions sought, *inter alia*, monetary damages, restitution, and equitable relief arising from TD Bank's alleged improper assessment and collection of Overdraft Fees. *See* Joint Declaration of Robert C. Gilbert and Peter Prieto ¶¶ 8-11 ("Joint Decl.") (DE # 3158-2).

On March 19, 2010, the *Dwyer* and *Mascaro* actions were transferred to this Court for inclusion in MDL 2036. On April 6, 2010, the *Kimenker* action was transferred to this Court for inclusion in MDL 2036.  The *Mosser* action was also transferred to this Court on April 23, 2010 for inclusion in MDL 2036. *See* Joint Decl. ¶ 12.

3

On June 7, 2010, Plaintiffs Dwyer, Mosser and Mascaro filed a Consolidated Amended Class Action Complaint, alleging improper assessment and collection of Overdraft Fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief from TD Bank and TD Bank Financial Group. Also on June 7, 2010, Plaintiffs Gregory D. Carcaci, James E. Daniels, Kelli Herd, Gary L. Mazzadra, Lucy Nico, Leonardo Rubio and Paige Schwartzman filed *Mazzadra, et al v. TD Bank, N.A.* and *TD Bank Financial Group,* Case No. 10-21870-JLK ("*Mazzadra*") in the United States District Court for the Southern District of Florida, alleging improper assessment and collection of Overdraft Fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief. On June 9, 2010, Donald Kimenker filed a notice of voluntary dismissal without prejudice, and on June 10, 2010, the Court issued a final order of dismissal without prejudice with respect to the *Kimenker* action. On June 14, 2010, the *Mazzadra* action was joined with other actions in MDL 2036. *See* Joint Decl. ¶¶ 13-15.

On July 6, 2010, Plaintiffs Carcaci, Daniels, Dwyer, Herd, Mascaro, Mazzadra, Mosser, Nico, Rubio and Schwartzman filed a Second Consolidated Amended Class Action Complaint, alleging improper assessment and collection of Overdraft Fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief. On July 7, 2010, the Parties filed a stipulation to dismiss without prejudice defendants other than TD Bank from the *Dwyer, Mascaro, Kimenker, Mosser* and *Mazzadra* actions. The stipulation was approved and adopted as an Order of the Court on July 8, 2010. *See* Joint Decl. ¶¶ 16-17.

On July 9, 2010, TD Bank filed a motion to dismiss the Second Consolidated Amended Class Action Complaint. On August 9, 2010, Plaintiffs filed their opposition to the motion. On August 30, 2010, TD Bank filed its reply. On November 4, 2010, the Court denied TD Bank's motion to dismiss. *See* Joint Decl. ¶ 18.

4

On December 6, 2010, Plaintiffs Carcaci, Daniels, Dwyer, Herd, Mascaro, Mazzadra, Mosser, Nico, Rubio, Schwartzman, joined by new Plaintiffs Suzanne M. Hubbard, Christina Mattisz and Ian McNulty, filed a Consolidated Third Amended Class Action Complaint, alleging that TD Bank's policy and practice of High-to-Low Posting with respect to Debit Card Transactions, combined with TD Bank's alleged failure to allow customers to opt-out of overdrafts or Overdraft Fees or to publicize or disclose the ability of customers to opt-out of overdrafts or Overdraft Fees, constituted a breach of an implied covenant of good faith and unfair and deceptive acts and practices, resulted in the conversion of the customers' property, and otherwise rendered TD Bank liable for compensatory damages in the amount of all Overdraft Fees collected as a result of the challenged practices, punitive damages, injunctive relief, and attorneys' fees, costs and interest. On January 7, 2011, TD Bank answered the Consolidated Third Amended Class Action Complaint, denying any and all wrongdoing and liability and asserting various affirmative defenses. *See* Joint Decl. ¶¶ 19-20.

On January 11, 2011, the Parties entered into a Stipulated Protective Order relating to the production of documents and information. On July 28, 2011, the Parties filed a Stipulated Discovery Plan and Order for Electronically Stored Information that was approved and adopted as an Order of the Court on July 29, 2011. *See* Joint Decl. ¶ 21. Thereafter, sixteen (16) depositions were taken and over 540,000 pages of documents were reviewed. *Id.* at ¶ 54.

On June 3, 2011, TD Bank filed a joinder in JPMorgan Chase Bank, N.A.'s motion, based on recently decided Eleventh Circuit authority, to dismiss on grounds of preemption pursuant to Rule 12(c) and on further reconsideration of its earlier motion pursuant to Rule 12(b)(6), or, in the alternative for certification pursuant to 28 U.S.C. § 1292(b). Later the same day, Plaintiffs filed their opposition to TD Bank's joinder (as well as JPMorgan Chase Bank's

motion). On July 13, 2011, the Court issued an Omnibus Order Denying Defendants' Motions for Reconsideration that also denied TD Bank's joinder. *See* Joint Decl. ¶ 22.

On December 9, 2011, Plaintiffs Dwyer, Mascaro, Mattisz, Mazzadra and Rubio filed a motion for voluntary dismissal with prejudice pursuant to Rule 41(a)(2). On December 22, 2011, TD Bank filed its response. On December 28, 2011, the Court issued an Order dismissing the claims of Plaintiffs Dwyer, Mascaro, Mattisz, Mazzadra and Rubio with prejudice, and dismissing the *Dwyer* and *Mascaro* actions with prejudice with respect to the individual claims of those individuals. *See* Joint Decl. ¶ 23.

On December 14, 2011, plaintiffs Christopher Hughes and Carla Cressman filed *Hughes et al v. TD Bank, N.A.*, Case No. 11-CV-07257-JEI-KMW ("*Hughes*") in the United States District Court for the District of New Jersey, alleging improper assessment and collection of Overdraft Fees and seeking, *inter alia*, monetary damages, restitution and equitable relief from TD Bank. On May 14, 2012, *Hughes* was transferred to this Court for inclusion in MDL 2036. *See* Joint Decl. ¶ 24.

On December 16, 2011, Plaintiffs moved for class certification. On January 30, 2012, TD Bank filed its opposition to class certification, and on March 6, 2012, Plaintiffs filed their reply. On January 30, 2012, TD Bank filed a motion to strike the declaration of Arthur Olsen submitted in support of Plaintiffs' motion for class certification. Plaintiffs opposed that motion on March 6, 2012, and TD Bank replied on March 16, 2012. On March 20, 2012, the Court heard argument on TD Bank's motion to strike the declaration of Arthur Olsen, and issued a minute order denying the motion. On March 26, 2012, the Court heard argument on Plaintiffs' motion for class certification. On April 3, 2012, the Court entered an Order granting Plaintiffs' motion for class certification. *See* Joint Decl. ¶¶ 25-26.

6

On April 17, 2012, TD Bank filed a petition for leave to appeal the Order granting class certification with the United States Court of Appeals for the Eleventh Circuit pursuant to Rule 23(f) (the "Petition"). Plaintiffs filed their response in opposition to the Petition on April 30, 2002. On May 11, 2012, the Parties filed a joint stipulation to voluntarily dismiss the Petition, without prejudice to any party's right to pursue an appeal following entry of final judgment in this Court. The Eleventh Circuit dismissed the Petition on May 22, 2012. *See* Joint Decl. ¶ 27.

### 2. Settlement Negotiations and Proceedings.

Preliminary settlement discussions began in early 2012 and resulted in the scheduling of mediation and the production of certain confidential data by TD Bank to Class Counsel for analysis by their expert. On May 7, 2012, Class Counsel and TD Bank participated in mediation with Professor Eric Green of Resolutions LLC. During that mediation, Class Counsel and TD Bank reached agreement concerning the material terms of the Settlement. On May 8, 2012, Class Counsel and TD Bank executed a Summary Agreement memorializing the material terms of the Settlement. On May 11, 2012, Class Counsel and TD Bank filed a Joint Notice of Settlement that requested suspension of all deadlines pending the drafting and execution of the Agreement. This Court granted that request on May 14, 2012. *See* Joint Decl. ¶¶ 30-31.

Several months of detailed discussions followed regarding other terms of the Settlement, including issues pertaining to TD Bank's data, the identification of Settlement Class Members and the distribution of the Settlement Fund. Once Settlement Class Counsel and TD Bank resolved all remaining issues, the drafting of the Agreement was completed and the Parties executed the Agreement in late August and early September 2012. *See* Joint Decl. ¶ 32.

On September 18, 2012, Plaintiffs and Class Counsel filed their motion for preliminary approval. (DE # 2956). On September 19, 2012, the Court entered an Order Granting Preliminary Approval. (DE # 2960). In so ruling, the Court preliminarily determined that the

Settlement is "fair, reasonable and adequate" and found "that the Settlement was reached in the absence of collusion, and is the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel." (*Id.* at ¶ 11).

Pursuant to the Preliminary Approval Order, Notice of the Settlement was mailed to 1,006,309 members of the Settlement Class. *See* Declaration of Cameron Azari ¶ 18 ("Azari Decl."). Notice of the Settlement was also published in fourteen (14) of the highest daily circulation newspapers and/or newspapers that were more likely to be read by Settlement Class Members in the geographic markets where TD Bank maintained the highest number of branches during the Class Period. *Id.* at ¶¶ 23-24. Internet banner notices were placed on national online networks MSN Network and Yahoo! Network. *Id.* at ¶ 27. In addition, a special Settlement website and toll free telephone numbers were established to provide details regarding the Settlement. *Id.* at ¶¶ 28-30.

As discussed below, the Court finds that the Notice Program was properly effectuated, and that it was more than adequate to put the Settlement Class Members on notice of the terms of the Settlement, the procedures for objecting to and opting out of the Settlement, and the rights that the Settlement Class Members will give up by remaining part of the Settlement. *See* Azari Decl. at ¶¶ 16-18, 23-24, 27-30.

### 3. Summary of the Settlement Terms.

The Settlement's terms are set forth in the Agreement. (DE # 3158-1). The Court now provides a summary of the material terms.

### A. The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> All holders of a TD Bank Account who, from December 1, 2003, through and including August 15, 2010, incurred one or more Overdraft Fees as a result of TD

8

Bank's practice of High-to-Low Posting. Excluded from the Class are all current TD Bank employees, officers and directors, and the judge presiding over this Action.

*See* Agreement ¶ 67.

### B.      Monetary Relief for the Benefit of the Class.

TD Bank deposited $62,000,000 into the Escrow Account following Preliminary Approval. *See* Joint Decl. ¶ 33. That deposit created the Settlement Fund, which will be used to pay: (i) all distributions to the Settlement Class; (ii) all attorneys' fees, costs and expenses of Class Counsel; (iii) all Service Awards to the Plaintiffs; (iv) any residual *cy pres* distributions; (v) any Taxes; (vi) any costs of Settlement Administration other than those to be paid by TD Bank; and (vii) additional fees, costs and expenses not specifically enumerated in the Agreement, subject to approval of Settlement Class Counsel and TD Bank. *See* Agreement ¶ 98. In addition to the $62,000,000 Settlement Fund, TD Bank is responsible for paying all costs and fees associated with Class Notice and Settlement Administration; these are estimated to be approximately $750,000. *Id.* at ¶ 70; *see also* Joint Decl. ¶ 37.

All identifiable Settlement Class members who experienced a Positive Differential Overdraft Fee (as defined in the Agreement) and did not opt-out of the Settlement will receive automatic *pro rata* distributions from the Net Settlement Fund. *See* Agreement ¶¶ 103-104. The Positive Differential Overdraft Fee analysis determines, among other things, which TD Bank Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other than High-to-Low Posting, and how much in additional Overdraft Fees those Account holders paid. The calculation involves a multi-step process described in detail in the Agreement. *Id.* at ¶ 95.

9

The Net Settlement Fund – which will be distributed *pro rata* among Settlement Class Members – is equal to the Settlement Fund, plus interest earned (if any), less Court-awarded attorneys' fees and costs, Service Awards for the Plaintiffs, and certain additional costs or expenses and reservations for prospective costs. *See* Agreement ¶ 98.

Settlement Class Members do not have to take any affirmative steps to receive relief under the Settlement. *See* Joint Decl. ¶ 34. The amount of their *pro rata* distributions will be determined by Settlement Class Counsel and their expert through analysis of TD Bank's electronic data. *Id.* Following the Effective Date, TD Bank and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members who experienced a Positive Differential Overdraft Fee and did not timely opt out of the Settlement. *See* Agreement ¶¶ 40, 97. Payments to Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credit. *Id.* at ¶ 102. The funds for those payments will be provided by the Settlement Administrator to TD Bank from the Settlement Fund, and will be held by TD Bank in escrow pending distribution of account credits to the Current Account Holders. *Id.* at ¶ 103. Former Account Holders and Current Account Holders whose Accounts cannot feasibly be automatically credited will receive checks mailed by the Settlement Administrator. *Id.* at ¶ 104.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first Settlement Fund Payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments. *See* Agreement ¶ 105. Any residue still remaining after that period will be distributed through a residual *cy pres* program, the purpose of which shall be to benefit consumer financial literacy education and to educate and assist consumers with

10

financial services through advisory and related services (excluding litigation). The *cy pres* recipients and distributions will be approved by the Court. *Id.* at ¶ 106.

## C.    Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released TD Bank from claims as set forth in the detailed release language found in Section XIV of the Agreement.

## DISCUSSION

Federal courts have long recognized a strong policy and presumption in favor of class action settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at \*3 (E.D. Mich. June 27, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

As explained below, the Settlement here is more than sufficient under Rule 23(e). It includes a Settlement Fund of $62,000,000, plus an estimated $750,000 that TD Bank will pay for the fees and costs associated with the Notice Program and Settlement administration. *See* Joint Decl. ¶¶ 33, 37. All Settlement Class Members who experienced a Positive Differential Overdraft Fee and did not timely opt-out will automatically receive their recovery as a matter of

11

course, without needing to take any action, based on an analysis by Settlement Class Counsel's expert of information in TD Bank's possession. *Id.* at. ¶¶ 33-35.

**1.     The Court's Exercise of Jurisdiction Is Proper.**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to the Action, the Court also has personal jurisdiction over all members of the Settlement Class because they have received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998). The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6).

**a.     The Best Notice Practicable Was Provided to the Settlement Class.**

As discussed above, Notice of the Settlement in the forms approved by the Court was mailed to over 1,006,309 members of the Settlement Class. *See* Azari Decl. ¶¶ 12-18. Notice of the Settlement was also published in fourteen (14) of the highest daily circulation newspapers and/or newspapers that were more likely to be read by Settlement Class Members in the geographic markets where TD Bank maintained branches during the Class Period. *Id.* at ¶¶ 23-24. In addition, a special Settlement Website and toll-free telephone number were established to enable Settlement Class Members to obtain detailed information about the Action and the Settlement. *Id.* at ¶¶ 28-30. Internet banner notices were also placed on two popular internet web sites, MSN Network and Yahoo! Network. *Id.* at ¶ 27.

12

**b.** **The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.**

The Court-approved Notice[3] satisfied due process requirements because it described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class; described the release provided to TD Bank under the Settlement as well as the amount, manner of allocating, and proposed distribution of the Settlement proceeds; and informed Settlement Class Members of their right to opt-out and object, the procedures for doing so, and the time and place of the Final Approval Hearing. Further, the Notice stated that Class Counsel intended to seek attorneys' fees of up to thirty percent (30%) of the $62,000,000 Settlement Fund. In addition to disclosing these material terms, the Notice informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could get more information – for example, at the Settlement Website that posts a copy of the fully executed Agreement, as well as other important court documents such as the Motion.

The Motion and attachments thereto contain Class Counsel's considered opinion that the $62,000,000 Settlement Fund represents approximately forty-two percent (42%) of the most probable damages Plaintiffs and the Settlement Class could recover at trial. *See* Joint Decl. ¶ 56. The disclosure of this percentage was sufficient to put Settlement Class Members on notice of their potential recovery based on their personal history with TD Bank and to allow them to make an informed decision about whether to accept the Settlement, object to it or opt out of it.

---

[3] *See* Preliminary Approval Order at ¶ 12 (DE # 2960).

One objector has argued that he is unable to determine whether the Settlement is beneficial to him. *See* Objection of Edward D. Smith ("Smith Objection").[4] This argument is without merit. As discussed above, the Notice set forth in detail the terms of the Settlement, described the release, and informed Settlement Class Members of their rights.

The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with TD Bank was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. *See* Azari Decl. ¶¶ 7-8, 32-41.

### 2. The Settlement Is Fair, Adequate and Reasonable, and Therefore Is Finally Approved Under Rule 23.

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of Al., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at \*2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have

---

[4] To date the two (2) remaining objections, submitted by Mr. Smith and by Andrea Barnes ("Barnes Objection") have not been entered on the CM/ECF system and, therefore, have not been assigned docket entry numbers.

14

recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class action settlement under Rule 23(e):

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the probability of the plaintiffs' success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the class counsel, class representatives, and the substance

and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.

### a. There Was No Fraud or Collusion.

The Court has readily concluded there was no fraud or collusion behind this Settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd,* 893 F.2d 347 (11th Cir. 1989).

### b. The Settlement Will Avert Years of Highly Complex and Expensive Litigation.

This case involves over one million Settlement Class Members and alleged wrongful

15

Overdraft Fees exceeding $100,000,000. *See* Joint Decl. ¶ 52. The claims and defenses are complex. *Id.* Litigating them has been difficult and time consuming. *Id.* Although this litigation has been pending for over two years, recovery by any means other than settlement would require additional years of litigation in this Court and others, including appellate courts. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 at 317, 325-26 & n.32 (N.D. Ga. 1993) ("adjudication of the claims of two million claimants could last half a millennium").

The Settlement provides immediate and substantial benefits to over one million current and former TD Bank customers. *See* Joint Decl. ¶ 52; *see In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no reasonable doubt as to the adequacy of this Settlement.

The amount of the recovery is extremely reasonable in light of the risks Plaintiffs faced. *See* Joint Decl. ¶¶ 55-56; Declaration of Professor Geoffrey Miller ¶ 33 ("Miller Decl.") (DE #

16

3158-3). The Settlement Fund of $62,000,000 represents approximately forty-two percent (42%) of the most probable aggregate damages that Class Counsel believe could have been recovered on behalf of the Settlement Class if the Action were successful in all respects. *See* Joint Decl. ¶ 56. Approximately forty-two percent (42%) of the most probable sum Plaintiffs anticipated recovering at trial constitutes a very fair settlement. The combined risks here were real – and potentially catastrophic for the Settlement Class. *See* Miller Decl. ¶ 34.

First, TD Bank asserted that certification of the large multistate class, consisting of over 1,000,000 current and former customers from fourteen (14) states, should be denied for a variety of reasons. *See* Joint Decl. ¶ 88. Although this Court rejected TD Bank's arguments and granted class certification, if TD Bank's Petition was successful in reversing class certification, this litigation would have effectively ground to a halt and this Settlement would not have been achieved. *Id.*; Declaration of Thomas E. Scott ¶ 14 ("Scott Decl.") (DE # 3158-6).

Second, TD Bank would have continued to press its NBA preemption defense at all stages of the litigation. *See* Joint Decl. ¶ 89; Scott Decl. ¶ 14. This Court stressed that its original preemption ruling, on motions to dismiss, applied only "[a]t this stage . . ." *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302, 1313 (S.D. Fla. 2010). When it subsequently approved the Bank of America settlement in MDL 2036, the Court observed that "whether Plaintiffs' claims are preempted by the NBA and related regulations remains an open question. . . . [N]o federal appeals court has yet reached the NBA preemption issue in this specific context. The preemption defense "was a 'light switch' which, if successfully turned 'on' . . . would have led to dismissal of the entire case . . . ." *Checking Account Overdraft*, 830 F. Supp. 2d at 1347 (citations omitted).

Had the Action proceeded, TD Bank would likely have raised the Ninth Circuit's recent decision in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Circ. 2012) that reversed and

remanded a $203 million judgment against Wells Fargo on the ground that certain provisions of California's Unfair Competition Law are preempted by federal laws and regulations. *See* Joint Decl. ¶ 89. While Class Counsel assert that *Gutierrez* is not applicable because its preemption analysis was limited to particular provisions of California's Unfair Competition Law, and most of the claims asserted in this Action are based on allegations of bad-faith conduct brought under state laws of general application, TD Bank would have also argued that the NBA preempts these claims on the grounds that they "significantly interfere" with its federally-authorized banking powers. *Id.* Thus, there can be no doubt that the preemption issue involves complex issues of law and fact, and constituted an ongoing, major risk to Plaintiffs' and the putative class's claims. *Id.*; *see also* Tr. of Nov. 7, 2011, Final Approval Hearing Regarding Bank of America Settlement, at 114:14–18 (this Court stated that preemption "seemed to me to be a very close issue. It caused me a lot of problems").

A third major risk derives from the fact that the language in TD Bank's account agreements suggests that, to some extent, TD Bank adequately disclosed its practice of High-to-Low Posting. *See* Joint Decl. ¶ 90; Scott Decl. ¶ 14. Thus, TD Bank asserted that its disclosure was adequate and that it could not be held liable for Plaintiffs' decisions to maintain TD Bank checking accounts under a contract authorizing such practices. *Id.*

The Court rejected this argument in denying the First Tranche banks' Omnibus Motion to Dismiss, finding that Plaintiffs seek only to have the bank exercise its contractual discretion in good faith (DE # 305 at 19) and in denying TD Bank's motion to dismiss (DE # 444). Yet, TD Bank's contractual language would have enabled it to argue to the fact-finder that it told Plaintiffs exactly what it was going to do, and that it cannot be held responsible for Plaintiffs' decision to maintain TD Bank accounts under these terms and then incur Overdraft Fees arguably of their own making. *See* Joint Decl. ¶ 90; Scott Decl. ¶ 14; *see Checking Account*

18

*Overdraft*, 830 F. Supp. 2d at 1347 (noting that "high-to-low posting of debit card transactions is by no means clearly unlawful. The account agreements disclose that [the bank] may process debits out of order and/or in high-to-low order, and the Uniform Commercial Code expressly permits the reordering of checks.") (internal quotation marks and citation omitted).

### c. The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Concerning the Settlement.

The Court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler,* 822 F. Supp. at 1555.

Substantial discovery occurred in this Action. The Parties settled after sixteen (16) depositions were taken and over 540,000 pages of documents were reviewed. *See* Joint Decl. ¶ 54. The course of the litigation, including information obtained through discovery, afforded Class Counsel insight into the strengths and weaknesses of the claims against TD Bank. *Id.* Prior to settling, Class Counsel developed ample information and performed analyses from which "to determine the probability of . . . success on the merits, the possible range of recovery, and the likely expense and duration of the litigation." *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 660, 669 (M.D. Ala. 1988). That this Action was at a reasonably advanced stage when the Parties reached an agreement to settle it supports granting Final Approval. *See* Miller Decl. ¶¶ 37, 40-42.

Mr. Smith also objects to the Settlement, in part, because he has not had an opportunity to seek discovery in the Action. *See* Smith Objection at 5. This objection is likewise without merit. While individual Settlement Class Members like Mr. Smith did not individually have the right to

19

conduct discovery, Class Counsel conducted extensive discovery on behalf of Plaintiffs and the Settlement Class that informed their opinions regarding the likelihood of success on critical issues in the litigation and the appropriate range of settlement.

### d.    Plaintiffs Would Have Faced Significant Obstacles to Obtaining Relief.

The Court also considers "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). In the words of Professor Miller: "This case presented significant risks both at the outset and throughout the litigation." Miller Decl. ¶ 26.

Plaintiffs and Class Counsel faced several major risks in this litigation, including those discussed above relating to federal preemption and *Gutierrez*. Absent this Settlement, this litigation likely would have continued for additional years, at tremendous expense to the Parties. *See* Joint Decl. ¶ 55. Given the myriad risks attending these claims, the Settlement is a fair compromise. *See, e.g., Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984).

### e.    The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery.

In determining whether a settlement is fair in light of the potential range of recovery, the Court is guided by the "important maxim[]" that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542. This is because a settlement must be evaluated "in light of the

20

attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is . . . a yielding of absolutes and an abandoning of highest hopes.") (internal quotation omitted). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-410 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

The Settlement provides substantial value to the Settlement Class. *See* Joint Decl. ¶¶ 56-59. Under the Settlement, Plaintiffs and the Settlement Class have recovered $62,000,000 in cash, which represents approximately forty-two percent (42%) of the most probable aggregate damages that Class Counsel believe Plaintiffs could have recovered at trial. *Id.* at ¶ 56. TD Bank's agreement to pay all fees, costs and expenses of the Notice Administrator and Settlement Administrator, estimated to be approximately $750,000, further enhance the Settlement. *Id.* at ¶ 86. As Professor Miller said: "This is an outstanding result. Many class actions – especially consumer class actions – generate only a small fraction of the total damages. Given the risks of this litigation, a settlement that generates a fund equal to 42% of the estimated classwide damages clearly satisfies the second *Bennett* factor." Miller Decl. ¶ 33.

Two objectors make arguments that could be interpreted as challenging the fairness and reasonableness of the benefit created by the Settlement. These arguments are without merit.

Mr. Smith claims that the Settlement should have made provision for the payment of interest on amounts unlawfully taken by TD Bank. *See* Smith Objection at p. 2. As Class Counsel point out, the Settlement does not make provision for the payment of interest because,

21

as is often the case involving the settlement of hotly contested litigation, TD Bank strongly contested the claims brought against it and only agreed to pay a percentage of the most likely damages that Plaintiffs could have recovered *if* they prevailed on all issues through final judgment and appeal. *See* Plaintiffs' and Class Counsel's Response to Objections to Motion for Final Approval at p. 5 ("Response") (DE # 3268).

Ms. Barnes claims that TD Bank constantly charged her Overdraft Fees that caused her to incur financial debt and perpetuated a cycle of Overdrafts in her Account. Barnes' Objection at 1. Ms. Barnes' objection highlights the very problem that Plaintiffs alleged in the Action. The Settlement achieved with TD Bank has recouped a substantial percentage (approximately 42%) of the most probable damages that Ms. Barnes and all other Settlement Class Members could have recovered *if* Plaintiffs prevailed at every juncture throughout the balance of the litigation and on appeal. While the recovery achieved through the Settlement does not achieve a 100% recovery, the $62,000,000 Settlement Fund is an "outstanding result" when considered in the context of TD Bank's vigorous defenses to liability and damages. *See* Miller Decl. ¶¶ 25-42.

> **f.      The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Strongly Favor Approval of the Settlement.**

The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren,* 693 F. Supp. at 1060; *see also Mashburn,* 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.,* 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of

22

counsel.'") (citations omitted).

Class Counsel and the representative Plaintiffs believe that this Settlement is deserving of Final Approval, and the Court agrees. *See* Joint Decl. ¶¶ 60-63. Furthermore, the Court also finds it telling that, of the one million-plus Settlement Class Members, only sixty-nine (69) timely requests for exclusion from the Settlement were received, and only four (4) objections were timely submitted (two of which were later withdrawn). *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

### g.  The Residual *Cy Pres* Program is Reasonable and Appropriate.

Under this Settlement, 100% of the Net Settlement Fund (defined in paragraph 98 of the Agreement) will be distributed to Settlement Class Members who had a Positive Differential Overdraft Fee and did not timely opt out. *See* Agreement ¶ 97. Based on the plan for distribution, it is highly unlikely there will be any significant residual amounts. *See* Response at p. 6; Agreement ¶¶ 104-106. Whatever amounts remain a year and 30 days after the Settlement Fund Payments have been distributed should be limited to Past Account Holders: (i) who received checks but failed to deposit or cash them within 180 days; or (ii) for whom the Settlement Administrator was unable to locate updated mailing addresses for purposes of re-mailing their checks after they were initially returned as undeliverable. *See* Response at pp. 6-7.

Given the reasonably anticipated small amount of money that may remain in the Settlement Fund a year after Settlement Fund Payments have been distributed, it will not be economically viable to make a second round of distributions to over one million Settlement Class Members. *See* Response at p. 7. For that reason, the Parties agreed to distribute any leftover monies to organizations furthering "consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding

23

litigation)." *See* Agreement ¶ 106. It is perfectly appropriate to provide for the distribution of any leftover monies through a residual *cy pres* program to third parties to be used for a purpose related to the class' injury. *See In re Baby Products Antitrust Litig.*, 2013 WL 599662, at *4 (3d Cir. Feb. 19, 2013); *Lane v. Facebook, Inc.*, 696 F. 3d 811, 819-20 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F. 3d 24, 33-36 (1st Cir. 2009); *see also* 4 Herbert B. Newberg et al., *Newberg on Class Actions* § 11:20 (4th ed. 2012).

### h. The Remaining Objections Regarding the Fairness of the Settlement Are Without Merit.

The Court overrules the remaining arguments raised in the Smith Objection and the Barnes Objection. Their arguments lack merit and are riddled with misunderstandings of the Settlement and basic class action jurisprudence. Neither objector submitted an expert affidavit or provided any evidence undermining the conclusions reached by Class Counsel and their nationally recognized experts. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (affirming final approval of nationwide class action settlement where "[t]he objectors presented no evidence" to support their arguments).

Mr. Smith asserts that certain fees he was charged for not maintaining certain minimum daily balance amounts in his Account were unlawful, and these fees must be addressed together with Overdraft Fees because they operate in concert to amplify each other's impact. *See* Smith Objection at p. 4. He also claims that the Settlement may bind him and prejudice a future case regarding those minimum balance fees and that the release is overbroad. *Id.* at p. 3. As Class Counsel point out in the Response, the Settlement does not address certain fees relating to minimum balance requirements because those were not the subject of the claims that Plaintiffs asserted in the Action. *See* Response at p. 5. If Mr. Smith believed his participation in this Settlement somehow prejudices his rights to address certain other fees relating to minimum balance requirements, he could have timely excluded himself from the Settlement. He did not do

24

so.

Likewise, by its terms, the release is limited to claims that were or could have been asserted in the Action that relate to Overdraft Fees or High-to-Low Posting. *See* Agreement ¶ 107. Once again, if Mr. Smith believed that the release being provided somehow prejudices a future case that he may pursue regarding separate minimum balance fees, Mr. Smith could have timely excluded himself from the Settlement and thereby not become bound by the release. Again, he chose not to do so. In any event, the Court finds that the release is not overbroad and is limited to claims that were or could have been asserted in the Action that relate to Overdraft Fees or High-to-Low Posting. *See* Agreement ¶ 107.

### 3.    The Settlement Class.

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action in a litigation and settlement posture (DE # 2615, 2960), and in similar actions in MDL 2036 on contested motions for class certification (*see, e.g.*, DE # 1763 (Union Bank, N.A.); DE # 2615 (TD Bank, N.A.); DE # 2697 (PNC Bank, N.A.)) and in the context of settlement (*see, e.g.*, DE # 1520, 2150 (Bank of America, N.A.); DE # 2712, 3134 (JPMorgan Chase Bank, N.A.)). The Court hereby reiterates its findings that: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiffs are typical of the claims of the Settlement Class; (d) the representative Plaintiffs and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

The sixty-nine (69) individuals listed in Exhibit A to the Final Judgment being entered contemporaneously herewith timely elected to opt out of the Settlement. The Court therefore

25

finds and decrees that they are not part of the Settlement Class, are not bound by the Settlement or release contained therein, and will not receive any distribution from the Settlement Fund.

4. **The Application for Service Awards to the Class Representatives Is Approved.**

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram*, 200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff). The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Court finds that the eight (8) named Plaintiffs/class representatives expended substantial time and effort in representing the Settlement Class, and deserve to be compensated for such time and effort. *See* Joint Decl. ¶¶ 67-68. Therefore, the Court approves the requested service awards of $10,000 for each of the eight (8) Plaintiffs/class representatives, or $5,000 per Plaintiff/class representative for married couples in which both spouses are representative

26

Plaintiffs, to be paid from the Settlement Fund.

**5.      Class Counsel's Application for Attorneys' Fees Is Granted.**

Class Counsel request a fee equal to thirty percent (30%) of the $62,000,000 Settlement Fund created through their efforts in litigating this case and reaching the Settlement. Tellingly, only a single objection to Class Counsel's fee request has been submitted. *See* Smith Objection at p. 6. The Court analyzes Class Counsel's fee request under *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). As set forth below, after considering the *Camden I* factors, the Court overrules the objection and concludes that Class Counsel's application for fees in the amount of $18,600,000, equal to thirty percent (30%) of the $62,000,000 Settlement Fund, is well justified and will be granted.

**a.      The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."

27

*Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

In the Eleventh Circuit, class counsel are awarded a percentage of the fund generated through a class action settlement. As the Eleventh Circuit held, "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). However, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule." *Id.* (quoting *Camden I,* 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case).

Based on the findings below, this Court finds that Class Counsel are entitled to an award of thirty percent (30%) of the $62,000,000 Settlement Fund secured through their efforts. Class Counsel achieved an excellent result and overcame numerous procedural and substantive hurdles to obtain this Settlement benefiting the Settlement Class. *See* Scott Decl. ¶ 25. Class Counsel

28

undertook a risky and undesirable case and, through diligence, perseverance and skill, obtained an outstanding result. They are to be commended and should be compensated in accord with their request, which is both warranted and reasonable given similar fee awards. The Court firmly believes this kind of initiative and skill must be adequately compensated to insure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future. *See Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

### b. As Applied Here, the *Camden I* Factors Demonstrate the Requested Fee Is Reasonable and Justified.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

29

These twelve factors are guidelines; they are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775.

### i. The Claims Against TD Bank Required Substantial Time and Labor.

Investigating, prosecuting and settling these claims demanded considerable time and labor. *See* Scott Decl. ¶ 13. Throughout the pendency of the Action, the internal organization of Class Counsel, including assignments of work, weekly conference calls, and oversight of task-oriented subcommittees, ensured that Class Counsel were engaged in coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. To the same ends, in-person meetings of Class Counsel were also held several times during the course of the litigation. Class Counsel devoted a substantial amount of time investigating the claims of many potential plaintiffs against TD Bank. Class Counsel interviewed numerous TD Bank customers and potential plaintiffs to gather information about TD Bank's conduct and its effect on consumers. This information was essential to Class Counsel's ability to understand the nature of TD Bank's conduct, the language of the account agreements at issue, and potential remedies. Class Counsel also expended significant resources researching, developing, pleading and prosecuting the legal claims at issue. For example, state-by-state legal surveys were necessary to determine which state common law doctrines and consumer protection statutes provided Plaintiffs with viable claims. *See* Joint Decl. ¶¶ 71-73.

30

Once TD Bank's motion to dismiss was denied and discovery opened, Class Counsel served written discovery requests on Citizens seeking relevant and probative documents and information. *See* Joint Decl. ¶ 74. The process of developing, refining and finalizing such discovery requests – with an eye toward class certification, summary judgment, and trial – required considerable effort. TD Bank ultimately produced approximately over 540,000 pages of internal bank documents in discovery in this Action. Class Counsel established a large document review team consisting of dozens of attorneys whose task was to review, sort, and code the produced documents. To make the review and subsequent litigation more efficient, Class Counsel instituted uniform coding procedures for electronic review of the documents produced, and team members remained in constant contact with each other to ensure that all counsel became aware of significant emerging evidence in real time. Such document review efforts and coordination were plainly necessary and accounted for a substantial amount of the attorney time expended in this Action. *Id.* at ¶¶ 28-29.

Furthermore, Class Counsel conducted depositions of eight (8) of TD Bank's current and former employees, officers, and representatives, including its expert witness. Preparing for and taking these depositions involved extensive time and effort. In addition, Class Counsel prepared and defended the eight (8) named Plaintiffs deposed by TD Bank. Class Counsel also expended significant time and effort to prepare responses to TD Bank's requests for production of documents directed to the Plaintiffs. Class Counsel also devoted extensive time and effort to significant motion practice before this Court, including the motion for class certification and analyzing TD Bank's lengthy opposition, as well as several motions involving discovery disputes. *See* Joint Decl. ¶¶ 74-78.

Settlement negotiations consumed additional time and resources. Preliminary settlement discussions began in early 2012 and mediation was held on May 7, 2012. The mediation

31

required substantial preparation and follow-up work. On May 11, 2012, the Parties filed a Joint

Notice of Settlement (DE # 2682). Several months of detailed discussions followed concerning

the specific terms of the Settlement. The drafting of the Agreement was completed and was

executed in late August/early September 2012. *See* Joint Decl. ¶¶ 79-80.

Class Counsel also engaged in subsequent settlement-related investigation, to determine,

among other things, the most appropriate method by which to implement the plan for direct

allocation of the Settlement Fund to Settlement Class Members. *See* Joint Decl. ¶¶ 79-80.

The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive

method for awarding fees in common fund class actions.[5] *Camden I*, 946 F.2d at 774. Even

before *Camden I*, courts in this Circuit recognized that "a percentage of the gross recovery is the

only sensible method of awarding fees in common fund cases." *Mashburn*, 684 F. Supp. at 690.

More importantly, the Court observed firsthand the effort exerted by Class Counsel in this case

and the other bank cases, and, given the outstanding results achieved here, does not find it

necessary or useful to review Class Counsel's lodestar records.

In view of the excellent results obtained here, the Court deems it unnecessary to

scrutinize Class Counsel's lodestar. Lodestar "creates an incentive to keep litigation going in

order to maximize the number of hours included in the court's lodestar calculation." *In re*

*Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). In *Camden I*, the

Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773-75. In

---

[5] Eleventh Circuit attorneys' fee law governs this request. *See Allapattah*, 454 F. Supp. 2d at 1200 ("The district court presiding over a diversity-based class action pursuant to Fed. R. Civ. P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law."); *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 522 n.5 (1st Cir. 1991) (recognizing that district court presiding over diversity-based class action has equitable power to apply federal common law in determining fee award, irrespective of state law); *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970) (*Erie* doctrine does not deprive federal court in diversity case of power to employ equitable remedies not available under state law).

so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh . . . Circuit[] repudiated the use of the lodestar method in common-fund cases"). Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all. *See, e.g., David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010).[6] "[A] common fund is itself the measure of success and represents the benchmark on which a reasonable fee will be awarded. . . . In this context, monetary results achieved predominate over all other criteria." *Camden I*, 946 F.2d at 774 (citations and alterations omitted). This Court will not deviate from that sound approach.

### ii. The Issues Involved Were Novel and Difficult and Required the Exceptional Skill of a Highly Talented Group of Attorneys.

The attorneys on both sides of this case displayed a very high level of skill. *See* Scott Decl. ¶ 15; Joint Decl. ¶¶ 82-85; *see Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by class counsel, Court also should consider the quality of their opposing counsel.); *Johnson*, 488 F.2d at 718; *Ressler*, 149 F.R.D. at 654. Class Counsel's work is emblematic of the effort and outcomes witnessed by this Court on a regular basis in this MDL. Nor can there be any legitimate dispute that, based on the novel and very complex issues confronted by Class Counsel in this case, detailed here and elsewhere, that

---

[6] *See also Stahl v. MasTec, Inc.*, 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*, 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co.*, 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

an extraordinary group of lawyers was required to prosecute this case. *See* Scott Decl. ¶ 15. The Court knows many of these lawyers from years of presiding over cases in this District, and has come to expect this level of performance from them. That is not to say, however, that such performance should be taken for granted. Instead, the fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested. As with most things, you get what you pay for, and the Settlement Class received a truly impressive amount and quality of legal services. In the private marketplace, counsel of exceptional skill commands a significant premium. So too should it here.

### iii. The Claims Against TD Bank Entailed Considerable Risk.

The risks facing the Plaintiffs in this case have been discussed above, in the Motion, and elsewhere. *See* Joint Decl. ¶¶ 87-91. There were myriad ways in which Plaintiffs could have lost this case – yet they managed to achieve a successful Settlement. A large amount of the credit for this must be given to Class Counsel's strategic choices, effort and legal acumen. "This was no ordinary class action. The novelty and difficulty of the issues involved created significant risks for Class Counsel." Scott Decl. ¶ 14; *see also* Miller Decl. ¶ 58-59.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam*, 176 F. Supp. 2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not

34

retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

The most undesirable aspect of this case was the long odds on success. Class Counsel had to contest class certification, federal preemption of Plaintiffs' state law claims as well as the language in TD Bank's deposit account agreement. *See* Scott Decl. ¶ 14; Miller Decl. ¶¶ 26-31. The Court expresses no opinion on the merits of these arguments by this or any other defendant. The critical point for present purposes is that, heading into this case, Class Counsel confronted these issues without any assurances as to how the Court would rule. Class Counsel nonetheless accepted the case and the risks that accompanied it. Given the positive societal benefits to be gained from attorneys' willingness to undertake this kind of difficult and risky, yet important, work, such decisions must be properly incentivized. The Court believes, and holds, that the proper incentive here is a thirty percent (30%) fee based on the $62,000,000 Settlement Fund.

### iv. Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.

Class Counsel prosecuted the Action entirely on a contingent fee basis. *See* Joint Decl. ¶ 92. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *See* Scott Decl. ¶¶ 16, 18.

Numerous cases recognize such a risk as an important factor in determining a fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656; *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York*

35

*v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee here. As this Court has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The risks taken by Class Counsel have already been discussed. It is uncontroverted that the attorney time spent on the Action was time that could not be spent on other matters. *See* Joint Decl. ¶ 95. Consequently, this factor supports the requested fee.

### v. Class Counsel Achieved an Excellent Result.

The Court finds that this Settlement is excellent. *See* Scott Decl. ¶ 20. The common fund created by this Settlement is $62,000,000. *Id.* at ¶ 20. Rather than facing more years of costly and uncertain litigation, over one million Settlement Class Members will receive an immediate cash benefit from the Settlement Fund representing a significant percentage of their most probable damages, *assuming* a Plaintiffs' verdict against TD Bank. The Settlement Fund will not be reduced by the costs of Notice or Settlement administration; such fees and expenses have been and will continue to be borne separately by TD Bank. Moreover, payments to the Settlement Class will be forthcoming *automatically*, through direct deposit (for Current Account Holders) or checks (for Past Account Holders). Class Counsel's efforts in pursuing and settling these consumer claims were, quite simply, outstanding. *Id.* at ¶ 25.

36

### vi. The Requested Fee Comports with Fees Awarded in Similar Cases.

In MDL 2036, this Court awarded thirty percent (30%) in attorneys' fees in the Bank of America case (*In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1359 (S.D. Fla. 2011)), in the Bank of Oklahoma case (DE # 2949), in the Union Bank case (DE # 2986), in the Bank of the West case (DE # 3128), and in the JPMorgan Chase case (DE # 3134). Similarly, numerous recent decisions within this Circuit have awarded attorneys' fees up to and in excess of thirty percent. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million).

The Court finds that a fee of thirty percent (30%) of the $62,000,000 Settlement Fund, plus expenses, is appropriate here and comports with customary fee awards in similar cases. Professor Miller distilled several major empirical studies of attorneys' fees awarded in connection with class action settlements. *See* Miller Decl. ¶¶ 47-57. He found that the empirical data from other Eleventh Circuit fee awards is consistent with the award requested here. *Id.* at ¶ 46. Moreover, when compared to fee awards outside the Eleventh Circuit, the fee requested in this case is within the range of other awards. *Id.* at ¶ 49. The Court agrees, and finds that the risks of this litigation, considered against the favorable result, easily justify a thirty percent fee. *See* Scott Decl. ¶¶ 23-25.

37

### vii. The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.

The Court finds that the remaining *Camden I* factors further support Class Counsel's fee request, and so holds. *See* Joint Decl. ¶ 97. The burdens of this litigation and the relatively small size of most of the firms representing Plaintiffs lend support to the fee awarded. This fee is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F. Supp. 2d at 1333. The Court is convinced by its many years of presiding over significant cases like this one that proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one. As Judge Scott (Ret.) correctly observed, "[u]ndoubtedly, Class Counsel had the skill required to perform the services required in this litigation." Scott Decl. ¶ 15. The factual record in this case, and the Court's own observations, all of which are incorporated herein, compel the result required by this Order.

### 6. Class Counsel's Application for Reimbursement of Litigation Costs and Expenses Is Approved.

Finally, the Court finds that Class Counsel's request for reimbursement of $171,234.72, representing certain out-of-pocket costs and expenses that Class Counsel incurred during the prosecution and settlement of the Action against TD Bank is reasonable and justified. These costs and expenses consist of: (1) $143,030.61 in fees and expenses for experts; (2) $21,490.50 in court reporter fees and transcripts; and (3) $6,713.61 in mediator's fees. *See* Joint Decl. ¶ 98. The Court hereby approves Class Counsel's request for reimbursement of these costs and expenses. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970). These costs and expenses, advanced by Class Counsel for the benefit of the Settlement Class, were necessarily incurred in furtherance of the litigation of the Action and the Settlement. *See* Joint Decl. ¶ 98.

38

Accordingly, reimbursement of costs and expenses in the amount of $171,234.72 shall be made from the Settlement Fund following disbursement of attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants Final Approval to the Settlement; (2) appoints Plaintiffs Gregory D. Caraci, James E. Daniels, Kelli Herd, Suzanne M. Hubbard, Ian McNulty, Todd M. Mosser, Lucy Nico and Paige Schartzman, as class representatives for this Settlement; (3) appoints as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 34 and 62 of the Agreement, respectively; (4) overrules the two (2) remaining objections (Smith Objection, Barnes Objection); (5) awards Service Awards to each of the eight (8) named Plaintiffs in the amount of $10,000 each, or $5,000 per Plaintiff for married couples in which both spouses are named Plaintiffs; (6) awards Class Counsel attorneys' fees in the amount of $18,600,000, equal to thirty percent (30%) of the $62,000,000 Settlement Fund, plus reimbursement of litigation costs and expenses in the amount of $171,234.72; (7) directs Settlement Class Counsel, Plaintiffs, and TD Bank to implement and consummate the Settlement pursuant to its terms and conditions; (8) retains continuing jurisdiction over Plaintiffs, the Settlement Class, and TD Bank to implement, administer, consummate and enforce the Settlement and this Final Approval Order; and (9) will separately enter Final Judgment dismissing the Action with prejudice.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 18th day of March, 2013.

**JAMES LAWRENCE KING**
**UNITED STATES DISTRICT JUDGE**
**SOUTHERN DISTRICT OF FLORIDA**

cc: All Counsel of Record

39