# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: WELLBUTRIN SR | : | CIVIL ACTION NO. 04-5525 |
| ANTITRUST LITIGATION | : | |

**ORDER AND FINAL JUDGMENT APPROVING**
**DIRECT PURCHASER CLASS SETTLEMENT AND**
**AWARDING ATTORNEYS' FEES, REIMBURSEMENT**
<u>**OF COSTS, AND CLASS REPRESENTATIVE AWARDS**</u>

**STENGEL, J.**

Plaintiffs SAJ Distributors, Inc. and Stephen L. LaFrance Holdings, Inc. (together, "SAJ") and Meijer, Inc. and Meijer Distribution, Inc. (together, "Meijer") (collectively, "Plaintiffs") executed a Settlement Agreement, dated August 3, 2011, with Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline, including GlaxoSmithKline plc, ("GSK") to fully resolve this direct purchaser class action antitrust case.

On August 31, 2011, this Court granted preliminary approval of the parties' proposed settlement ("Preliminary Approval Order") (Doc. 407). The Preliminary Approval Order authorized Plaintiffs to disseminate to members of the direct purchaser class notice of the settlement, the fairness hearing, and related matters. Notice was provided to the class in accordance with the Preliminary Approval Order, and the Court held a final fairness hearing on November 21, 2011 to further consider the proposed settlement, as well as Class Counsel's requests for an award of attorneys' fees, reimbursement of expenses advanced on behalf of the class, and awards to the two named Plaintiffs for their efforts in representing the class.

**AND NOW,** this 21st day of November, 2011, having considered Plaintiffs' Motion for Final Approval of Direct Purchaser Class Settlement; Class Counsel's Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Awards; oral argument presented at

the fairness hearing; and the complete record in this matter, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

The Class

1.     This case was previously certified as a class action, by Memorandum and Order of May 2, 2008 (Doc. 258), on behalf of the following class:  "all persons or entities in the United States, excluding governmental entities, that purchased the 100mg or 150mg dosage of Wellbutrin SR directly from GSK during the period from January 24, 2002 to June 30, 2006." As set forth in the Preliminary Approval Order (at ¶ 2), notice of class certification was provided to class members in 2008, in full compliance with the requirements of Fed. R. Civ. P. 23 and due process.  No class member requested exclusion from the class by the September 12, 2008 deadline.

Jurisdiction

2.     This Court has jurisdiction over the claims of Plaintiffs, the class, and GSK.

3.     The Preliminary Approval Order directed the substance, form, and manner by which the Plaintiffs would provide the class with notice of the proposed settlement with GSK; the date, time, and location of the fairness hearing; and related matters, such as how class members could object to the settlement or otherwise be heard.  The notice program included individual notice to class members, as well as publication (twice) of a summary notice in *The Pink Sheet* and the establishment of a website (WellbutrinDirectPurchserSettlement.com), through which notice and other information could be obtained.  Proof that the mailing, publication, and website conformed with the Preliminary Approval Order has been filed with the Court.  The notice constituted the most effective and best notice practicable under the circumstances and was due and sufficient notice for all other purposes to all potential class

2

members entitled to receive notice.

Approval of the Settlement and Plan of Allocation

4.      The parties' settlement resulted from an extensive investigation of the facts, complete discovery, expert analysis and reports, motion practice, and development of the case for trial.  It was reached only after arm's-length negotiations, which were undertaken in good faith by counsel for the parties.

5.      The settlement provides a recovery from GSK of $49 million dollars in cash and up to $500,000 in costs of notice to the class and administration of the settlement.

6.      The Court has evaluated the proposed settlement under Rule 23 of the Federal Rules of Civil Procedure, as well as relevant Third Circuit jurisprudence, including the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) and the additional factors, where relevant, identified in *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998), finding as follows:

a.      *The complexity, expense, and likely duration of the litigation.*  This case was no exception to the oft-recognized conclusion that antitrust cases are among the most complex to litigate.  *See Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining & Mfg. Co.)*, 513 F. Supp. 2d 322, 338-39 (E.D. Pa. 2007); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, Civ. A. 03-4578, 2005 WL 1213926, at *11 (E.D. Pa. May 19, 2005); *In re Linerboard Antitrust Litig.,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003). Although the case was nearing trial at the time of settlement, after roughly six-and-a-half years of litigation (preceded by pre-suit investigation), the settlement nonetheless saved substantial resources.  These savings included the time and expense of further oral argument on the several pretrial motions that were still pending, but had not yet been

3

argued, at the time of settlement; the Court's consideration and resolution of those motions, as well as others that had been argued, but not yet decided; final preparations for trial; a trial that could have lasted several weeks; post-trial motions; and, potentially, appeals. Collectively, these matters would have required substantial additional time and expense for the Court, the parties, and counsel, the savings of which supports final approval of this settlement. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004); *Meijer, Inc. v. 3M*, Civ. A. 04-5871, 2006 WL 2382718, at *13 (E.D. Pa. Aug. 14, 2006).

b. *The reaction of the class to the settlement.* There were no objections to the settlement filed by any class member. The absence of any objections despite ample notice to class members providing the opportunity to object is "particularly telling," *Warfarin*, 391 F.3d at 536, and supports approval of the settlement. *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). This is particularly true here, where the class members are sophisticated businesses. *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004). Moreover, the three class members whose claims represent roughly 78% of the recovery obtained for the class have, after being apprised of the facts, circumstances, legal hurdles, and other risks involved in the case, advised the Court that they support the settlement as fair and adequate.

c. *The stage of the proceedings and the amount of discovery completed.* Settlements reached after discovery "are more likely to reflect the true value of the claim and be fair." *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1314 (3d Cir.1993). *See also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000); *Linerboard,* 321 F. Supp. 2d at 630. This case was well past discovery and virtually ready for trial at the

time of settlement.  The settlement here was the process of informed, arm's-length negotiations, *see Prudential,* 148 F.3d at 319, and settled much later in the litigation process than the stages at which some settlements have been approved.  *See, e.g., Cendant*, 264 F.3d at 236 (settlement approved even though the case was only in the early stages of discovery).  This factor also supports final approval.

d.  *The risks of establishing liability*.  Plaintiffs in this case faced real risks in establishing, by clear and convincing evidence, that GSK's patent infringement lawsuits against its competitors in the market for Wellbutrin SR constituted sham litigation under the standard of *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49 (1993) ("*PRE*").  This was Plaintiffs' only remaining liability theory after this Court granted summary judgment to GSK on Plaintiffs' allegation that GSK had defrauded the U.S. Patent and Trademark Office within the meaning of *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp*., 382 U.S. 172 (1965).  The *PRE* standard would have required Plaintiffs to establish that GSK's lawsuits were both objectively baseless in that no reasonable litigant in GSK's position could have expected to succeed on the merits, as well as that GSK filed its lawsuits with the intent to interfere with its competition.  *See PRE*, 508 U.S. at 60-61.  Compounding this was the fact that assessing GSK's patent infringement lawsuits involved consideration of difficult patent law theories, aspects of which were being parsed and refined by the United States Supreme Court and United States Court of Appeals for the Federal Circuit while GSK was pursuing those lawsuits.  Plaintiffs also faced significant evidentiary challenges related to GSK's withholding in discovery many documents under claims of attorney-client privilege and/or work product protection.  Beyond establishing liability for purposes of

5

*PRE*, Plaintiffs would also have needed to establish each of the standard elements of antitrust liability, such as monopoly power, causation, and antitrust injury. Given the many liability issues at stake, there was also the risk that, even if Plaintiffs had prevailed in establishing liability, GSK might ultimately have succeeded on appeal. These substantial liability risks weigh in favor of approving this settlement. *Warfarin*, 391 F.3d at 537; *Prudential,* 148 F.3d at 319; *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 490 (E.D. Pa. 2003).

e. *The risks of establishing damages*. At the time of settlement, GSK's *Daubert* motion seeking to exclude the testimony of Plaintiffs' expert economist remained to be decided and, to the extent it would not have been granted, GSK had its own expert economist prepared to oppose Plaintiffs' economic theories at trial. The existence of competing expert opinions on complex damages issues weighs in favor of settlement. *Cendant*, 264 F.3d at 239; *Corel Corp.,* 293 F. Supp. 2d at 492.

f. *The risks of maintaining the class action through the trial.* At the time of settlement, GSK had not moved to decertify the class and the Court is not aware of any manageability problems faced by the class. This factor is thus neutral in this case. *See Cendant,* 264 F.3d at 239; *Linerboard*, 321 F. Supp. 2d at 631.

g. *The ability of the defendants to withstand a greater judgment.* This is not a case in which a lower settlement was reached due to the inability of the defendant to pay more. *See Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011); *Chakejian v. Equifax Info. Services, LLC*, 275 F.R.D. 201, 214 (E.D. Pa. 2011). The theoretical ability of a defendant to pay more is not relevant when divorced from context and considerations of whether a settlement is fair in light of the legal issues and

6

circumstances involved.  *See Warfarin*, 391 F.3d at 538.  This case involved many difficult legal issues, presented substantial risks that Plaintiffs would either not prevail or would be required to spend substantial additional time and expenses pursuing the case to its ultimate end, and the settlement negotiations, as with the case generally, were hard-fought by GSK.  The amount that Plaintiffs obtained in settlement is an excellent benefit on its face, and an even better result when these considerations are taken into account. The theoretical ability of GSK to pay more, considered absent this context, is not relevant to determining the reasonableness of this settlement.  *See id.*

h. *The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation*.  These two factors assess "whether the settlement represents a good value for a weak case or a poor value for a strong case."  *Warfarin*, 391 F.3d at 538.  Since it is a compromise, a settlement need not approach the maximum possible recovery to be found reasonable.  *Prudential,* 148 F.3d at 316-17.  A settlement may be reasonable even though it represents only a fraction of the potential recovery.  *Cullen*, 197 F.R.D. at 144; *Linerboard*, 321 F. Supp. 2d at 632; *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985).  Based on the damages estimated by Plaintiffs' expert economist, the settlement in this case represents a recovery of between 5.8% and 10.7% of Plaintiffs' estimated, non-trebled damages, which is the measure courts use in assessing antitrust settlements.  *See Fisher Bros.*, 604 F. Supp. at 451.  This amount is well within the range of recovery demonstrated by court-approved settlements in other antitrust litigation.  *See, e.g., Linerboard,* 296 F. Supp. 2d at 581 (identifying antitrust settlements ranging from 5.35% to 28% of estimated damages); *Stop & Shop*, 2005 WL 1213926, at *9 (approving direct

purchaser antitrust settlement representing approximately 11.4% of estimated damages). This factor thus also supports final approval.

i. *Factors that bear on the maturity of the underlying substantive issues.* This case was settled after roughly six-and-a-half years of litigation (which followed an extensive pre-suit investigation), well after the completion of extensive discovery, just before trial, and only after hard-fought settlement negotiations. That the underlying substantive issues were so well-developed further supports approval of this settlement. *See Chakejian,* 2011 WL 2411109, at *12.

j. *The existence and probable outcome of claims by other classes and subclasses.* Because there were no other direct purchaser actions outside this case and no direct purchaser plaintiffs elected to opt out of the class, there are no comparable claims being pursued by other direct purchaser classes or subclasses. This factor is thus not pertinent.

k. *Results achieved by settlement for individual class members versus the results achieved—or likely to be achieved—for other claimants.* For the reasons above, there are no other results to be compared against those of the class members. (As noted below, however, the plan of allocation ensures class members equitable claims payments vis-à-vis one another.)

l. *Whether class or subclass members are accorded the right to opt out of the settlement.* As noted above, class members were given the opportunity to opt out of the class in 2008, when they were notified that the class had been certified. After ample opportunity, no class member requested exclusion from the class by the September 12, 2008 opt-out deadline. *See id.*

m.    *Whether any provisions for attorneys' fees are reasonable.*   The provisions for attorneys' fees are reasonable, as described in greater detail below.

n.    *Whether the procedure for processing individual claims under the settlement is fair and reasonable.*  Reasonable notice of the settlement has been provided, and class members have until the postmark deadline of December 31, 2011 to submit claims.  The Court previously authorized Class Action Administration, Inc. ("CAA"), which is experienced in administering class action settlements, to receive and process class members' claims, with the supervision of Class Counsel.  After all timely claims have been processed, claims payments will be distributed to class members from the net settlement fund (i.e., the amount remaining after reduction for payment of taxes, attorneys' fees, reimbursement of expenses, and awards to the named Plaintiffs for their efforts in representing the class) on a *pro rata* basis, according to class members' purchases of Wellbutrin SR during the class period.  This plan of allocation does not grant preferential treatment to any class member and is both fair and reasonable.  This factor thus also supports approval of this settlement.

7.    Upon consideration of the above factors and the record in this case, the Settlement Agreement and each of its terms, as well as the plan of allocation, are finally approved as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and the parties are directed to consummate the settlement according to its terms.

Attorneys' Fees

8.    Class Counsel seek attorneys' fees of one-third of the gross settlement fund (or 33⅓% of the $49 million settlement fund).

9.    The percentage-of-the-fund method of awarding attorneys' fees is the appropriate

method to be used in this common fund case. *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).

10. The Court has considered Class Counsel's request for attorneys' fees under the factors identified in *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *Prudential*, 148 F.3d at 338-40, each of which supports the reasonableness of Class Counsel's request:

a. *Complexity and duration of the litigation.* As noted above, this class action—like most antitrust cases, *see Bradburn Parent Teacher Store, Inc.*, 513 F. Supp. 2d at 338-39—was especially complex, involving challenging issues of patent and antitrust law, difficult liability theories, and demanding evidentiary issues. This case was also hard-fought, lasting nearly seven years from the time the complaint was filed until the final approval hearing (in addition to an extensive pre-suit investigation). This factor weighs in favor of approving Class Counsel's attorneys' fees request. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226, 243 (E.D. Pa. 2009); *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009); *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 339; *Corel Corp.*, 293 F. Supp. 2d at 496.

b. *The size of the fund and the number of people benefited.* This $49 million cash settlement (plus accrued interest, and less attorneys' fees, expenses to the extent not covered by the $500,000 that GSK has agreed to pay towards the costs of administering the settlement, and awards to the named Plaintiffs) is an excellent benefit to the class. Class members are assured recovery without the expense and burden involved in duplicative and expensive individual trials, and, as discussed above, the recovery falls

within a reasonable range in comparison to the potential damages.

c.     *The presence or absence of objections to terms or fees.*  The absence of any objections despite ample notice to class members describing the opportunity to object weighs in favor of granting the fee request, *see In re Sterling Fin. Corp. Sec. Class Action*, MDL 1879, 2009 WL 2914363, at \*2 (E.D. Pa. Sept. 10, 2009), particularly given the sophisticated nature of the absent class members.  *See Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 338.  Indeed, the three class members whose claims represent roughly 78% of the recovery obtained for the class have advised the Court that they support not only the settlement (as noted above), but also Class Counsel's request for attorneys' fees, reimbursement of litigation expenses, and awards to the named Plaintiffs for their work on behalf of the class.

d.     *The skill and efficiency of counsel.*  Class Counsel are experienced practitioners in the highly specialized area of pharmaceutical antitrust class action cases. This experience and the results obtained for the class reflect Class Counsel's skill and efficiency.  *In re Linerboard Antitrust Litig.*, MDL 1261, 2004 WL 1221350, at \*5 (E.D. Pa. June 2, 2004).  Class Counsel also faced formidable opposition from the skilled counsel opposing this litigation.  All of these facts weigh in favor of granting Class Counsel's request for attorneys' fees.  *See Am. Investors*, 263 F.R.D. at 244; *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 338; *Corel Corp.*, 293 F. Supp. 2d at 496.

e.     *The risk of nonpayment.*  Class Counsel faced numerous risks in preparing and litigating this case, including the risks associated with the motion to dismiss, class certification, summary judgment, and—had the case continued—ultimately proving liability and damages at trial and potentially surviving any appeals.  Underlying all of

11

these risks was the enormous one of handling this case for its entire duration on a contingent basis, doing everything necessary to honor Class Counsel's commitment and obligations to the class. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 423 (E.D. Pa. 2010). The substantial risk of nonpayment that Class Counsel faced throughout this litigation strongly supports their fee request. *See Am. Investors*, 263 F.R.D. at 244; *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 339; *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008).

       f.    *The amount of time devoted to the litigation.* Class Counsel invested more than 41,000 hours, during the course of nearly seven years, preparing, litigating, and negotiating the settlement of this case, and will continue to commit time to this litigation in connection with claims administration and, potentially, handling any appeals. This substantial time commitment, made with no guarantee of recovery, likewise supports approval of Class Counsel's fee request. *See Boone*, 668 F. Supp. 2d at 714; *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 339; *Nichols v. SmithKline Beecham Corp.*, Civ. A. 00-6222, 2005 WL 950616, at *22 (E.D. Pa. Apr. 22, 2005).

       g.    *The consistency with fee awards in comparable cases.* Class Counsel's requested fee of one-third of the gross settlement fund falls just slightly above the average attorneys' fees percentage identified in one study of settlements ranging from $1 to $50 million, and directly on the median percentage identified in that same study. *See Boone*, 668 F. Supp. 2d at 714 (citing *In re Rite Aid Corp. Secs. Litig.,* 146 F.Supp.2d 706, 735 (E.D. Pa. 2001)). It is within the range of awards that the Third Circuit has recognized as typical, *see In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir.

2005), as well as the normal range of common fund recoveries identified by a leading treatise. *See* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 14:6 (4th ed. 2006). It is also well within the range of percentage awards approved in recent antitrust actions within the Third Circuit. *See, e.g., In re Methyl Methacrylate (MMA) Antitrust Litig.*, 06-MD-1768, 2009 WL 3150399, at *2 (E.D. Pa. Sept. 23, 2009); *Auto. Refinishing Paint*, 2008 WL 63269, at *3, 6; *Bradburn Parent Teacher Store,* 513 F. Supp. 2d at 337-38, 341-42; *Nichols*, 2005 WL 950616, at *20, 24; *In re Remeron Direct Purchaser Antitrust Litig.*, Civ. 03-0085 FSH, 2005 WL 3008808, at *12, 17 (D.N.J. Nov. 9, 2005). In addition, as demonstrated by several unreported decisions appended to Class Counsel's motion, numerous other courts have awarded fees of one-third of the gross settlement fund in similar pharmaceutical antitrust class actions. *See Meijer, Inc. v. Abbott Labs.,* No C. 07-5985 CW (N.D. Cal. Aug. 11, 2011); *In re Nifedipine Antitrust Litig.*, No. 03-mc-223-RJL (D.D.C. Jan. 31, 2011); *In re Oxycontin Antitrust Litig.*, 04-md-1603-SHS (S.D.N.Y. Jan. 25, 2011); *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05-340-SLR (D. Del. Apr. 23, 2009); *Meijer, Inc. v. Barr Pharm., Inc.*, C.A. No. 05-2195 (D.D.C. Apr. 20, 2009); *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, No. 04-248-EGS (D.D.C. Nov. 30, 2004); *In re Relafen Antitrust Litig.*, No. 01-12239-WHY at 7-8 (D. Mass. Apr. 9, 2004).

h.      *The value of benefits accruing to class members attributable to the efforts of class counsel, as opposed to the efforts of others.* Class Counsel developed this case through their own investigative efforts, without the advantages of following a prior government investigation or lawsuit. This factor thus also supports Class Counsel's fee request. *See AT & T Corp.*, 455 F.3d at 173.

i.    *The percentage fee that would have been privately negotiated.*  A one-third contingency fee is comparable, or perhaps even less than, the fee that Class Counsel could have been expected to negotiate on a private basis.  *See Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 340; *Remeron Direct Purchaser Antitrust Litig.,* 2005 WL 3008808, at *16.  Testimony to that is the largest three class members' support of Class Counsel's fee request.  This factor therefore supports the reasonableness of Class Counsel's fee request.

j.    *Innovative settlement terms.*  Class Counsel have acknowledged that this settlement, while providing an excellent benefit to the class, does not contain any especially innovative settlement terms, and this factor thus neither supports nor detracts from Class Counsel's fee request.  *See Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 340.

11.    Class Counsel's request for attorneys' fees of one-third of the gross settlement fund (33⅓% of the $49 million settlement fund, or $16,333,333) is hereby approved as reasonable under the factors set forth in *Gunter* and *Prudential*, as confirmed by a lodestar cross-check, *see Rite Aid*, 396 F.3d at 305-06, which demonstrates a lodestar (using Class Counsel's actual, current, reasonable hourly rates) that exceeds the requested fee.  In general, the Third Circuit has observed that multipliers ranging from one to four are frequently awarded in common fund cases, *Prudential*, 148 F.3d at 34, and substantial multipliers have frequently been awarded in other cases.  *See, e.g., In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 741-42 (3d Cir. 2001) (remanding the case and suggesting that a lodestar multiplier of 3 would be appropriate, even though the Third Circuit found the case was lacking in legal and factual complexity, and—in this pre-*Rite Aid* case—the lodestar was calculated using the senior partner rate as the rate for

14

all hours); *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 341 (approving a fee award resulting in a lodestar multiplier of 2.5 at counsel's then-current rates); *Nichols*, 2005 WL 950616, at *24 (awarding fees as a percentage of the fund that translated to a 3.15 multiplier); *Ikon Office Solutions*, 194 F.R.D. at 195 (conducting a lodestar cross-check of the percentage fee award and finding a 2.7 multiplier, calculated at counsel's then-current rates, to be well within an appropriate range); *Meijer*, 2006 WL 2382718, at *19, 24 (approving a percentage fee award that translated to a 4.77 multiplier). A comparison with these other cases further demonstrates the requested fee award to be quite reasonable.

Reimbursement of Litigation Expenses

12. Class Counsel's request for reimbursement of $1.3 million in out-of-pocket expenses advanced on behalf of the class is approved. Attorneys who create a common fund for the benefit of a class are entitled to reimbursement from that fund of the reasonable litigation expenses that they advanced on behalf of the class. *See Cendant Corp. PRIDES Litig.*, 243 F.3d at 732 n.12; *Ikon Office Solutions,* 194 F.R.D. at 192. The costs incurred (such as for experts, depositions, photocopying, computerized legal research, and travel) are reasonable, appropriate, and comparable to, or lower than, those awarded in other antitrust litigation that did not last nearly as long as this case did. *See, e.g., MMA*, 2009 WL 3150399, at *2 (awarding reimbursement of roughly $1.3 million in expenses incurred over roughly three years); *Auto. Refinishing Paint*, 2008 WL 63269, at *6 (expenses of roughly $1.2 million incurred over approximately three-and-a-half years); *Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *17 ($1.925 million in expenses incurred during roughly three years).

15

<u>Awards to the Class Representative Plaintiffs</u>

13. The requested awards of $25,000 each to the two named Plaintiffs, SAJ and Meijer, are approved in recognition of their efforts on behalf of the class, without which this settlement would not have occurred. Those efforts included assisting in the pre-filing investigation, reviewing draft complaints, collecting and producing documents, preparing for and giving depositions, and preparing to participate in what could have been a several-week trial. (These awards are separate from, and in addition to, any monies that SAJ and Meijer may receive from claims made against the settlement fund, according to the court-approved plan of allocation discussed above.) These types of awards are common in class action litigation, and particularly in cases in which a common fund has been created for the benefit of an entire class. *Cullen*, 197 F.R.D. at 145. Courts routinely grant awards to compensate class representatives for the services they provided and the risks they undertook in pursuing a case, placing the interests of the class above their own. *Id. See also Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 342 ("It is particularly appropriate to compensate named representative plaintiffs with incentive awards when they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of the class."); *Auto. Refinishing Paint*, 2008 WL 63269, at *7 ("Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit and courts in this Circuit have traditionally granted requests for these awards."). The requested awards are well within the acceptable range awarded by courts within the Third Circuit in other recent direct purchaser antitrust litigation. *See, e.g., Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 342 (approving award of $75,000 to the named plaintiff); *Auto. Refinishing Paint,* 2008 WL 63269, at *7 (approving awards to four class representatives resulting in aggregate awards of $30,000 each); *Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *18

($60,000 to be divided between two named plaintiffs); *Linerboard*, 2004 WL 1221350, at *18-19 ($25,000 each to five class representative plaintiffs). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich. 2003) (awarding $75,000 each to the corporate class representatives); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 479-80 (D.N.J. 2008) (ERISA action approving awards of $60,000 each to the named plaintiffs and citing cases approving named plaintiff awards ranging from $35,000 to $200,000 each).

Entry of Final Judgment Binding on the Class and Dismissal of the Case With Prejudice

14.     As noted above, no class member timely and validly requested exclusion from the class. Each class member therefore is, and will forever remain, bound by this Order and Final Judgment.

15.     This class action is dismissed with prejudice and in its entirety, on the merits, as to GSK. This dismissal shall not affect, in any way, Plaintiffs' or class members' rights to pursue any claims other than those released, as set forth in the Settlement Agreement.

16.     Plaintiffs and all members of the class are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any released claims, as set forth in the Settlement Agreement, against any released party, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other authority or arbitral or other forum wherever located.

17.     Plaintiffs and all members of the class hereby remise, release, forever discharge, and covenant not to sue the released parties from and for the released claims, as set forth in the Settlement Agreement.

18.     In no event shall GSK be obligated to pay anything in addition to (a) the $49

17

million settlement fund created pursuant to the Settlement Agreement, and (b) up to $500,000 towards the costs of notice and settlement administration, including without limitation, attorneys' fees, awards to the named Plaintiffs for their efforts on behalf of the class, notice or settlement administration costs exceeding $500,000, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of the settlement.

19.   This Order and Final Judgment does not settle or compromise any claims by Plaintiffs or the class against persons or entities other than the released parties, as set forth in the Settlement Agreement.  All rights against any other person or entity are specifically reserved.

20.   The settlement, this Order and Final Judgment, and/or any and all negotiations, documents, and discussions associated with it shall be without prejudice to the rights of any party, shall not be deemed or construed to be an admission or evidence of any kind, including without limitation of any violation of any statute or law or any liability or wrongdoing by GSK or an acknowledgement of defenses by Plaintiffs, or the truth of any of the claims or allegations contained in any pleading in this case or the standing of any party to assert claims against GSK or defenses against Plaintiffs, and evidence thereof shall not be discoverable or used directly or indirectly, by any party or any third party, in any way, whether in this class action or in any other action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, tribunal, administrative agency, regulatory body or other similar entity, provided, however, that nothing contained herein shall preclude use of the Settlement Agreement or this Order and Final Judgment in any proceeding to enforce the Settlement Agreement.

21.   Without affecting the finality of this Order and Final Judgment, this Court retains exclusive and continuing jurisdiction over the Settlement and the Settlement Agreement, including the Settlement Fund and the administration, consummation, and interpretation of the

18

Settlement and Settlement Agreement.

22. The escrow account established by the parties is hereby approved by the Court. GSK has deposited or will deposit $49 million as the settlement fund into that escrow account pursuant to the Settlement Agreement, and that escrow fund, including any accrued interest, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

23. Pursuant to Federal Rule of Civil Procedure 54, the Court finds that there is no just reason for delay and hereby directs the entry of final judgment of dismissal forthwith as to GSK.

BY THE COURT:


/s/ *Lawrence F. Stengel*
LAWRENCE F. STENGEL, J.

19