## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

|  |  |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER,<br><br>     Defendants. | CASE NO. 8:19-CV-00421-WFJ-CPT<br><br>CLASS ACTION |

# LEAD PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION OF NET SETTLEMENT FUND

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................1

II.  BACKGROUND...................................................................................2

III. CLAIMS ADMINISTRATION ............................................................4

IV.  CLAIMS ADMINISTRATOR'S FEES AND EXPENSES ......................7

V.   DISTRIBUTION OF NET SETTLEMENT FUND...............................8

VI.  RELEASE OF CLAIMS ......................................................................11

VII. RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS......13

VIII. CONCLUSION ..................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bowman v. UBS Fin. Servs., Inc.*,
  2007 WL 1456037 (N.D. Cal. May 17, 2007)...................................................7

*In re Gypsum Antitrust Cases*,
  565 F.2d 1123 (9th Cir.1977) ......................................................................6, 7

*In re Miva, Inc.*,
  2015 WL 12834962 (M.D. Fla. Sept. 23, 2015) .............................................12

*McPhail v. First Command Fin. Planning, Inc.*,
  2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ....................................................6

*Thorpe v. Walter Inv. Mgmt., Corp.*,
  2018 WL 3672266 (S.D. Fla. May 24, 2018) ..................................................12

*Zients v. LaMorte*,
  459 F.2d 628 (2d Cir.1972) ..............................................................................6

**RULES**

Fed. R. Civ. P. 23 ...................................................................................................6

## I.    INTRODUCTION

Court-appointed Lead Plaintiffs Oklahoma Municipal Retirement Fund ("OKMRF") and City of Birmingham Retirement and Relief System ("City of Birmingham") (together, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this Unopposed Motion for Approval of Distribution of Net Settlement Fund.

If entered by the Court, the proposed distribution order (the "Distribution Order") will, among other things: (i) approve Claims Administrator Epiq Class Action & Claims Solutions, Inc.'s ("Epiq") administrative determinations regarding the acceptance and rejection of claims submitted in connection with the Settlement[1] of the above-captioned action ("Action"); (ii) direct distribution of the Net Settlement Fund, after deduction of the payments requested herein, to Settlement Class Members whose Proof of Claim Forms have been accepted; (iii) approve the plan for re-distribution and/or donation of any funds remaining in the Net Settlement Fund following the distribution to Settlement Class Members; (iv) direct payment out of the Settlement Fund to Epiq in the amount of $235,790.38 for the balance of its fees and expenses incurred and to be incurred in connection with the administration and distribution of the Settlement Fund; (v) authorize the destruction of paper copies of Claim Forms, and all related paper documents, one year after distribution of the Net Settlement Fund, and authorize the destruction of electronic files containing claim records three

---

[1] Capitalized terms not defined herein shall have the same meanings as given in the Stipulation and Agreement of Settlement, dated December 2, 2020 (ECF No. 100-2), or the Declaration of Jordan Broker in Support of Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund ("Broker Dec." or "Broker Declaration").

years after distribution of the Net Settlement Fund; and (vi) for such other and further relief as this Court deems appropriate.  If the Court enters the Distribution Order, Authorized Claimants will receive their *pro rata* share of the Settlement Fund in accordance with the Plan of Allocation.  The proposed plan for distributing the Net Settlement Fund is set forth in the accompanying Proposed Order and the Declaration of Jordan Broker in Support of Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund (the "Broker Declaration" or "Broker Dec.") on behalf of Epiq.

## II.    BACKGROUND

On December 2, 2020, a settlement was reached, and Defendants entered into the Stipulation with Lead Plaintiffs.  A Notice of Proposed Settlement of Class Action ("Notice") was mailed to all Settlement Class Members beginning on January 11, 2021, pursuant to the Order Preliminarily Approving Settlement and Providing for Notice entered on December 3, 2020 ("Preliminary Approval Order").  ECF No. 101, ¶5; Declaration of Jordan Broker dated February 15, 2021 ("February 15, 2021 Broker Dec."), ECF No. 107-2, ¶5.  A Summary Notice of the Settlement was also published in *Investor's Business Daily* and released via *PR Newswire* on January 18, 2021.  February 15, 2021 Broker Dec., ECF No. 107-2, ¶12 and Exhibit B thereto.  On March 23, 2021, the Court granted Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and entered a Final Judgment, an Order Awarding Attorneys' Fees and Litigation Expenses to Lead Plaintiffs, and an Order Approving Plan of Allocation of Net Settlement Fund.  ECF Nos. 110-113.

The Stipulation provides for the Settlement of this Action on behalf of a Settlement Class consisting of those persons or entities who purchased or otherwise acquired Health Insurance Innovations, Inc. ("HIIQ") common stock between September 25, 2017 through April 11, 2019 and were damaged thereby. ECF No. 100-2, ¶1. On behalf of Lead Plaintiffs, Lead Counsel retained Epiq, a firm specializing in the administration of class action settlements, to print and mail copies of the Notice and the Claim Form to members of the Class, process the Claim Forms submitted by Settlement Class Members, and to effectuate the distribution of the Net Settlement Fund to the Settlement Class Members who submitted acceptable Claim Forms. Epiq has extensive experience handling the administration of complex settlements of securities class actions. The Court approved the selection of Epiq in the Preliminary Approval Order dated December 3, 2020. ECF No. 101, ¶5.

As set forth in the Broker Declaration filed concurrently herewith, Epiq, under the direction of Lead Counsel, provided notice of the pendency and settlement of the Action to potential Settlement Class Members, processed the Claim Forms, and calculated Recognized Loss amounts consistent with the Court-approved Plan of Allocation. *See generally*, Broker Dec. Epiq has completed the processing of 9,942 Claim Forms that were received through February 22, 2022. Broker Dec. ¶32. Of those 9,942 Claim Forms, Epiq has determined that 6,389 Claims were timely filed and valid, 68 claims were untimely filed but otherwise valid, and 3,485 claims were ineligible and should be rejected. *Id.,* ¶¶26, 32-33; Broker Dec. Exhibits B-1 through B-3.

Epiq has completed the processing of Claim Forms, including Claims submitted after the May 11, 2021 submission deadline, and related work.  Accordingly, the cash in the Net Settlement Fund is now available for distribution to Authorized Claimants in accordance with the Plan of Allocation.  *See generally,* Broker Dec.

## III.   CLAIMS ADMINISTRATION

Under the terms of the Stipulation, an $11,000,000.00 Settlement Fund was established for the benefit of the Settlement Class for the settlement of this Action. Pursuant to the Stipulation, the Notice, and the Preliminary Approval Order, all Settlement Class Members wishing to participate in the Settlement Fund were required to submit Claim Forms by mail, postmarked no later than May 11, 2021.  As set forth in the Broker Declaration, Epiq reviewed and processed 9,942 Claim Forms submitted by potential Settlement Class Members.  *Id.,* ¶32.  Epiq has now prepared detailed reports listing: (i) all valid Claim Forms by Authorized Claimants; (ii) all Claim Forms that were submitted after the claims submission deadline but on or before February 22, 2022 that are otherwise valid; and (iii) rejected Claim Forms with the rejection reasons (including claims that had a Recognized Loss of zero).  *See Id.,* ¶¶32-34; Broker Dec. Exhibits B-1 through B-3.

The Claim Forms submitted in paper form were opened, assigned a unique claim number, imaged, and the original documents were stored in an on-site designated secure area.  *Id.,* ¶8.  This process included unfolding documents, removing staples, sorting documents into action Claim Forms and requests for Claim Forms, and scanning the Claim Forms into a database.  The information from each Claim,

4

including the name, address, and the claimant's account number/information from his, her, or its supporting documentation, and the claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Claim, was entered into data files housed on Epiq's secure network to process Claim Forms submitted for the Settlement. *Id.* Epiq evaluated and processed all Claim Forms and supporting documentation to determine, among other things, whether each Claimant had purchased or acquired HIIQ securities during the Settlement Class Period, and whether the Claims had been submitted by excluded persons or was filed on behalf of a Settlement Class Member requesting exclusion. *Id.*, ¶¶8-9.

Much of Epiq's efforts in handling the administration involved claimant communications, so that all claimants had sufficient opportunity to cure any deficiencies and file a complete Claim. As demonstrated by the Broker Declaration, Epiq received all submitted Claims and, to the extent that a Claim was deficient, Epiq notified the claimant of the deficiency and advised the claimant on how to cure the deficiency. *Id.,* ¶¶18-19. Epiq made substantial efforts, by way of Deficiency Notices and Transaction Reports, to provide claimants, using both paper Claim Forms and Electronic Claims, a fair opportunity to cure deficiencies. *Id.*; Broker Dec. Exhibit A (sample Deficiency Notice).

Epiq sent 346 Deficiency Notices to claimants (primarily due to missing information or documentation) in an effort to inform the claimants of their ineligibility or defective claim and the steps necessary to correct the deficiencies. *Id.,* ¶19. The Deficiency Notices and the Transaction Reports advised claimants that the submission

of the appropriate information and/or trade documentation required to complete the Claim had to be sent within 20 days from the date of the letter, or the Claim would be recommended for either full or partial rejection. *Id*.

Epiq has completed the processing of the 9,942 Claim Forms that were received through February 22, 2022, and has determined that 6,457 are acceptable in whole or part, and that 3,485 should be wholly rejected because they are either ineligible, wholly deficient, or have no Recognized Loss when calculated in accordance with the Court-approved Plan of Allocation. *Id.,* ¶¶32-33. Epiq received 68 Claim Forms that were postmarked after the Court-approved claim filing deadline of May 11, 2021, and were, apart from their late submission, otherwise eligible. *Id.*, ¶26.

A District Court overseeing a settlement distribution has the discretion to accept late claims under F.R.C.P. Rule 23. *See McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *9 (S.D. Cal. Mar. 30, 2009) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir.1977)); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972) ("Until the funding created by the settlement is actually distributed, the court retains its traditional equity powers.... to protect unnamed, but interested persons.").

Lead Counsel believes that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the deadline, but while all claims were still being processed. The untimely filing of these claims was through no substantial fault of the claimants in question, no delay has resulted from the provisional acceptance of these 68 untimely claims, and accepting these 68 claims will not have a material impact on

6

the distributions that claimants with timely and valid claims will receive.  Broker Dec. ¶26.  Accordingly, Lead Counsel respectfully requests that the Court approve the administrative determination to accept the otherwise-eligible claims submitted after the May 11, 2021 deadline.

However, there must be a final cut-off date after which no more claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund. As other federal courts have observed, "in the distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated." *Bowman v. UBS Fin. Servs., Inc.*, 2007 WL 1456037, at *3 (N.D. Cal. May 17, 2007) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977)). Acceptance of any claim received after preparation of this application would necessarily require a delay in the distribution.  Broker Dec. ¶27.  Accordingly, it is respectfully requested that the Court enter an order directing that no claim submitted after February 22, 2022, a date during the preparation of this application, be accepted for any reason whatsoever.

## IV.    CLAIMS ADMINISTRATOR'S FEES AND EXPENSES

Pursuant to the terms of Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for several actions, including: dissemination of the Notice and Summary Notice (through both traditional mail and electronically), establishing a settlement website, maintaining a toll-free helpline dedicated to assisting potential Settlement Class Members, and maintaining an address for the receipt of Claim Forms and other correspondence, as well as

7

processing submitted Claim Forms, and the allocation and distribution of the Net Settlement Fund. *See generally*, Broker Dec. Additionally, in the Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses to Lead Plaintiffs, the Court retained continuing and exclusive jurisdiction over the Action and over all Parties to the Action, including the administration and distribution of the Net Settlement Fund. ECF No. 111, ¶15.

As set forth in the Broker Declaration, Epiq's outstanding fees and expenses for its work performed and to be performed on behalf of the Class in connection with the distribution of the Net Settlement Fund total $235,790.38. Broker Dec. ¶36; Broker Dec. Exhibit C. Lead Plaintiffs request that the Court authorize the payment of $235,790.38 to Epiq, representing the balance of its fees and expenses for mailing the Notice, processing the claims, and distributing the Net Settlement Fund to accepted claimants. *Id.,* ¶36.

## V. DISTRIBUTION OF NET SETTLEMENT FUND

Lead Plaintiffs also request that the Court authorize the distribution of the balance of the Settlement Fund—after deduction of the fees and expenses previously awarded and requested herein—to the Settlement Class Members whose claims have been accepted. *Id.,* ¶37; Broker Dec. Exhibits B-1 through B-3. Lead Plaintiffs now respectfully move the Court for an order approving Epiq's determinations concerning the acceptance and rejection of the Claim Forms that are included in this motion and approving the proposed plan for distribution of the Net Settlement Fund as set forth in the Broker Declaration (the "Distribution Plan").

Pursuant to the proposed Distribution Plan, Epiq will conduct an initial distribution (the "Initial Distribution") of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. *Id., ¶37(a).* In the Initial Distribution, Epiq will calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now by calculating their *pro rata* share of the fund in accordance with the Plan of Allocation. *Id.,* ¶37(a)(i). Pursuant to the terms of the Plan of Allocation, Epiq will eliminate any Authorized Claimant whose award amount calculates to less than $10.00. *Id.,* ¶37(a)(ii). Such Claimants will not receive any distribution from the Net Settlement Fund, and Epiq will send letters to those Authorized Claimants advising them of that fact. *Id.*

After eliminating Claimants who would have received less than $10.00, Epiq will calculate the pro rata distribution payments for Authorized Claimants who would have received $10.00 or more ("Distribution Amounts"). *Id., ¶37(a)(iii).* Epiq will then prepare checks for the distribution and registers of such distributions and send the payments by prepaid first-class mail, after the list of Authorized Claimants is compared to Epiq's internal list of claimants who have been identified as potentially fraudulent filers. *Id.,* ¶37(a)(iv).

Lead Plaintiffs propose that the Initial Distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION," so as to encourage

claimants to promptly cash their distributions and avoid or reduce future expenses relating to unpaid distributions. *Id.,* ¶37(a)(v).  Epiq will issue replacement payments for distributions upon request by payee and will respond to inquiries about distribution amounts and loss calculations. *Id.,* footnote 3.  Authorized Claimants who do not cash their distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all such stale-dated checks will be subject to re-distribution. *Id.,* ¶37(a)(vi).

Pursuant to the Distribution Plan, if any balance is remaining in the Net Settlement Fund after six (6) months from the date of the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, and if cost effective, the remaining funds will be distributed to all Authorized Claimants in the Initial Distribution who (1) cashed their distribution payment and (2) are entitled to at least $10.00 from the re-distribution based on their pro rata share of the remaining funds (the "Second Distribution"). *Id.,* ¶37(b).

If cost effective, not less than six (6) months after the Second Distribution is conducted, Epiq will conduct a further distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred in connection with administering the Net Settlement Fund (including the estimated costs of such

10

distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to Authorized Claimants who cashed their Second Distribution checks and who would receive at least $10.00 in such further distribution. *Id.*, ¶37(c)(i). Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Epiq, determine that further re-distribution is not cost-effective. *Id.*

Finally, if any funds remain in the Net Settlement Fund after determining that further re-distribution is no longer cost-effective, the remaining funds shall be contributed to a secular, non-profit 501(c)(3) charitable organization(s), to be recommended by Lead Counsel and approved by the Court. Stipulation, ¶30 (ECF No. 100-2). If applicable, Lead Plaintiffs will at that time request that the Court authorize the disposition of such remaining unclaimed or uncashed balance.

## VI.    RELEASE OF CLAIMS

Additionally, in order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the claims' processing, or involved in the administration or taxation of the Settlement Fund be released and discharged from any and all claims arising from such involvement beyond the amount paid or allocated to them. Accordingly, Lead Plaintiffs respectfully request that the Court bar any such claims against all such persons involved in the review, verification, calculation,

tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or otherwise involved in the administration or taxation of the Settlement Fund, or the Net Settlement Fund, and that all such persons be released and discharged from any and all claims arising out of such involvement, and that all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, will be barred from making any further claim against the Net Settlement Fund beyond the amount allocated to them as provided in any distribution orders entered by the Court.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *Thorpe v. Walter Inv. Mgmt., Corp.*, 2018 WL 3672266, at *2 (S.D. Fla. May 24, 2018), *report and recommendation adopted*, 2018 WL 3672239 (S.D. Fla. June 8, 2018) ("[A]ll persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund, Net Settlement Fund, or Escrow Accounts, are released and discharged from any and all claims arising out of such involvement. All Settlement Class Members are barred from making any further claims against the Settlement Fund or the Net Settlement Fund or the Released Parties beyond the amount allocated to them pursuant to this Order."); *In re Miva, Inc.,* 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015) (approving substantially similar language in order authorizing distribution of settlement proceeds).

12

## VII.   RETENTION OF CLAIM FORMS AND OTHER DOCUMENTS

Lead Plaintiffs also request that the Court permit Epiq to destroy any paper copies of the Claim Forms, and all related paper documents, one year after the distribution of the Net Settlement Fund is complete, and any electronic copies of the same three years after the initial distribution of the Net Settlement Fund is complete. Broker Dec. ¶37(e).

## VIII.  CONCLUSION

For all the foregoing reasons, it is respectfully submitted that Lead Plaintiffs' Unopposed Motion for Approval of Distribution of Net Settlement Fund should be approved, and the Distribution Order should be entered.

### LOCAL RULE 3.01(g) CERTIFICATION

Counsel for Lead Plaintiffs certifies that they have conferred with counsel for Defendants, and Defendants take no position on this motion.

Dated: March 15, 2022                   Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ Adam D. Warden*
Maya Saxena (Fla. Bar 35494)
Joseph E. White, III (Fla. Bar 621064)
Adam Warden (Fla. Bar 873691)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
jwhite@saxenawhite.com
awarden@saxenawhite.com

Steven B. Singer (*pro hac vice*)
10 Bank Street
8th Floor
White Plains, NY 10606

13

Telephone: (914) 437-8551
Facsimile: (888) 631-3611
ssinger@saxenawhite.com

*Lead Counsel for Lead Plaintiffs and the Class*

**ABRAHAM, FRUCHTER AND TWERSKY, LLP**

Mitchell M.Z. Twersky (*pro hac vice*)
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Additional Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 15, 2022, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF electronic notification system, which will send a notice of electronic filing to all parties of record.

/s/ *Adam D. Warden*
Adam D. Warden

14