UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JULIAN KEIPPEL, Individually and On Behalf of All Others Similarly Situated, | CASE NO. 8:19-CV-00421-WFJ-CPT |
| Plaintiff, | CLASS ACTION |
| v. | |
| HEALTH INSURANCE INNOVATIONS, INC. n/k/a BENEFYTT TECHNOLOGIES, INC., GAVIN SOUTHWELL, and MICHAEL D. HERSHBERGER, | |
| Defendants. | |

**[PROPOSED] ORDER APPROVING
DISTRIBUTION OF NET SETTLEMENT FUND**

WHEREAS, in the above-captioned action (the "Action"), the Claims Administrator has completed the administration of the Settlement Fund, including the processing of all submitted Claim Forms, and is now prepared, with the approval of the Court, to distribute the net proceeds of the Settlement;

WHEREAS, on March 23, 2021, the Court granted Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and entered a Final Judgment, an Order Awarding Attorneys' Fees and Litigation Expenses to Lead Plaintiffs, and an Order Approving Plan of Allocation of Net Settlement Fund (ECF Nos. 110-113) and

1

retained jurisdiction over the Action, including the administration and distribution of the Net Settlement Fund;

WHEREAS, as referred to in the Order Preliminarily Approving Settlement and Providing for Notice entered on December 3, 2020 (ECF No. 101, ¶8), the deadline for Settlement Class Members to submit claims to participate in a distribution from the Net Settlement Fund was May 11, 2021;

WHEREAS, as reflected in the Declaration of Jordan Broker in Support of Lead Plaintiffs' Motion for Approval of Distribution of Net Settlement Fund ("Broker Dec." or "Broker Declaration"), the Claims Administrator has completed the process of reviewing all submitted claims, and has made a recommendation as to the eligibility of each submitted claim;

WHEREAS, Lead Plaintiffs and the Claims Administrator now seek authorization to distribute the Net Settlement Fund to Authorized Claimants; and

WHEREAS, after reviewing Lead Plaintiffs' Unopposed Motion for Approval of Distribution of Net Settlement Fund, the Broker Declaration, and all other exhibits and papers submitted in support thereof, the Court has determined that good cause exists for the relief requested.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This Order incorporates by reference the definitions in the Stipulation of Settlement, dated December 2, 2020 and filed on December 3, 2020 (the "Stipulation," ECF No. 100-2) and in the Broker Declaration, and all capitalized terms used herein

shall have the same meanings as set forth in the Stipulation, or in the Broker Declaration.

2.      This Court has continuing jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

3.      The claims set forth in Exhibit B-1 ("Timely Eligible Claims") and Exhibit B-2 ("Late but Otherwise Eligible Claims") to the Broker Declaration are APPROVED, and the distribution of the Net Settlement Fund to the Authorized Claimants is AUTHORIZED.

4.      Wholly ineligible or otherwise deficient claims ("Rejected Claims"), as set forth in Exhibit B-3 to the Broker Declaration, are REJECTED.

5.      Claims with a Recognized Claim amount of zero ("No Loss"), as calculated under the Court-approved Plan of Allocation, and as set forth in Exhibit B-3 are REJECTED, and the Claims Administrator will send a No Loss letter advising claimants.

6.      Epiq Class Action & Claims Solutions, Inc. ("Epiq") is to conduct an initial distribution, after deducting $235,790.38 in remaining fees and expenses to itself and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees as follows:

    a.      Epiq shall calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the fund in accordance with the Plan of Allocation;

    b.      Pursuant to the terms of the Plan of Allocation, Epiq shall

3

eliminate any Authorized Claimant whose award amount calculates to less than $10.00. Such Claimants shall not receive any distribution from the Net Settlement Fund, and Epiq shall send letters to those Authorized Claimants advising them of that fact;

c.    After eliminating Claimants who would have received less than $10.00, Epiq will calculate the *pro rata* distribution payments for Authorized Claimants who would have received $10.00 or more pursuant to the calculations ("Distribution Amounts");

d.    Epiq shall then prepare checks for the distribution and registers of such distributions, and send the payments by prepaid first-class mail, after the list of Authorized Claimants is compared to Epiq's internal list of claimants who have been identified as potentially fraudulent filers. Finally, Epiq will issue replacement payments for distributions upon request by payee, and will respond to inquiries about distribution amounts and Recognized Loss Amount calculations;

e.    All Initial Distribution checks shall bear the following notation: "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF DISTRIBUTION";

f.    Authorized Claimants who do not negotiate their Initial Distribution checks in accordance with the Plan of Allocation shall irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants

4

in the Second Distribution described below.  Similarly, Authorized Claimants who do not negotiate subsequent distributions within the time allotted or on the conditions set forth in the Plan of Allocation, will irrevocably forfeit any further recovery from the Net Settlement Fund; and

g.    After Epiq has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, which efforts shall consist of the follow-up efforts described in the Broker Declaration, but no earlier than six (6) months after the Initial Distribution, if any balance is remaining and if cost effective, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), pursuant to which any amounts remaining in the Net Settlement Fund after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who (1) cashed their distribution payment, and (2) are entitled to at least $10.00 from the re-distribution based on their *pro rata* share of the remaining funds.

7.    In order to allow a final distribution of any balance that may remain in the Settlement Fund after the distribution, whether by reason of returned funds, tax refunds, interest, uncashed drafts, or otherwise, the following plan is ordered:

a.    If cost effective, not less than six (6) months after the Second

5

Distribution is conducted, Epiq will conduct a further distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after deducting Epiq's unpaid fees and expenses incurred or to be incurred, in connection with administering the Net Settlement Fund (including the estimated costs of such distribution), and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to Authorized Claimants who cashed their Second Distribution checks, and who would receive at least $10.00 in such further distribution. Additional re-distributions, after deduction of costs and expenses as described above, and subject to the same conditions, may occur thereafter in six-month intervals until Lead Counsel, in consultation with Epiq, determine that a further re-distribution is not cost-effective; and

b.    At such time as Lead Counsel, in consultation with Epiq, determine that a further re-distribution of the funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund, and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, shall be contributed to a secular, non-profit 501(c)(3) charitable organization(s), to be recommended by Lead Counsel and subject to the review and approval of the Court.

8.    In order to allow the full and final distribution of the Net Settlement

Fund, it is necessary to bar any further claims received after February 22, 2022 from eligibility in the distribution of the Net Settlement Fund beyond the amounts allocated to Authorized Claimants.

9.     The administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and the Plan of Allocation and, therefore, all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they have claimed against, they received, or they are to receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund, or Plaintiffs' Counsel, the Claims Administrator, the escrow agent or any other agent retained by Plaintiffs or Lead Counsel, and are bound by all of the terms of the Stipulation, including the terms of the Final Judgment, and will be barred from bringing any action against the Released Parties concerning the Released Claims, or in connection with the administration of the Settlement, or to claim against the Net Settlement Fund for any amount greater than that allocated to such Class Member as a result of its submission of a valid proof of claim.

10.     Epiq shall be paid the outstanding balance of its fees and expenses in connection with the services performed, and to be performed, in administering the Proof of Claim Forms and distributing the Net Settlement Fund in the total amount of

$235,790.38.

11.    Epiq is authorized to destroy the paper copies of the Proof of Claim forms, and all related paper documents, one (1) year after the distribution of the Net Settlement Fund is complete and to destroy electronic copies of claim records three (3) years after the initial distribution of the Net Settlement Fund is complete.

12.    This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.


SO ORDERED this __ day of _____, 2022.


_____
The Honorable William F. Jung
United States District Judge